# No. 24-_____

# In the United States Court of Appeals
## FOR THE FIFTH CIRCUIT

IN RE: SPACE EXPLORATION TECHNOLOGIES CORP.

On Petition for Writ of Mandamus from an Order Granting
Defendants' Motion to Transfer Venue, Entered February 15, 2024
from United States District Court, Southern District of Texas,
Brownsville Division, No. 24-cv-1 (Olvera, J.)

## EMERGENCY PETITION FOR WRIT OF MANDAMUS

HARRY I. JOHNSON, III*
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
(310) 255-9005

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

*Application for admission forth-coming

MICHAEL E. KENNEALLY
AMANDA L. SALZ
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

*Counsel for Space Exploration
Technologies Corp.*

## CERTIFICATE OF INTERESTED PERSONS

***No. 24-_____, In re: Space Exploration Technologies Corp.***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.      Space Exploration Technologies Corp. ("SpaceX"), Plaintiff and Petitioner. SpaceX has no parent corporation and no publicly held corporation owns 10% or more of its stock.

2.      National Labor Relations Board, a federal administrative agency, Defendant and Respondent

3.      Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board, Defendant and Respondent

4.      Lauren M. McFerran, in her official capacity as Chairman of the National Labor Relations Board, Defendant and Respondent

5.      Marvin E. Kaplan, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

6.    Gwynne A. Wilcox, in her official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

7.    David M. Prouty, in his official capacity as Board member of the National Labor Relations Board, Defendant and Respondent

8.    Tom Moline, *Amicus Curiae* in the underlying proceedings

9.    Deborah Lawrence, *Amicus Curiae* in the underlying proceedings

10.    Scott Beck, *Amicus Curiae* in the underlying proceedings

11.    Paige Holland-Thielen, *Amicus Curiae* in the underlying proceedings

12.    Pacific Legal Foundation, *Amicus Curiae* in the underlying proceedings

13.    Rolando Olvera, in his official capacity as United States District Judge of United States District Court for the Southern District of Texas, Brownsville Division

14.    John Doe, in his official capacity as an Administrative Law Judge of the National Labor Relations Board, Defendant[1]

---

[1]  Judge Sharon L. Steckler was recently named as the ALJ in the underlying matter but had not been officially substituted by the time of the ruling giving rise to this petition.

15. United States of America, appropriates funds for and assumes debts of Defendants and Respondents

The undersigned counsel for SpaceX, separately lists the following persons as attorneys of record:

16. Harry I. Johnson, III, Attorney for SpaceX

17. Michael E. Kenneally, Attorney for SpaceX

18. Catherine L. Eschbach, Attorney for SpaceX

19. Amanda L. Salz, Attorney for SpaceX

20. David G. Oliveira, Attorney for SpaceX

21. Alamdar S. Hamdani, Attorney for Defendants

22. Daniel David Hu, Attorney for Defendants

23. Benjamin S. Lyles, Attorney for Defendants

24. Kevin P. Flanagan, Attorney for Defendants

25. David P. Boehm, Attorney for Defendants

26. Daniel Brasil Becker, Attorney for Defendants

27. Grace L. Pezzella, Attorney for Defendants

28. Laurie Burgess, Attorney for *Amicus Curiae*

29. Anne Shaver, Attorney for *Amicus Curiae*

30. Nimish Desai, Attorney for *Amicus Curiae*

31.    Joshua M. Robbins, Attorney for *Amicus Curiae*

32.    Oliver J. Dunford, Attorney for *Amicus Curiae*


Dated:  February 16, 2024          s/ Michael E. Kenneally
                                   MICHAEL E. KENNEALLY

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF AUTHORITIES...............................................................vii

STATEMENT OF RELIEF SOUGHT ..................................................1

ISSUE PRESENTED ........................................................................1

INTRODUCTION............................................................................1

FACTS NECESSARY TO UNDERSTAND THE ISSUE
PRESENTED..................................................................................7

REASONS FOR GRANTING THE WRIT .............................................11

I.    SpaceX has no other adequate means of relief. .............................11

II.   SpaceX has shown a writ is appropriate under the
      circumstances. ................................................................14

III.  SpaceX has a clear and indisputable right to the writ.................. 16

      A.   The district court applied the wrong legal standard in
           finding venue improper.........................................................17

           1.   The district court applied the wrong "most
                substantial" venue standard in determining that
                venue was not proper in the Southern District of
                Texas. ........................................................................17

           2.   The district court committed clear legal error in
                holding that in-venue events giving rise to
                SpaceX's claims are insubstantial. ............................. 21

      B.   Transfer to the Central District of California would not
           be proper under Section 1404(a) either. ............................... 31

# TABLE OF CONTENTS
### (continued)

**Page**

CONCLUSION ........................................................................... 35

CERTIFICATE OF SERVICE................................................. 37

CERTIFICATE OF COMPLIANCE......................................... 39

ATTACHMENT ....................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Axon Enter., Inc. v. FTC,*
   598 U.S. 175 (2023) ................................................................ 13

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
   2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) ................................ 19, 22

*Carteret Sav. Bank, F.A. v. Shushan,*
   919 F.2d 225 (3d Cir. 1990) .................................................. 12

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry,*
   494 U.S. 558 (1990) ............................................................. 27

*Cheney v. U.S. Dist. Court,*
   542 U.S. 367 (2004) ......................................................... 11, 13

*Def. Distributed v. Bruck,*
   30 F.4th 414 (5th Cir. 2022) ........................................ *passim*

*Elrod v. Burns,*
   427 U.S. 347 (1976) ............................................................. 13

*FC Inv. Grp. LC v. Lichtenstein,*
   441 F. Supp. 2d 3 (D.D.C. 2006) ..................................... 19

*First of Mich. Corp. v. Bramlet,*
   141 F.3d 260 (6th Cir. 1998) .......................................... 18

*Hawbecker v. Hall,*
   88 F. Supp. 3d 723 (W.D. Tex. 2015) ...................... 18, 19, 22

*In re Horseshoe Entm't,*
   337 F.3d 429 (5th Cir. 2003) .......................................... 33

*In re Stingray IP Sols., LLC,*
   56 F.4th 1379 (Fed. Cir. 2023) ..................................... 12

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008)....................................................... *passim*

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ................................................... 3, 15, 16

*Long v. Grafton Exec. Search, LLC*,
  263 F. Supp. 2d 1085 (N.D. Tex. 2003)................................................. 24

*Mitrano v. Hawes*,
  377 F.3d 402 (4th Cir. 2004) ............................................................... 19

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937)................................................................................. 27

*Old Rep. Ins. Co. v. Admiral Ins. Co.*,
  2016 WL 10788990 (S.D. Tex. Aug. 8, 2016) ..................................... 18

*Ray v. Lynass*,
  2021 WL 8443684 (W.D. Tex. Nov. 9, 2021).......................... 19, 22, 26

*Safety Nat'l Cas. Corp. v. U.S. Dep't of Treas.*,
  2007 WL 7238943 (S.D. Tex. Aug. 20, 2007)................................ 19, 26

*Space Exploration Techs. Corp. v. Bell*,
  No. 1:23-cv-00137 (S.D. Tex. 2023)..................................................... 34

*Texas v. United States*,
  95 F. Supp. 3d 965 (N.D. Tex. 2015)................................................. 7, 22

*Uffner v. La Reunion Francaise, SA*,
  244 F.3d 38 (1st Cir. 2001) ............................................................ 19, 28

*Umphress v. Hall*,
  479 F. Supp. 3d 344 (N.D. Tex. 2020)............................................ 19, 22

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*WestRock Servs., Inc.*,
366 N.L.R.B. No. 157 (Aug. 6, 2018) .................................................. 16

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,
982 F. Supp. 2d 714 (W.D. Tex. 2013) ......................................... 18, 26

**STATUTES**

5 U.S.C.
§ 1202 ................................................................................................. 15
§ 7521 ................................................................................................. 15

15 U.S.C. § 78d .................................................................................... 15

28 U.S.C.
§ 1391 ......................................................................................... *passim*
§ 1404 ........................................................................................... 12, 31
§ 1406 ................................................................................... 1, 12, 31, 35

29 U.S.C.
§ 153 ................................................................................................... 15
§ 160 ..................................................................................................... 3

**OTHER AUTHORITIES**

14D CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3806 (4th ed. 2023) ............................................................................................ 5, 18

16 CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3935.4 (3d ed.) ... 12

17 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 110.04 (3d ed. 2023) .......................................................................................... 5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Musk shuttles SpaceX out of Delaware amid plans to construct a $100
    million compound in Texas region he wants to rename Starbase*,
    FORTUNE (Feb. 14, 2024), https://fortune.com/2024/02/14/musk-
    shuttles-spacex-out-of-delaware-amid-plans-to-construct-a-100-
    million-compound-in-texas-region-he-wants-to-rename-starbase/.... 34

Space Exploration Technologies Corp. Certificate of Conversion (Feb.
    14, 2024), https://sosdirectws.sos.state.tx.us/PDFonDemand/
    RetrievePDF.aspx?document_number=1332565570002&session_
    code=2bM5wUarPDdFdd1HNfKsQgf018PAgzAR2LTkIeGxdz
    WuaI1&element=3 ................................................................................ 8

## STATEMENT OF RELIEF SOUGHT

Petitioner Space Exploration Technologies Corp. ("SpaceX") seeks an emergency writ of mandamus ordering the district court to immediately request this case back from the Central District of California so the district court can timely rule on the preliminary injunction motion before the March 5, 2024 start of the unconstitutionally structured NLRB hearing that SpaceX seeks to enjoin through this action.

## ISSUE PRESENTED

Whether the district court applied an erroneous legal standard in determining that venue was improper in the Southern District of Texas under 28 U.S.C. § 1391(e)(1) and in transferring the case to the Central District of California under 28 U.S.C. § 1406(a)?

## INTRODUCTION

SpaceX petitions for emergency mandamus relief ordering the district court to request this case back from the Central District of California, where the district court erroneously transferred this matter. Time is of the essence: SpaceX seeks preliminary injunctive relief before the commencement of an unconstitutionally structured National Labor Relations Board ("NLRB") administrative hearing before an Administrative Law Judge ("ALJ") that is currently scheduled to start on March 5, 2024.

1

Because the district court effected the transfer at the same time that it granted Defendants'[2] transfer motion, SpaceX had no opportunity to ask the district court for a stay, and a quick mandamus ruling is necessary to avoid any further procedural complications.

This case challenges the constitutionality of the NLRB's structure, including the administrative hearing scheduled to start March 5, 2024. Through those proceedings, the NLRB seeks to regulate SpaceX's operations companywide, including at two SpaceX facilities in the Southern District of Texas (and two facilities in the Western District of Texas). And through equally unconstitutional proceedings, the NLRB regulates employers nationwide.

SpaceX moved for a preliminary injunction on the grounds that the administrative proceeding violates the Constitution in at least four respects, and SpaceX showed a clear entitlement to a preliminary injunction. Most pressing, given the imminent start of the ALJ hearing, is

---

[2]  The Real Parties-in-Interest are Defendants NLRB, Jennifer Abruzzo in her official capacity as the General Counsel of the NLRB; Lauren M. McFerran in her official capacity as the Chairman of the NLRB; Marvin E. Kaplan, Gwynne E. Wilcox, and David M. Prouty, in their official capacities as Board Members of the NLRB; and John Doe, in his official capacity as an ALJ of the NLRB. Judge Sharon L. Steckler was recently identified as the ALJ assigned to SpaceX's case.

SpaceX's first claim: under *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023), NLRB ALJs are unconstitutionally insulated from presidential control under Article II.[3]   In *Jarkesy*, this Court held that ALJs of the Securities and Exchange Commission ("SEC") are unconstitutionally insulated from presidential control.  The same removal protections apply to NLRB ALJs, and the NLRB itself has already ruled that NLRB ALJs are inferior officers like SEC ALJs in the relevant respect.  Defendants plainly lose under this Court's decision in *Jarkesy*.  So they sought transfer out of this Circuit, with the admitted purpose of preventing SpaceX from "obtain[ing] the advantage of that case's holdings."  Dkt. 29 at 12 (Mot. to Transfer).

Allowing a federal agency to dodge unfavorable precedent is bad enough.  But the district court's erroneous transfer decision also jeopardizes SpaceX's hopes of a prompt resolution of its preliminary injunction

---

[3]   SpaceX also contends that NLRB Board Members' are unconstitutionally insulated from presidential control under Article II; that the NLRB's administrative adjudication of private rights and legal relief, such as compensatory damages, requires a jury trial in an Article III court under the Seventh Amendment; and that the Board Members' powers under 29 U.S.C. § 160(j) violate Due Process by having the Board Members exercise both prosecutorial and adjudicative functions in the same proceeding.

3

motion and avoidance of the impending constitutional injury. The ALJ hearing is set to start in just two and a half weeks. And now a new court will need to get up to speed on constitutional issues that all parties agree are complex. This Court should quickly order mandamus relief to return this case to the Southern District of Texas so the district court can expeditiously rule on the preliminary injunction motion before the ALJ hearing begins.

SpaceX satisfies all the criteria for mandamus relief on the erroneous transfer order. This Circuit has squarely held that the criteria for mandamus relief are satisfied when a case is erroneously transferred or the district court applies the wrong legal standard in transferring the case.

Here, the district court erroneously transferred the case and applied the wrong legal standard under 28 U.S.C. § 1391(e)(1). That provision requires SpaceX to establish only that a substantial part of events occurred in the Southern District of Texas—not that the *most substantial* events occurred there. SpaceX established that by showing, among other things, that the NLRB's challenged administrative proceedings have expressed an objective of regulating SpaceX's operations at two facilities in

the Southern District of Texas and are already affecting operations at those facilities.

Defendants do not contest these facts. They do not deny that the NLRB will adjudicate whether SpaceX has engaged in unfair labor practices on a company-wide basis. Nor could they. The NLRB's own administrative complaint alleges an unfair labor practice partly occurred in the Southern District of Texas when SpaceX's Texas-based President and COO sent an allegedly unlawful email to "all employees," including those at the two SpaceX facilities in the Southern District of Texas. The NLRB's complaint also undisputedly seeks remedies that would make demands at SpaceX's facilities in the Southern District of Texas.

But the district court held that none of this mattered because "the Central District of California is the venue in which the most events giving rise to this case occurred." Dkt. 82 at 4-5 (Order). It is hornbook law, however, that transactional venue under Section 1391 is not limited to the venue in which the *most substantial* events occurred. *See* 14D CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3806 n.10 (4th ed. 2023); 17 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 110.04[2] & n.4 (3d ed. 2023). By the plain terms of the statute, all that

is necessary is that "*a* substantial part of the events or omissions giving rise to the claim occurred" in the relevant district.  28 U.S.C. § 1391(b)(2), (e)(1) (emphasis added).

Here, the NLRB decided to pursue charges and remedies extending beyond a single SpaceX facility in California.  The NLRB proceedings do not concern a purely local dispute.  The administrative complaint implicates all SpaceX facility in Texas (and nationwide) and explicitly requests an order requiring every SpaceX manager and supervisor to undergo labor-law reeducation by an NLRB agent.  The district court erred in discounting those companywide remedies and allegations that an unfair labor practice took place in the Southern District of Texas when SpaceX's Texas-based President and COO sent a purportedly unlawful email to employees at the Starbase and Houston facilities.  The NLRB could have commenced an administrative proceeding based on this alleged unfair labor practice alone.  And there would have been no question in that case that venue for SpaceX's lawsuit is proper.  The fact that the NLRB brought additional charges does not diminish the substantiality of these Texas-based events to SpaceX's claims that the NLRB proceedings violate the Constitution.  Had the district court not applied the wrong legal

standard—focusing on the "most" substantial events rather than "a" substantial part of the events—it would have recognized that Defendants' attempts to regulate SpaceX's employment practices in the Southern District of Texas satisfies the test for transactional venue. *See Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (holding venue was proper where a challenged administrative rule would regulate employers' operations in the district).

SpaceX properly brought suit in the Southern District of Texas and this case should be heard here. Defendants are not entitled to escape to a venue they perceive as more favorable and thwart prompt resolution of SpaceX's request for preliminary relief to halt a fast-approaching unconstitutional administrative proceeding. Mandamus relief is warranted.

## FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

SpaceX operates a space launch business and a global satellite-based internet service known as Starlink. Dkt. 37-1 ¶¶ 5-8 (Gallman Decl.). It employs over 14,000 people in facilities around the country, including in its Starbase facility in Boca Chica, Texas where it is developing, manufacturing, and launching Starship, the most powerful rocket ever built; its rocket development facility in McGregor, Texas; its human

spaceflight mission operations and integration facility in Houston, Texas;

its Starlink manufacturing facility in Bastrop, Texas; and its facilities in

Florida, Washington State, California, and Washington, D.C.  *Id.* ¶ 9.

Although SpaceX was incorporated in Delaware when it filed this law-

suit, Dkt. 1 ¶ 35 (Compl.), SpaceX reincorporated in Texas on February

14, 2024.[4]

On June 15, 2022, a small group of SpaceX employees sent an open

letter (the "Open Letter") to SpaceX employees across all of SpaceX's lo-

cations, in many cases flooding multiple channels of communication, and

demanding that SpaceX take certain actions addressing perceived short-

comings and soliciting employees to fill out a hyperlinked survey to indi-

cate support for the Open Letter's demands and provide feedback.  *Id.*

¶¶ 43–44.  The Open Letter overwhelmed many of SpaceX's communica-

tion channels and caused significant disruption to SpaceX operations

around the country, including at Starbase and the other Texas facilities.

The Open Letter was a blatant and gross violation of company policies.

---

[4]  *See* Space Exploration Technologies Corp. Certificate of Conversion
(Feb. 14, 2024), https://sosdirectws.sos.state.tx.us/PDFonDemand/
RetrievePDF.aspx?document_number=1332565570002&session_
code=2bM5wUarPDdFdd1HNfKsQgf018PAgzAR2LTkIeGxdzWuaI1
&element=3.

*Id.* ¶¶ 43–46.  SpaceX did not discharge employees who indicated support for the letter, but discharged a few employees involved with the mass-distribution of it in violation of company policy.  *Id.* ¶ 46.

In November 2022, several discharged former employees (the "Charging Parties") filed NLRB charges alleging that SpaceX committed unfair labor practices (the "Charges").  *Id.* ¶ 47.  SpaceX submitted to the NLRB a position statement refuting the Charging Parties' allegations, along with supporting evidence.  *Id.* ¶ 48.  The position statement and evidence spanned 700 pages, and its preparation was a burdensome effort.

On December 14, 2023, the investigating NLRB Region informed SpaceX that it had made determinations on the Charges and had authorized an administrative complaint against SpaceX on nearly every single charge, breaking with established legal precedent to avoid narrowing the issues at all.  The NLRB, in its eagerness to subject SpaceX to its burdensome hearing process, seemed to ignore even basic information provided by SpaceX, such as the supervisory status of one charging party (exempting that charging party from the NLRA's protections) and clear evidence that another charging party was actually terminated long after

the others for a well-documented history of substandard performance. *Id.*
¶ 48. On January 3, 2024, the Regional Director for Region 31 issued an
order consolidating the administrative cases, with a consolidated admin-
istrative complaint and notice that an ALJ hearing would occur just two
months later, on March 5, 2024. *Id.* ¶ 49.

The next day, SpaceX filed this suit in the Southern District of
Texas, Brownsville Division, seeking preliminary and permanent injunc-
tive relief and declaratory relief, based on four distinct constitutional
problems with the NLRB proceedings. SpaceX has requested and contin-
ues to request that the NLRB agree to stay the agency proceedings to
give the courts time to adjudicate these issues, but the NLRB and its
prosecutors—despite waiting more than a year to file their complaint—
have refused these requests. Dkt. 37-2 ¶¶ 4–8 (Eschbach Decl.). SpaceX
was forced to file a motion for preliminary injunction on January 12 (Dkt.
37), which Defendants opposed on February 2 (Dkt. 69). SpaceX filed its
preliminary injunction reply on February 12 (Dkt. 79), and the motion is
ripe for decision.

Meanwhile, Defendants moved on January 11 to transfer the case to the Central District of California.  Dkt. 29.  On February 15, the district court granted Defendants' motion, ruling that venue was improper in the Southern District of Texas.  Dkt. 82.  The transfer was effected immediately after the order was entered.

## REASONS FOR GRANTING THE WRIT

While SpaceX recognizes that a writ of mandamus is an extraordinary remedy, the writ is nonetheless warranted if the petitioner satisfies three conditions.  First, the petitioner must show that there are "no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004).  Second, the court "must be satisfied that the writ is appropriate under the circumstances." *Id.* at 381.  And third, the petitioner must show a "clear and indisputable right to the writ." *Id.*

SpaceX satisfies all three conditions, and writ relief should issue immediately.

## I.     SpaceX has no other adequate means of relief.

It is well established that mandamus is the appropriate vehicle to obtain appellate relief from an erroneous transfer decision.  *See Def. Distributed v. Bruck*, 30 F.4th 414, 426 (5th Cir. 2022) (mandamus is the

appropriate vehicle for review "whether the district courts granted or de-nied transfer"); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc).[5]

As this Court explained in *Defense Distributed*, the circuit court that entertains appeals from the transferee court (here, the Ninth Cir-cuit) "cannot, under normal appellate standards, exercise appellate re-view over . . . transfer orders." 30 F.4th at 426. If a petitioner were forced to wait until *after* receiving an adverse final judgment in the transferee court, the petitioner "would not have an adequate remedy . . . because the petitioner would not be able to show that it would have won the case had

---

[5] Mandamus is the appropriate vehicle for reviewing Section 1404 and Section 1406 transfers alike. *See* 16 CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3935.4 (3d ed.) (analyzing the "relatively uncontrover-sial use of mandamus to control decisions that go beyond the limits of transfer power or that rely on wrong legal criteria" in the context of Section 1404 and Section 1406 transfers); *see, e.g., In re Stingray IP Sols., LLC*, 56 F.4th 1379, 1383 (Fed. Cir. 2023) (stating that manda-mus can be "available for rulings on motions under 28 U.S.C. § 1406(a)" when "important to proper judicial administration, including in connection with venue-related issues"); *Carteret Sav. Bank, F.A. v. Shushan*, 919 F.2d 225, 231 (3d Cir. 1990) (holding that, "regardless of the scope of section 1406(a) the district court committed a clear error of law when it transferred the case over Carteret's objection and we further conclude that we should exercise our discretion to grant the writ of mandamus to direct the district court to vacate its order for transfer").

it been tried in [the original] venue." *Volkswagen*, 545 F.3d at 310 (citation and alterations omitted).  Even if one could make that showing, it would be futile:  the harm would "already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle." *Id.*

Here, the harm is increased by the delay that transfer may cause in the adjudication of SpaceX's request for preliminary injunctive relief. As SpaceX has detailed in its preliminary injunction papers, it is already experiencing and will continue to experience irreparable harm from an administrative proceeding that violates the Constitution four times over. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (explaining that "having to appear in proceedings before an unconstitutionally insulated ALJ . . . is a here-and-now injury." (citation and quotation marks omitted)); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that the deprivation of a constitutional right, "for even minimal periods of time, unquestionably constitutes irreparable injury").  If this Court does not issue mandamus relief, SpaceX will have no "adequate means to attain the relief [it] desires." *Cheney*, 542 U.S. at 380.

**II.    SpaceX has shown a writ is appropriate under the circumstances.**

Mandamus is "especially appropriate" when, as here, "the issues implicated have importance beyond the immediate case." *Def. Distributed*, 30 F.4th at 426.  Here, those important issues include the erroneous legal standard that the district court applied in granting transfer.  *See Volkswagen*, 545 F.3d at 319 ("[V]enue transfer decisions are rarely reviewed, the district courts have developed their own tests, and they have applied these tests with too little regard for consistency of outcome.").  But the important issues also include SpaceX's underlying constitutional claims.  *See Def. Distributed*, 30 F.4th at 426 (holding that "the abridgment of the Plaintiffs' [constitutional] rights" and "tactics suggesting the abusive manipulation of federal court procedures in order to delay or altogether avoid meaningful merits consideration of Plaintiffs' claims" were "issues that implicate not only the parties' interests but those of the judicial system itself").

The constitutional issues SpaceX raises extend well beyond this case.  SpaceX challenges the structural integrity of the administrative proceedings the NLRB uses nationwide:  the removal protections shield-

14

ing both the NLRB's ALJs and its Board Members from presidential oversight, its failure to provide a jury trial in a case involving private rights and claims for legal relief, and the Board Members' exercises of prosecutorial and adjudicative authority in the same proceeding. These issues are important across countless NLRB adjudications.

Another relevant consideration is the NLRB's open desire to avoid Fifth Circuit precedent on these constitutional issues. The agency sees the writing on the wall: under Fifth Circuit precedent, it is sure to lose on at least one claim because the NLRB's ALJs' removal protections are indistinguishable from the SEC ALJs' removal protections, which this Court held unconstitutional in *Jarkesy*, 34 F.4th 446. NLRB ALJs are protected from without-cause removal by the same statute as the SEC ALJs. 5 U.S.C. § 7521(a). Merit Systems Protection Board members are protected from without-cause removal by the same statute in both contexts. 5 U.S.C. § 1202(d). And NLRB Members have removal protections just like the SEC Commissioners'. *See* 29 U.S.C. § 153(a); 15 U.S.C. § 78d(a). Defendants have tried to argue that NLRB ALJs and SEC ALJs are not sufficiently similar kinds of officers. But the Board's own precedent decisively resolves this point against the agency by conceding that

NLRB ALJs are inferior officers under Article II in the same way that SEC ALJs are. *WestRock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Although the Court's holding in *Lucia* was specific to SEC administrative law judges, its reasoning supports a determination that Board judges, like SEC judges, are inferior officers, and as such we agree that they must be appointed pursuant to the Appointments Clause."); *see also Jarkesy*, 34 F.4th at 464 ("The Supreme Court decided in *Lucia* that SEC ALJs are 'inferior officers' under the Appointments Clause because they have substantial authority within SEC enforcement actions."). Defendants admit they want to deny SpaceX the ability "to leverage the Fifth Circuit's 2022 decision in *Jarkesy*" and have "the advantage of that case's holdings." Dkt. 78 (Defs.' Transfer Reply); *accord* Dkt. 29 at 12.

Transfer to the Ninth Circuit is the NLRB's escape hatch for avoiding this Court's precedent. The Court should not allow the NLRB to secure an erroneous transfer "to delay or altogether avoid meaningful merits consideration of Plaintiffs' claims." *Def. Distributed*, 30 F.4th at 426.

## III.  SpaceX has a clear and indisputable right to the writ.

The district court's application of the wrong legal standard for improper venue justifies writ relief. Applying the wrong legal standard

shows a "clear and indisputable right to the writ or a clear abuse of discretion by the district court." *Def. Distributed*, 30 F.4th at 427.

## A. The district court applied the wrong legal standard in finding venue improper.

SpaceX alleged that venue was proper in the Southern District of Texas because "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B); Compl. ¶ 34. In its Order, the district court incorrectly applied a "most substantial" venue standard that fixated on the labor-law controversy between SpaceX and the Charging Parties rather than the constitutional controversy between SpaceX and Defendants. Under the correct legal standards, a substantial part of the events giving rise to *this* litigation occurred within the Southern District of Texas.

### 1. The district court applied the wrong "most substantial" venue standard in determining that venue was not proper in the Southern District of Texas.

The district court applied the wrong legal standard when it concluded that the effects of the administrative proceeding "have far more relevance to [SpaceX's] Hawthorne facility" and that "the Central District of California is the venue in which the most events giving rise to this case

17

occurred." Dkt. 82 at 4–5. As courts throughout this Circuit and elsewhere have observed, the fact that the "most relevant events took place elsewhere" does not render the plaintiff's chosen venue improper. *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013). The standard for transactional venue is not a "best venue" standard. *Old Rep. Ins. Co. v. Admiral Ins. Co.*, 2016 WL 10788990, at *4 (S.D. Tex. Aug. 8, 2016) (quotation omitted).

Indeed, it is widely recognized that the 1990 amendments to Section 1391 broadened the transactional venue test to establish that venue "may be proper in multiple locations." *Hawbecker v. Hall*, 88 F. Supp. 3d 723, 731 (W.D. Tex. 2015) (citing 14D WRIGHT ET AL., *supra*, § 3806 n.10). A district court therefore applies "an incorrect, obsolete standard" when it confines venue to the location of "the most substantial event giving rise to the complaint." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262–64 (6th Cir. 1998) (citations and quotation marks omitted)); *accord* MOORE ET AL., *supra*, § 110.04[2] ("It is no longer necessary to find 'the' district where the most activity occurred, but rather any district in which a substantial part of the case arose.").

In determining what counts as "a substantial part of the events . . . giving rise to the claim," courts "look not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim." *Safety Nat'l Cas. Corp. v. U.S. Dep't of Treas.*, 2007 WL 7238943, at *3 (S.D. Tex. Aug. 20, 2007) (citing *Uffner v. La Reunion Francaise, SA*, 244 F.3d 38 (1st Cir. 2001)); *accord FC Inv. Grp. LC v. Lichtenstein*, 441 F. Supp. 2d 3, 11 (D.D.C. 2006); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). As a result, the transactional-venue test is met where the plaintiff is "present in the district or division in some real capacity and burdened" in that location. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 2023 WL 2975164, at *3 (N.D. Tex. Apr. 17, 2023); *see also, e.g.*, *Ray v. Lynass*, 2021 WL 8443684, at *6 (W.D. Tex. Nov. 9, 2021) ("Courts may now consider the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities."); *Umphress v. Hall*, 479 F. Supp. 3d 344, 352 (N.D. Tex. 2020) (same); *Hawbecker*, 88 F. Supp. 3d at 731 ("[T]he Court may consider . . . the venue of where the harm was felt to determine the location of 'a substantial part of the events[.]'").

In reciting the applicable legal standard, the district court correctly noted that it "need not determine the 'best' venue." Dkt. 82 at 2. But

that is precisely what it did.  It classified the "principal events giving rise
to this action" as the Charging Parties' drafting the Open Letter and the
commencement of the NLRB proceeding in California, stating that the
"nexus of facts is heavily focused in the Central District of California."
*Id.* at 3.  It dismissed the NLRB's efforts to establish an unfair labor prac-
tice and require remedies in SpaceX's facilities in the Southern District
of Texas because "these effects would be expected to have far more rele-
vance to the Hawthorne facility, where most of the employees were fired
and where the proceeding is being held."  *Id.* at 4.  And it stated that this
"case derived directly from the administrative proceeding which itself de-
rived directly from [SpaceX]'s response to an open letter, which reached
the Southern District of Texas not directly but incidentally as one of six
total SpaceX facilities."  *Id.*

But the question under Section 1391's transactional venue stand-
ard is not whether events in Texas are comparatively more important
than the events in California.  SpaceX needed to show only that events
in the Southern District of Texas were substantial.  By comparing the

events occurring in Texas and California, the district court wrongly applied a comparative, "most substantial" events standard instead of the statutory "substantial part of the events" standard.

> **2.    The district court committed clear legal error in holding that in-venue events giving rise to SpaceX's claims are insubstantial.**

Defendants do not deny that through the administrative proceeding they are seeking to regulate SpaceX's operations and policies at the two facilities, Starbase and Houston, located in the Southern District of Texas. This is not administrative action confined to California employees and their conduct at SpaceX's Hawthorne, California facility. It is an administrative proceeding that alleges that SpaceX violated the NLRA at all its facilities and that aims to impose remedies that would alter SpaceX's operations at four facilities in this Circuit as well as its facilities elsewhere.

SpaceX satisfied the correctly articulated transactional venue standard by showing that the challenged NLRB proceedings have interfered with its operations in the Southern District of Texas. SpaceX is "present in the district or division in some real capacity and burdened"

in the Southern District of Texas by Defendants' challenged conduct. *Career Colls.*, 2023 WL 2975164, at *3; *see also Ray*, 2021 WL 8443684, at *6; *Umphress*, 479 F. Supp. 3d at 352; *Hawbecker*, 88 F. Supp. 3d at 731. Where a challenged action by an administrative agency burdens an entity with a real presence in the district, including an entity with employees located in the district, venue is proper to challenge that agency action. *See Career Colls.*, 2023 WL 2975164, at *3; *Texas*, 95 F. Supp. 3d at 973 ("Because Plaintiff Texas and its agencies are employers in Wichita Falls, a substantial part of the events or omissions giving rise to Plaintiffs' claims would occur in the Northern District of Texas were the Final Rule to become effective."). Defendants do not deny that the NLRB is seeking to adjudicate conduct and policies and impose remedies at the SpaceX facilities in Texas.

That the NLRB is choosing to act through an adjudicatory proceeding to set labor policy and specifically to restrict SpaceX's operations and change its current policies, rather than through rulemaking, makes no difference. The form of the challenged administrative action does not change the impact that it would have, if successful, on SpaceX's Southern District of Texas facilities.

The district court did not address the *Career Colleges* and *Texas* cases or explain why the NLRB's efforts to regulate SpaceX's Southern District of Texas operations is not substantial in its own right. It relied on its legally erroneous view that the relevant question is comparative: which SpaceX facilities will be regulated the most heavily by the challenged proceedings?

For example, the district court dismissed the fact the NLRB complaint itself alleges that one of the unfair labor practices occurred in the Southern District of Texas. Order 3-4. Specifically, the NLRB complaint alleges an unfair labor practice based on the sending of a June 16 email, which Gwynne Shotwell, SpaceX's President and COO, sent from McGregor, Texas, and which the NLRB complaint alleges was sent "to *all employees*." Dkt. 31 ¶ 11 (NLRB Compl.) (emphasis added). For this reason, one of the matters to be resolved in the administrative proceeding that SpaceX is challenging happened not just in Hawthorne but in the Southern District of Texas, when Ms. Shotwell sent the email to Starbase and Houston employees among others. *Id.*; Dkt. 64-2 ¶¶ 11–12 (Schmitz Decl.). The district court was wrong to characterize this contact with the Southern District of Texas as merely incidental. The NLRB is charging

SpaceX with an unfair labor practice based on its communication—sent from Texas—with employees in the Southern District of Texas. *See Long v. Grafton Exec. Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (categorizing an email to Texas recipients as a substantial Texas-based event).

If that were an insubstantial part of the NLRB's case, the NLRB should have limited its charge to communications with the Hawthorne employees. The fact that it chose not to do so reveals that the company-wide aspect of the communication is important to the NLRB—as it is to SpaceX. The NLRB could have authorized a complaint based on this charge alone and the fact that other charges were also authorized does not render the alleged unlawful activities in the Southern District of Texas giving rise to the challenged NLRB proceeding "incidental," as the district court erroneously determined.

The district court also erred in determining that the remedies the NLRB seeks lack an "inherent connection to the Southern District of Texas." Dkt. 82 at 4. Defendants do not dispute that they are seeking remedies through the proceeding that will apply to the SpaceX facilities and personnel in the Southern District of Texas. Among other things,

the NLRB complaint requests that: SpaceX be ordered to "[p]ost" a corrective "notice . . . including electronically" on employee communication platforms; "[h]old . . . meetings scheduled to ensure the widest possible attendance," with Ms. Shotwell reading the NLRB's notice; and permit a Board agent to "conduct a training on the National Labor Relations Act and unfair labor practices for *all management officials and supervisors employed by [SpaceX]*." Dkt. 31 at 8–9 (emphasis added). By their terms, these remedies expressly involve employees, management, and supervisory personnel based in the Southern District of Texas. Again, the NLRB did not have to pursue remedies beyond Hawthorne. But having chosen to do so, the NLRB cannot now dismiss its own request for such relief as insubstantial. SpaceX submitted evidence showing that several senior VPs are in the Southern District of Texas (in addition to other executives located in the Western District of Texas). *See* Dkt. 37-1 ¶ 11. And the NLRB complaint specifically names Ms. Shotwell who resides not in California but in Texas. Dkt. 31 ¶ 4. This confirms the NLRB is seeking to restrict SpaceX's operations and change its policies companywide—including in the Southern District of Texas—and is not merely seeking to

resolve a "local" dispute involving Hawthorne management and Hawthorne employees.

As a result of the companywide scope of the NLRB's allegations, it is not surprising that the NLRB proceedings are already making companywide demands on SpaceX personnel and executives, including those located in the Southern District of Texas. The NLRB proceeding is making demands of senior leadership's time leading up to and during the administrative hearing, including of the Texas-based President and COO, at a time SpaceX has Starship test flights scheduled in Boca Chica. Dkt. 37-1 ¶¶ 7, 16, 19. Personnel across many SpaceX facilities, including Starbase, are assisting in preparing for and in some cases making arrangements to testify at the NLRB hearing. Dkt. 64-8 ¶¶ 12–14 (Harper Decl.). The fact that the NLRB proceeding has made demands of SpaceX personnel in the Southern District of Texas further shows substantial events in that venue that give rise to SpaceX's constitutional challenge. *See, e.g.*, *Ray*, 2021 WL 8443684, at \*6; *Zurich Am. Ins.*, 982 F. Supp. 2d at 722; *Safety Nat'l Cas. Corp.*, 2007 WL 7238943, at \*5.

Finally, the district court erred in giving inordinate weight to the location of the Charging Parties. Dkt. 82 at 3. They are not parties in

SpaceX's litigation. Although they filed the charges that gave rise to the NLRB proceeding, that proceeding is *supposed* to be an adjudication of public rights, not an adjudication of private remedies for individual employees. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937); *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990). And, again, the NLRB is not seeking remedies exclusively for the Charging Parties' experiences at Hawthorne.

But if it were appropriate to consider the events that gave rise to the Charging Parties' charges, here too there were substantial events in the Southern District of Texas. It is uncontested that the Charging Parties purposefully reached into the Southern District of Texas and solicited feedback and responses from employees in the Southern District of Texas—in violation of SpaceX's companywide policies—when they sent the Open Letter across multiple company channels of communications. The Charging Parties did not limit their communications to only California employees but instead purposefully sought to reach and receive responses from Texas-based employees (the Open Letter reaching the Southern District of Texas facilities was purposefully not "incidental").

27

And the undisputed facts show that the Open Letter was digitally
interacted with by over 210 employees at two facilities in the Southern
District of Texas, many of whom had multiple digital interactions with
the letter, including individuals with upwards of 30 or more interactions.
Dkt. 64-1 ¶¶ 9, 11–12 (Cramer Decl.).  These recorded digital interactions
reflected in SpaceX's records significantly underestimate the interactions
with and disruption caused by the Open Letter.  *Id.* ¶ 14.  SpaceX sub-
mitted declarations establishing that discussion around the Open Letter
derailed technical conversations for a week at Starbase, during a critical
phase in meeting targets for Starship (which will return American astro-
nauts to the moon), and required multiple unscheduled meetings to ad-
dress disruption and concern resulting from the Open Letter.  Dkts. 64-
2, 64-7 (Chacon Decl.).  This included a physical visit to Starbase by
SpaceX's President and COO to address the concerns and disruption
caused by the Open Letter.  Dkt. 64-7 ¶¶ 6–8.

All of this was uncontested and was enough standing alone to es-
tablish that a substantial part of the events occurred in the Southern
District of Texas, as these were events that led to the NLRB proceedings
that SpaceX seeks to enjoin.  *See Uffner*, 244 F.3d at 43 ("an event need

not be a point of dispute between the parties in order to constitute a sub-stantial event giving rise to the claim"). But the district court discounted this uncontested disruption because it determined that SpaceX had six facilities and "even if the effects on facilities were equal, only about one sixth of those events" occurred in the Southern District of Texas. Dkt. 82 at 3. The district court also reasoned that "these resulting events in this district are insubstantial in number compared to the totality of those giv-ing rise to [SpaceX's] claim and far less significant than those occurring in California." *Id.* But again, this is not a finding that the events in this district were insubstantial; it is finding that those events were less sub-stantial than events that occurred elsewhere. That comparative ap-proach is impermissible under the 1990 amendments to Section 1391, as detailed above. If an employee sent letters with defamatory contents to SpaceX facilities in California and facilities in Texas, venue would not turn on whether more recipients were in California than in Texas. The sending of defamatory information to each facility would alone be a sub-stantial event. Here, similarly, the sending of the Open Letter alone to the Texas facilities and the resulting disruption should also have been sufficient to satisfy the "substantial part of the events" standard.

29

The district court also mischaracterizes the record in stating that SpaceX "gives no reason why such effects [from disruption from the Open Letter] would be especially significant in [the Southern District of Texas.]" Dkt. 82 at 3. SpaceX submitted evidence showing the email by President and COO Gwynne Shotwell (that is the basis for an unfair labor practice charge) specifically mentioned that the Charging Parties' disruption was particularly harmful at Starbase, where the company was "on the cusp of the first orbital launch attempt of Starship." Dkt. 64-5 (Shotwell email). The evidence also showed that Starship development efforts were located at Starbase and the disruption from the Open Letter occurred at a time the Starship team was working towards key targets and derailed technical conversations. Dkt. 64-2 ¶¶ 4, 6, 10. The disruption at Starbase was so significant that the President and COO specifically travelled to Starbase to address the Open Letter. Dkt. 64-7 ¶¶ 6–8. That would not have happened if the effects from the Open Letter at Starbase were "insignificant," as the district court suggested.

Thus, in failing to find venue was proper in the Southern District of Texas, the district court applied a legally erroneous standard and mischaracterized the nature of the NLRB proceedings and their effect on the SpaceX facilities in the district.

### B.    Transfer to the Central District of California would not be proper under Section 1404(a) either.

Defendants may attempt to argue against mandamus by reraising their alternative argument for transfer, under 28 U.S.C. § 1404(a).  Such arguments are no basis to overlook the district court's erroneous transfer under Section 1406(a).  Defendants failed to show that transfer would be proper on those grounds under this Circuit's standards (which is likely why the district court did not reach the Section 1404(a) grounds as an alternative holding in ordering transfer).  The district court did not grant Defendants' motion under Section 1404(a), and it would have been a clear abuse of discretion to do so.

To establish "good cause," a movant must show that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Volkswagen*, 545 F.3d at 315.  When "jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer."  *Def. Distributed*, 30

F.4th at 433 (reversing transfer as an abuse of discretion). "[T]he standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Id.*

Defendants fell well short of meeting their burden. This action exclusively involves constitutional claims that are pure issues of law not requiring live witness testimony or a trial, and there is no reason why litigating these issues of constitutional law would be more convenient in California.

None of the private interest factors set forth in *Volkswagen* favor transfer—they were all either neutral or favored the Southern District of Texas. **(1)** Defendants failed to identify any evidence necessary to resolve this case, much less evidence located outside the Southern District of Texas. And to the extent it existed, they conceded it was digitally available. *See Def. Distributed*, 30 F.4th at 434. **(2)** Defendants failed to identify any witnesses necessary to resolve the constitutional issues, much less ones who refused to testify making compulsory process irrelevant. *Id.* **(3)** The only witness identified by any party as relevant to resolution

of SpaceX's constitutional claims was a SpaceX employee who submitted a declaration in support of the preliminary injunction motion and who is located at Starbase.  Although Defendants tried to improperly conflate the merits of the underlying NLRB proceeding with SpaceX's constitutional challenge and speculated the Charging Parties might be relevant witnesses, Defendants proved that speculation incorrect when they failed to submit any declarations from these alleged potential witnesses in opposition to the preliminary injunction motion.  The convenience of witnesses weighed in favor of venue in the Southern District of Texas.  **(4)** As to the final catch-all factor, the delay that would result from transfer in resolving the preliminary injunction motion rises above garden variety delay from transfer, *see In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003), and favored retaining venue in the Southern District of Texas.

As to the public interest factors, they all were also either neutral or favored retaining venue in the Southern District of Texas.  **(1)** The district court's civil docket statistics show no signs of congestion, the statistics reflect that the Southern District of Texas's "weighted filings" were lower than the Central District of California, and the district court has a track record of expeditiously resolving preliminary injunction motions.

This factor favored the Southern District of Texas retaining venue.

**(2)** SpaceX has a strong presence in the Southern District of Texas, and the employees located in the Southern District of Texas who would be affected by the Defendants' actions have an interest in the case being heard there. In fact, SpaceX just announced that it is changing its state of incorporation to Texas and building a $100 million facility in the Southern District of Texas.[6] Nor does the administrative proceeding involve any sort of localized dispute, but instead broadly seeks to restrict SpaceX operations and change policies at all facilities. The local interest factor is neutral or weighs in favor of retaining venue in Brownsville.

**(3)** Given the federal issues, this is the rare case where the familiarity with the case law factor is relevant. The district court recently decided similar complex constitutional issues in *Space Exploration Technologies Corp. v. Bell*, No. 1:23-cv-00137 (S.D. Tex. 2023) (Olvera, J.), which will create efficiencies in deciding these complex constitutional issues. **(4)** The conflict of laws factor is irrelevant.

---

[6] https://fortune.com/2024/02/14/musk-shuttles-spacex-out-of-delaware-amid-plans-to-construct-a-100-million-compound-in-texas-region-he-wants-to-rename-starbase/.

In sum, neither the private nor public interest factors support transfer here.  On the contrary, they show that convenience and the interests of justice are better served by adjudicating the case in the Southern District of Texas.  Defendants came nowhere close to showing the "good cause" needed to overrule SpaceX's venue choice through proof that the Central District of California is "clearly more convenient," and it would have been error under this Circuit's test for Section 1404(a) to transfer the case on those grounds.  Thus, the district court's erroneous Section 1406(a) transfer cannot be saved by reimagining it as a Section 1404(a) transfer.  The writ should issue and make clear that transfer under either statute would be improper.

## CONCLUSION

For these reasons, this Court should grant the writ of mandamus and order the district court to immediately request back the case from the Southern District of California, so that the district court can promptly rule on SpaceX's motion for a preliminary injunction before the scheduled start of the unconstitutional March 5, 2024 NLRB administrative hearing.

Dated: February 16, 2024

Respectfully submitted,

s/ Michael E. Kenneally

HARRY I. JOHNSON, III*
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 255-9005

MICHAEL E. KENNEALLY
AMANDA L. SALZ
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5719

*Application for admission forth-coming

*Counsel for Space Exploration Technologies Corp.*

## CERTIFICATE OF SERVICE

I certify that on this 16th day of February, 2024, I electronically filed the foregoing Emergency Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system

I further certify that I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following case participants:

ALAMDAR S. HAMDANI
*United States Attorney Southern District of Texas*

BENJAMIN S. LYLES
*Assistant United States Attorney*
1701 W. Bus. Highway 83
Suite 600
McAllen, TX 78501
(956) 618-8010
benjamin.lyles@usdoj.gov

*Attorney-in-Charge for Defendants*

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and Special Litigation Branch*
KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
DANIEL BRASIL BECKER
*Trial Attorney*
GRACE L. PEZZELLA
*Trial Attorney*

DAVID P. BOEHM
*Trial Attorney*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
(202) 273-4202
david.boehm@nlrb.gov

HONORABLE ROLANDO OLVERA
*United States District Judge*
UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION
Reynaldo G. Garza-Filemon B. Vela
United States Courthouse
600 E. Harrison St.
Brownsville, TX 78520

JOSHUA M. ROBBINS
PACIFIC LEGAL FOUNDATION
*Attorney-in-Charge*
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
 (202) 888-6881
jrobbins@pacificlegal.org

OLIVER J. DUNFORD
PACIFIC LEGAL FOUNDATION
4400 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
 (561) 691-5000
odunford@pacificlegal.org

*Counsel for Amicus Curiae Pacific
Legal Foundation*

ANNE B. SHAVER
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ashaver@lchb.com

LAURIE M. BURGESS
BURGESS LAW OFFICES, P.C.
498 Utah Street
San Francisco, CA 94110
(312) 320-1718
lburgess@burgess-laborlaw.com

Nimish Ramesh Desai
LIEFF CABRASER ET AL
275 Battery St
29th Floor
San Francisco, CA 94111
(415) 956-1000
ndesai@lchb.com

*Counsel for Amici Curiae Tom
Moline, Scott Beck, Deborah
Lawrence, and Paige Holland-
Thielen*

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Space Exploration
Technologies Corp.*

## CERTIFICATE OF COMPLIANCE

1.    This petition complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because this petition contains 7,029 words.

2.    This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.


Dated:  February 16, 2024           s/ Michael E. Kenneally
                                     MICHAEL E. KENNEALLY

                                     *Counsel for Space Exploration Technologies Corp.*

**ATTACHMENT**

United States District Court
Southern District of Texas

**ENTERED**

February 15, 2024

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| SPACE EXPLORATION | § | |
| TECHNOLOGIES CORP., | § | |
|     "Plaintiff", | § | |
| | § | |
| v. | § | Civil Action No. 1:24-cv-00001 |
| | § | |
| NATIONAL LABOR RELATIONS | § | |
| BOARD ET AL., | § | |
|     "Defendants." | § | |

## ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE

Before the Court is the "Motion of Defendants to Transfer Venue Pursuant to 28 U.S.C. §
1406(a) and § 1404(a)" (Dkt. No. 29) ("Motion"), Plaintiff's "Response in Opposition to
Defendants' Motion to Transfer Venue Pursuant to 1406(a) and § 1404(a)" (Dkt. No. 64)
("Response"), Defendants' "Reply in Support of Motion to Transfer Venue Pursuant to 28 U.S.C.
§ 1406(a) and § 1404(a)" ("Reply"), and the "Brief of Charging Parties as *Amici Curiae* in Support
of Defendants' Motion to Transfer Venue" (Dkt. No. 73) ("Brief").

For the reasons below, Defendants' Motion (Dkt. No. 29) is **GRANTED**.

## I.    BACKGROUND

This action pertains to an administrative proceeding before Defendant National Labor
Relations Board ("NLRB") involving alleged unfair labor practices ("ULP") by Plaintiff. Dkt.
No. 1 at 9. On January 3, 2024, Region 31 of the NLRB, located in Los Angeles, California,
issued an administrative complaint in the Central District of California alleging that Plaintiff
unlawfully interrogated and fired eight employees ("Charging Parties") in response to their
organization and distribution of an open letter regarding working conditions. Dkt. No. 29 at 3–5.
Plaintiff sued Defendants, claiming that the proceeding and the structure of the NLRB are
unconstitutional. *See id.* at 10–23.

Plaintiff, Space Exploration Technologies Corp. ("SpaceX"), is a Delaware corporation
and maintains its principal place of business  in Hawthorne, California. Dkt. No. 29 at 3, n.17.
Defendant NLRB has its headquarters in Washington D.C., and all other Defendants are involved
only in their official capacities within the NLRB. *Id.* at 6.

1

Seven of the eight Charging Parties lived in California and worked in Plaintiff's headquarters in Hawthorne, California. Dkt. No. 18 at ¶4; Dkt. No. 29 at 3. The other employee lived in Washington but was supervised by management in Hawthorne. *Id.* The Charging Parties moved to Intervene (Dkt. No. 17).

Defendants' Motion alleges that venue is improper in this district and that the case should be transferred under 28 U.S.C. § 1406(a), or that it should be transferred in the interest of justice and convenience under 28 U.S.C. § 1404(a). *See* Dkt. No. 29. Plaintiff claims that venue is proper because the events in Hawthorne and the later NLRB proceeding affect its facilities nationwide. *See* Dkt. No. 64 at 1.

## II.    LEGAL STANDARD

"Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper." *Graham v. Dyncorp Intl, Inc.*, 973 F. Supp. 2d 698, 700 (S.D. Tex. 2013) (citing *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011)).

A civil action against an agency of the United States may be brought in a judicial district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, [...] or (C) the plaintiff resides if no real property is involved in the action [...]." 28 U.S.C. § 1391(e)(1). When a case is filed in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

The Court should determine whether venue is proper but need not determine the "best" venue. *Safety Nat'l Cas. Corp. v. United States Dep't of the Treasury*, No. H-07-643, 2007 U.S. Dist. LEXIS 99225, *17 (S.D. Tex. Aug. 20, 2007). But "a district court should not accept venue if the activities that transpired in the forum district were insubstantial in relation to the totality of events giving rise to Plaintiffs' claims." *Andrade v. Chojnacki*, 934 F. Supp. 817, n.18 (S.D. Tex. 1996) (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3rd Cir. 1994)).

## III.    DISCUSSION

It is undisputed that no party resides in the Southern District of Texas. Dkt. No. 29 at 6. Thus, the issue in dispute is whether a "substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas. 28 U.S.C. § 1391(e)(1)(B). This condition is not satisfied.

Plaintiff references four facts in support of its position: (1) the open letter caused disruption at all its facilities, (2) the administrative complaint identifies an email sent "to all employees" from the president and chief operating officer of Plaintiff, Gwynne Shotwell ("Ms. Shotwell"), as one of the alleged ULPs, (3) Defendants seek remedies with company-wide effect, and (4) the NLRB proceeding is "making demands of personnel across many facilities, including Starbase." *Id.* at 5–6.

The principal events giving rise to this action are the drafting of the open letter by the Charging Parties and commencement of the NLRB proceeding in the Central District of California. Thus, the nexus of facts is heavily focused in the Central District of California. The Charging Parties were all connected to Plaintiff's Hawthorne facility, and none had connections to Texas. Dkt. No. 29 at 3, n.16. Nearly all the alleged ULP in the administrative complaint occurred in the Hawthorne facility. *Id.* at 4, n.22. Even the administrative proceeding itself will take place in California. Dkt. No. 29 at 3–5.

Plaintiff thus focuses on the resulting effects of these events that have touched or may eventually touch Plaintiff's other facilities. Thus, even if the effects on all the facilities were equal, only about one sixth of those events on which Plaintiff rests its argument occurred or would occur in this district.[1] Moreover, these resulting events in this district are  insubstantial in number compared to the totality of those giving rise to Plaintiff's claim and far less significant than those occurring in California.

The open letter may have caused disruption across Plaintiff's facilities, but most related events such as the conditions precipitating the letter, its drafting, and the immediate consequences for the Charging Parties occurred at and in relation to the Hawthorne facility. As a result, an even larger disruption should be expected to have occurred in Hawthorne than in an unrelated facility. The incidental effects reaching Texas are thus only a small part of the occurrence itself, and Plaintiff gives no reason why such effects would be especially significant in this district.

The emails at issue directly addressed a member of the California-based Charging Parties in one case and in all others, addressed the open letter, which was drafted and proliferated from California. Dkt. No. 78 at 11; Dkt. No. 64-3 at 2. While Plaintiff emphasizes that the message

---

[1] *See* Mission: SpaceX Facilities, SPACEX, https://www.spacex.com/mission/ (last visited Feb 13, 2024) (listing the six SpaceX facilities, only one of which is in the Southern District of Texas).

was sent to all employees, this message is merely another incidental contact with the Southern District of Texas.

Similarly, even if the Court agreed that it is proper to consider Defendants' proposed remedies in the administrative proceeding as events giving rise to the action, such remedies and any demands the proceeding may make of Plaintiff's personnel do not show any inherent connection to the Southern District of Texas. On the contrary, these effects would be expected to have far more relevance to the Hawthorne facility, where most of the employees were fired and where the proceeding is being held.

Plaintiff's cited authority is unavailing. Plaintiff cites *Long v. Grafton Exec. Search, LLC* for the proposition that contact to Texas can constitute a substantial part of the events giving rise to the suit. 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003); Dkt. No. 64 at 6. But in *Long* there was a direct communication to Texas; the content caused the claim, and the injury was experienced in Texas. *Long*, 263 F. Supp. 2d at 1090. The Southern District of Texas is only one of the many locations that the open letter reached, and the consequences are not that relevant to Texas.

The Fifth Circuit held that "[C]ommunications to [Texas] can constitute a substantial part of the events giving rise to a plaintiff's claims, if the claims derive directly from those communications. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018) (citing *Siragusa v. Arnold*, No. 3:12-CV-04497-M, 2013 U.S. Dist. LEXIS 131740, *3 (N.D. Tex. Sep. 16, 2013)). In any event, it would not be accurate to say that this claim derived directly from any communications to Texas. Rather, the case derived directly from the administrative proceeding which itself derived directly from Plaintiff's response to an open letter, which reached the Southern District of Texas not directly but incidentally as one of six total SpaceX facilities.

Thus, these effects do not comprise a substantial part of the events giving rise to this claim. The events touching this district are incidental to the principal events occurring elsewhere and constitute a relatively small portion of the total body of events. This action concerns a California administrative proceeding regarding the actions of a California company and its California employees in California. This action should be transferred.

Plaintiff alternatively requests that the action be transferred to the Western District of Texas, where Ms. Shotwell sent her emails to one of the Charging Parties and all SpaceX employees. Dkt. No. 64 at 8, n.3. As has been made clear, the Central District of California is the

4

venue in which the most events giving rise to this case occurred. In the interest of justice, this action should be transferred to the Central District of California.

**IV.    CONCLUSION**

For these reasons, Defendant's Motion (Dkt. No. 29) is **GRANTED**. It is **ORDERED** that this case be transferred to the Central District of California pursuant to 28 U.S.C. 1406(a).

Signed on this 15th day of February 2024.

Rolando Olvera
United States District Judge