# No. 24-_____

## In the United States Court of Appeals

### FOR THE FIFTH CIRCUIT

IN RE: SPACE EXPLORATION TECHNOLOGIES CORP.

On Petition for Writ of Mandamus from the Order Granting
Defendants' Motion to Transfer Venue, Entered February 15, 2024
from United States District Court, Southern District of Texas,
Brownsville Division, No. 24-cv-1 (Olvera, J.)

## EXHIBITS IN SUPPORT OF EMERGENCY PETITION FOR WRIT OF MANDAMUS VOLUME 1 OF 2

HARRY I. JOHNSON, III*
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067-3109
(310) 255-9005

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

MICHAEL E. KENNEALLY
AMANDA L. SALZ
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

*Application for admission
forthcoming

*Counsel for Space Exploration
Technologies Corp.*

# INDEX

| Dkt. No. | Description | Date |
|---|---|---|
| | *Volume 1 of 2* | |
| 1 | Complaint for Declaratory and Injunctive Relief | 1/4/24 |
| 19-2 | Exhibit B to the Declaration of Tom Moline in Support of Motion to Intervene: Order Consolidating Cases, Consolidated Complaint, and Notice of Hearing (publicly-available version of NLRB administrative complaint) | 1/8/24 |
| 29 | Motion of Defendants to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) and § 1404(a) and Brief in Support | 1/11/24 |
| 29-1 | Certificate of Conference | |
| 30 | (Proposed) Order | 1/11/24 |
| 64 | Plaintiff SpaceX's Response in Opposition to Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C § 1406(a) and § 1404(a) | 2/1/24 |
| 64-1 | Exhibit A: Declaration of Michael Cramer in Support of Plaintiff's Opposition to Motion to Transfer | |
| 64-2 | Exhibit B: Declaration of Steven Schmitz in Support of Plaintiff's Opposition to Motion to Transfer | |
| 64-3 | Exhibit C: Declaration of Gwynne Shotwell in Support of Plaintiff's Opposition to Motion to Transfer | |

# INDEX
(continued)

| Dkt. No. | Description | Date |
|---|---|---|
| 64-4 | Exhibit C-A: Email, Sent June 15, 2022 | |
| 64-5 | Exhibit C-B: Email, Sent June 16, 2022 | |
| 64-6 | Exhibit D: Declaration of Donald Leclerc in Support of Plaintiff's Opposition to Motion to Transfer | |
| 64-7 | Exhibit E: Declaration of Kimberly Chacon in Support of Plaintiff's Opposition to Motion to Transfer | |
| 64-8 | Exhibit F: Declaration of Matthew A. Harper in Support of Plaintiff's Opposition to Motion to Transfer | |
| 64-9 | [Proposed] Order Denying Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C § 1406(a) AND § 1404(a) | |
| 78 | Defendants' Reply in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) and § 1404(a) | |
| 78-1 | Exhibit A: Respondent Space Exploration Technologies Corp.'s Answer to Complaint | |
| 78-2 | Exhibit B: Google Maps | |
| 82 | Order Granting Defendants' Motion to Transfer Venue | 2/15/24 |

# INDEX
## (continued)

| Dkt. No. | Description | Date |
|---|---|---|
| — | Civil Docket for *Space Exploration Technologies Corp. v. National Labor Relations Board*, No. 24-cv-1 | Accessed 2/15/24 |
| | *Volume 2 of 2 (Filed Provisionally Under Seal)[1]* | |
| 31 | (Sealed) Exhibit A in Support of Motion of Defendants to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) and § 1404(a) and Brief in Support | 1/11/24 |

---

[1] Given the still-pending motion to seal (D. Ct. Dkt. No. 35) and motion for protective order (D. Ct. Dkt. No. 46), SpaceX will file Volume 2 of the Exhibits provisionally under seal after submitting the Petition and Volume 1 of the Exhibits.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. _____ |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Space Exploration Technologies Corp. ("SpaceX") brings this action for declaratory and injunctive relief, alleging as follows:

**INTRODUCTION**

1.     This action stems from an unlawful attempt by the National Labor Relations Board ("NLRB") to subject SpaceX to an administrative proceeding whose structure violates Article II, the Fifth Amendment, and the Seventh Amendment of the Constitution of the United States.

2.     Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020).

3.     To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010).

4.     The Fifth Circuit has held that this removal power extends to administrative law judges ("ALJs") who "perform substantial executive functions." *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).

5.     Article II requires that the President "have sufficient control over the performance of [such ALJs'] functions, and, by implication, . . . be able to choose who holds the positions." *Id.* This constitutionally required degree of control is lacking when the ALJs are insulated by "[t]wo layers of for-cause protection"—that is, when the ALJs are removable only for cause, by officials who themselves are removable only for cause. *Id.*; *see Free Enter. Fund*, 561 U.S. at 492–508. The Fifth Circuit therefore held that the removal restrictions for ALJs set forth in 5 U.S.C. § 7521(a) are unconstitutional as applied to ALJs for the Securities and Exchange Commission ("SEC"). *Jarkesy*, 34 F.4th at 465.

6.     The same reasoning applies to the ALJs of the NLRB, including the ALJ assigned to preside over the pending NLRB proceedings against SpaceX. Like the SEC ALJs in *Jarkesy*, NLRB ALJs are "inferior officers" who "have substantial authority" within agency investigations and enforcement actions. *Jarkesy*, 34 F.4th at 464; *see also Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by two layers of removal protection, which insulate them from oversight by the President. *See* 5 U.S.C. §§ 1202(d), 7521(a); 29 U.S.C. § 153(a). So, like the SEC ALJs in *Jarkesy*, NLRB ALJs are unconstitutionally insulated from the President's

oversight, and the Court should declare that the NLRB ALJs' having two layers of removal protection is unconstitutional. *See Jarkesy*, 34 F.4th at 464.

7.     Neither the Fifth Circuit nor the Supreme Court has decided whether the NLRB Members' layer of removal protection is unconstitutional. But the correct answer, given the relevant Supreme Court precedent and nature of the NLRB Members' functions, is a resounding yes.

8.     The NLRB may argue that its Members' removal protections are constitutional under the reasoning of *Humphrey's Executor v. United States*, 295 U.S. 602, 627–28 (1935). That ruling, particularly as the Supreme Court has recently clarified it, does not apply to the NLRB's Members today.

9.     *Humphrey's Executor* applies only to agency officials who do not exercise "executive power in the constitutional sense," as the Court concluded about the Commissioners of the Federal Trade Commission ("FTC") in 1935. *Id.* at 628; *see also Seila L.*, 140 S. Ct. at 2198; *Jarkesy*, 34 F.4th at 465 n.19. Whatever might have been true of the FTC's Commissioners in 1935, it is quite clear today that the NLRB's Members exercise substantial executive power under the Constitution. There is no justification for extending *Humphrey's Executor* to them.

10.     The existence of unconstitutional removal protections inflicts twofold harm. It limits the President's constitutional authority, of course. But it also produces an administrative bureaucracy that operates on regulated parties without the constitutionally required "degree of electoral accountability." *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021).

11.     Because such removal protections affect not just the President, but also ordinary Americans who must interact with the administrative state, it makes no legal difference whether the President objects to a given statutory limit on his removal powers: "the separation of powers

does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.'" *Free Enter. Fund*, 561 U.S. at 497 (citations omitted).

12.    When a party is regulated by administrative officials who are shielded by unconstitutional removal protections, Supreme Court precedent teaches that the party is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* at 513.

13.    To prevent SpaceX from undergoing protracted administrative proceedings before an unconstitutionally structured agency—after which SpaceX is unlikely to have a chance to secure meaningful retrospective relief—the Court should stay or enjoin the current agency proceedings, declare that the NLRB's structure violates the separation of powers under Article II of the Constitution, and permanently enjoin the NLRB and its General Counsel from pursuing unfair labor practice charges against SpaceX before agency officials that are unconstitutionally insulated from presidential oversight.

14.    The NLRB proceedings against SpaceX also suffer from another constitutional infirmity. They violate the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII.

15.    The right to trial by jury "is a 'fundamental' component" of the American legal system and "remains one of our most vital barriers to governmental arbitrariness." *Jarkesy*, 34 F.4th at 452 (quoting *Reid v. Covert*, 354 U.S. 1, 9–10 (1957)).

16.    SpaceX does not take issue with the NLRA's express authorization of backpay, *see* 29 U.S.C. § 160(c), which is a form of equitable relief when it is restitutionary in nature, *see Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570–73 (1990).

17.    But the NLRB has recently claimed for itself the authority to award a broader range of relief, including traditional forms of legal relief that go far beyond the equitable restitutionary backpay remedy permitted by the statute. *See Thryv, Inc.*, 372 N.L.R.B. No. 22 (Dec. 13, 2022).

18.    Indeed, the NLRB's administrative complaint against SpaceX seeks these expanded remedies.

19.    These new remedies, however, are nothing short of compensatory damages intended "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of" the unlawful termination. *Id.* at 1.

20.    Money damages designed to compensate for losses are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993).

21.    But not even Congress can "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989).

22.    As the Fifth Circuit has held with respect to similar SEC proceedings, when an administrative agency seeks legal relief for an alleged statutory violation, the Seventh Amendment prohibits it from substituting an ALJ hearing for a trial by jury. *See Jarkesy*, 34 F.4th at 451–55.

23.    Finally, the NLRB is also unconstitutionally structured because its Members exercise all three constitutional powers—legislative, executive, and judicial—in the same administrative proceedings.

24.    This case brings the problem into clear focus: the NLRB's Regional Office for Region 31 (the "Region") has conveyed to SpaceX that it plans to ask for the NLRB Members' approval to go to federal district court to request injunctive relief against SpaceX—a quintessentially prosecutorial act of the Executive—even though the same NLRB Members would

later preside in a quasi-legislative, quasi-judicial capacity in the unfair labor practice proceeding involving the same alleged violations of the NLRA.

25.    Even after acting as prosecutor by charging SpaceX with violations of federal labor law before an Article III tribunal, the same NLRB Members would then issue the agency's ultimate order on whether SpaceX has violated federal labor law.

26.    In that adjudication, the NLRB Members would have significant leeway to adopt new interpretations of the NLRA as a policy matter and adjudicate whether the evidence supports a determination that SpaceX violated the statute as they interpret it.

27.    On top of that, the agency would then insist that subsequent judicial review before an Article III court must give significant deference to the NLRB Members' interpretations of the NLRA and findings of fact.

28.    The NLRB's current way of functioning is miles away from the traditional understanding of the separation of powers, which views "[t]he accumulation of all powers legislative, executive and judiciary in the same hands" as "the very definition of tyranny." THE FEDERALIST NO. 47 (James Madison).

29.    And although the Supreme Court upheld aspects of the NLRB's basic structure nearly a century ago, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937), the Court has subsequently clarified that the Constitution's due process guarantee precludes an individual from serving as prosecutor and adjudicator in the same case, *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

30.    If the current Members of the NLRB are asked to make a prosecutorial determination about whether SpaceX is in violation of the NLRA, there is an objectively high risk that they would not later be able to provide the neutral adjudicative forum that the Constitution

demands, and so would need to recuse from further participation in any agency adjudication against SpaceX.

31.     For this reason, too, SpaceX is entitled to declaratory and injunctive relief to ensure that it is not subjected to unlawful proceedings before an unconstitutionally structured agency.

## JURISDICTION AND VENUE

32.     This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over SpaceX's claims that fundamental aspects of the NLRB's structure violate the Constitution. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 900 (2023).

33.     The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under the Court's inherent equitable powers.

34.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(B). Defendants are officers of an agency of the United States acting in their official capacity; and a substantial part of the events or omissions giving rise to the claim occurred in Boca Chica, Texas, where SpaceX maintains its Starbase rocket development and launch facility, its fastest-growing facility and a key component to its operations and overall success. The NLRB's administrative proceeding targets a variety of SpaceX actions and policies that allegedly occurred across its many U.S. facilities, including in response to an "Open Letter" that was broadly distributed to employees at all SpaceX facilities across the country. For example, the administrative complaint alleges unfair labor practices based on the company President's June 15 and June 16, 2022 emails to all employees companywide, and seeks certain remedies that would affect all of SpaceX's facilities. Moreover, a significant portion of the employees who interacted with the Open Letter were based

at Starbase (in addition to employees who interacted with the Open Letter while based at SpaceX's Houston facility, which is also located in this judicial district).

## PARTIES

35.    Plaintiff SpaceX, a privately held Delaware corporation, is a pioneer in the aerospace industry, employing more than 13,000 employees in Texas, California, Florida, Washington, and Washington, D.C. SpaceX has facilities and employees in several cities in Texas, including the Starbase rocket development and launch facility in Boca Chica.

36.    Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The National Labor Relations Act ("NLRA") empowers the NLRB to initiate administrative proceedings to prevent unfair labor practices. *See* 29 U.S.C. § 160.

37.    Defendant Jennifer A. Abruzzo is General Counsel of the NLRB. She is sued in her official capacity.

38.    Defendant Lauren M. McFerran is Chairman of the NLRB. She is sued in her official capacity.

39.    Defendant Marvin E. Kaplan is a Member of the NLRB. He is sued in his official capacity.

40.    Defendant Gwynne A. Wilcox is a Member of the NLRB. She is sued in her official capacity.

41.    Defendant David M. Prouty is a Member of the NLRB. He is sued in his official capacity.

42.    Defendant John Doe is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceedings against SpaceX, whose identity has not yet been disclosed to SpaceX. He is sued in his official capacity.

## FACTS

43.    On June 15, 2022, a small group of SpaceX employees using the company's internal communications platforms sent an Open Letter to thousands of SpaceX employees, during working hours.

44.    The Open Letter demanded that SpaceX take certain actions addressing perceived shortcomings, and solicited the thousands of recipient-employees to support the Open Letter's demands and fill out a linked survey hosted externally.

45.    The Open Letter caused significant distraction to SpaceX employees around the country.

46.    SpaceX discharged several employees involved with the Open Letter for violating numerous company policies.

47.    On November 16, 2022, former SpaceX employees (collectively, the "Charging Parties") filed charges with the NLRB alleging that SpaceX committed unfair labor practices in violation of the NLRA when it terminated their employment (the "Charges").

48.    On March 16, 2023, the NLRB sought SpaceX's response to the Charges. SpaceX submitted its position statement and supporting evidence refuting the Charging Parties' allegations on April 28, 2023.

49.    On December 14, 2023, the Region informed SpaceX that it had made determinations on all eight Charges and authorized a complaint against SpaceX.

50.    On January 3, 2024, the Regional Director for Region 31 issued an order consolidating the administrative cases, together with a consolidated administrative complaint and notice that an administrative hearing would occur on March 5, 2024 before an ALJ.

### COUNT I – THE NLRB'S ALJS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

51.     SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

52.     NLRB ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions. *See Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *Jarkesy*, 34 F.4th at 464; *Westrock Servs.*, 366 N.L.R.B. No. 157, slip op. at 1.

53.     At the same time, the NLRB may attempt to remove its ALJs "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). In turn, by statute, Members of the MSPB are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). And under the NLRA, Board Members are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

54.     Given NLRB ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.

55.     The statutes' provision of at least two layers of removal protection prevents that exercise of presidential authority and thus violates Article II of the Constitution. *See Free Enter. Fund*, 561 U.S. at 492–508; *Jarkesy*, 34 F.4th at 463–65.

56.     But for these unlawful removal restrictions, either the ALJ assigned to SpaceX's administrative case or the NLRB Members who bear responsibility to supervise and exercise

control over the ALJ would face the prospect of removal by the President based on their conduct during the proceedings.

57.     Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *see also, e.g.*, *Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom. Axon Enter.*, 143 S. Ct. 890.

58.     Accordingly, SpaceX is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

59.     Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

60.     SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

61.     Yet, unless the NLRB is enjoined from proceeding against SpaceX before an ALJ unconstitutionally insulated from presidential oversight, SpaceX will be irreparably harmed.

62.     Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against SpaceX, the constitutional injury will likely be irremediable. The Supreme Court has stated that those subject to an unconstitutional proceeding by improperly insulated administrative agency officials often have no retrospective redress after the fact. *See Collins*, 141 S. Ct. at 1787–89.

63.    The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. In contrast to the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

64.    The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

### COUNT II – THE NLRB'S MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

65.    SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

66.    The NLRB's Members may be removed by the President only "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

67.    Yet the NLRB's Members exercise substantial executive power under the Constitution in administering and enforcing the provisions of the NLRA.

68.    For example, Section 10(j) of the NLRA, 29 U.S.C. § 160(j), gives the Board authority to exercise quintessentially prosecutorial power in federal district courts: "The Board shall have the power, upon issuance of [an administrative] complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j); *see, e.g.*, *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]").

69.     More generally, the NLRB also enforces and implements the NLRA in many ways, including by determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of its unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160.

70.     In these and other ways, the NLRB wields substantial prosecutorial, rulemaking, policymaking, and adjudicative authority.

71.     The Supreme Court has made clear, moreover, that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the "executive Power."'" *Seila L.*, 140 S. Ct. at 2198 n.2 (citation omitted).

72.     Also, the removal protections for NLRB Members are unusually strict. In contrast to more common provisions that permit removal "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41), the NLRA permits removal only "for neglect of duty or malfeasance in office," and explicitly prohibits removal for any other cause, like inefficiency, 29 U.S.C. § 153(a).

73.     The combination of the NLRB Members' strict removal protections and exercise of substantial executive power violates Article II of the Constitution.

74.     But for these unlawful removal restrictions, the NLRB Members would face the prospect of removal by the President—including based on their conduct during the proceedings against SpaceX.

75.     Being subject to proceedings before unconstitutionally insulated agency officials is a "here-and-now injury" justifying pre-enforcement judicial intervention. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *Cochran*, 20 F.4th at 210 n.16, 212–13.

76.     So, here too, SpaceX is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

77.     Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

78.     SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

79.     Yet, unless the NLRB is enjoined from proceeding against SpaceX before an NLRB whose Members are unconstitutionally insulated from presidential oversight, SpaceX will be irreparably harmed.

80.     Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against SpaceX, the harm will likely be irremediable because of the difficulty of obtaining retrospective redress for an unconstitutional proceeding by improperly insulated administrative agency officials. *See Collins*, 141 S. Ct. at 1787–89.

81.     The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

82.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

**COUNT III – THE NLRB ALJ'S ADJUDICATION OF PRIVATE RIGHTS
WITHOUT A JURY TRIAL VIOLATES THE SEVENTH AMENDMENT**

83.    SpaceX restates and incorporates by reference each and every allegation of the
preceding paragraphs, as if fully set forth herein.

84.    The Seventh Amendment to the Constitution of the United States provides that, "[i]n
Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial
by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court
of the United States, than according to the rules of the common law." U.S. CONST. amend. VII.

85.    The term "Suits at common law" "include[s] all actions akin to those brought at
common law as those actions were understood at the time of the Seventh Amendment's adoption."
*Jarkesy*, 34 F.4th at 452.

86.    "The term can include suits brought under a statute as long as the suit seeks common-
law-like legal remedies." *Id.*

87.    The NLRA authorizes the Board to remedy unfair labor practices through an "order
requiring [the] person to cease and desist from such unfair labor practice, and to take . . . affirmative
action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

88.    Although the statute thus permits backpay as "an incident to equitable relief," *Jones
& Laughlin*, 301 U.S. at 48, today's NLRB currently asserts much broader authority to award
monetary damages.

89.    For example, Defendant Jennifer Abruzzo, General Counsel of the NLRB, has
ordered Regional Directors to "request from the Board the full panoply of remedies available to
ensure that victims of unlawful conduct are made whole for losses suffered as a result of unfair
labor practices." Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-06 at 1 (Sept.
8, 2021).

90.    Ms. Abruzzo later elaborated on the "full panoply of remedies" that Regions should seek. *See* Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-07 at 1 (Sept. 15, 2021). She contended that "[a] monetary remedy comprised only of backpay and lost benefits often fails to truly make whole victims of an unfair labor practice," and urged that "Regions should always make sure to seek compensation for any and all damages, direct and consequential, attributable to an unfair labor practice," including housing, medical, or training expenses relating to the allegedly unlawful employment practice. *See id.* at 2–4 (listing examples).

91.    Recently, in *Thryv*, a divided Board determined that it has authority to issue monetary awards "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice."  372 N.L.R.B. No. 22, slip op. at 1.

92.    Such compensation goes far beyond the statutory category of backpay. According to the Board, it encompasses such items as "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. *Id.* at 9–10 (citation omitted).

93.    In substance, this expanded remedy permits a broad range of consequential damages, although the *Thryv* majority sought to avoid that label on the ground that it "refer[s] to a specific type of legal damages." *Id.* at 8.

94.    Even the *Thryv* majority, however, acknowledged that the expanded remedy provides monetary relief for compensatory purposes. *See id.* ("[M]aking employees whole should

include, at least, compensating them for direct or foreseeable pecuniary harms resulting from the respondent's unfair labor practice.").

95.    Although restitutionary backpay (through which an employer disgorges money that it wrongfully holds and that rightfully belongs to the employee) is categorized as a form of equitable relief, *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990), nonrestitutionary compensatory damages are not.

96.    On the contrary, "compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties," are "the classic form of *legal* relief." *Mertens*, 508 U.S. at 255 (some emphasis omitted).

97.    The Board's newly expanded remedy goes beyond the vindication of public rights, "the public interest in effecting federal labor policy," and instead focuses on "the wrong done the individual employee." *Terry*, 494 U.S. at 573 (citation omitted).

98.    Indeed, the *Thryv* majority expanded the Board's traditional remedy precisely because it determined that backpay is not enough, on its own, "to restore the wronged to the position he would have occupied but for the action of the wrongdoer." *Id.* at 10 (citation omitted); *see also id.* at 12.

99.    In accordance with *Thryv* and Ms. Abruzzo's directives, the NLRB's administrative complaint against SpaceX specifies that the General Counsel seeks all relief as may be just and proper to remedy the unfair labor practices alleged.

100.    The fact that the administrative complaint also seeks equitable relief does not strip SpaceX of its jury-trial right. *Jarkesy*, 34 F.4th at 454 ("the Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims").

101.    Nor does the fact that NLRB proceedings are administrative in nature. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency" like the NLRB. *Granfinanciera*, 492 U.S. at 61.

102.    Without interim injunctive relief from this Court, SpaceX's claims will be improperly adjudicated by an administrator instead of a jury.

103.    SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

104.    Yet unless the NLRB is enjoined from proceeding against SpaceX before an NLRB ALJ rather than a jury, SpaceX will be irreparably harmed.

105.    As the Supreme Court has recognized, "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker," qualifies as a "here-and-now injury." *Axon Enter.*, 143 S. Ct. at 893.

106.    The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as early in the proceedings as possible—as soon as the NLRB gave notice of an ALJ hearing.

107.    The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

### COUNT IV – THE NLRB'S EXERCISE OF PROSECUTORIAL, LEGISLATIVE, AND ADJUDICATORY AUTHORITY IN THE SAME PROCEEDINGS VIOLATES THE SEPARATION OF POWERS AND DUE PROCESS

108.     SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

109.     Under Section 10(j) of the NLRA, "The Board shall have power, upon issuance of a complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j).

110.     Under the NLRB's current procedures, Members of the NLRB approve the determination whether to petition for injunctive relief under Section 10(j). *See* Office of the General Counsel, *Section 10(j) Manual* §§ 5.2–5.5, at 13–16 (Feb. 2014), https://www.nlrb.gov/ sites/default/files/attachments/basic-page/node-1727/MASTER%20REVISED%202013%2010(J) %20MANUAL.pdf.

111.     This approval process includes the NLRB Members' evaluation of the NLRB Regional Director's presentation of the "merits" of the alleged legal violations, including a presentation of "the relevant facts and legal arguments and authorities establishing the violations" and of the charged party's asserted "defenses." *Id.* § 5.2.1, at 13.

112.     Because a Section 10(j) proceeding seeks preliminary injunctive relief, the decision also considers whether the alleged violations threaten "irreparable harm." *Id.* §§ 4.0, 5.2.1, at 10, 13.

113.    To secure Section 10(j) relief, the NLRB's litigators must ultimately make a sufficient showing on both their likelihood of success on the merits of the alleged violations and on the balance of equities, such as the likelihood of irreparable harm. *See, e.g.*, *McKinney ex rel. NLRB v. Creative Vision Res., L.L.C.*, 783 F.3d 293, 296–99 (5th Cir. 2015).

114.    In these ways, NLRB Members who grant their approval to request Section 10(j) relief in a given case exercise prosecutorial authority based on their assessment of the charged parties' responsibility for the alleged unfair labor practices and for ensuing irreparable harm.

115.    This approval process is not a neutral adjudication of an adversarial proceeding. By design, the NLRB's Section 10(j) approval process relies primarily on the presentation in the "Go 10(j)" memorandum prepared by one side: the NLRB officials who wish to litigate the alleged statutory violations.

116.    This memorandum provides the NLRB officials' views about "the relevant facts and legal arguments and authorities establishing the violations," the NLRB officials' "responses to defenses raised by the [charged party]," and the NLRB officials' "responses [to the charged party's] arguments against 10(j)" relief. *Section 10(j) Manual*, *supra*, § 5.2.1, at 13.

117.    Even after relying on this one-sided presentation of the facts and law as their primary basis for authorizing Section 10(j) proceedings, the same NLRB Members often judge whether the same charged parties have engaged in the alleged unfair labor practices, and issue findings of fact, orders, and remedies that are then subject to deferential judicial review. 29 U.S.C. § 160(c), (e)–(f).

118.    The Supreme Court has held, however, that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams*, 579 U.S. at 8.

119.   "The due process guarantee that 'no man can be a judge in his own case' would have little substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision." *Id.* at 9.

120.   Such circumstances present the risk that "the judge's 'own personal knowledge and impression' of the case, acquired through his or her role in the prosecution, may carry far more weight with the judge than the parties' arguments to the court." *Id.* at 9–10.

121.   The same risks are inherent in NLRB adjudications before Members of the Board that previously authorized pursuit of Section 10(j) relief based on the "Go 10(j)" Memorandum's presentation of facts and law.

122.   After having placed their imprimatur on a federal-court filing that alleges, on behalf of the NLRB itself, that a specific party has likely violated the NLRA in ways that cause irreparable harm to third parties, there is a substantial risk that such NLRB Members will be psychologically wedded to that position when they adjudicate the administrative complaint.

123.   That risk is even greater if, in the meantime, the agency's bid for Section 10(j) relief has succeeded, because the Members might "be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process" in federal court. *Williams*, 579 U.S. at 11.

124.   In addition to making factual determinations, the NLRB adjudicative process often involves significant quasi-legislative authority under which the NLRB Members can decide to adopt new interpretations of the NLRA's requirements.

125.   "The National Labor Relations Board, uniquely among major federal administrative agencies, has chosen to promulgate virtually all the legal rules in its field through

adjudication rather than rulemaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998).

126.    Then, in an eventual appeal by an aggrieved person, the NLRB claims deference from U.S. Courts of Appeals to both its interpretations of the NLRA and its findings of fact.

127.    But it is well settled that "[e]ven appeal and a trial de novo will not cure a failure to provide a neutral and detached adjudicator." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 618 (1993).

128.    On December 19, 2023, an NLRB attorney communicated that the Region will be making a submission to the General Counsel's Injunction Litigation Branch about the appropriateness of Section 10(j) relief in this dispute.

129.    That communication suggests that a recommendation that Defendants McFerran, Kaplan, Wilcox, and Prouty (the "NLRB Member Defendants") approve Section 10(j) proceedings is imminent.

130.    The NLRB Member Defendants' exercise of prosecutorial authority in making the significant decision of approving a Section 10(j) proceeding against SpaceX leaves those Members unable to participate as adjudicators on the same underlying charges against SpaceX consistent with the Fifth Amendment's due process guarantee.

131.    SpaceX is therefore entitled to declaratory relief sufficient to ensure that its due process rights are not violated.

132.    Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before agency officials who are obligated to recuse from participation.

133.     SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

134.     Yet, unless the NLRB is enjoined from proceeding against SpaceX before NLRB Members who are constitutionally obligated to recuse themselves, SpaceX will be irreparably harmed.

135.     As the Supreme Court has recognized, "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker," qualifies as a "here-and-now injury." *Axon Enter.*, 143 S. Ct. at 893.

136.     If the current NLRB Members authorize the Section 10(j) litigation against SpaceX and fail to recuse from the agency adjudication and participate in a decision, "ordering a rehearing . . . may not provide complete relief." *Williams*, 579 U.S. at 16; *see also, e.g.*, *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 61–62 (1972) (A party "is entitled to a neutral and detached judge in the first instance.").

137.     The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

138.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## PRAYER FOR RELIEF

**WHEREFORE**, SpaceX hereby requests that the Court order the following relief and enter a judgment:

1.      Declaring that:

    a.      The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a), are unconstitutional;

    b.      The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional;

    c.      The NLRB proceedings against SpaceX deprive it of its constitutional right to trial by jury; and

    d.      Members of the NLRB who participate in the decision to authorize Section 10(j) litigation against SpaceX are constitutionally obligated to recuse from further NLRB proceedings on the same unfair labor practice allegations.

2.      Preliminarily enjoining Defendants from subjecting SpaceX to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3.      Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

4.      Permanently enjoining the NLRB Member Defendants from adjudicating allegations relating to the same underlying set of events as any Section 10(j) action against SpaceX that they authorize;

5.      Awarding SpaceX its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

6.      Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: January 4, 2024                  Respectfully submitted,

                                        By:    */s/ Catherine L. Eschbach*

                                        **MORGAN LEWIS & BOCKIUS LLP**
                                        Catherine L. Eschbach
                                        Attorney-in-Charge
                                        Texas Bar No. 24097665
                                        Southern District of Texas Bar No. 3846447
                                        1000 Louisiana Street, Suite 4000
                                        Houston, TX 77002-5006
                                        catherine.eschbach@morganlewis.com
                                        Tel: (713) 890-5719
                                        Fax: (713) 890-5001

                                        Harry I. Johnson, III (*pro hac vice* forthcoming)
                                        Of Counsel
                                        2049 Century Park East, Suite 700
                                        Los Angeles, CA 90067-3109
                                        Tel: (310) 907-1000

                                        Michael E. Kenneally (*pro hac vice* forthcoming)
                                        Amanda L. Salz (*pro hac vice* forthcoming)
                                        Of Counsel
                                        1111 Pennsylvania Avenue, N.W.
                                        Washington, DC  20004-2541
                                        michael.kenneally@morganlewis.com
                                        amanda.salz@morganlewis.com
                                        Tel: (202) 739-3000

                                        *Attorneys for Space Exploration Technologies
                                        Corporation*

# EXHIBIT B

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 31**

**SPACE EXPLORATION TECHNOLOGIES CORP.**

|  |  |
|---|---|
| **And** | **Cases 31-CA-307446** |
|  | **31-CA-307532** |
|  | **31-CA-307539** |
|  | **31-CA-307546** |
|  | **31-CA-307551** |
|  | **31-CA-307555** |

| 6,7(C) |  |
|---|---|
| **and** | **Case 31-CA-307514** |

| 6,7(C) | **an Individual** |
|---|---|
| **and** | **Case 31-CA-307525** |

| 6,7(C) | **, an Individual** |

**ORDER CONSOLIDATING CASES, CONSOLIDATED COMPLAINT, AND NOTICE OF HEARING**

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board (the Board) and to avoid unnecessary costs or delay, IT IS ORDERED THAT Cases 31-CA-307446, 31-CA-307532, 31-CA-307539, 31-CA-307546, 31-CA-307551, and 31-CA-307555, which are based on charges filed by 6,7(C) Case 31-CA-307514, which is based on a charge filed by 6,7(C) an Individual; and Case 31-CA-307525, which is based on a charge filed by 6,7(C) an individual, respectively, against Space Exploration Technologies Corp. (Respondent) are consolidated.

This Order Consolidating Cases, Consolidated Complaint, and Notice of Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National Labor Relations Act

- 1 -

(the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Board's Rules and Regulations,
and alleges Respondent has violated the Act as described below.

    1.      The charges in the above cases were filed by the respective Charging Parties, as
set forth in the following table, and served upon Respondent on the dates indicated by U.S. mail:

| Case Number | Amended | Charging Party | Date Filed | Date Served |
|---|---|---|---|---|
| 31-CA-307446 | N/A | | November 16, 2022 | November 18, 2022 |
| 31-CA-307446 | First Amended | | January 20, 2023 | January 27, 2023 |
| 31-CA-307446 | Second Amended | | December 15, 2023 | December 20, 2023 |
| 31-CA-307514 | N/A | | November 16, 2022 | November 21, 2022 |
| 31-CA-307514 | First Amended | | January 20, 2023 | January 27, 2023 |
| 31-CA-307525 | N/A | | November 16, 2022 | November 21, 2022 |
| 31-CA-307525 | First Amended | | January 20, 2023 | January 30, 2023 |
| 31-CA-307532 | N/A | **6,7(C)** | November 16, 2022 | November 21, 2022 |
| 31-CA-307532 | First Amended | | January 20, 2023 | January 27, 2023 |
| 31-CA-307539 | N/A | | November 16, 2022 | November 21, 2022 |
| 31-CA-307539 | First Amended | | January 20, 2023 | January 30, 2023 |
| 31-CA-307546 | N/A | | November 16, 2022 | November 21, 2022 |
| 31-CA-307546 | First Amended | | January 20, 2023 | January 30, 2023 |
| 31-CA-307551 | N/A | | November 16, 2022 | November 21, 2022 |
| 31-CA-307551 | First Amended | | January 20, 2023 | January 30, 2023 |
| 31-CA-307555 | N/A | | November 16, 2022 | November 21, 2022 |
| 31-CA-307555 | First Amended | | January 20, 2023 | January 27, 2023 |

2024-NLFO-00683-000002

2.    (a)    At all material times, Respondent has been a corporation with an office and place of business at 1 Rocket Road, Hawthorne, California 90250 (Hawthorne facility).

(b)    In conducting its operations during the 12-month period ending September 21, 2023, a representative period, Respondent has been engaged in the manufacture and operation of rocket vehicles and satellites and has provided launch services to the United States valued in excess of $1,000,000.

(c)    Based on its operations described above in paragraph 2(b), Respondent has a substantial impact on the national defense of the United States.

(d)    In conducting its operations during the period described above in paragraph 2(b), Respondent purchased and received at its Hawthorne facility goods valued in excess of $5,000 directly from points outside of the State of California.

3.    At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

4.    At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and/or agents of Respondent within the meaning of Section 2(13) of the Act:



2024-NLFO-00683-000003

[ **6,7(C)** ] - [ **6,7(C)** ]

5.    (a)    About [ **6,7(C)** ] 2022, Respondent's employees [ **6,7(C)** ]

[ **6,7(C)** ] [ **6,7(C)** ] [ **6,7(C)** ] [ **6,7(C)** ] [ **6,7(C)** ] [ **6,7(C)** ]

and [ **6,7(C)** ] engaged in concerted activities with other employees for the purposes of

mutual aid or protection by drafting and distributing an open letter that detailed workplace

concerns (Open Letter).

(b)    About [ **6,7(C)** ] 2022, Respondent discharged [ **6,7(C)** ]

[ **6,7(C)** ] [ **6,7(C)** ] and [ **6,7(C)** ]

(c)    About [ **6,7(C)** ] 2022, Respondent placed [ **6,7(C)** ] on

administrative leave.

(d)    About [ **6,7(C)** ] 2022, Respondent placed [ **6,7(C)** ] on

administrative leave.

(e)    About [ **6,7(C)** ] 2022, Respondent discharged [ **6,7(C)** ]

and [ **6,7(C)** ]

(f)    About [ **6,7(C)** ] 2022, Respondent discharged [ **6,7(C)** ]

(g)    About [ **6,7(C)** ] 2022, Respondent discharged [ **6,7(C)** ]

(h)    Respondent engaged in the conduct described above in paragraphs 5(b)

through 5(g) because [ **6,7(C)** ] [ **6,7(C)** ] [ **6,7(C)** ] [ **6,7(C)** ]

[ **6,7(C)** ] [ **6,7(C)** ] [ **6,7(C)** ] and [ **6,7(C)** ] engaged in the conduct

described above in paragraph 5(a), and to discourage employees from engaging in these or

other concerted activities.

/ / /

/ / /

- 4 -

2024-NLFO-00683-000004

6.  About May 24, 2022, Respondent, by [6,7(C)] in a [6,7(C)] conference room on the second floor of the main building of the Hawthorne facility, interrogated an employee about the Confluence pages [6,7(C)] to address workplace concerns.

7.  About [6,7(C)] 2022, Respondent, by [6,7(C)] through an email unlawfully restricted employees from distributing the Open Letter.

8.  About [6,7(C)] 2022, Respondent, by [6,7(C)] in a conference room [6,7(C)] of the Hawthorne facility, disparaged employees' participation in, and the content of, the Open Letter.

9.  About [6,7(C)] 2022, Respondent, by [6,7(C)] in a conference room [6,7(C)] [6,7(C)] of the Hawthorne facility, interrogated an employee about the Open Letter.

10.  About [6,7(C)] 2022, Respondent, by [6,7(C)] and/or [6,7(C)] in the following locations, told employees that they were being discharged for their participation in the Open Letter:

    (a)  A conference room at the Hawthorne facility, and

    (b)  Via telephone.

11.  About [6,7(C)] 2022, Respondent, by [6,7(C)] in an email to all employees announced that employees had been discharged for their involvement in the Open Letter.

12.  About [6,7(C)] 2022, Respondent, by [6,7(C)] at the Hawthorne facility, made coercive statements concerning employees' protected concerted activities by disparaging the Open Letter and those employees who had participated in drafting it and by inviting employees to quit if they disagreed with the behavior of Chief Executive Officer Elon Musk.

- 5 -

13. About [6,7(C)] 2022, Respondent, by [6,7(C)] at the Hawthorne facility, told employees at a meeting that the terminated employees were discharged for their involvement with the Open Letter.

14. About [6,7(C)] 2022, Respondent, by [6,7(C)] outside of the Hawthorne facility, impliedly invited employees to quit if they wished to engage in protected concerted activities.

15. About [6,7(C)] 2022, Respondent, by [6,7(C)] outside of the Hawthorne facility, impliedly invited employees to quit if they wished to engage in protected concerted activities.

16. About [6,7(C)] 2022, Respondent, by [6,7(C)] outside of the Hawthorne facility, interrogated employees about their protected concerted activities.

17. About [6,7(C)] 2022, Respondent, by [6,7(C)] impliedly threatened employees with discharge if they continued discussion of the issues contained in the Open Letter.

18. About [6,7(C)] 2022, Respondent, by [6,7(C)] told employees during a meeting that employees were discharged for their participation in creating and distributing the Open Letter.

19. About [6,7(C)] 2022, Respondent, by [6,7(C)] in a small conference room on the first floor of the main building of the Hawthorne facility, interrogated employees about their involvement in the Open Letter and other employees' protected concerted activities.

20. About [6,7(C)] 2022, Respondent, by [6,7(C)] in a small conference room on the first floor of the main building of the Hawthorne facility, during an investigatory interview instructed an employee not to discuss the interview with anyone.

2024-NLFO-00683-000006

21.    About **6,7(C)** 2022, Respondent, by **6,7(C)** at Respondent's facility in Redmond, Washington, interrogated employees about their protected concerted activities.

22.    About **6,7(C)** 2022, Respondent, by **6,7(C)** at Respondent's facility in Redmond, Washington, by showing employees screen shots of communications between employees concerning the Open Letter created an impression among its employees that their protected concerted activities were under surveillance by Respondent.

23.    About **6,7(C)** 2022, Respondent, by **6,7(C)** at Respondent's facility in Redmond, Washington, during an investigatory interview instructed an employee to not discuss the interview with anyone.

24.    About **6,7(C)** 2022, Respondent, by **6,7(C)** in a small conference room on the first floor of the main building of Respondent's Hawthorne facility, interrogated employees about their involvement with the Open Letter and other protected concerted activities.

25.    About **6,7(C)** 2022, Respondent, by **6,7(C)** in a small conference room on the first floor of the main building of Respondent's Hawthorne facility, by reading aloud to employees communications between employees concerning the Open Letter, created an impression among its employees that their protected concerted activities were under surveillance by Respondent.

26.    About **6,7(C)** 2022, Respondent, by **6,7(C)** at the Hawthorne facility, interrogated employees about their participation in group chats and involvement with the Open Letter.

27.    About **6,7(C)** 2022, Respondent, by **6,7(C)** at the Hawthorne facility, by showing employees screen shots of communications between employees concerning

2024-NLFO-00683-000007

the Open Letter, created an impression among its employees that their protected concerted

activities were under surveillance by Respondent.

28.    About ⸀6,7(C)⸀ 2022, Respondent, by ⸀6,7(C)⸀ at the Hawthorne

facility, during an investigatory interview instructed an employee to not discuss the interview

with anyone.

29.    By the conduct described above in paragraphs 5(b) through (g) and 6 through 28,

Respondent has been interfering with, restraining, and coercing employees in the exercise of

the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

30.    The unfair labor practices of Respondent described above affect commerce within

the meaning of Section 2(6) and (7) of the Act.

WHEREFORE, as part of the remedy for the unfair labor practices alleged above in

paragraphs 5 through 28, the General Counsel seeks an Order requiring Respondent to:

    i.    Post the notice for 120 days, including electronically posting the notice on

       platforms where Respondent regularly communicates with employees;

    ii.   Hold a meeting or meetings scheduled to ensure the widest possible

       attendance, at which Respondent's representative ⸀6,7(C)⸀ reads

       the notice to the employees on worktime in the presence of a Board agent.

       Alternatively, the General Counsel seeks an order requiring that Respondent

       promptly have a Board agent read the notice to employees during worktime

       in the presence of Respondent's supervisors and/or agents identified above

       in paragraph 4. Each employee present at the meeting at which the Notice

       is to be read shall be provided a copy of the Notice before it is read aloud;

2024-NLFO-00683-000008

iii.    Post the Board's Explanation of Employee Rights poster for one year
to ensure that employees fully understand their rights under the Act;

iv.    Within 60 days of the issuance of a Board Order, permit a Board Agent to
conduct a training on the National Labor Relations Act and unfair labor
practices for all management officials and supervisors employed by
Respondent. This training will take place either in person or via a
videoconference platform, at the General Counsel's discretion. The date,
time, and manner of the training must be approved by the General Counsel.
The General Counsel will determine the curriculum for the training; and

v.    Draft and send letters to each of the discriminatees named in paragraph 5
apologizing to them for their discharge and/or discipline, any hardship or
distress this caused, and requiring Respondent to provide a copy of each
letter to the Regional Director within 14 days of distribution.

The General Counsel further seeks all other relief as may be just and proper to remedy
the unfair labor practices alleged.

## **ANSWER REQUIREMENT**

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules
and Regulations, it must file an answer to the complaint. The answer must be **received by this
office on or before** January 17, 2024, **or postmarked on or before January 16, 2024**.
Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website. To file
electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number,
and follow the detailed instructions. Responsibility for the receipt and usability of the answer
rests exclusively upon the sender. Unless notification on the Agency's website informs users that

2024-NLFO-00683-000009

the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the complaint are true.

## **NOTICE OF HEARING**

PLEASE TAKE NOTICE THAT on **Tuesday,** **March 05, 2024, 9:00 a.m. at Region 31 of the National Labor Relations Board, 11500 West Olympic Blvd, Suite 600, Los Angeles, CA 90064**, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.  At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this complaint.  The procedures to be followed at the hearing are

2024-NLFO-00683-000010

described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated:  January 3, 2024

MORI RUBIN, REGIONAL DIRECTOR
NATIONAL LABOR RELATIONS BOARD
REGION 31
11500 WEST OLYMPIC BLVD, SUITE 600
LOS ANGELES, CA 90064-1753

Attachments

2024-NLFO-00683-000011

FORM NLRB 4338
(6-90)

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**
**NOTICE**

Cases 31-CA-307446, et al.

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties.  On the contrary, it is the policy of this office to encourage voluntary adjustments.  The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.  However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated.  Postponements **_will not be granted_** unless good and sufficient grounds are shown **_and_** the following requirements are met:

(1)  The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2)  Grounds must be set forth in **_detail_**;

(3)  Alternative dates for any rescheduled hearing must be given;

(4)  The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5)  Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

6,7(C)

Space Exploration Technologies Corporation
One Rocket Road
Hawthorne, CA 90250

Harry I. Johnson III, Attorney
Morgan, Lewis & Bockius LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109

6,7(C)

Space Exploration Technologies Corporation
1030 15th Street, NW
Washington, DC 20005

Lauren M. Emery, Attorney
Morgan, Lewis & Bockius, LLP
110 North Wacker Drive, Suite 4800
Chicago, IL 60606-1511

Matthew A. Harper, Attorney
Morgan Lewis & Bockius LLP
1000 Louisiana St Ste 4000
Houston, TX 77002-5048

Laurie M. Burgess, Attorney
Burgess Law Offices PC
498 Utah Street
San Francisco, CA 94110-1435

Anne Shaver, Attorney at Law
Lieff Cabraser Heimann & Bernstein LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111

Form NLRB-4668
(6-2014)

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative**. If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**. The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.     BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.     DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence**: At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits: Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence.** If a copy of any exhibit is not available when the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the ALJ before the close of hearing.

(OVER)

2024-NLFO-00683-000013

Form NLRB-4668
(6-2014)

If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**:  An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation.  Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval.  Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion.  If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:**  You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing.  Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**:  Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ.  The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.   AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations.  Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:**  If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred.  You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request.  You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:**  In due course, the ALJ will prepare and file with the Board a decision in this matter.  Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision.  The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**:  The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections.  A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br> Defendants. | Case No. 24-cv-0001 |

**MOTION OF DEFENDANTS TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a)
AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

INTRODUCTION AND MOTION ................................................................................ 1

THE STATUTORY DESIGN OF THE NLRA ........................................................... 1

ISSUES IN DISPUTE ................................................................................................. 3

FACTUAL BACKGROUND ....................................................................................... 3

ARGUMENT ................................................................................................................ 5

    I.    This Case may not be heard in this venue and should be transferred in the interest of justice. .................................................................................................................... 5

        A.    Venue here is improper because no party resides in this district and there is no substantial connection between the conduct in the complaint and this venue. ........................ 6

        B.    The interest of justice favors transfer rather than dismissal. ............................ 7

    II.    This case should be immediately transferred; even if venue were not improper here, the interest of justice and convenience of parties and witnesses support transfer to the Central District of California under 28 U.S.C. § 1404(a). ........................................................ 8

        A.    This Court should transfer the case before deciding anything else. ................................. 9

        B.    SpaceX's choice of venue should be accorded little or no weight because it has filed an anticipatory suit to engage in forum-shopping. ..................................................... 10

        C.    Legal standards for motions to transfer venue pursuant to Section 1404(a). ................. 13

        D.    This Court should transfer the case to the Central District of California. ..................... 15

            1. Private-interest factors weigh in favor of transfer to the Central District of California. ..................................................................................................... 15

            2. Public-interest factors weigh strongly in favor of transfer to the Central District of California. ...................................................................................... 17

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Aftab v. Gonzalez,*
  597 F. Supp. 2d 76 (D.D.C. 2009) .......................................................................... 9

*Alpha Servs., LLC v. Looman,*
  No. CV 23-2988, 2023 WL 6795545 (E.D. La. Oct. 13, 2023) ............................. 18

*Andrade v. Chojnacki,*
  934 F. Supp. 817 (S.D. Tex. 1996) ................................................................... 7, 12

*Barham v. UBS Fin. Servs.,*
  496 F. Supp. 2d 174 (D.D.C. 2007) ..................................................................... 14

*Boire v. Pilot Freight Carriers, Inc.,*
  515 F.2d 1185 (5th Cir. 1975) ............................................................................... 3

*Bokat v. Tidewater Equip. Co.,*
  363 F.2d 667 (5th Cir. 1966) ................................................................................. 3

*Care One, LLC v. NLRB,*
  No. 2:23-cv-03221, 2023 WL 4156859 (D.N.J. June 23, 2023) ............................. 9

*Corp. of Am. Holdings v. NLRB,*
  942 F. Supp. 2d 1 (D.D.C. 2013) ............................................................. 9, 17, 20

*Cottman Transmission Sys., Inc. v. Martino,*
  36 F.3d 291 (3rd Cir. 1994) ............................................................................ 7, 12

*Curtis v. BP Am., Inc.,*
  808 F. Supp. 2d 976 (S.D. Tex. 2011) ................................................................... 9

*Flory v. United States,*
  79 F.3d 24 (5th Cir. 1996) ..................................................................................... 8

*Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., L.P.,*
  No. H-07-637, 2007 WL 5186798 (S.D. Tex. Sept. 11, 2007) ............................. 10

*Garner v. Team,*
  *sters, Chauffeurs & Helpers Loc. Union No. 776,* 346 U.S. 485 (1953) ................... 2

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947) ............................................................................................. 17

*Hill v. Keliher,*
  No. 4:19-CV-02528, 2019 WL 3837113 (S.D. Tex. Aug. 14, 2019) ..................... 13

*In re Munson,*
  No. 03-5034., 2003 WL 21396874 (D.C. Cir. 2003) ............................................. 6

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008) ......................................................................... 13, 14

*Jarkesy v. SEC,*
  34 F.4th 446 (5th Cir. 2022) ....................................................................12, 17, 20

*Koehring Co. v. Hyde Const. Co.,*
  324 F.2d 295 (5th Cir. 1963) ................................................................................. 8

*Lake City Stevedores, Inc. v. Steamship Lumber Queen,*
  343 F. Supp. 933 (S.D. Tex. 1972) ....................................................................... 14

*Lebus for & on Behalf of NLRB v. Manning, Maxwell & Moore, Inc.,*
   218 F. Supp. 702 (W.D. La. 1963) ............................................................. 3

*Lentz v. Eli Lilly & Co.,*
   464 F. Supp. 2d 35 (D.D.C. 2006) ........................................................... 13

*Mesa Power Grp., LLC v. Gov't of,*
   *Can.*, 255 F. Supp. 3d 175 (D.D.C. 2017).............................................. 10

*Mill Creek Press, Inc. v. Thomas Kinkade Co.,*
   No. 3:04-CV-1213-G, 2004 WL 2607987 (N.D.Tex. Nov. 16, 2004) ................... 11

*Mission Ins. Co. v. Puritan Fashions Corp.,*
   706 F.2d 599 ........................................................................................ 10

*Myers v. Bethlehem Shipbuilding Corp.,*
   303 U.S. 41 (1938)................................................................................. 2

*Nat'l Ass'n of Life Underwriters v. Clarke,*
   761 F. Supp. 1285 (W.D. Tex. 1991)......................................................... 6

*NLRB v. Washington Aluminum Co.,*
   370 U.S. 9 (1962)................................................................................... 1

*909 Corp. v. Vill. of Bolingbrook Police Pension Fund,*
   741 F. Supp. 1290 (S.D. Tex. 1990) ................................................. 11, 12

*Norwood v. Kirkpatrick,*
   349 U.S. 29(1955)................................................................................ 13

*Onyeneho v. Allstate Ins. Co.,*
   466 F. Supp. 2d 1 (D.D.C. 2006) ..................................................... 19, 20

*Overstreet v. El Paso Disposal, L.P.,*
   668 F. Supp. 2d 988 (W.D. Tex. 2009)...................................................... 3

*Pac. Mar. Ass'n v. NLRB,*
   905 F. Supp. 2d 55 (D.D.C. 2012) .................................................... 9, 17

*Paragon Indus., L.P. v. Denver Glass Mach., Inc.,*
   No. CIV.A. 3-07CV2183-M, 2008 WL 3890495 (N.D. Tex. Aug. 22, 2008).............. 10, 11, 13

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,*
   626 F.3d 973 (7th Cir. 2010)................................................................... 15

*Reuben H. Donnelley Corp. v. F.T.C.,*
   580 F.2d 264 (7th Cir. 1978).................................................................... 6

*Sangha v. Navig8 ShipManagement Priv. Ltd.,*
   882 F.3d 96 (5th Cir. 2018) .................................................................... 9

*Schmid Labs., Inc. v. Hartford Accident & Indem. Co.,*
   654 F. Supp. 734 (D.D.C. 1986) ...................................................... 15, 19

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,*
   549 U.S. 422 (2007)............................................................................... 9

*Starnes v. McGuire,*
   512 F.2d 918 (D.C. Cir. 1974) ............................................................... 19

*Thayer/Patricof Educ. Funding, LLC v. Pryor Res. Inc.,*
   196 F. Supp. 2d 21 (D.D.C. 2002) .......................................................... 13

*Trout Unlimited v. U.S. Dep't of Agric.,*
   944 F. Supp. 13 (D.D.C. 1996) ............................................................... 17

*Turner & Newall, PLC v. Canadian Universal Ins. Co.,*
   652 F. Supp. 1308 (D.D.C. 1987) ..................................................... 14, 19

**Statutes**

28 U.S.C. § 1292(a)(1) ........................................................................... 10
28 U.S.C. § 1391(e) ............................................................................ 3, 6
28 U.S.C. § 1391(e)(1) .............................................................................. 6
28 U.S.C. § 1391(e)(1)(B) ....................................................................... 15
28 U.S.C. § 1391(e)(1)(C) ....................................................................... 15
28 U.S.C. § 1404(a) ..................................................................... passim
28 U.S.C. § 1406(a) ..................................................................... passim
29 U.S.C. § 151-169 .................................................................................. 1
29 U.S.C. § 153(a) ..................................................................................... 2
29 U.S.C. § 155 ..................................................................................... 4, 6
29 U.S.C. § 157 .......................................................................................... 2
29 U.S.C. § 158 .......................................................................................... 1
29 U.S.C. § 160(e), (f) ............................................................................... 2
29 U.S.C. § 160(j) ...................................................................................... 3

**Rules**

Fed. R. Civ. 12 .......................................................................................... 9
Fed. R. Civ. P. 45(c) ............................................................................... 16

**Regulations**

29 C.F.R. § 101.37 .................................................................................... 3
29 C.F.R. § 102.15 .................................................................................... 2
29 C.F.R. § 102.35, 102.45 ...................................................................... 2
29 C.F.R. § 102.46-47 ............................................................................... 2

**Other Authorities**

14D Fed. Prac. & Proc. Juris. § 3815 (4th ed.) ....................................... 6
15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.) ........................................ 10
*Transfer & Choice of Federal Law: The Appellate Model,*
    93 MICH. LAW REV. 703 (1995) ........................................................... 9

## INTRODUCTION AND MOTION

Plaintiff Space Exploration Technologies Corp. ("SpaceX") initiated this action in this Court even though nearly all the operative events giving rise to the case occurred in and around Hawthorne, California, where SpaceX is headquartered. Employees whose statutory rights and remedies will be affected were employed there, and the relief sought would be directed to agency proceedings in California. This case has virtually zero nexus to this venue and represents an apparent effort to preempt anticipated litigation and forum-shop various legal theories to a venue SpaceX perceives as more favorable. Defendants respectfully move the Court to transfer this action in the interests of justice to the Central District of California pursuant to 28 U.S.C. § 1406(a) or, alternatively, 28 U.S.C. § 1404(a). Counsel for Defendants has conferred with the counsel for SpaceX and cannot agree about the disposition of this motion.

## THE STATUTORY DESIGN OF THE NLRA

The National Labor Relations Board ("NLRB" or "Agency") is an independent federal agency created by Congress in 1935 to administer the National Labor Relations Act ("NLRA" or "Act").[1] The Act's core substantive guarantee is contained in Section 7, which protects most private-sector employees' rights "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection" as well as the right to refrain from "any or all" of these activities.[2] The Act protects these rights whether or not employees are unionized or are seeking or opposing union representation.[3]

_____

[1] 29 U.S.C. § 151-169

[2] _Id_. § 157.

[3] _See, e.g._, _NLRB v. Washington Aluminum Co._, 370 U.S. 9, 14-15 (1962) (walkout by "wholly unorganized" workers over cold conditions protected by Section 7).

To enforce Section 7 rights, the NLRA prohibits certain employer and union activity as "unfair labor practices" (or "ULPs") under Section 8 of the Act.[4] Section 10 of the Act makes the five-seat Board of the Agency (the "Board") the exclusive public body responsible for adjudicating ULPs, subject to enforcement or review in a court of appeals.[5] ULP proceedings commence upon the filing of a charge by any person.[6] Under Section 3(d) of the Act, the NLRB General Counsel has "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of [administrative] complaints . . . , and in respect of the prosecution of such complaints before the Board."[7] On behalf of the General Counsel, the Regional Director for the office where a charge is filed conducts an investigation with the assistance of staff.[8] If the Regional Director determines that a charge has merit, an administrative complaint issues and an adversarial hearing is held before an administrative law judge ("ALJ"), who thereafter issues a decision and recommended order.[9] That decision is then appealable to the Board in Washington, D.C., which acts as an adjudicatory body.[10] The Board's decision and order constitutes the final agency determination.[11] It is only that "final order of the Board" that is reviewable in an appropriate federal court of appeals pursuant to Section 10(e) and (f) of the NLRA.[12]

District courts generally lack jurisdiction to review or supervise the conduct of NLRB

---

[4] 29 U.S.C. § 158.

[5] *Id.* § 160 (a), (c), (e).

[6] *Id.* § 160(b).

[7] *Id.* § 153(d).

[8] *Id.*; 29 C.F.R. § 102.15.

[9] 29 C.F.R. § 102.35, 102.45.

[10] 29 U.S.C. § 153(a).

[11] *Id.* § 160(c); 29 C.F.R. § 102.46-47.

[12] 29 U.S.C. § 160(e), (f); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938); *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485, 490 (1953).

proceedings or the General Counsel's prosecutorial decisions.[13] When the Agency's usual

processes may be rendered ineffective due to the passage of time, the Board may authorize an

action in district court for temporary injunctive relief pursuant to Section 10(j) of the Act, which

expires when the Board issues its final order in the underlying case.[14] The Agency's longstanding

practice is to seek such relief where the ULPs are alleged to have been committed.[15]

## ISSUES IN DISPUTE

Is venue improper under 28 U.S.C. § 1391(e), and if so, does the interest of justice favor

transfer rather than dismissal under 28 U.S.C. § 1406(a)? Should the Court exercise its discretion

to transfer this case to the Central District of California under 28 U.S.C. § 1404(a)?

## FACTUAL BACKGROUND

This case stems from eight ULP charges, all filed on November 16, 2022 by or on behalf

of individual discharged employees who reported to or were supervised by managers at the

SpaceX facility located at 1 Rocket Road, Hawthorne, Los Angeles County, California (the

"Hawthorne Facility").[16] SpaceX maintains its principal place of business at the Hawthorne

Facility.[17] NLRB Board members and its General Counsel maintain offices and conduct their

---

[13] *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966).

[14] *See* 29 C.F.R. § 101.37; 29 U.S.C. § 160(j); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188 (5th Cir. 1975).

[15] *See, e.g., Lebus for & on Behalf of NLRB v. Manning, Maxwell & Moore, Inc.,* 218 F. Supp. 702, 703 (W.D. La. 1963); *Overstreet v. El Paso Disposal, L.P.*, 668 F. Supp. 2d 988, 991 (W.D. Tex. 2009).

[16] Doc. 18, Declaration of Laurie Burgess ("Burgess Decl.") ¶¶4, 12 (seven of eight discharged employees lived in California and worked at the Hawthorne Facility, the eighth resided in Washington but was managed from Hawthorne, and none "have any relationship with the State of Texas"); ULP Compl ¶¶1, 2, 5.

[17] *Mission: SpaceX Facilities*, SpaceX, https://www.spacex.com/mission/ (last visited Jan 10, 2024). SpaceX is a Delaware corporation with operations in California, Florida, Texas, Washington State, and Washington, D.C. Compl. ¶35. *See also* ULP Compl. ¶¶1, 5. In filings

official duties in Washington, D.C.[18] The Agency's Division of Judges, which oversees its ALJs,

has three offices: Washington, D.C., San Francisco, and New York City.[19] On December 19,

2024, Region 31 of the NLRB, whose offices are located in Los Angeles, advised SpaceX that

the Agency was considering Section 10(j) injunction proceedings, which would be filed in the

Central District of California.[20] Following an investigation of the ULP charges, Region 31 found

merit to them, and issued an administrative complaint ("ULP Complaint") on January 3, 2024.[21]

The ULP Complaint alleges unlawful conduct by SpaceX supervisors and agents taking

place nearly entirely at the Hawthorne Facility.[22] Most significantly, the ULP Complaint alleges

that eight individuals were unlawfully fired in response to their NLRA-protected conduct in

organizing an Open Letter related to working conditions.[23] The ULP Complaint also alleges a

series of unlawful interrogations regarding the Open Letter taking place primarily at the

Hawthorne Facility.[24] It further alleges that SpaceX supervisors and agents at the Hawthorne

---

with the Securities and Exchange Commission, SpaceX has represented that the Hawthorne Facility is its principal place of business. *See, e.g.*, Notice of Exempt Offering of Securities, https://www.sec.gov/Archives/edgar/data/1181412/000118141222000003/xslFormDX01/primary _doc.xml (Aug. 5, 2022).

[18] 29 U.S.C. § 155; Compl. ¶36.

[19] *Division of Judges Directory*, National Labor Relations Board, https://www.nlrb.gov/about-nlrb/who-we-are/division-judges/division-judges-directory#DC (last visited Jan. 8, 2024).

[20] Compl. ¶128. While venue for a section 10(j) petition is technically proper in a number of locations, the NLRB's consistent practice for many years has been to file such petitions in the district where the facts alleged as ULPs took place.

[21] Compl. ¶¶24, 47-50, 128; ULP Compl. at p. 1, 11. The ULP Complaint is filed herewith as sealed Exhibit A. Proposed Intervenors have represented they now intend to move for an order protecting identities of individuals who fear harassment. *See* Burgess Decl. ¶7; Doc. 17, at p.1, n.1. Defendants intend to move to seal, providing proposed redactions, as soon as practicable.

[22] Certain conduct affecting one employee was alleged to have been committed in Redmond, Washington. *See* ULP Compl. ¶¶21-23.

[23] ULP Compl. ¶5.

[24] ULP Compl. ¶¶6, 9, 19, 24, and 26.

Facility disparaged employees, created the impression of surveillance, and illegally instructed employees not to discuss their investigatory interviews with anyone.[25]

The ULP Complaint included a notice setting a date for hearing on March 5, 2024, in Los Angeles.[26] Copies of it were sent to counsel for the charging parties, based in California, as well as counsel for SpaceX in Hawthorne, California; Los Angeles, California; and elsewhere, but the ULP Complaint itself contains no reference to Texas.[27]

SpaceX's own complaint alleges that "a substantial part of the events or omissions giving rise to the claim occurred in Boca Chica, Texas, where SpaceX maintains its Starbase rocket development and launch facility."[28] Beyond this statement, general references to its Texas operations, and potential NLRA remedies that might be applied companywide, SpaceX pleads no facts establishing a nexus between the conduct complained of and this venue.[29] And the complaint's fact section never once mentions Texas.[30]

## ARGUMENT

**I.      This Case may not be heard in this venue and should be transferred in the interest of justice.**

SpaceX filed a Complaint for Declaratory and Injunctive Relief in this Court, even though nearly all relevant events have occurred in and around Hawthorne, California. No parties

---

[25] ULP Compl. ¶¶8 (disparage), 12 (disparage), 20 (instruction not to discuss interview with anyone), 25 (impression of surveillance), 27 (impression of surveillance), 28 (instruction not to discuss interview).

[26] Compl. ¶¶46-50

[27] A notice attached to Region 31's complaint is addressed to employees' counsel and employer's counsel, one of whom has an address in Houston, Texas. ULP Compl. at p. 12.

[28] Compl. ¶34.

[29] Compl. ¶34.

[30] Compl. ¶¶43-50.

reside here. This case has virtually no connection to Texas, much less a "substantial" one. Transfer to the clearly appropriate venue under 28 U.S.C. § 1406(a) is both just and efficient.

### A. Venue here is improper because no party resides in this district and there is no substantial connection between the conduct in the complaint and this venue.

SpaceX's foundation for laying venue here is less than paper thin. 28 U.S.C. § 1391(e) governs venue for civil actions against federal agencies and officers. Venue is proper where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides."[31] A corporate plaintiff resides "only in the judicial district in which it maintains its principal place of business."[32] A federal agency resides where its principal office is located.[33] The presence of an agency regional office within a judicial district does not make the agency a resident of the district for venue purposes.[34] And officers sued in their official capacities reside where "official duties are performed."[35]

Here, SpaceX is a resident of California where its headquarters and principal place of business is located. And all named Defendants reside in Washington D.C., where the Agency is headquartered and its Board members and General Counsel maintain their offices and discharge their duties.[36] As another judge of this Court ruled, district courts "should not accept venue if the

---

[31] 28 U.S.C. § 1391(e)(1).

[32] *Id.* § 1391(c)(2)

[33] *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 266 n.3 (7th Cir. 1978); *In re Munson*, No. 03-5034., 2003 WL 21396874 (D.C. Cir. 2003).

[34] *Reuben H. Donnelley Corp.,* 580 F.2d at 267.

[35] Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3815 (4th ed.); *see Nat'l Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991) (cause of action arose "in Washington, D.C., where the Office of the Comptroller of the Currency made the . . . decision").

[36] 29 U.S.C. § 155. SpaceX also names as a "John Doe" defendant the ALJ who will be assigned by the Division of Judges to hear and decide the ULP Complaint in the first instance. That judge's home office is located in San Francisco, New York City, or Washington, D.C.

activities that transpired in the forum district were insubstantial in relation to the totality of events giving rise to Plaintiff[s'] claims."[37] "Insubstantial" would be a generous characterization here. In asserting that venue is proper, SpaceX points to its Starbase facility in Boca Chica, Texas, as one whose growth is increasingly important to SpaceX.[38] But SpaceX's complaint says nothing about how this facility, or any other Texas operation, relates to the conduct giving rise to its claims.[39]

SpaceX alleges that: (1) an Open Letter was "broadly distributed to employees at all SpaceX facilities across the country," including an unspecified number of employees based in Texas, (2) the Region's complaint seeks certain remedies that would affect all SpaceX facilities, and (3) the Region's complaint includes allegations that, from an unspecified location, SpaceX's president emailed all employees companywide.[40] Notably, no actual conduct by any of the defendants is alleged to have occurred in Texas. And "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough" to lay venue.[41]

### B. The interest of justice favors transfer rather than dismissal.

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer

---

[37] *Andrade v. Chojnacki*, 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996).

[38] Compl. ¶34.

[39] Importantly, the claims giving rise to SpaceX's suit are essentially administrative procedures rightfully taking place outside of Texas. They are the filing and investigation of charges with and by Region 31 (in California), the issuance of the ULP Complaint and scheduling of a hearing (also in California), an anticipated recommendation to the Board regarding Section 10(j) (from California to Washington, D.C.), and the Board's consideration of any future exceptions or special appeals (in Washington, D.C.). Compl. ¶¶47-50, 111, 128; ULP Compl. at pp. 1-2, 10-11.

[40] Compl. ¶34.

[41] *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3rd Cir. 1994).

such case to any district or division in which it could have been brought."[42] As discussed above, this Court is the wrong venue for this case. While a court may dismiss a case under Section 1406(a), the Fifth Circuit has recognized that "the interest of justice" may require a transfer in order to avoid "time-consuming and justice-defeating technicalities."[43] While dismissal would not deprive SpaceX of the opportunity to refile its action in an appropriate venue, SpaceX is seeking preliminary relief.[44] Efficiency and economy are best served by an immediate transfer expediting this case towards consideration rather than requiring the burden and expense of refiling the case in another court and requiring defendants to be again served with process.[45] And as discussed below, there is one venue that is clearly appropriate given the anticipatory nature of SpaceX's claims—the Central District of California. Dismissal would thus serve no purpose and the case should be transferred.

## II.    This case should be immediately transferred; even if venue were not improper here, the interest of justice and convenience of parties and witnesses support transfer to the Central District of California under 28 U.S.C. § 1404(a).

The Agency urges the Court to decide the transfer question before addressing other issues. Even assuming arguendo venue was permissibly laid here, 28 U.S.C. § 1404(a) permits the Court to transfer this case in the interest of justice. And here, not only is such a transfer in the interest of justice because of SpaceX's forum-shopping, the relevant factors the Fifth Circuit has identified in a Section 1404(a) analysis also favor transfer.

---

[42] 28 U.S.C. § 1406(a).

[43] *Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 297 (5th Cir. 1963).

[44] Compl. at p. 24 (Prayer for Relief ¶¶ 2-4).

[45] Service on government defendants is mandatory. *See, e.g., Flory v. United States*, 79 F.3d 24, 26 (5th Cir. 1996).

### A. *This Court should transfer the case before deciding anything else.*

SpaceX will soon file a motion for preliminary injunctive relief. And the Board will, at the appropriate time, file a motion seeking dismissal of this case under Federal Rule of Civil Procedure 12. But this Court should transfer this case before reaching these other matters. Courts possess discretion to determine the appropriate venue as a threshold issue, without needing to first assess jurisdiction or the underlying merits of the matter.[46] The Fifth Circuit has agreed that courts have "considerable leeway to choose among threshold grounds for denying audience to a case on the merits."[47] Consistent with this principle, courts have granted motions to transfer, including at the Board's request, prior to determining other threshold or merits issues.[48] These decisions effectuate the commonsense notion that sometimes "[a]djudicative efficiency favors resolving the venue issue before addressing whether subject matter jurisdiction exists."[49]

Deciding the venue issue prior to determining the jurisdictional and merits arguments also avoids potential procedural complications. For example, if this Court were to address the merits of a motion by SpaceX for a preliminary injunction before resolving the Board's transfer

---

[46] *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

[47] *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (cleaned up).

[48] *See, e.g., Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 983 (S.D. Tex. 2011); *Care One, LLC v. NLRB*, No. 2:23-cv-03221, 2023 WL 4156859, at *6 (D.N.J. June 23, 2023); *Lab. Corp. of Am. Holdings v. NLRB,* 942 F. Supp. 2d 1 (D.D.C. 2013); *Pac. Mar. Ass'n v. NLRB,* 905 F. Supp. 2d 55, 58–59 (D.D.C. 2012) (transferring to the District of Oregon), and cases cited therein.

[49] *Aftab v. Gonzalez,* 597 F. Supp. 2d 76, 79 (D.D.C. 2009); *see also* Robert A. Ragazzo, *Transfer & Choice of Federal Law: The Appellate Model,* 93 MICH. LAW REV. 703, 746 n.265 (1995) (citing 1B JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 0.404[4.-2] (2d ed. 1994)) ("Because a permanent transfer has the effect of changing the federal law applicable to the case, district courts should make transfer decisions as early in the proceedings as practicable.") As explained below, deciding the motion to transfer first is even more appropriate here given the SpaceX's attempt to forum shop and thereby derive an anticipated benefit from "the federal law applicable to this case." *Ragazzo*, *supra*, at 746 n.265.

9

motion, any order granting or denying that request would be appealable to the Fifth Circuit.[50]

However, if the case were then later transferred to California, any final orders or interlocutory

appeals would be heard by the Ninth Circuit—creating the potential for conflicting orders and

complicating the litigation in this case. Additionally, reaching the merits of such disputes prior to

transferring to the appropriate venue would likely engender ancillary disputes concerning the

impact of the transferor court's antecedent rulings on future proceedings.[51] Preventing these

potential outcomes serves as further reason to decide the venue question as an initial matter prior

to reaching the other issues presented in this case.

### B.  SpaceX's choice of venue should be accorded little or no weight because it has filed an anticipatory suit to engage in forum-shopping.

As the Fifth Circuit and various Texas courts, including this Court, have long recognized,

a plaintiff's choice of venue should be accorded little to no weight "when a party files a

declaratory judgment action, in anticipation of suit by its adversary."[52] "Anticipatory suits are

disfavored because they are an aspect of forum-shopping."[53] They "deprive a potential plaintiff

of his choice of forum, [and are] also one of the compelling circumstances courts cite when

declining to apply the first-filed rule."[54]

---

[50] See 28 U.S.C. § 1292(a)(1).

[51] A transfer "leaves in place whatever already has been done in the transferor court." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.); see, e.g., Mesa Power Grp., LLC v. Gov't of Can., 255 F. Supp. 3d 175, 181 (D.D.C. 2017) ("[I]f the transferor court already decided an issue (based on its own interpretation of the law) [then] the 'law of the case' governs that issue even in the transferee court.").

[52] Paragon Indus., L.P. v. Denver Glass Mach., Inc., No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008); see also Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 602 n. 3 (5th Cir.1983); Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., L.P., No. H-07-637, 2007 WL 5186798, *4 (S.D. Tex. Sept. 11, 2007).

[53] Mission Ins. Co., 706 F.2d at 602 n.3.

[54] Frank's Tong Service, Inc., No. H-07-637, 2007 WL 5186798, *4.

In determining whether a suit is anticipatory, courts examine the parties' "activities prior to filing of a suit."[55] This is because, "[t]he Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment" when it has notice that the other party intends to file suit in a different forum.[56] Moreover, "[w]hen a plaintiff files an anticipatory suit in order to avoid litigation by the defendant, the 'true plaintiff' is divested of his right to select the proper forum. Allowing [the anticipating party] to choose the forum subverts the real plaintiff's advantage in choosing the forum" and creates "disincentives to responsible litigation by rewarding the winner of a race to the courthouse."[57]

Here, SpaceX's suit is an "action for declaratory and injunctive relief."[58] And in addition to the administrative hearing scheduled to take place in Los Angeles, SpaceX's complaint asserts its belief that a district court action for relief under Section 10(j) of the NLRA "is imminent."[59] The practical effect of the relief sought by SpaceX would be to preclude the Board from seeking such a Section 10(j) injunction because the Board members who decide whether to authorize those proceedings would, in SpaceX's view, permanently lose their ability to decide the underlying ULP question.[60] And the seasoned NLRA practitioners representing SpaceX would be

---

[55] *Paragon Indus.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4

[56] *909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990).

[57] *Paragon Indus.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4 (discussing *Mill Creek Press, Inc. v. Thomas Kinkade Co.,* No. 3:04-CV-1213-G, 2004 WL 2607987, *7 (N.D.Tex. Nov. 16, 2004)).

[58] Compl. at p. 1.

[59] *See, e.g.,* Compl. ¶¶128-29; *see id.* at ¶¶1, 6, 50, 58-59, 61, 104, 137, p. 24 (Prayer for Relief ¶¶ 1-3); *see also* ULP Compl. at p.10. We note that at present, while the matter is being considered, neither the Board nor its General Counsel have made the determination to seek Section 10(j) relief.

[60] Compl. p. 24 (Prayer for Relief ¶¶ 1(d), 4)).

aware of the Agency's usual choice of venue in Section 10(j) cases—where the ULPs were alleged to have been committed. SpaceX's complaint is thus the quintessential example of an anticipatory suit designed to prevent the proper choice of venue by another party. And its repeated citations to the Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022),[61] only highlight SpaceX's apparent attempt to forum-shop to obtain the advantage of that case's holdings.

Finally, SpaceX's preference for venue in Texas should be given little weight in light of how "insubstantial [its basis is] in relation to the totality of events giving rise to Plaintiff[s'] claims."[62] Indeed, SpaceX grounds its claim of venue in Texas on the existence of a purportedly fast-growing Starbase facility, the assertion that unidentified Texas employees "interacted with [an] Open Letter," and a fear that the Board may award remedies that could affect all SpaceX facilities.[63] More is needed than unsubstantiated claims and speculation. In contrast, the ULP Complaint that SpaceX seeks to avoid makes clear that the locus of disputed conduct took place and is taking place in California. That is where employees were allegedly interrogated and fired, where ULP charges were filed, where Region 31 investigated those charges, and where a hearing is scheduled to take place. And any Section 10(j) action would be filed in the Central District of California. Thus, SpaceX's anticipatory suit before this Court is a blatant example of forum-shopping that this Court "cannot allow."[64]

---

[61] *See, e.g.*, Compl. ¶¶ 4-6, 15, 22, 54-55, 85-86, 100 (citing *Jarkesy*, 34 F.4th 446).

[62] *Andrade*, 934 F. Supp. at 827 n.18; *see Cottman Transmission Sys.*, 36 F.3d at 294 ("[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough").

[63] Compl. ¶34.

[64] *909 Corp.*, 741 F. Supp. at 1292 (S.D. Tex. 1990).

### C. *Legal standards for motions to transfer venue pursuant to Section 1404(a).*

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[65] "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their [choice of venue] privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."[66] Ordinarily, the Fifth Circuit reads Section 1404(a) to impose a "good cause burden" on the party seeking transfer.[67] This burden "is less demanding" than what is needed to warrant a *forum non conveniens* dismissal and "reflects the appropriate deference to which the plaintiff's choice of venue is entitled."[68] But as discussed above, a plaintiff's choice of venue is not entitled to deference when the action involves forum shopping or anticipatory litigation aimed at divesting the "true plaintiff" of its right to select the proper forum.[69]

Ultimately, transfer is proper where (a) the movant has established that the action could have been brought in the proposed transferee district and (b) the balance of convenience and justice weighs in favor of transfer.[70] As part of the balancing analysis required under Section

---

[65] 28 U.S.C. § 1404(a).

[66] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32(1955)); *see also Hill v. Keliher*, No. 4:19-CV-02528, 2019 WL 3837113, at *3 (S.D. Tex. Aug. 14, 2019) (granting transfer motion).

[67] *In re Volkswagen*, 545 F.3d at 315.

[68] *Id.* at 314-15. Indeed, a "district court should grant the transfer" when the movant demonstrates that "the transferee venue is clearly more convenient." *Id.* at 315.

[69] *Paragon Indus.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4.

[70] 28 U.S.C. § 1404(a); *In re Volkswagen*, 545 F.3d at 312, 315 (the "preliminary question under § 1404(a) is whether a civil action might have been brought in the destination venue," thereafter the court considers convenience and justice considerations); *see also Thayer/Patricof Educ. Funding, LLC v. Pryor Res. Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002); *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 36 (D.D.C. 2006).

1404(a), the Fifth Circuit specifies a number of "private and public interest factors" to guide the Court's broad discretion.[71] "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[72] "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[73]

These factors are not necessarily exhaustive; nor can any one factor be said to be dispositive.[74] And in weighing whether the "interest of justice" favors transfer, courts consider whether the plaintiff has engaged in forum-shopping.[75] Because the transfer provisions are in part intended to prevent forum-shopping, it is against the interest of justice "to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific

---

[71] *In re Volkswagen*, 545 F.3d at 315; *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007).

[72] *In re Volkswagen*, 545 F.3d at 315 (cleaned up).

[73] *Id.* (cleaned up).

[74] *Id.*

[75] *See Lake City Stevedores, Inc. v. Steamship Lumber Queen*, 343 F. Supp. 933, 935 (S.D. Tex. 1972) ("Judicial discretion over every motion to transfer should prevent a plaintiff from forum shopping"); *Turner & Newall, PLC v. Canadian Universal Ins. Co.,* 652 F. Supp. 1308, 1312 (D.D.C. 1987) (explaining that Section 1404(a) is designed to "prevent forum shopping"); *see also In re Volkswagen*, 545 F.3d at 313 (warning that plaintiffs should not abuse privilege of filing claims in any judicial division appropriate under the general venue statute).

precedents."[76] Such forum-shopping "may count against a plaintiff's choice of forum" in the transfer analysis.[77]

### D.  This Court should transfer the case to the Central District of California.

Good cause supports to transfer this matter to the Central District of California. The first requirement for a transfer is met here—that is, SpaceX could have brought this action in the Central District of California, where it resides under 28 U.S.C. § 1391(e)(1)(C). And under 28 U.S.C. § 1391(e)(1)(B), a substantial part of the operative events giving rise to this action occurred within the Central District of California. That venue is where Region 31's investigation was based, where an action for Section 10(j) relief would be filed, and where the hearing that SpaceX seeks to enjoin is scheduled to take place. The second requirement is also met here—balancing the private and public-interest factors, along with the interest of justice, make it clear that transfer is appropriate. Accordingly, as shown below, the Court should find that the Board has satisfied its good cause burden to show that the factors favor a transfer.

> 1.  Private-interest factors weigh in favor of transfer to the Central District of California.

None of the Fifth Circuit's four private-interest factors point towards the Southern District of Texas being an appropriate forum. As to the first factor, proof as to claims will largely come down to witness testimony and electronic records. Because electronic records are easily transported, the relative ease of access to sources of proof primarily considers witness testimony. SpaceX has requested injunctive relief, and evidence regarding balance-of-hardship and the public interest includes effects an injunction would have on SpaceX's Hawthorne workforce,

---

[76] *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.,* 654 F. Supp. 734, 737 (D.D.C. 1986).

[77] *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 n.2 (7th Cir. 2010).

potentially necessitating testimony from California-based witnesses. Here, the ULP complaint alleges that several SpaceX supervisors and agents were involved in ULPs at SpaceX's Hawthorne Facility.[78] None of the eight terminated employees who filed charges initiating the proceedings SpaceX seeks to enjoin "have any relationship with the State of Texas"—rather, all of these potential non-party witnesses were managed from California, with seven of the eight having "lived in California and worked at SpaceX's headquarters in Hawthorne, California, during the entire course of their employment."[79] In contrast, SpaceX's complaint does not allege that any of the individuals at issue in the Region's complaint took any action in Texas.[80] Nor does it identify any Texas-based witnesses. Thus, the first private interest factor strongly points to venue in the Central District of California.

As to the second and third private interest factors, there is little reason to believe that the availability of compulsory process or the cost of attendance of witnesses supports venue in the Southern District of Texas. The operative facts primarily arose out of SpaceX's Hawthorne Facility and Region 31's investigation and prosecution in California. Indeed, this is where SpaceX is headquartered and where witnesses are most likely to be found. The terminated employees in question are (at present) non-party witnesses who are not subject to compulsory process in the Southern District of Texas, unlike the several potential SpaceX witnesses who reside and work in California and who would be subject to compulsory process in the Central District of California.[81] Moreover, SpaceX is represented by counsel in this suit with an office in

---

[78] ULP Compl. ¶¶6, 8-10, 12-13, 19-20, 24-28. See also Doc. 18-1 at p. 12.

[79] Burgess Decl. ¶4, 12.

[80] SpaceX's complaint states that an unspecified, allegedly "significant," number of Texas-based SpaceX employees were among the many employees who "interacted with an Open Letter," which it admits "was broadly distributed to all SpaceX facilities across the country." Compl. ¶34.

[81] Fed. R. Civ. P. 45(c); Doc. 18-1 at p. 12, 13.

Los Angeles. So it is not clear why it would not be more convenient for SpaceX to litigate this case in Texas but for its apparent interest in the Fifth Circuit's recent decision in *Jarkesy*, 34 F.4th 446,[82] or other forum shopping considerations that Section 1404(a) is designed to hem-in.

As for other practical problems, this final private interest factor points in the direction of venue in the Central District of California. Not only will counsel for the Board and proposed intervenors have to appear *pro hac vice* here and retain local counsel, but so will SpaceX's attorneys.[83] In sum, the balance of private interest factors weighs in favor of transfer to the Central District of California. That is where the operative events arose, where witnesses are more likely to be found, where Region 31 is located, where the Region conducted its investigation, and where the administrative hearing that SpaceX now seeks to enjoin is scheduled to take place.

    2.   Public-interest factors weigh strongly in favor of transfer to the Central District of California.

Of the four public interest factors, the second—the local interest in deciding localized interests decided at home—weighs most heavily in favor of transfer here. There is a compelling interest in having local disputes and all related issues "resolved in the locale where they arise."[84] Courts have moreover recognized a "strong local interest" in having labor controversies decided by the court "where the affected employees are located."[85]

---

[82] *See, e.g.*, Compl. ¶¶ 4-6, 15, 22, 54-55, 85-86, 100.

[83] *See* Compl. at p. 25 (three of the four attorneys for SpaceX have stated that appearance by *pro hac vice* is forthcoming)

[84] *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996) ; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is a local interest in having localized controversies decided at home.").

[85] *Lab Corp. of Am. Holdings.*, 942 F. Supp. 2d at 4; *see also Pac. Mar. Ass'n,* 905 F. Supp. at 61 (transferring case to Oregon, the "true locus of this dispute," based in part on location of work, conduct at issue, and Board's administrative processes).

Here, the Hawthorne Facility was the site of almost all of the alleged ULPs by SpaceX managers or agents.[86] And while one discharged employee was interrogated while working from a Washington State facility, the remaining seven discharged employees were all based out of the Hawthorne Facility; all eight employees reported to management there.[87] "None of them have worked [in Texas], none of the protected activity that they engaged in occurred there, [and] their terminations did not occur there."[88] Moreover, the Region 31 Office that investigated and is prosecuting the ULP Complaint is based in Los Angeles, which is also where a hearing on the merits of the ULP Complaint is scheduled to occur.[89] And as discussed above, any potential Section 10(j) injunction action against SpaceX arising from the ULP Complaint would be brought there. This Court should find that transfer is supported by a profound local interest in having this matter, arising out of a California labor dispute, resolved in the that venue.

Relative docket congestion, related to the first public interest factor, also favors transfer here. While "congestion alone is not sufficient reason for transfer, relative docket congestion and potential speed of resolution is an appropriate factor to be considered" by district courts in the

---

[86] ULP Compl. ¶¶4, 6, 8-10, 12-13, 19-20, 24-28 (identifying Brian Bjelde as having an office at the Hawthorne facility, identifying Lindsay Chapman, John Edwards, and Jessica Jensen as taking action at the Hawthorne facility); *see also* ULP Compl. ¶¶4, 7, 10-11, 14-18 (identifying Sandy Simmons as engaging with employees "outside of the Hawthorne facility," and identifying Michael Saqr and Gwynne Shotwell as taking action from an unspecified location); Doc. 19, Declaration of Tom Moline ("Moline Decl.") ¶12 (stating SpaceX President Gwynne Shotwell was based in Hawthorne around the time of his termination); Doc. 18-1 at p. 12 (alleging that Bjelde and Chapman, as well as another potential party witness, are located in California).

[87] Burgess Decl. ¶4.

[88] Burgess Decl. ¶12.

[89] *See Alpha Servs., LLC v. Looman*, No. CV 23-2988, 2023 WL 6795545, at *7 (E.D. La. Oct. 13, 2023) (denying transfer because "the administrative proceedings that Plaintiffs seek to enjoin are ongoing in this District.").

motion-to-transfer analysis.[90] The latest statistics reporting median case-processing times and pending cases per judgeship show median disposition times are significantly shorter, and fewer cases are pending per judge, in the Central District of California.[91]

The final two public-interest factors—the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law—have little bearing here. This action primarily involves a claim of unconstitutional agency action grounded in federal law and the Constitution. The District Court for the Central District of California is not a disadvantage to this Court in resolving such claims.

Finally, Section 1404(a)'s "the interest of justice" factor weighs in favor of transfer, in light of SpaceX's forum-shopping in this Court.[92] This Court should not condone SpaceX's deliberate selection of this forum to obtain a perceived benefit from the application of certain

---

[90] *Starnes v. McGuire*, 512 F.2d 918, 932 (D.C. Cir. 1974) (en banc).

[91] *See* Table C-5, U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September, 30, 2023, https://www.uscourts.gov/statistics/table/c-5/judicial-business/2023/09/30 (Sep. 30, 2023) (noting that median disposition time in civil cases for the Central District of California is 4.4 months compared to 7.9 months in the Southern District of Texas); U.S. District Courts—National Judicial Caseload Profile, 36, 68, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/09/30-1 (Sep. 30, 2023) (showing that the Central District of California has 489 pending cases per judgeship versus 768 for the Southern District of Texas).

[92] *See Onyeneho v. Allstate Ins. Co.,* 466 F. Supp. 2d 1, 5 (D.D.C. 2006) ("To the extent that plaintiffs are engaging in forum shopping, it weighs in favor of transfer to a more appropriate forum."); *Turner & Newall,* 652 F. Supp. at 1312 (considering whether "transfer is warranted in the interest of justice because [plaintiff] engaged in forum shopping" by filing in this Court "simply to benefit from [the D.C.] Circuit's ruling" in another case); *accord Schmid Labs.,* 654 F. Supp. at 736.

precedents,[93] while avoiding a forum with perhaps less favorable precedent but much stronger connections to the underlying dispute.[94]

## CONCLUSION

Because venue here is improper and there is one clearly proper venue in which this case should be presented, the interest of justice and other relevant factors support immediately transferring this case to the Central District of California.

Respectfully submitted,

ALAMDAR S. HAMDANI
*United States Attorney*
*Southern District of Texas*

Daniel David Hu
*Chief, Civil Division*

By: s/ Benjamin S. Lyles
BENJAMIN S. LYLES
*Assistant United States Attorney*
S.D. Tex. ID No. 3062156
State Bar No. 24094808
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Benjamin.Lyles@usdoj.gov
*Attorney-in-Charge for Defendants*

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance and*
 *Special Litigation Branch*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

DANIEL BRASIL BECKER
*Trial Attorney*

GRACE L. PEZZELLA
*Trial Attorney*

s/ David Boehm
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email: David.boehm@nlrb.gov

Dated this 11th day of January, 2023.

---

[93] *See, e.g.*, Compl. ¶¶ 4-6, 15, 22, 54-55, 85-86, 100 (citing *Jarkesy*, 34 F.4th 446).

[94] *See Lab. Corp. of Am. Holdings*, 942 F. Supp. 2d at 5 (citing the plaintiff's "forum shopping" as a reason to transfer a lawsuit seeking to enjoin an NLRB representation case); *see also Onyeneho*, 466 F. Supp. 2d at 5 (granting transfer where court was "indeed concerned about the possibility of forum shopping here" based on the argument "that plaintiffs have chosen this forum simply to avoid disadvantageous precedent in the Fourth Circuit").

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br>          Plaintiff, <br><br>    v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br>          Defendants. | Case No. 24-cv-0001 |

## CERTIFICATE OF CONFERENCE

I certify that, on the evening of January 5, 2024, I emailed Plaintiff's counsel Catherine Eschbach regarding this motion, and after further consultation, on January 8, 2024, Counsel for Plaintiff emailed to indicate Plaintiff's opposition.

s/ *David Boehm*
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email: David.boehm@nlrb.gov

Dated this 11th day of January, 2024.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br>       Plaintiff, <br>   v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br>       Defendants. | Case No. 24-cv-0001 |

**(PROPOSED)**
**ORDER**

     **THIS MATTER** comes before the Court on Defendants' Motion to Transfer Plaintiffs' Complaint to the United States District Court for the Central District of California.

     Having considered all filings as to this matter, and for good cause shown, **IT IS** on this __ day of _____, 2024, hereby **ORDERED** that Defendants' Motion is **GRANTED**, and Plaintiffs' Complaint is **TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA**.

_____
The Honorable Rolando Olvera
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,**<br><br>        **Plaintiff,**<br><br>        **v.**<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>        **Defendants.** | Civil Action No. 1:24-cv-00001 |

### PLAINTIFF SPACEX'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C § 1406(a) AND § 1404(a)

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF ISSUES ....................................................................................... 1

ARGUMENT ............................................................................................................ 2

    I.    Venue is proper in this District because the Charging Parties caused substantial disruption here, the NLRB alleges companywide unfair labor practices and seeks to impose remedies in this District through its agency proceeding, and the agency proceeding is making demands of SpaceX personnel in this District. ..................................................................... 2

    II.   Defendants fail to meet their burden to show the Central District of California is a clearly more convenient venue. ...................................... 9

        A.   Private Interest Factors ................................................................ 11

            1.   The relative ease of access to sources of proof. ......................... 11

            2.   The availability of compulsory process to secure the attendance of witnesses. .............................................................. 11

            3.   The cost of attendance for willing witnesses. ............................. 12

            4.   All other practical problems that make trial of a case easy, expeditious and inexpensive. ..................................................... 13

        B.   Public Interest Factors ................................................................. 14

            1.   The administrative difficulties flowing from court congestion. ................................................................................. 14

            2.   The local interest in having localized interests decided at home. .......................................................................................... 15

            3.   The familiarity of the forum with the law that will govern the case. ...................................................................................... 16

            4.   The avoidance of unnecessary problems of conflict of laws or in the application of foreign law. ........................................... 17

        C.   Defendants' forum-shopping accusations are meritless. ......................... 17

    III.  The Court should decide the preliminary injunction and transfer motions together. ..................................................................................... 19

CONCLUSION ....................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Motorists Ins. Co. v. Cellstar Corp.*,
    61 F. App'x 119 (5th Cir. 2003) ...........................................................................2

*Andrade v. Chojnacki*,
    934 F. Supp. 817 (S.D. Tex. 1996) ....................................................................7, 8

*Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023).............................................................................................19

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
    No. 23-cv-206, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) ....................3, 8, 11

*Cottman Transmission Sys., Inc. v. Martino*,
    36 F.3d 291 (3d Cir. 1994) ..............................................................................7, 8

*Def. Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) ...........................................................9, 11, 17, 19

*Def. Distributed v. Platkin*,
    55 F.4th 486 (5th Cir. 2022) ..........................................................................19, 20

*FC Inv. Grp. LC v. Lichtenstein*,
    441 F. Supp. 2d 3 (D.D.C. 2006) .........................................................................3

*Flores v. Blinken*,
    No. 21-cv-66, 2021 WL 6037593 (S.D. Tex. Oct. 20, 2021) ..........................9, 10

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010).............................................................................................19

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947).............................................................................................18

*Hawbecker v. Hall*,
    88 F. Supp. 3d 723 (W.D. Tex. 2015)................................................................2, 3

*In re Horseshoe Entm't*,
    337 F.3d 429 (5th Cir. 2003) ..............................................................................13

*Lab. Corp. of Am. Holdings v. NLRB*,
    942 F. Supp. 2d 1 (D.D.C. 2013) ........................................................................16

*Long v. Grafton Executive Search, LLC,*
    263 F. Supp. 2d 1085 (N.D. Tex. 2003) .................................................................6

*Maybelline Co. v. Noxell Corp.,*
    813 F.2d 901 (8th Cir. 1987) ............................................................................20

*McCuin v. Tex. Power & Light Co.,*
    714 F.2d 1255 (5th Cir. 1983) ....................................................................17, 18

*Mitrano v. Hawes,*
    377 F.3d 402 (4th Cir. 2004) ..............................................................................3

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.,*
    760 F.2d 312 (D.C. Cir. 1985) ..........................................................................20

*Pac. Mar. Ass'n v. NLRB,*
    905 F. Supp. 2d 55 (D.D.C. 2012) ....................................................................16

*Paragon Indus., L.P. v. Denver Glass Mach., Inc.,*
    No. 07-cv-2183, 2008 WL 3890495 (N.D. Tex. Aug. 22, 2008) ...........................18

*In re Planned Parenthood Fed'n of Am., Inc.,*
    52 F.4th 625 (5th Cir. 2022) ..........................................................................9, 11

*Polymer80, Inc. v. Garland,*
    No. 23-cv-29, 2023 WL 3605430 (N.D. Tex. Mar. 19, 2023)..............................20

*In re Radmax, Ltd.,*
    720 F.3d 285 (5th Cir. 2013) ..........................................................................9, 13

*Ray v. Lynass,*
    No. 21-cv-20, 2021 WL 8443684 (W.D. Tex. Nov. 9, 2021)...........................3, 7

*Safety Nat'l Cas. Corp. v. U.S. Dep't of Treas.,*
    07-cv-643, 2007 WL 7238943 (S.D. Tex. 2007)..........................................2, 3, 7

*Sanders v. Seal Fleet, Inc.,*
    998 F. Supp. 729 (E.D. Tex. 1998)....................................................................13

*SEC v. Jarkesy,*
    34 F.4th 446 (5th Cir. 2022) ............................................................................18

*Sherwin-Williams Co. v. Holmes Cnty.,*
    343 F.3d 383 (5th Cir. 2003) ............................................................................18

*Space Exploration Techs. Corp. v. Bell,*
    No. 1:23-cv-00137 (S.D. Tex. 2023) ..............................................10, 15, 16, 17

*Texas v. Garland*,
    No. 23-cv-34, 2023 WL 4851893 (N.D. Tex. July 28, 2023)................................11, 13, 15, 16

*Texas v. U.S. Dep't of Homeland Sec.*,
    661 F. Supp. 3d 683 (S.D. Tex. 2023) ...................................................................................13

*Texas v. United States*,
    95 F. Supp. 3d 965 (N.D. Tex. 2015) ......................................................................................6

*Uffner v. La Reunion Francaise, SA*,
    244 F.3d 38 (1st Cir. 2001)..................................................................................................3, 6

*Umphress v. Hall*,
    479 F. Supp. 3d 344 (N.D. Tex. 2020) ....................................................................................3

*Utah v. Walsh*,
    No. 23-cv-16, 2023 WL 2663256 (N.D. Tex. Mar. 28, 2023).............................12, 13, 16, 18

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .................................................................................................13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..........................................................................................*passim*

*VP, LLC v. Newmar Corp.*,
    No. 11-cv-2813, 2012 WL 6201828 (E.D. La. Dec. 12, 2012) ............................................2, 7

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,
    982 F. Supp. 2d 714 (W.D. Tex. 2013)................................................................................2, 7

**Statutes**

28 U.S.C. § 1391(b)(2) ...................................................................................................................2

28 U.S.C. § 1391(e)(1)..........................................................................................................1, 2, 7, 8

28 U.S.C. § 1404(a) ...........................................................................................................*passim*

28 U.S.C. § 1406(a) ........................................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 12(b)(3)................................................................................................................20

## INTRODUCTION

This lawsuit arises from the efforts of two groups to disrupt SpaceX's operations nationwide.  As part of those efforts, officials at the National Labor Relations Board ("NLRB") and the employees and attorneys who filed NLRB charges against SpaceX (the "Charging Parties") have intentionally reached into the Southern District of Texas and every other judicial district where SpaceX maintains operations.  The NLRB seeks to regulate the company's communications to all SpaceX employees at all SpaceX locations and impose administrative remedies at all SpaceX locations, including Starbase within this judicial Division.  And the NLRB's unconstitutional administrative proceeding is making demands of SpaceX personnel throughout the company—again including Starbase.  The administrative proceeding, in turn, was prompted by the Charging Parties' wide dissemination of an Open Letter through multiple company channels of communication, including to employees at Starbase and SpaceX's Houston facility, by their attempt to solicit support from employees at those Texas facilities (and others), and by their resulting disruption of operations at those Texas facilities (and others).

Despite the far-reaching aims of both the NLRB officials and the Charging Parties, Defendants now pretend that this case arises from a local controversy confined to the Central District of California.  This portrayal of the parties' disputes is patently false.  Venue is clearly proper in this District pursuant to 28 U.S.C. § 1391(e)(1).  And Defendants cannot carry their burden to show good cause to override SpaceX's venue choice; there is no reason why adjudicating this constitutional litigation would be more convenient—and certainly not clearly more convenient—in the Central District of California.  Defendants' motion to transfer should be denied.

## STATEMENT OF ISSUES

Have Defendants shown that this Court should exercise its discretion to find that venue is improper under 28 U.S.C. § 1391(e)(1) and transfer the case under 28 U.S.C. § 1406(a)?  Have

Defendants carried their burden to show that venue is clearly more convenient in the Central District of California, where none of the public and private interests factors support such a finding, justifying voluntary transfer under 28 U.S.C. § 1404(a)?

## ARGUMENT

I.  **Venue is proper in this District because the Charging Parties caused substantial disruption here, the NLRB alleges companywide unfair labor practices and seeks to impose remedies in this District through its agency proceeding, and the agency proceeding is making demands of SpaceX personnel in this District.**

This Court possesses considerable discretion in determining whether venue is proper under Section 1391. *Am. Motorists Ins. Co. v. Cellstar Corp.*, 61 F. App'x 119, at *1 (5th Cir. 2003) (affirming district court's exercise of discretion in determining venue proper). When a government agency or official is the defendant, a plaintiff can establish venue wherever "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B).[1] It is well settled that venue under this test "may be proper in multiple locations." *Hawbecker v. Hall*, 88 F. Supp. 3d 723, 731 (W.D. Tex. 2015) (citing 14D Charles Alan Wright et al., Federal Practice and Procedure § 3806 n.10 (4th ed.)). The Court does not "determine the 'best' venue, but only whether or not its venue is proper." *Safety Nat'l Cas. Corp. v. U.S. Dep't of Treas.*, 07-cv-643, 2007 WL 7238943, at *5 (S.D. Tex. 2007) (Ellison, J.); *accord VP, LLC v. Newmar Corp.*, No. 11-cv-2813, 2012 WL 6201828, at *9 (E.D. La. Dec. 12, 2012). "'[T]he chosen venue does not have to be the place where the most relevant events took place,' but only where a 'substantial' part of the events or omissions giving rise to the claims occurred." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) (citation omitted).

In determining what counts as "a substantial part of the events … giving rise to the claim," courts "look not to a single triggering event prompting the action, but to the entire sequence of

---

[1] This language is identical to the "transactional venue" standard in § 1391(b)(2).

2

events underlying the claim." *Safety Nat. Cas. Corp.*, 2007 WL 7238943, at *3 (citing *Uffner v. La Reunion Francaise, SA*, 244 F.3d 38 (1st Cir. 2001)); *accord FC Inv. Grp. LC v. Lichtenstein*, 441 F. Supp. 2d 3, 11 (D.D.C. 2006); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). As a result, the transactional-venue test is met where the plaintiff is "present in the district or division in some real capacity and burdened" in that location. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164, at *3 (N.D. Tex. Apr. 17, 2023); *see also, e.g.*, *Ray v. Lynass*, No. 21-cv-20, 2021 WL 8443684, at *6 (W.D. Tex. Nov. 9, 2021) ("Courts may now consider the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities."); *Umphress v. Hall*, 479 F. Supp. 3d 344, 351-52 (N.D. Tex. 2020) (same); *Hawbecker*, 88 F. Supp. 3d at 731 ("[T]he Court may consider . . . the venue of where the harm was felt to determine the location of 'a substantial part of the events[.]'"). Here, several different occurrences in this District are among the substantial events giving rise to SpaceX's claims.

*First*, the disruption caused by the Open Letter at Starbase and the Houston facility are substantial events giving rise to SpaceX's claims. The NLRB complaint seeks to hold SpaceX in violation of federal law precisely because of SpaceX's response to this disruption. *See* Dkt. No. 1 (Complaint) ¶ 34. The Charging Parties reached into the Southern District of Texas—and every other district where SpaceX maintains a physical presence—by blanketing thousands of employees across the company with unsolicited emails and requests to sign letters and fill out unsponsored surveys during the workday. Declaration of Michael Cramer ("Cramer Decl.), ¶¶ 4, 6-7 (attached as Exhibit A); Declaration of Steven Schmitz ("Schmitz Decl."), ¶¶ 5, 7 (attached as Exhibit B); *see* Declaration of Gwynne Shotwell ("Shotwell Decl."), Ex. B (June 16, 2022 email) (attached as Exhibit C). Employees from across all of SpaceX's facilities, including Starbase, reported that the Open Letter decreased their workplace productivity and distracted and distressed them through the

Open Letter's attempt to create a heightened sense of urgency.  Schmitz Decl., ¶¶ 7-8, 11-12; *see* Shotwell Decl., Ex. A (June 15, 2022 email).  These actions made many employees feel uncomfortable, and they complained that the Open Letter interfered with their ability to focus on their work.  Schmitz Decl., ¶ 7-8, 12; *see* Shotwell Decl., Exs. A & B.

At Starbase and the Houston facility, at least 215 employees interacted electronically with the Open Letter that the Charging Parties directed towards employees at those facilities, for a total of 1,537 to 2,230 intentional interactions at Starbase and another 23 to 33 intentional interactions at the Houston facility.  Cramer Decl., ¶¶ 9, 11-12; *see* Declaration of Donald Leclerc (attached as Exhibit D).  The Open Letter was not viewed in passing by Starbase and Houston employees before returning to normal work tasks—most had multiple digital interactions and some upwards of more than 30 interactions.  Cramer Decl., ¶¶ 11-12.  These statistics significantly underestimate the disruption caused in this District as they only measure interactions on SpaceX's computer network, and do not include interactions with employees' personal devices (e.g., their phones).  *See id.*, ¶14.

At Starbase, for at least a week, the Open Letter's distribution derailed technical conversations, was the main topic of conversation, distracted large portions of employees from their work tasks, and required management personnel to spend substantial time away from their ordinary job duties to navigate the disruption.  Schmitz Decl. ¶¶ 7-10.  The Open Letter required multiple unscheduled meetings at Starbase to address both the Open Letter itself and the best way to refocus Starbase personnel on their tasks.  *Id.*, ¶ 9; Declaration of Kimberly Chacon ("Chacon Decl."), ¶¶ 5-8 (attached as Exhibit E).  For example, Ms. Shotwell, the President and COO, personally came to Starbase a week after the Open Letter's distribution to answer questions about the letter and address the disruption it caused.  Chacon Decl., ¶¶ 6-8.  Starbase is the home of the Starship development efforts, and this disruption came at a crucial time when Starbase personnel

4

were working to meet key targets.  Schmitz Decl., ¶¶ 4, 6; *see also* Dkt. No. 37-1, Gallman Decl., ¶¶ 7, 9-10.  Ms. Shotwell specifically emphasized in her June 16, 2022 email to all SpaceX employees that this disruption took place at a time when "we are on the cusp of the first orbital launch attempt of Starship."  Shotwell Decl., Ex. B; *see* Schmitz Decl., ¶ 4, 6, 10.

*Second*, the administrative complaint identifies this June 16 email from Ms. Shotwell, which it specifically alleges as having been sent "to ***all employees***," as one of the alleged unfair labor practices.  NLRB Compl., ¶ 11 (emphasis added).  In this way, the NLRB complaint specifically alleges that one of the matters to be resolved—in the very administrative proceeding that SpaceX is challenging—happened in this District when Ms. Shotwell sent the email to Starbase and Houston employees among others.  *Id.*; Schmitz Decl., ¶¶ 11-12.

*Third*, the remedies sought in the administrative complaint reveal that the NLRB views the alleged unfair labor practices as affecting all SpaceX facilities, which would include Starbase and Houston.  The complaint requests, among other remedies, that: SpaceX be ordered to "[p]ost" a corrective "notice … including electronically" on employee communication platforms; "[h]old … meetings scheduled to ensure the widest possible attendance," with Ms. Shotwell reading the notice; and "conduct a training on the National Labor Relations Act and unfair labor practices for ***all management officials and supervisors employed by Respondent***."  NLRB Compl., at 8-9 (emphasis added).  By their terms, these remedies expressly involve employees, management, and supervisory personnel based in this District.  Gallman Decl., ¶¶ 10-11 (identifying personnel and senior leadership located at Starbase and other Texas facilities); *id.*, ¶ 23.  Notably, Defendants' transfer motion does not dispute that the administrative complaint pursues remedies not just for SpaceX's Hawthorne location, but for all SpaceX locations.  Mot. to Transfer 5, 7, 12.

*Fourth*, the unconstitutional NLRB proceeding is inflicting irreparable injury on SpaceX

in this District by making demands of personnel across many facilities, including Starbase, to assist in preparing for and in some cases testifying at the hearing. Gallman Decl., ¶ 14 (he was among personnel involved in Open Letter events); *id.*, ¶¶ 14-17, 19-20; Declaration of Matthew Harper ("Harper Decl."), ¶¶ 12-14 (attached as Exhibit F). The NLRB proceeding will also make demands of senior leadership's time leading up to and during the administrative hearing, including of the Texas-based President and COO, at a time SpaceX has two Starship test flights scheduled in Boca Chica. Gallman Decl., ¶¶ 7, 16, 19. The injuries resulting until the unconstitutional administrative hearing is enjoined are being felt, and will continue to be felt, at Starbase as well as other locations.

These events are more than enough to support venue. The sending of the Open Letter to Texas employees, the resulting disruption among Texas employees, and the sending of the allegedly unlawful June 16 email from Texas to Texas employees (among others) are all substantial parts of the events giving rise to this litigation because they were a substantial part of what prompted the proceeding SpaceX seeks to enjoin. The First Circuit has held, for example, that venue was proper even when the plaintiff's claim challenged a denial of coverage that did not occur in the venue, because the accident underlying the request for coverage ***did*** occur in the venue. *Uffner*, 244 F.3d at 43 ("an event need not be a point of dispute between the parties in order to constitute a substantial event giving rise to the claim"). The events that prompted the unconstitutional administrative proceeding are similarly a substantial part of the relevant events. *See also Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (categorizing an email to Texas recipients as a substantial Texas-based event).

In addition, the ongoing impacts of the NLRB's unlawful actions in this District are also a substantial part of the events giving rise to SpaceX's claims. For example, in *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015), the court addressed a challenge to a federal

6

agency's allegedly unlawful regulation of employers, and held that "a substantial part of the events or omissions giving rise to Plaintiffs' claims would occur in the Northern District of Texas were the [regulation] to become effective" because Plaintiffs were "employers in Wichita Falls." Here, too, the administrative proceeding, if not enjoined, would continue to interfere with SpaceX's business and employment practices in this District. *See* Gallman Decl., ¶¶ 9-10.

Defendants largely ignore the legal test for transactional venue. Rather, they insist that events in California are ***more*** substantial than the events in this District. Mot. to Transfer 5. That is irrelevant, however, because this Court need not, and should not, evaluate whether this District is the "best" venue or the place where the "most substantial" events occurred. *See, e.g.*, *VP, LLC*, 2012 WL 6201828, at *9; *Safety Nat. Cas. Corp.*, 2007 WL 7238943, at *5. Defendants also find it "[n]otabl[e]" that none of the Defendants' conduct to date is alleged to have occurred in Texas. Again, that is irrelevant: under the 1990 statutory amendments broadening the test for transactional venue, the inquiry does not exclusively consider the location of defendants' actions, but also where plaintiffs experience the resulting injuries. *See, e.g.*, *Ray*, 2021 WL 8443684, at *6; *Zurich Am. Ins.*, 982 F. Supp. 2d 714, 722; *Safety Nat. Cas. Corp.*, 2007 WL 7238943, at *5.[2]

Defendants' two cited cases on transactional venue do not support them. *See* Mot. to Transfer 7 nn. 37, 41. Events here do not merely have "some tangential connection with the dispute in litigation." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *Andrade v. Chojnacki*, 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996). The allegedly unlawful NLRB proceeding seeks to regulate SpaceX's conduct at Starbase just as it does at the company's other locations. Moreover, the *Cottman* court applied a specific test for venue in "Lanham Act

---

[2] Similarly irrelevant is their repeated reference to the residence of various parties. Mot. to Transfer 5-7. Residency-based venue is governed by subparagraphs (A) and (C) of Section 1391(e)(1), separate from transactional venue under Section 1391(e)(1)(B).

trademark infringement case[s]," which is inapplicable here. *Id.* at 295.  And the *Andrade* court, noting the "dearth of Fifth Circuit case law" construing the post-1990 transactional-venue standard, seems to have improperly adopted a most-substantial-events standard.  934 F. Supp. at 827 n.18.  *Andrade* was filed in the Southern District of Texas alleging torts against federal officials arising from the Branch Davidian standoff and tragic resulting events in Waco.  The plaintiffs conceded that "the acts alleged to have caused injury . . . occurred in Waco," and certain plaintiffs had represented in a separate lawsuit that "all incidents and occurrences" had happened in the Western District of Texas.  *Id.* at 826, 829.  The court found that the events and decisions by the Davidians themselves severed any connection with whatever initial planning decisions Defendants had been made in Houston.  *Id.* at 828-29.  Nothing about the case is on point.

Considering the events that gave rise to the unlawful agency hearing, the ongoing effects of the hearing, and the relief sought through the hearing, a substantial portion of those events occurred in or will create harm in this District.  Venue is proper under Section 1391(e)(1).

Were this Court to disagree, Defendants are correct that transfer better serves the interests of justice than dismissal.  Mot. to Transfer 7-8.  But efficiency and respect for SpaceX's choice of venue favor the Western District of Texas, Waco Division, not the Central District of California.[3]

---

[3] Defendants cannot reasonably argue that venue would be improper in the Western District of Texas because at least two of the unfair labor practices alleged in the administrative complaint occurred there when Ms. Shotwell sent the June 15 and 16, 2022 emails.  Shotwell Decl., ¶¶ 3-5; NLRB Compl., ¶¶ 7, 11.  The Open Letter also caused significant disruption at the McGregor and Bastrop facilities, *see* Cramer Decl., ¶¶ 7, 9, and the NLRB hearing and remedies sought make demands on key SpaceX personnel based in the Western District.  Gallman Decl., ¶¶ 10-11.  Ms. Shotwell, who resides in the Western District, is expected to testify in the NLRB proceeding.  Gallman Decl., ¶ 16; Shotwell Decl., ¶ 2.  In addition, given the schedule for the upcoming hearing and time-sensitive need for injunctive relief, which Defendants control, party and court resources are best preserved by keeping the case in this Circuit and avoiding any need to re-brief the preliminary injunction motion under the law of a different circuit, as Defendants seek to have happen here.  Mot. to Transfer 9 n.49; *see Career Colls.*, 2023 WL 2975164 at *3 (transferring to proper venue within Fifth Circuit to afford "respect" to plaintiff's choice of forum).

## II.     Defendants fail to meet their burden to show the Central District of California is a clearly more convenient venue.

A "plaintiff's choice of venue is entitled" to "appropriate deference" and, unless the defendant shows "good cause," "should be respected*." In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).  To establish "good cause," "[a] movant seeking transfer under 28 U.S.C. § 1404(a) must show that the transferee venue is '***clearly more convenient***' than the venue chosen by the plaintiff."  *Flores v. Blinken*, No. 21-cv-66, 2021 WL 6037593, at *2 (S.D. Tex. Oct. 20, 2021) (Olvera, J.) (emphasis added) (citing *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013), and *Volkswagen*, 545 F.3d at 315).  Defendants fall well short of meeting their burden.  This action exclusively involves constitutional claims that are pure issues of law not requiring live witness testimony or a trial, and there is no reason why litigating these issues of constitutional law would be more convenient in California.

Although district courts have "broad discretion in deciding whether to order a transfer," *Volkswagen*, 545 F.3d at 311, the Fifth Circuit has explained that this discretion is not limitless: when "jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer."  *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (reversing transfer as an abuse of discretion).  "[T]he standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice."  *Id.*; *see also In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) ("some inconvenience is expected and acceptable").

Four private interest factors and four public interest factors guide this analysis.  "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing

witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315 (citations and quotation marks omitted). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (citations and quotation marks omitted). "[A]lthough a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer" and any analysis must "directly manifest[] the importance that [must be given] to the plaintiff's choice." *Id.*, 315 n.10. A plaintiff's choice of forum should not be disturbed unless the balance of factors strongly favors the moving party. *Id.* at 315.

Here, all factors are either neutral or weigh in favor of litigating this dispute in the Southern District of Texas, so Defendants fail to override SpaceX's choice of forum. *Cf. Flores*, 2021 WL 6037593 (denying intra-district transfer where "six factors are neutral, one weighs slightly in favor of transfer, and one weighs solidly in favor of transfer"). But it bears noting up front—given Defendants' heavy accusations of forum shopping—that SpaceX had every reason to believe that the government would recognize this Court as an appropriate venue for this constitutional challenge. After all, this Court is currently presiding over a very similar constitutional challenge by SpaceX with similar venue facts, and the federal government has not contested venue there. *See generally Space Exploration Techs. Corp. v. Bell*, No. 1:23-cv-00137 (S.D. Tex. 2023) (Olvera, J.). Given the speed at which Defendants seek to begin unconstitutional administrative proceedings and SpaceX's resulting need for quick preliminary injunctive relief, SpaceX rationally chose a forum that was familiar with the complex constitutional issues raised by this case.

### A.      Private Interest Factors

Defendants argue that "[n]one of the … four private-interest factors point towards the Southern District of Texas."  Mot. to Transfer 15.  This flips the analysis on its head.  ***Defendants*** bear the burden of showing that the factors make another venue "clearly more convenient."  *See Def. Distributed*, 30 F.4th at 433; *Volkswagen*, 545 F.3d at 315.  They have failed.

#### 1.      The relative ease of access to sources of proof.

Factor one "requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum."  *Def. Distributed*, 30 F.4th at 434.  When the evidence is not physical in nature, this factor is not particularly relevant.  *Planned Parenthood*, 52 F.4th at 630.  Here, Defendants admit that the evidence, if any, in this constitutional challenge is in electronic form, Mot. to Transfer 15, and therefore cannot show this factor favors transfers.  *See Texas v. Garland*, No. 23-cv-34, 2023 WL 4851893, at *7 (N.D. Tex. July 28, 2023); *Career Colls.*, 2023 WL 2975164, at *3.  Instead, Defendants try to shoehorn speculation about witnesses into this factor.  Mot. to Transfer 15-16.  Witness availability is analyzed under the next two factors, which, as explained, do not favor transfer.

#### 2.      The availability of compulsory process to secure the attendance of witnesses.

Defendants have failed to establish that compulsory process of witnesses is at all relevant here.  "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify."  *Planned Parenthood*, 52 F.4th at 630-31.  This is a constitutional challenge "based primarily on legal arguments," *Garland*, 2023 WL 4851893, at *7, where it is highly unlikely that any live witness testimony will be needed.  Moreover, Defendants do not allege or show that any witnesses it speculates may be necessary are unwilling to testify.  *See id.*  This factor does not favor transfer.

### 3.    The cost of attendance for willing witnesses.

Were any witnesses needed to decide the suit for injunctive relief, the only witness identified thus far is Jamin Gallman, *see* Dkt. No. 37-1 (submitting declaration in support of preliminary injunction motion), who is based at Starbase in this Division.  Thus, this factor weighs in favor of this case remaining in the Southern District of Texas.

Defendants' speculation that additional witnesses may be necessary deserves no weight and conflates this limited challenge to an unconstitutionally structured agency with the separate NLRB administrative hearing on the merits of the Charging Parties' allegations.  *See, e.g.*, *Utah v. Walsh*, No. 23-cv-16, 2023 WL 2663256, at *2 (N.D. Tex. Mar. 28, 2023).  But even indulging such speculation, Los Angeles is not clearly more convenient than Brownsville.  The current named Defendants all reside in Washington, D.C., nowhere near the Central District of California.[4] And while SpaceX is headquartered in Hawthorne, California, its President and COO identified in the NLRB administrative complaint resides in Texas.  Other SpaceX personnel who might testify in the NLRB hearing are currently scattered about the country.  Gallman Decl., ¶¶ 14-16; Harper Decl., ¶ 14.  And the Charging Parties' location is irrelevant.  They admitted in a recent filing that "[t]heir identities are not germane to any issue before this Court" and that "this is not a lawsuit on the merits of the NLRB's charges against SpaceX; this is a wholly separate constitutional challenge to the NLRB's operations, where the identities of the underlying charging parties are irrelevant."  Dkt. No. 46, at 2, 5.  These admissions refute Defendants' representation that the Charging Parties are potential witnesses or that their location is relevant to the transfer analysis.[5]

---

[4] To SpaceX's knowledge, no ALJ has been assigned yet.  Defendants state all ALJs have "home office[s] located in San Francisco, New York City, or Washington, D.C."  Mot. to Transfer 6, 36.

[5] Moreover, the Charging Party declarations submitted in support of the Motion to Intervene indicate several of them may currently be located outside central California and thus would have

Even if there were potential witnesses who would need to travel, Brownsville is likely to be significantly cheaper for the parties and witnesses than Los Angeles, California for many reasons. *See Texas v. U.S. Dep't of Homeland Sec.*, 661 F. Supp. 3d 683, 691 (S.D. Tex. 2023); *Garland*, 2023 WL 4851893, at *7; *Walsh*, 2023 WL 2663256, at *4. Thus, the cost of attendance for willing witnesses—if any are needed in this constitutional challenge—weighs in favor of the Southern District of Texas retaining venue.

### 4. All other practical problems that make trial of a case easy, expeditious and inexpensive.

As to the final, catch-all factor, other considerations also weigh in favor of retaining venue in the Southern District of Texas. To start, the pendency of the preliminary injunction motion weighs in favor of retaining venue as it would eliminate the delay resulting from any transfer in adjudicating that motion. *See Sanders v. Seal Fleet, Inc.*, 998 F. Supp. 729, 738 (E.D. Tex. 1998) ("keeping the case in the Eastern District will eliminate any delay that might occur from the transfer"). Defendants steadfastly refuse to move the March 5 NLRB hearing date, which is entirely within its control, to give this Court or a potential transferor court adequate time to adjudicate issues it acknowledges are "complex." *See* Dkt. No. 56, at 4; *see generally* Dkt. Nos. 37-2, 49, 49-1, 56. This scenario and relevant equities rise above garden-variety delay resulting from transfer, and crosses into the sort of delay and prejudice that favor retaining the current venue. *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003); *Radmax*, 720 F.3d at 289.

Defendants contend that their counsel and proposed intervenors' counsel will need to appear pro hac or obtain local counsel in this District. Mot. to Transfer 17. Such considerations are generally irrelevant. *See In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004)

---

to travel regardless. *See* Dkt. No. 21 (Lawrence Declaration signed in Berlin, Germany); Dkt. No. 22 (Holland-Thielen Declaration signed in Raleigh, North Carolina).

("[C]onvenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)."). But if they were relevant, they would support retaining venue. Counsel for SpaceX, Defendants, and Proposed Intervenors have now all filed and been granted pro hac vice status. *See* Dkt. Nos. 14, 15, 25, 32-34, 51-52. Proposed Intervenors have counsel admitted in the District. *See* Dkt. No. 46 at 6 (Attorney-In-Charge is admitted in SDTX). And Defendants are represented locally by the Southern District of Texas U.S. Attorney's Office. It is transferring the case that would necessitate a new round of pro hac motions, plus a new U.S. Attorney's Office quickly getting up to speed. Thus, the fourth factor favors the Southern District of Texas.

*\*\*\*\*\**

The private interest factors all either favor the Southern District of Texas or are irrelevant.

## B.    Public Interest Factors

The public interest factors also do not help Defendants carry their burden to demonstrate that the Central District of California is "clearly more convenient." *Volkswagen*, 545 F.3d at 315.

### 1.    The administrative difficulties flowing from court congestion.

Recent statistics indicate that this Court only has one civil case that has been pending over three years, and the only motion on the "six-month list" is a motion in limine in that case (which is set for trial).[6] And beyond this Court's own docket, the number of "weighted filings" by judge—which is the most relevant statistic because it "account[s] for the different amounts of time district judges require to resolve various types of civil and criminal actions"—is lower in this District (577) than in the Central District of California (596).[7] Docket congestion does not favor transfer.

Nor do Defendants "assert that the Court is unable to resolve this dispute expeditiously" or

---

[6]   https://www.uscourts.gov/sites/default/files/data_tables/cjra_7_0930.2023.pdf, at p. 4204; https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0930.2023.pdf, at p. 874.

[7] https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf, at pp. 36, 68; https://www.uscourts.gov/sites/default/files/explanation-of-selected-terms-september-2014_0.pdf

explain how it "would alleviate court congestion" to send this case to Central District of California with almost no time to resolve complex constitutional issues before the start of the NLRB hearing. *Garland*, 2023 WL 4851893, at *8.  This "Court has an established track record of swiftly resolving cases involving requests for emergency injunctive relief," *id.*, as the recent *Bell* litigation shows.  This first public interest factor weighs in favor of this Court retaining the case.

### 2.     The local interest in having localized interests decided at home.

SpaceX has a strong presence in the District, and the employees located in the Southern District of Texas who would be affected by the Defendants' actions have an interest in this case being heard here.  As discussed supra at pp. 3-8, substantial events giving rise to the NLRB proceedings occurred in this District, the NLRB proceedings would affect SpaceX personnel in this District and Texas more broadly, and the NLRB seeks remedies through the proceeding that will apply to facilities and personnel in this District.  Starbase is a crucial hub for SpaceX: not only is it SpaceX's fastest growing location employing over 2,225 individuals and senior corporate officers, but it is also the launch site for the Starship rockets that will take American astronauts to the Moon and to Mars.  Gallman Decl., ¶¶ 7, 10-11, 19-20.[8]  SpaceX is deeply invested in the local Brownsville economy and is Brownsville's largest private employer.[9]  Not just SpaceX employees in this district have an interest in this suit being decided here, local citizens do too.

---

[8] News coverage has noted that this "choice of venue was not a random choice:  The company's Starbase, from which it recently did a test flights of a 33-engine rocket, sits on a peninsula just outside of Brownsville."  Cameron Langford, *SpaceX fights feds' unfair labor practices inquiry with lawsuit*, Courthouse News Service (Jan. 5, 2024), https://www.courthousenews.com/spacex-fights-feds-unfair-labor-practices-inquiry-with-lawsuit/.

[9] Steven Masso, *SpaceX plans to open $15M shopping center, restaurant in Texas*, KXAN (NBC) (Jan. 20, 2024), https://www.kxan.com/news/texas/spacex-plans-to-open-15m-shopping-center-restaurant-in-texas/; Joyti Mann, *SpaceX has become the largest employer in Brownsville, Texas, and estimates $885 million gross output for the county it's based in, reports say*, Business Insider (Apr. 23, 2022), https://www.businessinsider.com/spacex-largest-employer-texas-brownsville-2022-4.

Defendants claim there is a strong interest in resolving labor disputes in forums where the actions will be felt.  That is no reason for transfer as the NLRB is alleging companywide unlawful labor practices and seeks companywide remedies.  Employees at SpaceX's two facilities in this District have as much an interest in the outcome of those allegations and the constitutionality of the proceedings used to prosecute and adjudicate them as SpaceX's California employees.

Nor is the underlying NLRB proceeding limited to a local union election or a localized dispute between two unions over a local port contract, as in the two cases Defendants cite.  *See Pac. Mar. Ass'n v. NLRB*, 905 F. Supp. 2d 55, 57 (D.D.C. 2012) (dispute between two local unions over a local port contract); *Lab. Corp. of Am. Holdings v. NLRB*, 942 F. Supp. 2d 1, 4 (D.D.C. 2013) (this "case is essentially a challenge to a union election that will take place in New Jersey"). As explained already, Defendants purport to seek relief beyond SpaceX's Hawthorne employees. And more importantly, this dispute is over the structure of Defendants' administrative agency. They are based in Washington, D.C., not Hawthorne, and the constitutionality of the NLRB's structure is in no sense a matter of merely localized concern for Hawthorne.  *See Walsh*, 2023 WL 2663256, at *4 ("Where parties 'are located across the state and across the country,' this is not the sort of 'localized case' where the citizens of Washington, D.C. have a greater 'stake' in the litigation than the residents of Amarillo."); *Garland*, 2023 WL 4851893, at *9 ("The citizens of the Lubbock Division have no lesser interest in the constitutionality of federal laws than do those in metroplexes such as Austin and Washington, D.C.").  This factor is either neutral or weighs in favor of adjudicating the dispute here in Brownsville.

### 3.    The familiarity of the forum with the law that will govern the case.

Defendants argue this factor is not relevant, Mot. to Transfer 19, and typically it would not be relevant because this action involves federal claims.  But given the complexity of the constitutional claims in this case, the similarity to the ones this Court recently addressed in *Bell*,

16

and the time pressure created by Defendants to obtain timely injunctive relief, this case presents a situation where this Court's "superior familiarity" with the claims asserted weighs against transfer. *See Def. Distributed*, 30 F.4th at 436. Although there are some key differences between the claims here and in *Bell*, this Court's overall familiarity with the legal issues in this case will create important efficiencies for quick adjudication of SpaceX's claims.

### 4. The avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

There is no risk of a conflict here, as Defendants agree. Mot. to Transfer 19. But Defendants' framing of their argument here again shows they fundamentally misunderstand their burden. They argue that "The District Court for the Central District of California is not at a disadvantage to this Court in resolving such claims." *Id.* But Defendants need to show the Central District of California is "clearly more convenient"—not just that it is "not at a disadvantage."

\*\*\*\*\*

In sum, neither the private nor public interest factors support transfer here. If anything, the factors show convenience and the interests of justice are best served by adjudicating the case in this District. Defendants come nowhere close to showing the "good cause" needed to overrule SpaceX's venue choice through proof that the Central District of California is "clearly more convenient." Transfer would be error under the Fifth Circuit's test for Section 1404(a).

### C. Defendants' forum-shopping accusations are meritless.

As Defendants cannot carry their burden, they spend much of their brief accusing SpaceX of improper forum shopping. As addressed supra at p. 10, SpaceX had ample reason to believe that the federal government would not contest venue in Brownsville.

But even putting that aside, SpaceX's subjective motivations are irrelevant under Fifth Circuit law. A litigant is entitled "to select the forum that [it] considers most receptive to [its] cause," and "[t]he motive of the suitor in making this choice is ordinarily of no moment." *McCuin*

17

*v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir. 1983); *see also Walsh*, 2023 WL 2663256, at *6 (citing *McCuin*, 714 F.2d at 1261).   Although the Fifth Circuit has explained that a plaintiff's privilege in choice of venue is not unlimited—hence the availability of transfer where a defendant meets its burden—the privilege should be revoked only where the "open door [admits] those who seek not simply justice but perhaps justice blended with some harassment." *Volkswagen*, 545 F.3d at 313 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). Defendants' out-of-circuit cases on this topic thus carry no weight.   *See* Mot. to Transfer 19 n.92. Having to litigate in this forum is hardly a form of harassment.

Remarkably, Defendants seek to use the existence of apposite Fifth Circuit precedent, *SEC v. Jarkesy*, 34 F.4th 446 (5th Cir. 2022), as an affirmative reason to transfer this case.   Mot. to Transfer 12, 17, 20.   They cite no authority that authorizes a district court to transfer a case so that one of the litigants can avoid applicable circuit precedent.   And it is improper and disturbing for the federal government to try to escape to a perceived friendlier venue based on the possibility that applicable law might classify its operations as unconstitutional.

Defendants' discussion of anticipatory suits is wholly off base.   *See* Mot. to Transfer 10-12.   That doctrine applies to efforts to deprive "the 'true plaintiff'" of its chosen forum by filing a declaratory judgment action, but only where the two lawsuits "involv[e] the same issues." *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. 07-cv-2183, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008); *see also Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003) ("Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'").   Here, SpaceX sought injunctive and declaratory relief in response to an already-filed unconstitutionally structured administrative proceeding, as Supreme Court

precedent permits. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010). Defendants do not claim that **they** intended to file a suit elsewhere to litigate with SpaceX about the constitutionality of the NLRB's structure.

The imminent Section 10(j) determination does not make this litigation anticipatory, either. SpaceX's theory here is simple—if the Board's Members authorize 10(j) relief, they must recuse from adjudicatory functions on those same allegations. Compl., ¶ 130. SpaceX's theory at this point in the litigation logically *cannot* be a contention that Section 10(j) relief fails on the merits, because no Section 10(j) action yet exists, no contours of such an action have been defined, and thus there are no "merits" to argue. Tellingly, Defendants do not contend the NLRB actually will seek Section 10(j) relief—only that "the matter is being considered." Mot. to Transfer 11 n.59. And for all their protests about forum-shopping, Defendants never explain why their "usual choice of venue in Section 10(j) cases" should override SpaceX's forum preferences here. *See id.* at 12.

## III.   The Court should decide the preliminary injunction and transfer motions together.

Finally, Defendants argue that a procedural knot may result if this Court does not address the venue motion before the preliminary injunction motion. Those concerns are overstated and ignore the procedural complications that would arise from an erroneous transfer. One only need look to *Defense Distributed,* where the Fifth Circuit reversed the district court's decision to transfer part of the case to the District of New Jersey, but did so after the transfer had been effected, and the District of New Jersey refuses to give the case back. *See Defense Distributed v. Bruck*, 30 F.4th 414, 421 (5th Cir. 2022); *Def. Distributed v. Platkin*, 55 F.4th 486, 489 (5th Cir. 2022).

Ruling on the preliminary injunction motion before, or together with, the motion to transfer would not create any procedural complications. It is unclear how this would create the "potential for conflicting orders" between the Fifth Circuit and the Ninth Circuit, as Defendants claim. Mot. to Transfer 9. As Defendants concede, an injunction ruling of this Court would be appealable to

the Fifth Circuit.  *Id.* at 8-9.  Even if this Court granted transfer and one side appealed the preliminary injunction ruling to the Fifth Circuit, proceedings in the transferee court would turn to summary judgment and potential final remedies, such as a permanent injunction and/or declaratory relief.  The biggest risk of a procedural "thicket" would be if this Court granted transfer and was later reversed, after the transfer already was already complete.  *Platkin*, 55 F.4th at 491.

Defendants also err in arguing in the motion to expedite briefing that this Court lacks authority to grant the preliminary injunction at the same time as ruling on the motion to transfer. Dkt. No. 54 (Expedite Reply), at 1.  Defendants' cited cases address circumstances where the interests of justice may warrant *dismissal* under Rule 12(b)(3) rather than transfer to another forum. *See Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 902-03 (8th Cir. 1987) (reversing grant of injunction and denial of motion to dismiss or transfer for improper venue); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.2d 312, 317 (D.C. Cir. 1985) (vacating denial of preliminary injunction and remanding with instructions to dismiss).  But, where, as here, Defendants concede the interests of justice and exigencies favor transfer, the same equitable considerations favor a speedy resolution of the preliminary injunction motion.  Particularly when Defendants concede that improper venue does not undermine this Court's jurisdiction, Dkt. No. 54 (Expedite Reply), at 2, the Court has authority to issue an injunction either before or in tandem with a ruling on the venue motion.  *See, e.g.*, *Polymer80, Inc. v. Garland*, No. 23-cv-29, 2023 WL 3605430, at *1, *5 (N.D. Tex. Mar. 19, 2023).  And not even Defendants dispute that the Court may appropriately issue an injunction if venue is proper, even if the Court decides to transfer under Section 1404(a).  *See* Dkt. No. 49 (Expedite Opposition), at 4-6; Dkt. No. 54 (Expedite Reply), at 2 n.1.

## CONCLUSION

For all these reasons, the Court should deny Defendants' Motion to Transfer.

Dated: February 1, 2024

Respectfully submitted,

By:     *s/ Catherine L. Eschbach*

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
David G. Oliveira
10225 N. Tenth Street
McAllen, TX 78504
doliveira@rofllp.com
(956) 393-6300

**MORGAN LEWIS & BOCKIUS LLP**
Catherine L. Eschbach
Attorney-In-Charge
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
(713) 890-5719

Harry I. Johnson, III (*pro hac vice*)
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
harry.johnson@morganlewis.com
(310) 907-1000

Michael E. Kenneally (*pro hac vice*)
Amanda L. Salz (*pro hac vice*)
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
michael.kenneally@morganlewis.com
amanda.salz@morganlewis.com
(202) 739-3000

*Attorneys for Plaintiff*
*Space Exploration Technologies Corp.*

### CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

s/ *Catherine L. Eschbach*
Catherine L. Eschbach

# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>**Defendants.** | Civil Action No. 1:24-cv-00001 |

### DECLARATION OF MICHAEL CRAMER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER

Pursuant to 28 U.S.C. § 1746, I, Michael Cramer, declare as follows:

1.      I am a Senior Engineer in Information Technology (IT) Systems Engineering at Space Exploration Technologies Corp. ("SpaceX").

2.      In this role, among other things, I install, configure, and test operating systems, application software, and system management tools.  I am based at SpaceX's offices in Hawthorne, CA.

3.      In my role I have access to certain of SpaceX's digital records and databases and the data they contain.

4.      On June 15, 2022, a small group of SpaceX employees distributed an Open Letter to all SpaceX Executives (the "Open Letter") to almost all SpaceX employees across all SpaceX facilities—including Starbase, the Houston facility, and SpaceX's other Texas facilities—over several different SpaceX platforms and channels of communication, including email, Confluence, SharePoint, and Microsoft Teams.

5.      Confluence is a commercial software used to create virtual workspaces where employees can create, discuss, and collaborate on projects.  SpaceX maintains internal Confluence pages and message boards where employees can create and share content, such as meeting notes or project plans, and post "comments" on the page to engage with each other. Sharepoint is a similar platform in the Microsoft Office suite of products.  Microsoft Teams is a business communications platform that offers various conferencing and chat features.

6.      The Open Letter listed several "action items" and asked SpaceX employees to fill out a survey and also "to provide feedback" regarding the action items via both (a) multiple choice questions; and (b) an open essay question soliciting thoughts of employees on the Open

Letter, ideas for other actions beyond those included in the Open Letter, and general feedback. The Open Letter contained both a hyperlink and a QR code to access the survey.

7.      In connection with the federal litigation in this matter, I have used SpaceX's records and databases to identify the intentional interactions that SpaceX employees had with the Open Letter across the different SpaceX communication channels, quantify those interactions, and then group those interactions by the facility at which those employees were based.  Using the data in SpaceX's records, I generated an excel spreadsheet that captured all intentional interactions with the Open Letter at SpaceX's facilities, including its Starbase facility outside of Brownsville and its Houston, McGregor, and Bastrop facilities (in addition to SpaceX's other facilities).  The spreadsheet also identified which employees those interactions were attributable to for the purposes of quantifying the number of unique individuals at each facility that interacted with the letter and the number of intentional interactions by the employee.  The data set I used to do so reflected intentional interactions over the two-day period from June 15 to June 16, 2022.

8.      As part of this process, I analyzed the types of interactions to ensure they were likely to reflect an intentional act by an employee and then removed certain interactions attributable to automated back-end processes that did not reflect an independent interaction by the employee with the Open Letter.  There were, however, four types of interactions that I was unable to identify and could reflect an employee's action (i.e., might have been an intentional interaction with the letter, but also might not.)  As a result, I was able to identify a range of interactions that likely reflect intentional interactions by the employees—with the high end of that range including the four unidentifiable interactions and the low end of that range including only interactions likely to be intentional (the "Interaction Data").

9.      The Interaction Data shows that over the two-day period of June 15 to June 16, 2022, employees at Starbase had anywhere from 1,537 to 2,230 captured interactions with the Open Letter.  In the Houston facility, where only a handful of employees are based, those employees had 23 to 33 captured interactions with the Open Letter.  Employees based at SpaceX's McGregor facility had 820 to 1,170 captured interactions with the Open Letter.  Employees at the Bastrop facility—which was then under construction but is now home base for some 400 SpaceX employees and growing rapidly—had 108 to 151 captured interactions with the Open Letter.

10.     The Interaction Data reflects that most employees who interacted with the Open Letter did so multiple times over the two-day period of June 15 to June 16, 2022.

11.     For example, there were only six employees assigned to the Houston facility at that time.  The Interaction Data shows that four of those six employees had intentional interactions with the Open Letter.  Of those, one employee had 17 interactions, another had 7 interactions, and a third had 8 interactions.

12.     The Interaction Data for Starbase then reflects that approximately 211 unique employees interacted with the Open Letter over the two-day period of June 15 to 16, 2022 and shows that almost all those employees had multiple interactions.  On the high end, I identified individual employees with interaction counts as high as 35, 33, and 30 over the two-day period.  From my review, most Starbase employees who interacted with the Open Letter had at least five captured interactions.

13.     The Interaction Data captures voluminous raw data totaling approximately 30,891 rows in excel format reflecting the total number of captured interactions by SpaceX employees across all SpaceX facilities over the two-day period of June 15 to June 16, 2022.

14.     The Interaction Data most likely does not capture every digital employee interaction with the Open Letter at Starbase, the Houston facility, or SpaceX's other facilities. Based on my personal experience using QR codes and observing others' use of QR codes, any employee who scanned the QR code in the Open Letter likely would have done so using a cellular device's camera.  SpaceX does not have access to data from any such activity undertaken using employees' personal cellular devices.  As a result, I believe the above numbers likely represent a significant underestimation of the total employee digital interactions with the Open Letter across SpaceX's facilities over the two-day period of June 15 to June 16, 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February ___ 1 ___, 2024, in ___ Hawthorne, California ___.


Michael Cramer (Feb 1, 2024 10:03 PST)

_____

Michael Cramer

# Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION**<br>**TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. 1:24-cv-00001 |
| **v.** | |
| **NATIONAL LABOR RELATIONS**<br>**BOARD, a federal administrative agency,**<br>**JENNIFER ABRUZZO, in her official**<br>**capacity as the General Counsel of the**<br>**National Labor Relations Board, LAUREN**<br>**M. McFERRAN, in her official capacity as**<br>**the Chairman of the National Labor**<br>**Relations Board, MARVIN E. KAPLAN,**<br>**GWYNNE A. WILCOX, and DAVID M.**<br>**PROUTY, in their official capacities as**<br>**Board Members of the National Labor**<br>**Relations Board, and JOHN DOE in his**<br>**official capacity as an Administrative Law**<br>**Judge of the National Labor Relations**<br>**Board,** | |
| **Defendants.** | |

## DECLARATION OF STEVEN SCHMITZ IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER

Pursuant to 28 U.S.C. § 1746, I, Steven Schmitz, declare as follows:

1.      I am a Senior Manager, Starship Engineering at Space Exploration Technologies Corp. ("SpaceX").

2.      In this role, I am responsible for and manage a team responsible for the development of structures for the Starship rocket. I oversee a team consisting of 15 engineers; in the summer of 2022 I had a team of approximately 24 with another 6 in close association. I am based at SpaceX's Starbase facility in Boca Chica, Texas.

3.      I make the following declaration based on my personal knowledge.

4.      The team at Starbase is responsible for the design, manufacture, and launch of the Starship vehicle.

5.      I have been based at Starbase from November 2020 through today, including in the spring and summer of 2022. I was present at the Starbase facility on June 15 and June 16, 2022. Over that two-day period, while at Starbase, I received, via multiple company communication channels, what was styled as an "Open Letter" that asked employees to show support for the contents through a survey or other response opportunities.

6.      Based on my recollection, the spring and summer of 2022 were an extremely busy time at Starbase. The Starship team as a whole was focused on a number of firsts for the program: the first build of a flight booster; the first build of an orbital ship; the first integration of payload into the Starship vehicle. My team specifically was focused on several large milestones in our own realm of responsibility. We were finishing the integration of the first Starship with a functional payload bay, performing checkouts and tests on the new flight hardware, and performing detailed final analysis. My team was also in the midst of designing and building an entirely new payload integration facility.

7.      When the Open Letter was initially distributed on June 15, 2022 across multiple communication channels it became the focal point of discussion in the wider Starship team for approximately a week.  The response to the Open Letter varied significantly across the team with some voicing agreement with the sentiment of the Open Letter to others expressing dismay at a public letter that did not reflect their opinions.  The shared sentiment across the team however was generally one of confusion in how to juggle addressing the contents of the Open Letter, discussing whether the Open Letter was constructive, and carrying out the mission that we as a team had set out to achieve.

8.      For me personally the bulk of the week after the distribution of the letter was spent addressing the Open Letter.  I normally meet with each of my team members in person several times a week to work through technical topics and professional development.  During this period the majority of my direct and indirect employees approached me to talk about the contents of the letter instead of technical topics.  I estimate half of my employees experienced difficulty focusing on their work during this time.  Conversation with my peers during this time period also shifted away from technical topics to primarily the Open Letter as well as the discussion from our teams on the topic.

9.      In the week following the Open Letter's distribution, I dedicated one of my weekly technical staff meetings to addressing the Open Letter and its distribution.  The meeting was generally about the Open Letter as well as steering the team towards constructive means of engaging the content of the letter while remaining tightly focused on the mission at hand.

10.     At the time the Open Letter was distributed there was significant travel by SpaceX personnel assigned to the Hawthorne facility to the Starbase facility because it was needed to support Starship development activity.  As a result, it was not just Starbase-assigned

personnel experiencing disruption from the Open Letter, but also the many Hawthorne-based employees who were physically located at Starbase when the Open Letter was distributed.

11.    I recall that on June 16, 2022, while I was at Starbase, I received a company-wide email from Gwynne Shotwell asking employees to stay on mission and informing us that certain individuals had been terminated in response to the distraction caused by the Open Letter.

12.    I observed the reactions and distraction that Ms. Shotwell described in that email occur at Starbase.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February _1_, 2024, in _Hawthorne, CA_

_Steven Schmitz_
Steven Schmitz

# Exhibit C

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. 1:24-cv-00001 |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

## DECLARATION OF GWYNNE SHOTWELL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER

Pursuant to 28 U.S.C. § 1746, I, Gwynne Shotwell, declare as follows:

1.      I am the President and Chief Operating Officer at Space Exploration
Technologies Corp. ("SpaceX").

2.      My primary place of employment is SpaceX's Rocket Development and Test
Facility located in McGregor, Texas.

3.      A true and correct copy of an email I drafted and sent an email to Paige Holland-
Thielen on June 15, 2022 is attached as Exhibit A.

4.      A true and correct copy of an email I drafted and sent an email to all SpaceX
personnel at all SpaceX facilities, including its Texas facilities, on June 16, 2022 is attached as
Exhibit B.

5.      I was located in McGregor, Texas on June 15 and June 16, 2022.


I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

Executed on January 20, 2024, in Jonesboro, Texas

_____

Gwynne Shotwell

# Exhibit C-A

**From:** Gwynne Shotwell
**Sent:** Wednesday, June 15, 2022 2:57 PM
**To:** Paige Thielen
**Cc:** Brian Bjelde; Chris Cardaci; Lindsay Chapman; Shags O'Shaughnessy; Mark Juncosa; Anny Ning; tom.moline@spacex.com
**Subject:** Fwd: Is there an open letter for disagreeing with an open letter?

Paige et al — please stop flooding employees communications channels immediately.   I have received numerous emails just like the one below (and interestingly none thus far for the "open letter".).   I will consider your ignoring my email to be insubordination.

Instead, please focus on your job and the mission of SpaceX — to get humanity to Mars as quickly as possible.

Thank you,

G

Begin forwarded message:

> **From:** SpaceX Suggestion Box <suggestionbox@spacex.com>
> **Date:** June 15, 2022 at 2:24:43 PM CDT
> **To:** Gwynne Shotwell <Gwynne.Shotwell@spacex.com>
> **Subject: Is there an open letter for disagreeing with an open letter?**
>
> Hi Gwynne,
>
> Recently there have been a number of heavily-shared links in the SpaceX network concerning current events (both within and outside of the company). The publicity of these links (and the open letters frequently accompanying them) invites public support--not much debate or critique.
>
> "Look everyone, I've summarized what we're **all** thinking."
> "Good job! So glad we're **all** on the same page in [celebrating/condemning] [x event]."
>
> Perhaps it's no surprise, but I do not agree with these public statements. Ironically, the purported aim of "inclusivity" and "improving the workplace environment" is effectively ostracizing someone like me and decreasing my workplace productivity as I struggle to understand whether I'm on a different mission from my co-workers. The heightened sense of urgency surrounding these messages is distracting and distressing.
>
> I expect that you are more closely aligned with some of my peers than I am. Perhaps you share their concerns and their mission.
>
> This makes me feel like the only true dissenter, with no public square and e-mail chain ready to promote my stance that "this is detracting from the workplace environment as it's shifting our focus from Mars and hyper-focusing on divisive topics." Ironically, having a public square or e-mail chain or open letter is the exact opposite of what I want; I want to do my job and stop filtering through e-mails and **IMPORTANT!** Teams messages and open letters.
>
> My suggestion: have a team create an actual public square Teams channel or dedicated web application

where my peers can stand on their soap boxes and hold their public forums and yell and get worked up together without having to flood my various communication channels.

For what it's worth, I am actually one of the target demographics for the many support and DEI groups. I want out.

# Exhibit C-B

| | |
|---|---|
| **From:** | Gwynne Shotwell |
| **Sent:** | Thursday, June 16, 2022 8:53 PM |
| **To:** | Gwynne Shotwell |
| **Cc:** | Brian Bjelde |
| **Subject:** | Please stay focused on the SpaceX mission |

You may have received an unsolicited request from a small group of SpaceX employees for your signature on an "open letter" yesterday and your participation in a related survey. Based on diverse employee feedback, this has upset many. That is, the letter, solicitations and general process made employees feel uncomfortable, intimidated and bullied, and/or angry because the letter pressured them to sign onto something that did not reflect their views. Employees also complained that it interfered with their ability to focus on and do their work.  We have 3 launches within 37 hours for critical satellites this weekend, we have to support the astronauts we delivered to the ISS and get cargo Dragon back to flight-ready, and after receiving environmental approval early this week, we are on the cusp of the first orbital launch attempt of Starship. We have too much critical work to accomplish and no need for this kind of overreaching activism – our current leadership team is more dedicated to ensuring we have a great and ever-improving work environment than any I have seen in my 35-year career.

We solicit and expect our employees to report all concerns to their leadership, senior management, HR, or Legal. But blanketing thousands of people across the company with repeated unsolicited emails and asking them to sign letters and fill out unsponsored surveys during the work day is not acceptable, goes against our documented handbook policy, and does not show the strong judgment needed to work in this very challenging space transportation sector. We performed an investigation and have terminated a number of employees involved.

I am sorry for this distraction. Please stay focused on the SpaceX mission, and use your time at work to do your best work. This is how we will get to Mars.

# Exhibit D

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. 1:24-cv-00001 |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

**DECLARATION OF DONALD LECLERC IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER**

Pursuant to 28 U.S.C. § 1746, I, Donald Leclerc, declare as follows:

1.      I am a Manager in Operations Engineering for Human Resources at Space Exploration Technologies Corp. ("SpaceX").

2.      In this role, I set the data governance strategy and direct a team charged with the development and maintenance of infrastructure supporting the Human Resources information systems.  I am based at SpaceX's Cape Canaveral, Florida facility.

3.      In my role I have access to certain of SpaceX's digital records and databases and the data they contain.

4.      I queried our Human Resources analytics SQL database to return a headcount summary for the date June 15, 2022 using our daily Census report (the "Report"), which is a snapshot-in-time of various employee attributes including Name, Employee Number, Location, Employment Status, and Employee Type. The attributes in the daily Census are sourced from our production instance of Workday HCM and accurately reflect the values in Workday on the day of reporting. Census reports are not modified to update changes to these attribute values retroactively. For example, if an employee is hospitalized and not present at work for multiple days before Human Resources completes leave of absence documentation, the Census report will continue to show an Employment Status of Active until that documentation is finished. A backdated leave of a leave of absence start date in the Workday documentation does not retroactively edit the Census report.  Despite these minor discrepancies, the Census report is the tool that SpaceX regularly utilizes to estimate the number of employees it has on a given date.

5.      The Report reflects that on June 15, 2022, there were 1,691 total employees based at the spaceport, production, and development facility for Starship rockets located in Boca Chica, Texas ("Starbase").  This number includes regular employees, temporary employees, interns, and

persons on a leave of absence (the Report reflects 15 persons were on a leave of absence at that time).  The total number of active employees was 1,676.

6.      The Report reflects that on June 15, 2022, there were 6 total employees based at the human spaceflight mission operations and integration facility in Houston, Texas, all of whom were regular, active employees.

7.      The Report reflects that on June 15, 2022, there were 581 total employees based at SpaceX's Rocket Development and Test Facility located in McGregor, Texas.  This number includes regular employees, temporary employees, interns, and persons on a leave of absence (the Report reflects 14 persons were on a leave of absence at that time).  The total number of active employees was 567.

8.      This Report reflects that on June 15, 2022, there were 37 total employees based at SpaceX's Starlink manufacturing facility located in Bastrop, Texas.  This number includes regular employees, temporary employees, interns, and persons on a leave of absence (the Report reflects 1 person on a leave of absence at that time).  The total number of active employees was 36.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January  23  , 2024, in  Cape Canaveral, Florida


Donald Leclerc
_____
Donald Leclerc

# Exhibit E

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

|  |  |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>    **Defendants.** | Civil Action No. 1:24-cv-00001 |

**<u>DECLARATION OF KIMBERLY CHACON IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER</u>**

Pursuant to 28 U.S.C. § 1746, I, Kimberly Chacon, declare as follows:

1.      I am a Human Resources Business Partner at Space Exploration Technologies Corp. ("SpaceX").

2.      I am based at SpaceX's Starbase facility in Boca Chica, Texas.

3.      I make the following declaration based on my personal knowledge.

4.      I am a member of the leadership team for the Starbase Women's Network.

5.      I was based at Starbase during the spring and summer of 2022.  Over the two-day period of June 15 and 16, 2022, a document styled as an "Open Letter" was distributed via multiple company communication channels to personnel located at Starbase.

6.      To address concerns raised and disruption caused by the Open Letter's distribution, the Starbase Women's Network organized an event with Gwynne Shotwell, SpaceX's President and COO.  I was among the event's organizers.

7.      The event was titled "Q&A with Gwynne with the Women of Starbase" and occurred on Thursday, June 23, 2022.

8.      Gwynne Shotwell was physically present at Starbase in Boca Chica, Texas for the event on June 23.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January _30__, 2024, in Brownsville, TX.


_Kimberly Chacon_____

Kimberly Chacon

# Exhibit  F

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>**Defendants.** | Civil Action No. 1:24-cv-00001 |

**<u>DECLARATION OF MATTHEW A. HARPER IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER</u>**

Pursuant to 28 U.S.C. § 1746, I, Matthew A. Harper, declare as follows:

1.     I am an attorney in Morgan, Lewis, and Bockius LLP's Houston, Texas office and represent Plaintiff Space Exploration Technologies Corp. ("SpaceX") in the administrative proceeding before the National Labor Relations Board and related investigation of the Unfair Labor Practice charges.

2.     I make the following declaration based on my personal knowledge and review of Morgan, Lewis, and Bockius's records.

3.     I am licensed to practice law in Texas (Bar No. 24101176), and I am admitted in the Southern District of Texas (Fed. Bar No. 3158244).

4.     At all times relevant to my representation of SpaceX, I have been based in Morgan, Lewis, and Bockius's Houston, Texas office.

5.     I am among the attorneys for SpaceX listed on page 12 of the NLRB's administrative complaint as receiving notice.  I understand that document has previously been submitted as an exhibit in this matter.

6.     SpaceX received a demand letter from Anne Shaver, counsel for some of the Charging Parties in the NLRB proceeding, dated August 15, 2022.

7.     SpaceX engaged Morgan, Lewis, & Bockius to investigate the matter in August 2022.

8.     I have been personally involved in the investigation on SpaceX's behalf since August 2022.

9.     I am also personally involved in the preparations for SpaceX's defense in the NLRB administrative hearing currently scheduled for March 5, 2024.

10.     Based on my review of the billing records, to date Morgan, Lewis, & Bockius has dedicated more than 1,600 hours to SpaceX's defense in the NLRB unfair labor practices investigation and preparations for the administrative hearing.

11.     I personally have dedicated more than 400 hours to SpaceX's defense in the NLRB investigation and hearing preparations.

12.     During the course of my representation of SpaceX in the NLRB matter, I have observed SpaceX personnel across many facilities, including Starbase in Boca Chica, Texas, and SpaceX's other Texas facilities, and have observed these personnel taking time away from their normal job responsibilities to assist in preparing the company's defense.

13.     For example, I have observed that these SpaceX personnel have spent numerous hours responding to the NLRB's Requests for Evidence.

14.     Morgan, Lewis, & Bockius's preparation of SpaceX's defense for the March 5, 2024 NLRB hearing is currently making demands of, and will continue to make demands of, SpaceX personnel across many facilities, including Starbase and the other Texas facilities, to take time away from their normal job responsibilities.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 1, 2024, in Houston, Texas.

_____
Matthew A. Harper

3

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

|  |  |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>    **Defendants.** | Civil Action No. 1:24-cv-00001 |

**[PROPOSED] ORDER DENYING DEFENDANTS'**
**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C § 1406(a) AND § 1404(a)**

Upon consideration of Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) and § 1404(a) and the relevant filings and evidence attached thereto, the Court finds that Defendants have failed to show that venue is improper in the Southern District of Texas under 28 U.S.C. § 1391(e)(1) and the motion to transfer venue pursuant to 28 U.S.C. § 1406(a) is **DENIED**. The Court also finds that Defendants failed to show good cause to transfer venue pursuant to 28 U.S.C. § 1404(a), as they have not established based on the evidence and arguments that venue would be clearly more convenient in the Central District of California.

For the foregoing reasons, it is hereby ordered that the motion is **DENIED**.

**SO ORDERED** on February ___, 2024

_____
Rolando Olvera
United States District Judge

## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br>         Plaintiff, <br><br>    v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br>         Defendants. | Case No. 24-cv-0001 |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE
## PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a)

**TABLE OF CONTENTS**

Introduction ................................................................................................................. ii

Argument .................................................................................................................... 1

   1. This Court should transfer the case before addressing the merits. .................... 1

   2. Anticipatory forum-shopped suits, such as SpaceX's action here, can and should be transferred under 28 U.S.C. §§ 1406(a) or 1404(a). ...................................... 2

      a. This case is not about anything occurring in Texas; it is about enjoining agency action in California. .................................................................................... 3

      b. Despite its claims to the contrary, SpaceX's choice of venue is improper because it has filed an anticipatory suit to engage in forum-shopping. ......................... 5

   3. SpaceX's basis for asserting venue in the Southern District of Texas is vastly overshadowed by the events that transpired in California, making venue improper and justifying transfer under 28 U.S.C. § 1406(a). ........................................ 9

   4. Even assuming venue was not improper under 28 U.S.C. § 1406(a), the Board has shown the requisite good cause in favor of transfer to the Central District of California under 28 U.S.C. § 1404(a). ....................................................... 15

Conclusion ................................................................................................................ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aftab v. Gonzalez,*
    597 F. Supp. 2d 76 (D.D.C. 2009) ............................................................... 1

*Andrade v. Chojnacki,*
    934 F. Supp. 817 (S.D. Tex. 1996) ............................................................... 9

*Care One, LLC v. NLRB,*
    No. 2:23-cv-03221, 2023 WL 4156859 (D.N.J. June 23, 2023) ................... 1, 14, 18

*Christopher A.O. v. Kijakazi,*
    No. SACV 20-01356-AS, 2022 WL 1071511 (C.D. Cal. Mar. 11, 2022) ........... 7

*Corp. of Am. Holdings v. NLRB,*
    942 F. Supp. 2d 1 (D.D.C. 2013) ............................................................... 1, 18

*Curtis v. BP Am., Inc.,*
    808 F. Supp. 2d 976 (S.D. Tex. 2011) ......................................................... 1

*December 12, Inc.,*
    273 NLRB 1 (1984) ............................................................................... 11

*Decker Coal Co. v. Pehringer,*
    8 F.4th 1123 (9th Cir. 2021) ...................................................................... 8

*Defense Distributed v. Bruck,*
    30 F.4th 414 (5th Cir. 2022) ................................................................... 2, 15

*Distributed v. Platkin,*
    55 F.4th 486 (5th Cir. 2022) ...................................................................... 2

*Evergreen Media Holdings, LLC v. Safran Co.,*
    68 F. Supp. 3d 664 (S.D. Tex. 2014) ........................................................... 18

*Experian Info. Sols., Inc. v. FTC,*
    No. CIV. 3:00-CV-1631-H, 2001 WL 257834 (N.D. Tex. Mar. 8, 2001) ............ 9

*Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., L.P.,*
    No. H-07-637, 2007 WL 5186798 (S.D. Tex. Sept. 11, 2007) ....................... 3, 7

*Hendricks v. Bank of Am., NA,*
    408 F.3d 1127 (9th Cir. 2005) .................................................................... 2

*In re Horseshoe Entm't,*
    337 F.3d 429 (5th Cir. 2003) ..................................................................... 17

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ............................................................. 7, 15, 19

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) ...................................................................... 8

*Lake City Stevedores, Inc. v. Steamship Lumber Queen,*
    343 F. Supp. 933 (S.D. Tex. 1972) .............................................................. 19

*Lamont v. Haig,*
    590 F.2d 1124 (D.C.Cir.1978) .................................................................... 9

*Long v. Grafton Exec. Search, LLC,*
    263 F. Supp. 2d 1085 (N.D. Tex. 2003) ...................................................... 13

*Maria C. v. Kijakazi,*
   No. CV 21-3221-AS, 2022 WL 17216581 (C.D. Cal. June 13, 2022) ...................................... 7
*Maysaroh Am. Arab Commc'ns & Translation Ctr., LLC,*
   51 F. Supp. 3d 88 (D.D.C. 2014) ................................................................................ 9, 14
*McCuin v. Tex. Power & Light Co.,*
   714 F.2d 1255 (5th Cir. 1983) ................................................................................................ 7
*Mill Creek Press, Inc. v. Thomas Kinkade Co.,*
   No. 3:04-CV-1213-G, 2004 WL 2607987 (N.D. Tex. Nov. 16, 2004) ................................ 3, 7
*Mission Ins. Co. v. Puritan Fashions Corp.,*
   706 F.2d 599 (5th Cir.1983) ........................................................................................ 2, 3, 7, 8
*Mizell v. Prism Comput. Corp.,*
   27 F. Supp. 2d 708 (S.D. Miss. 1998) ........................................................................ 15, 17, 19
*909 Corp. v. Vill. of Bolingbrook Police Pension Fund,*
   741 F. Supp. 1290 (S.D. Tex. 1990) ....................................................................................... 3, 7
*Nken v. Holder,*
   556 U.S. 418 (2009) ................................................................................................................ 16
*Onyeneho v. Allstate Ins. Co.,*
   466 F. Supp. 2d 1 (D.D.C. 2006) ............................................................................................ 7, 9
*Pac. Mar. Ass'n v. NLRB,*
   905 F. Supp. 2d 55 (D.D.C. 2012) ........................................................................................ 1, 18
*Paragon Indus., L.P. v. Denver Glass Mach., Inc.,*
   No. CIV.A. 3-07CV2183-M, 2008 WL 3890495 (N.D. Tex. Aug. 22, 2008)................. 2, 3, 7, 8
*Reyes De Perez v. Cont. Freighters, Inc.,*
   No. 5:06-cv-02, 2006 WL 3053400 (S.D. Tex. Oct. 26, 2006)............................................... 16
*Sangha v. Navig8 ShipManagement Priv. Ltd.,*
   882 F.3d 96 (5th Cir. 2018) .................................................................................................... 2
*Schmid Labs., Inc. v. Hartford Accident & Indem. Co.,*
   654 F. Supp. 734 (D.D.C. 1986) ............................................................................................ 7
*Seariver Mar. Fin. Holdings, Inc. v. Pena,*
   952 F. Supp. 455 (S.D. Tex. 1996) ........................................................................................ 10
*Sherwin-Williams Co. v. Holmes Cnty.,*
   343 F.3d 383 (5th Cir. 2003) ................................................................................................ 8
*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,*
   549 U.S. 422 (2007)................................................................................................................ 1
*Sioux City & New Orleans Barge Lines, Inc. v. Miss. Towing Corp.,*
   221 F. Supp 737 (S.D. Tex. 1963) .................................................................................. 15, 19
*Space Exploration Technologies Corp. v. Bell.,*
   2023 WL 8885128 (S.D. Tex. 2023)....................................................................................... 5
*Spiegelberg v. Collegiate Licensing Co.,*
   402 F. Supp. 2d 786 (S.D. Tex. 2005)........................................................................ 16, 17, 18
*State St. Cap. Corp. v. Dente,*
   855 F. Supp. 192 (S.D. Tex. 1994) ........................................................................................ 16
*Texas v. United States,*
   95 F. Supp. 3d 965 (N.D. Tex. 2015) ............................................................................... 13, 14
*Total Gas & Power N. Am., Inc. v. FERC,*
   2016 WL 3855865 (S.D. Tex. July 15, 2016) ........................................................................ 9

*Total Gas & Power N. Am., Inc. v. FERC,*
  859 F.3d 325 (5th Cir. 2017) ........................................................................... 9
*Turner & Newall, PLC v. Canadian Universal Ins. Co.,*
  652 F. Supp. 1308 (D.D.C. 1987) ............................................................... 7, 19
*Uffner v. La Reunion Francaise, SA,*
  244 F.3d 38 (1st Cir. 2001) ........................................................................... 13
*Zoltar Satellite Systs., Inc. v. LG Elecs. Mobile Commc'ns Co.,*
  402 F. Supp. 2d 731 (E.D. Tex. 2005) ...................................................... 15, 19

**Statutes**

28 U.S.C. § 1391 ............................................................................................... 7
28 U.S.C. § 1391(e)(1)(C) .................................................................................. 5
28 U.S.C. § 1391(e)(1)(D) .................................................................................. 5
28 U.S.C. § 1391(e)(2) ....................................................................................... 5
28 U.S.C. § 1404(a) ................................................................................... passim
28 U.S.C. § 1406(a) ................................................................................... passim
29 U.S.C. §§ 107, 113 ...................................................................................... 16

**Rules**

Fed. R. Civ. P. 45(c) ........................................................................................ 17

**Other Authorities**

15 Fed. Prac. & Proc. Juris. § 3854 .................................................................. 19

## INTRODUCTION

The California office of a California company fires eight employees, almost all of them based in California. The California regional office of a federal agency reviews the matter, finds merit to charges alleging that the firings were unlawful, and issues a complaint setting the case for a California hearing. According to SpaceX, a challenge to this proceeding may be heard in Texas. This not only sounds wrong, it *is* wrong. A close analysis of the applicable factual and legal considerations confirms that SpaceX's venue arguments are meritless.

SpaceX should not be permitted to use this Texas forum to halt proceedings with virtually no connection to Texas. SpaceX's contrary arguments establish, at most, a nexus that is insubstantial in relation to the totality of events at issue here. This is dispositive under 28 U.S.C. §1406(a), as is SpaceX's effort to forum-shop this anticipatory suit—reason enough to grant Defendants' motion and transfer the matter to the Central District of California. But even if venue is proper under 28 U.S.C. §1406(a), this Court should still transfer under 28 U.S.C. §1404(a), as Defendants have shown the requisite good cause, particularly in the interest of justice.

## ARGUMENT

**1. This Court should transfer the case before addressing the merits.**

"Adjudicative efficiency favors resolving the venue issue before addressing" any other issue.[1] A case may be transferred before determining other threshold or merits issues,[2] and this

---

[1] *Aftab v. Gonzalez,* 597 F. Supp. 2d 76, 79 (D.D.C. 2009); *see also* Doc. 29 at 9 n.49.

[2] *See, e.g., Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007); *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 983 (S.D. Tex. 2011); *Care One, LLC v. NLRB,* No. 2:23-cv-03221, 2023 WL 4156859, at *6 (D.N.J. June 23, 2023); *Lab. Corp. of Am. Holdings v. NLRB,* 942 F. Supp. 2d 1 (D.D.C. 2013); *Pac. Mar. Ass'n v. NLRB,* 905 F. Supp. 2d 55, 58-59 (D.D.C. 2012) (transferring to the District of Oregon); and cases cited therein.

Court has "considerable leeway" in deciding this order of operations issue.[3] Because a determination of proper venue is "a logical predicate to" granting preliminary relief, this Court should decide Defendants' Motion to Transfer as the first order of business.[4]

In response, SpaceX claims, somehow, that ruling on the preliminary injunction motion before or together with the motion to transfer would not create any procedural complications.[5] But it then concedes that should the Court resolve SpaceX's motion for a preliminary injunction, and either simultaneously or subsequently grant Defendants' transfer motion, parties could appeal the injunction ruling in the Fifth Circuit on a case that has been transferred to the Central District of California.[6] That is precisely the headache that ruling *first* on the transfer would avoid. This Court should transfer the case and leave the Central District of California, which is where the controversy arose, to consider the complex constitutional claims raised by SpaceX.[7]

**2. Anticipatory forum-shopped suits, such as SpaceX's action here, can and should be transferred under 28 U.S.C. §§ 1406(a) or 1404(a).**

As previously noted,[8] the Fifth Circuit and various Texas courts, including this Court, have long recognized that a plaintiff's choice of venue should be accorded little to no weight "when a party files a declaratory judgment action, in anticipation of suit by its adversary."[9]

---

[3] *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (cleaned up).

[4] *Hendricks v. Bank of Am., NA*, 408 F.3d 1127, 1134 (9th Cir. 2005) (cleaned up).

[5] Doc. 64 at 19.

[6] *Id*. at 19-20.

[7] *Defense Distributed v. Bruck*, 30 F.4th 414, 421 (5th Cir. 2022), and *Def. Distributed v. Platkin*, 55 F.4th 486, 489 (5th Cir. 2022), Fifth Circuit mandamus cases, do not aid SpaceX's cause. Those cases, where claims were severed and transferred to another court which refused to give back jurisdiction, show the need for transfer motions to be decided as early as possible.

[8] Doc. 29 at 10-11.

[9] *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008); *see also Mission Ins. Co. v. Puritan Fashions Corp.*,

"Anticipatory suits are disfavored because they are an aspect of forum-shopping."[10] They "deprive a potential plaintiff of his choice of forum, [and are] also one of the compelling circumstances courts cite when declining to apply the first-filed rule."[11] That is because such anticipatory suits "subvert[] the real plaintiff's advantage in choosing the forum" and create "disincentives to responsible litigation by rewarding the winner of a race to the courthouse."[12]

Here, SpaceX's suit is an "action for declaratory and injunctive relief."[13]  It is aimed at interfering with litigation by the real plaintiffs: the General Counsel of the National Labor Relations Board (NLRB), who alleges that SpaceX unlawfully terminated eight employees for their involvement in drafting and distributing an Open Letter, and the Board itself, should it authorize action in the Central District of California under Section 10(j). The General Counsel, not SpaceX, is the party seeking to alter the present status quo, and hence the real plaintiff.

> ### a. This case is not about anything occurring in Texas; it is about enjoining agency action in California.

This case stems from eight ULP charges filed with the NLRB's Region 31, based in Los Angeles, California.[14] The charges were filed on behalf of eight employees who were terminated

---

[10] *Mission Ins. Co.,* 706 F.2d at 602 n.3.

[11] *Frank's Tong Service, Inc.*, 2007 WL 5186798, *4.

[12] *Paragon Indus.*, 2008 WL 3890495, at *4 (discussing *Mill Creek Press, Inc. v. Thomas Kinkade Co.,* No. 3:04-CV-1213-G, 2004 WL 2607987, *7 (N.D. Tex. Nov. 16, 2004)); *see also 909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990) ("The Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit in a different forum.").

[13] Doc. 1 ("Compl.") at 1.

[14] Doc. 29 at 3 n.16; Doc. 18 ¶¶ 3-4; Doc. 74 at 6 (citing Doc. 20 ¶¶ 13-14; Doc. 22 ¶¶ 12-13; Doc. 21 ¶¶ 12-13; Doc. 19 ¶¶ 14-15 & Doc. 19-1).

by SpaceX for their involvement in drafting and distributing an Open Letter ("Terminated Employees").[15] Seven of the Terminated Employees lived in California and all eight reported to or were supervised by managers at the SpaceX facility in Hawthorne, California (the "Hawthorne Facility").[16] The Open Letter was sent from and drafted in California after a series of meetings at the Hawthorne Facility and nearby locations.[17] SpaceX's principal place of business is the Hawthorne Facility, where SpaceX is also headquartered.[18]

Following a year-long investigation by Region 31, the Region advised SpaceX that the Agency was considering Section 10(j) injunction proceedings, which would be filed in the Central District of California.[19] The Region also found merit to the charges and issued an administrative complaint ("ULP Complaint"), on behalf of the General Counsel.[20] That complaint alleges a course of unlawful conduct by SpaceX supervisors and agents taking place nearly entirely at the Hawthorne Facility.[21] The ULP Complaint contains no reference to Texas; it includes a notice setting a hearing on March 5, 2024 in Los Angeles.[22]

---

[15] Doc. 29 at 3 n.16; Doc. 74 at 5 (citing Doc. 20 ¶ 9; Doc. 22 ¶ 8; Doc. 21, ¶ 8; Doc. 19 ¶ 10).

[16] Doc. 29 at 3 n.16 (noting seven of eight Terminated Employees lived in California and worked at the Hawthorne Facility; the eighth resided in Washington but was managed from Hawthorne.).

[17] Doc. 74 at 5 (citing Doc. 20 ¶ 9; Doc. 22 ¶ 8; Doc. 21, ¶ 8; Doc. 19 ¶ 10); Doc. 21 ¶ 10.

[18] Doc. 29 at 3-4 n.17.

[19] *Id*. at 4 n.20.

[20] *Id*. at 4 n.21.

[21] *Id*. at 4-5 n.22-25; *see also* Doc. 31 (sealed exhibit to Doc. 29, "ULP Compl.") ¶¶ 6, 8-10, 12-13, 19-20, 24-28 (concerning conduct alleged to have occurred at the Hawthorne Facility over several days); ULP Compl. ¶¶ 21-23 (regarding conduct affecting one employee that was alleged to have occurred in Redmond, Washington on a single day); Doc. 73 at 5-6 (alleging that various named SpaceX supervisors and agents attended meetings with Terminated Employees in Hawthorne as part of a retaliatory campaign leading to their termination).

[22] Doc. 29 at 5 n.26, n.27.

None of the Terminated Employees "have any relationship with the State of Texas."[23]

None of the named Defendants reside there.[24] Indeed, not even SpaceX resides in Texas.[25] It is a

resident of California.[26] And there is no question that SpaceX could have brought the instant

action in the Central District of California, where it resides, under 28 U.S.C. § 1391(e)(1)(C),

and where the overwhelming majority of operative events giving rise to SpaceX's suit occurred,

under 28 U.S.C. § 1391(e)(1)(D).[27] SpaceX does not contest any of these points except to claim

venue is also proper in Texas. But, as will be shown below in Section 3, SpaceX's attempt to

establish a basis for venue in the Southern District of Texas is not only insubstantial, it is also

eclipsed by the overwhelming weight of events arising out of the Central District of California.

### b. Despite its claims to the contrary, SpaceX's choice of venue is improper because it has filed an anticipatory suit to engage in forum-shopping.

SpaceX attempts to mask its forum-shopping by pointing to *Space Exploration

Technologies Corp. v. Bell*.[28] SpaceX claims that *Bell* involved a very similar constitutional

challenge by SpaceX with similar venue facts.[29] But venue was not litigated in *Bell*, thus the

district court had no occasion to opine on whether venue was proper. Moreover, *Bell* involved

---

[23] *Id*. at 3 n.16 (quoting Doc. 18 ¶12).

[24] Doc. 29 at 6, and cases authorities therein.

[25] 28 U.S.C. § 1391(e)(2) (a corporate plaintiff resides "only in the judicial district in which it maintains its principal place of business.").

[26] With several of the Terminated Employees alleging that SpaceX forced them to sign employment agreements requiring them to adjudicate all employment related disputes in California, SpaceX apparently also has a strong preference for litigation in California. Doc. 73 at 11 (citing Doc. 20 ¶¶ 16-17, Doc. 22 ¶¶ 15-16, Doc. 21 ¶ 16; Doc. 19 ¶¶ 17-18).

[27] Most importantly, the Central District of California is where Region 31's year-long investigation was based, where an action for Section 10(j) relief would be filed, and where the hearing that SpaceX seeks to enjoin is scheduled to take place.

[28] No. 1:23-cv-00137, 2023 WL 8885128 (S.D. Tex. 2023) (Olvera, J.).

[29] Doc. 64 at 10.

materially different venue facts. In *Bell*, the administrative complaint expressly challenged

SpaceX's "nationwide recruitment efforts."[30] That complaint also expressly alleged that "SpaceX

discriminated against asylees and refugees throughout its hiring process, including during

recruiting, screening, and selection, in violation of the Immigration and Nationality Act."[31]

Importantly, the administrative complaint did not identify any individual applicant by name,

contained few geographic markers indicating a focal point of activity, and did not specify a

location for an administrative hearing.[32]

In stark contrast, the NLRB's administrative case is principally focused on SpaceX's

termination of eight employees from SpaceX's headquarters in California. The ULP Complaint

includes numerous allegations of SpaceX agents taking specific actions in California against

those eight employees because of the Open Letter drafted and sent from California. Meanwhile,

SpaceX's Texas suit seeks to enjoin the Board's Region 31 in Los Angeles from proceeding with

a hearing scheduled to take place there and to enjoin the Board from filing a petition before the

Central District of California under Section 10(j) of the National Labor Relations Act. *Bell* is

thus of little value in guiding this Court's venue analysis.

SpaceX also cites to *Bell* to claim that it chose this forum because of its familiarity with

the complex constitutional issues raised in both cases.[33] But it's far from clear that this Court has

any advantage in experience; the Central District of California has addressed numerous

---

[30] OCAHO Compl. ¶ 36, *Space Expl. Techs. Corp. v. Bell*, No. 1:23-cv-00137 (S.D. Tex. Sept. 26, 2023), ECF No. 11-2.

[31] *Id*. ¶ 1; *see also id.* ¶ 13.

[32] The administrative complaint in *Bell* never identified any alleged discriminatee by name. It did not name anyone alleged to have engaged in misconduct. And despite many specific allegations of misconduct, OCAHO Compl. ¶¶ 30-33, 39-53, it barely had any geographic markers. It referred to California thrice, Georgia twice, and Delaware once. *Id*. ¶¶ 7, 12, 34, 41, 47.

[33] Doc. 64 at 10.

removability-based challenges to agency action.[34] Those challenges are not on all fours here, but neither is *Bell*, where SpaceX attacked a different statutory scheme establishing a very different adjudicatory structure and providing quite different remedial powers. Moreover, none of the counts in *Bell* alleged—as SpaceX does here—that unlawful bias necessarily results if agency adjudicators authorize litigation seeking temporary injunctive relief. Thus, the experience this Court has from *Bell* is of limited benefit.

SpaceX's invocation of *McCuin v. Texas Power & Light Co.* is also inapt.[35] There, the Fifth Circuit noted that a plaintiff's motive in choosing a forum "is ordinarily of no moment."[36] However, the Fifth Circuit has recognized that courts have an important role to play in preventing forum-shopping, especially in anticipatory suits such as this.[37] SpaceX quibbles with Defendants' citation to out-of-circuit cases.[38] But they comport with numerous Texas and Fifth Circuit decisions warning courts against entertaining forum-shopped suits.[39]

---

[34] *See e.g. Maria C. v. Kijakazi*, No. CV 21-3221-AS, 2022 WL 17216581, at *3 (C.D. Cal. June 13, 2022); *Christopher A.O. v. Kijakazi*, No. SACV 20-01356-AS, 2022 WL 1071511, at *8 (C.D. Cal. Mar. 11, 2022).

[35] Doc. 64 at 17-18 (citing *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir. 1983)).

[36] *McCuin*, 714 F.2d at 1261-62.

[37] *Mission Ins.*, 706 F.2d at 602 n.3; *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) ("[C]ourts should prevent plaintiffs from abusing their [choice of venue] privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a).").

[38] Doc. 64 at 18 (citing Doc. 29 at 19 n.92, which in turn cites to *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 5 (D.D.C. 2006), *Turner & Newall, PLC v. Canadian Universal Ins. Co.*, 652 F. Supp. 1308, 1312 (D.D.C. 1987), and *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*, 654 F. Supp. 734, 736 (D.D.C. 1986).

[39] *Mission Ins.*, 706 F.2d at 602 n.3; *In re Volkswagen*, 545 F.3d at 313; *Paragon Indus.*, 2008 WL 3890495, at *4; *Frank's Tong Serv.*, 2007 WL 5186798, at *4; *Mill Creek Press.*, 2004 WL 2607987, at *7; *909 Corp.*, 741 F. Supp. at 1292.

As to SpaceX's claim that Defendants "cite no authority that authorizes a district court to transfer a case so that one of the litigants can avoid applicable circuit precedent,"[40] this has it precisely backwards. It is SpaceX that seeks to avoid the properly applicable Ninth Circuit precedent by manufacturing venue in the wrong circuit.[41] Moreover, Defendants repeatedly cite to the Fifth Circuit's decision in *Mission Insurance Co. v. Puritan Fashions Corp.*, in which the Fifth Circuit lists three indications that the case was forum-shopped, all of which came down to avoiding applicable circuit law.[42] And in *Mission Insurance*, the Fifth Circuit took the more aggressive step of outright dismissing the anticipatory suit.[43]

Finally, SpaceX asserts that Defendants' discussion of anticipatory suits is off base because that doctrine only applies where two lawsuits involve the same issues.[44] But SpaceX *has* raised the four Counts in its complaint in this case as affirmative defenses in the Region's ULP

---

[40] Doc. 64 at 18.

[41] *Compare, e.g., Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1132 (9th Cir. 2021) (rejecting the notion that "all two-level for-cause protections for inferior officers [are] unconstitutional"), *with Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022) (reaching opposite conclusion and holding that "[t]wo layers of for-cause protection" is forbidden under "Supreme Court precedent"), *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023).

[42] *See* 706 F.2d at 602 n.3 (dismissing Texas suit and identifying three examples of more favorable precedent available in a California suit); Doc. 29 at 10 nn.52-53.

[43] 706 F.2d at 602 n.3.

[44] Doc. 64 at 18 (citing *Paragon Indus.*, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008), and *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003)).

proceedings.[45] In sum, Fifth Circuit case law as to forum-shopped anticipatory suits is directly

applicable and this Court should transfer this action to the Central District of California.[46]

3. **SpaceX's basis for asserting venue in the Southern District of Texas is vastly overshadowed by the events that transpired in California, making venue improper and justifying transfer under 28 U.S.C. § 1406(a).**

In asserting venue here, SpaceX asks this Court to ignore the "overwhelming majority" of

events taking place in California.[47] But the proper analysis calls for a "commonsense appraisal"

of the "totality of events" to determine which have "operative significance in that case."[48] And

---

[45] Exhibit A (SpaceX's Answer to the ULP Complaint) at 8-9 (also raising elsewhere in its affirmative defenses additional claims that are not before this Court). SpaceX's fifth affirmative defense to the ULP complaint raises the same issue of ALJ removability as in Count I. *Id.* at 8. Its sixth and seventh affirmative defenses similarly mirror Count II as to Board member removability. *Id.* at 8-9. SpaceX's eighth affirmative defense regarding the Seventh Amendment parrots Count III. *Id.* at 9. Finally, its ninth and tenth affirmative defenses as to due process considerations associated with a possible suit seeking injunctive relief under Section 10(j), are essentially the same claim as in Count IV. *Id.*

[46] *See* above at n.51; *see also Total Gas & Power N. Am., Inc. v. FERC*, 2016 WL 3855865, at *22-25 (S.D. Tex. July 15, 2016) (dismissing declaratory action filed shortly after FERC staff announced intent to recommend enforcement proceedings; plaintiff who files a declaratory action in those circumstances is engaging in "forum shopping" because "[t]he essence of [the] claims is that a district court forum would be more favorable than the agency process"), *aff'd on other grounds*, 859 F.3d 325 (5th Cir. 2017).

[47] *See Maysaroh Am. Arab Commc'ns & Translation Ctr., LLC*, 51 F. Supp. 3d 88, 93-95 (D.D.C. 2014) (transferring case under 28 U.S.C. § 1406(a) despite allegations of forced labor within its district because "the overwhelming majority of events giving rise to plaintiff's claims occurred" in another district); *Andrade v. Chojnacki*, 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996) (district courts "should not accept venue if the activities that transpired in the forum district were insubstantial in relation to the totality of events giving rise to Plaintiffs' claims").

In *Maysaroh,* 51 Supp. 3d at 93, the district court expressly distanced itself from the "*most substantial*" event standard that SpaceX says [at Doc. 64 at 8] the Southern District of Texas improperly applied in *Andrade*, 934 F. Supp. at 827 n.18. But however the standard is articulated, the Board has shown not only that the most substantial events took place in the Central District of California, but also that the overwhelming weight of events giving rise to SpaceX's suit arose (and is arising) out of the Central District of California. *See Experian Info. Sols., Inc. v. FTC*, No. CIV. 3:00-CV-1631-H, 2001 WL 257834, at *3 (N.D. Tex. Mar. 8, 2001) (prior consent order in district court did not support venue to review agency action challenged on constitutional grounds).

[48] *Lamont v. Haig*, 590 F.2d 1124, 1134 & n.62 (D.C.Cir.1978).

significantly, the relevant inquiry focuses on where a defendant engaged in the conduct that gives rise to a plaintiff's claims.[49] As shown below, SpaceX continually attempts to shift focus to impacts of Defendants' administrative proceedings to itself, but *Seariver* explains why this Court's focus should remain on where Defendants' complained-about activities took place.

SpaceX begins its defense by pounding on keystrokes. It insists that *at least* 215 people in this district interacted electronically with the Open Letter and that they did so for a total of 1,560 to 2,263 "intentional interactions."[50] SpaceX does not say how this compares with interactions among those at SpaceX's headquarters in California, where the employees organized the Open Letter. Nor does SpaceX acknowledge that these 215 individuals based in the Southern District of Texas make up a tiny fraction of its "more than 13,000 employees" nationwide.[51] Regardless, the interactions among SpaceX employees in this district with an Open Letter drafted and sent from California are as sound a basis for venue as the murmurings among Texas employees after Sunday's Super Bowl or their clicks on any article critical of SpaceX in the *L.A. Times.* As for the meetings that SpaceX chose to call in response to the Open Letter,[52] this voluntary action does not give rise to its claims, and again focuses on the locus of the wrong party's actions.

SpaceX's invocation of President Gwynne Shotwell sending emails from McGregor, Texas also fails to establish venue here.[53] First, SpaceX does not contest the claim that Shotwell was based out of SpaceX's headquarters in California when the events giving rise to the ULP

---

[49] *See Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 460 (S.D. Tex. 1996) ("[B]y referring to 'events or omissions giving rise to the claim,' it is likely that Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.") (cleaned up).

[50] Doc. 64 at 4.

[51] Compl. ¶ 35.

[52] Doc. 64 at 4-5.

[53] *Id*. at 5.

complaint transpired.[54] Rather, Shotwell's affidavit only establishes that her primary place of employment is currently in McGregor, Texas and that she was in McGregor when she sent two emails on June 15, 2022 and June 16, 2022.[55] Second, even if Shotwell's location on those days were relevant to the Board's ULP proceedings,[56] it would not serve as a basis for asserting venue here given that McGregor falls outside of the Southern District of Texas.[57] Third, Shotwell's emails were sent to SpaceX employees in California. The first was specifically addressed to California-based employee Paige Holland-Thielen with an unmistakable command to cease distributing the Open Letter or face consequences of such "insubordination."[58] SpaceX fired Holland-Thielen the next day at an in-person meeting in Hawthorne, California.[59] Thereafter, Shotwell emailed employees company-wide that SpaceX had already terminated employees for their involvement in the Open Letter.[60] SpaceX says this email went to employees in the Southern District of Texas "among others,"[61] which presumably includes far more California employees based in SpaceX's headquarters. In short, these two McGregor, Texas-sent emails

---

[54] Doc. 29 at 18 n.86 (citing Doc. 19 ¶ 12 (stating Shotwell was based in Hawthorne around the time of declarant's termination)).

[55] Doc. 64-3 ¶¶ 2-5.

[56] *See December 12, Inc.*, 273 NLRB 1 (1984) (ULP trial held in Los Angeles, where fired musician was based, even though some operative events occurred on tour in Australia).

[57] As an afterthought, SpaceX asserts that venue would be proper in the Western District of Texas, based on Shotwell's emails. Doc. 64 at 8. But venue would be improper there for the same reasons as here. Venue is improper when it has been forum-shopped in anticipation of suit elsewhere, and when the great majority of relevant events occurred outside the forum. *See* above at 2-3, 9-10.

[58] Doc. 64-3 ¶¶ 3, 5; Doc. 64-4.

[59] Doc. 22 ¶ 10.

[60] Doc. 64-3 ¶¶ 4, 5; Doc. 64-5.

[61] Doc. 64 at 5.

(allegedly designed to stifle concerted activity arising in California) are not just a tiny part of the events precipitating the NLRB proceeding, they *were not sent from this District*.

SpaceX's third ground for asserting a substantial connection to the Southern District of Texas is that the ULP complaint allegedly reveals that the NLRB views SpaceX's violations as having taken place nationwide and thereby justify nationwide remedies.[62] But the ULP complaint cites to conduct at or near SpaceX's Hawthorne facility 18 times,[63] never once references Texas,[64] and contains a single sentence noting that Shotwell sent "an email to all employees" announcing SpaceX's termination of those involved in the Open Letter.[65]

The Region's complaint seeks an order requiring SpaceX to post an electronic notice to all of its employees.[66] But SpaceX cites not a single case for the proposition that the hypothetical future need to remedy unlawful action in a particular location can give rise to venue in that location. That unprincipled approach would have no bounds; it would, for example, mean there was venue against *any* nationwide entity for *any* lawsuit challenging *any* corporatewide practice *anywhere* the entity had *any* location (since, by definition, such a practice would need to be remedied there). SpaceX itself might come to rue such a rule soon enough; there is no telling what Pandora's box of consequences might come from it, and this Court should not be the first to crack open that lid.

SpaceX's fourth claim as to a substantial nexus for venue is that the ULP proceeding is "making demands of personnel across many facilities" as well as senior leadership for their

---

[62] *Id*.

[63] ULP Compl. ¶¶ 2(a), 2(d), 6, 8-10, 12-16, 19-20, 24-28.

[64] A notice accompanying the ULP Complaint was sent to four SpaceX attorneys, one of whom had an address in Texas. Doc. 19-2 at 12.

[65] ULP Compl. ¶ 11.

[66] ULP Compl. At 8.

involvement in terminating eight California-based employees.[67] But this suffers from the same defect as its third claim above. SpaceX's choice to assign parts of its case to personnel in Texas as opposed to those based in California is irrelevant; otherwise parties could lay venue virtually anywhere.[68]

To support its argument for laying venue here, SpaceX points to three cases, misconstruing the weight of events in each.[69] In *Uffner*, the court found that a ship sinking in the forum was a "substantial" event for venue purposes in a suit over insurance coverage.[70] Here, the analogous event (i.e. not the immediately proximate cause of suit, but the key event creating the controversy) was SpaceX's firing of eight of its employees, which occurred in California. *Uffner*, if anything, supports the NLRB's position. In *Long*, a defamation case, the plaintiff sued his former employer alleging that the out-of-state defendants there "made extraordinary and wrongful efforts to prevent [p]laintiff from obtaining employment in Texas in the staffing industry."[71] In other words, the core of the allegations involved speech directed at Texas and intended to have its primary effect there. Even further afield is *Texas v. United States*, which

---

[67] *Id.*

[68] SpaceX claims that Jamin Gallman was involved in the Open Letter events. Doc. 64 at 6. And Gallman's affidavit asserts that in addition to having previously worked at the Hawthorne Facility, he and other members of SpaceX's Human Resources team were involved in some undisclosed capacity "in the events leading up to and after the dissemination of the open letter." Doc. 37-1 ¶¶ 3, 14. But neither claim amounts to more than speculation that Defendants will compel his involvement in the Board's proceedings.

[69] Doc. 64 at 6 (citing *Uffner v. La Reunion Francaise, SA*, 244 F.3d 38, 43 (1st Cir. 2001), *Long v. Grafton Exec. Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003), and *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015)).

[70] 244 F.3d at 40, 43.

[71] *Long*, 263 F. Supp. 2d at 1087-89 (discussing phone calls and emails directed to Texas).

involved a nationwide rule promulgated through notice-and-comment rulemaking rather than an adjudication occurring (and relating to conduct that occurred) in another venue.[72]

In contrast to these cases, *Care One, LLC v. NLRB,* points to the proper course here.[73] There, as here, the district court was asked to consider questions as to the constitutionality of the NLRB's proceedings.[74] It ultimately concluded that the suit should be transferred to Connecticut, where the NLRB's administrative proceedings were taking place, rather than remain in New Jersey, where the plaintiff was headquartered and where there was a bankruptcy proceeding involving the entities at issue in the NLRB's Connecticut-based proceedings.[75] The court in *Care One* found that those bankruptcy proceedings "provide[] some connection to New Jersey," but concluded that transfer was proper because "the plaintiff's preferred forum had little connection with the operative facts of the lawsuit."[76] And elsewhere, courts have properly transferred cases under 28 U.S.C. §1406(a) where "the overwhelming majority of events giving rise to plaintiff's claims occurred" in a different venue.[77]

In sum, SpaceX's claims do not amount to a substantial basis for asserting jurisdiction here, given the overwhelming weight of the key events in the Central District of California,

---

[72] 95 F. Supp. 3d 965. That case did not involve transfer and Texas, as a party, may lay venue in a Texas district. *See id.* at 973.

[73] Doc. 29 at 9 n.48 (citing *Care One, LLC v. NLRB,* No. 2:23-cv-03221, 2023 WL 4156859, at *6 (D.N.J. June 23, 2023)).

[74] *Care One,* 2023 WL 4156859, at *2. While *Care One* was decided under 28 U.S.C. § 1404(a), *see id.*, its analysis of the relative weight of events is also instructive for a motion under 28 U.S.C. § 1406(a). *See Maysaroh Am.*, 51 F. Supp. 3d at 93-95 (considering weight of events under both statutes).

[75] *Id.* at *3.

[76] *Id*. (internal quotes and citations omitted).

[77] *See, e.g., Maysaroh Am.*, 51 F. Supp. 3d at 93-95 (transferring case despite allegations of forced labor within its district because "the overwhelming majority of events giving rise to plaintiff's claims occurred" in another district).

including the very hearing that that this suit seeks to enjoin. Rather, SpaceX seeks to leverage the

Fifth Circuit's 2022 decision in *Jarkesy* in order to deny eight Terminated Employees a forum to

contest their dismissal from SpaceX's California headquarters, for their California-based

involvement in an Open Letter.

###    4.   Even assuming venue was not improper under 28 U.S.C. § 1406(a), the Board has shown the requisite good cause in favor of transfer to the Central District of California under 28 U.S.C. § 1404(a).

"The underlying premise of § 1404(a) is that courts should prevent plaintiffs from

abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient

under the terms of § 1404(a)."[78] To prevail on such a motion to transfer, the Board must "adduce

evidence and arguments that clearly establish good cause for transfer based on convenience and

justice."[79] Not only is the Central District of California the more convenient location for parties

and non-parties, but it would be contrary to the interest of justice permit SpaceX to avail itself

advantageous case law in a distant forum with virtually no connection to the dispute. Indeed,

courts within this Circuit have repeatedly recognized that the "interest of justice component

of § 1404(a) may, *in itself, be determinative* of the decision to allow a transfer, even when the

convenience of the parties and witnesses would call for a different result."[80]

SpaceX claims that Defendants have failed to show that private interest factors point

strongly in favor of transfer, largely because, according to SpaceX, no testimony will be needed

---

[78] *In re Volkswagen*, 545 F.3d at 313.

[79] *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022).

[80] *Mizell v. Prism Comput. Corp.*, 27 F. Supp. 2d 708, 714 (S.D. Miss. 1998) (emphasis added); *Sioux City & New Orleans Barge Lines, Inc. v. Miss. Towing Corp.*, 221 F. Supp 737, 740 (S.D. Tex. 1963) (interest of justice was determinative factor in ordering transfer); *cf. Zoltar Satellite Systs., Inc. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 735, 739 (E.D. Tex. 2005) ("most importantly," interest of justice favored transfer).

here.[81] SpaceX is mistaken. In this action, SpaceX has specifically sought injunctive relief, and it does not dispute that it must prove that the combined balance-of-hardship and public-interest factors[82] weigh in favor of an injunction. But addressing these factors must include an inquiry as to the effects of an injunction on SpaceX's Hawthorne workforce.[83] This inquiry would presumably include testimony from both party and non-party witnesses based in California, including the Terminated Employees, who can address how they would suffer substantial hardship should this Court enjoin a proceeding that might redress their terminations.[84] And "it is the convenience of non-party witnesses [including of the Terminated Employees], rather than that of party witnesses, that is the more important factor [as to] transfer of venue analysis."[85]

SpaceX's unsubstantiated claim that Brownsville is a more convenient venue for willing witnesses is risible.[86] SpaceX even suggests that it would be cheaper for non-party witnesses to get to Brownsville than Los Angeles because two of the Terminated Employees respectively signed their declarations from Berlin, Germany and Raleigh, North Carolina.[87] That appears highly unlikely even as to individuals based in Berlin or Raleigh,[88] but especially as to the

---

[81] Doc. 64 at 11-13.

[82] Doc. 37 at 21 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

[83] Doc. 29 at 15-16.

[84] *See* 29 U.S.C. §§ 107, 113 (requiring testimony "in open court" to support an injunction in labor disputes "regardless of whether or not the disputants stand in the proximate relation of employer and employee").

[85] *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790-91 (S.D. Tex. 2005) (quoting *State St. Cap. Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994)); *see also Reyes De Perez v. Cont. Freighters, Inc.*, No. 5:06-cv-02, 2006 WL 3053400, at *4 (S.D. Tex. Oct. 26, 2006) ("The convenience of non-party witnesses is of particular importance.").

[86] Doc. 64 at 13.

[87] Doc. 64 at 12-13 n.5.

[88] Google Maps searches run on February 8, 2024 for flights between Berlin, Raleigh, Brownsville, and Los Angeles automatically searched for round-trip tickets between February 24

Terminated Employees based in the Central District of California.[89] SpaceX ignores the fact that none of the Terminated Employees "have any relationship with the State of Texas."[90] As to SpaceX's witnesses, the law assigns less weight to their concerns than those of non-party witnesses.[91]

The availability of compulsory process also points towards venue in the Central District of California. Not only are the preferences of non-party witnesses more important than SpaceX's witnesses, but none of the Terminated Employees are subject to compulsory process here.[92]

As for the catchall private-interest factor, SpaceX argues that transfer could lead to delay,[93] but "vague generalities of possibility of delay" are not enough to deny transfer; what SpaceX must demonstrate is clear and convincing evidence of "rare and special circumstances" risking delay.[94] In sum, the balance of private-interest factors weighs strongly in favor of transfer to the Central District of California. That is where the operative events arose, where witnesses are more likely to be found, where Region 31 conducted its investigation, and where relief would be directed. Nor would this result be unfair to Space X: SpaceX is headquartered in California, has multiple attorneys for both the instant case and the separate administrative proceeding in

---

and February 28, 2024. Flights from Berlin to Los Angeles are projected to take over 14 hours and start at $674. Flights from Berlin to Brownsville are projected to take over 17 hours and start at $973, which is significantly longer and costs about 44% more. As for Raleigh, a trip to Los Angles would take about as long as a Brownsville flight but cost about 70% more. *See* Exhibit B.

[89] *See e.g.* Doc. 19 (Moline Declaration signed in Los Angeles, California); Doc. 20 (Beck Declaration signed in Manhattan Beach, California).

[90] Doc. 29 at 3 n.16 (quoting Doc. 18 ¶12).

[91] *See* above at n.113 (citing *Spiegelberg*, 402 F. Supp. 2d at 790-91, among others).

[92] Fed. R. Civ. P. 45(c); *see also Mizell*, 27 F. Supp. 2d at 714 (that all witnesses except plaintiff resided outside court's subpoena power supported transfer).

[93] Doc. 64 at 14-15.

[94] *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (internal quotations omitted).

California, and has allegedly required its California-based employees—at least in the pre-*Jarkesy* era—to address employment issues in California.[95]

As for the public interest, the local interest in having controversies surrounding labor disputes decided at home weighs heavily in favor of transfer to the Central District of California.[96] This Court and the people that it serves have no greater interest in the matter than any other district where SpaceX operates.[97] To the contrary, this district has relatively little interest, if any, in a ULP hearing scheduled to take place in California to resolve allegations that an employer residing in California unlawfully retaliated against its California employees for their involvement in an Open Letter that was drafted in California. By contrast, the Central District of California and its residents have a powerful interest in whether a major regional employer is held accountable for allegedly unlawful actions committed there.[98]

As for relative docket congestion, SpaceX cherry-picks statistics but has no response to the fact that median disposition times in the Central District of California are nearly half that of the Southern District of Texas, and that the number of cases pending per judge in the Central

---

[95] *See* above at 5, n.28; Doc. 19-2 at 13; *see also Spiegelberg*, 402 F. Supp. 2d at 791 (finding transfer appropriate where the plaintiff resided in the transferee forum); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 679 (S.D. Tex. 2014) ("Plaintiffs will not be burdened by having to litigate in California, where they do business, where they have legal counsel, and where they are already participating in … a related dispute.").

[96] Doc. 29 at 17-18, and cases cited therein, including *Lab. Corp. of Am. Holdings*, 942 F. Supp. 2d at 4, and *Pac. Mar. Ass'n,* 905 F. Supp. 2d at 61.

[97] SpaceX claims that "it is deeply invested in the local Brownsville economy." Doc. 64 at 15. But SpaceX could likely say that of all the local economies in which it operates, including Hawthorne, where it is headquartered. And certainly the economic impact of terminating Hawthorne-based employees is felt most acutely there.

[98] *See Care One*, 2023 WL 4156859, at *7 (holding that the local interest factor plainly favored transfer to the district where the NLRB proceeding was pending).

District of California are more than one third lower than in this district.[99] And as noted above at pages 5-7, this Court has no comparative experience advantage in adjudicating this type of constitutional claim. Considering the importance of the local interest in this California dispute being decided there, the public interest factors weigh heavily in favor of transfer.

Finally, while SpaceX relies heavily on convenience,[100] transfer is warranted because "the interest of justice" heavily favors that further proceedings take place in the Central District of California.[101] Indeed, as noted above, it is reason enough to allow a transfer on its own.[102] In weighing whether the "interest of justice" favors transfer, courts consider whether the plaintiff has engaged in forum-shopping, [103] as laid out in Section 2 above and in our Motion to Transfer.

## CONCLUSION

This Court should grant Defendants' motion and transfer the instant action to the Central District of California.

---

[99] *Compare* Doc. 64 at 14, *with* Doc. 29 at 19 n.91 (median disposition time in civil cases for the Central District of California is 4.4 months compared to 7.9 months in the Southern District of Texas—about 44% faster; meanwhile, the Central District of California has 489 pending cases per judgeship versus 768 for the Southern District of Texas—about 37% less).

[100] Doc. 64 at 1-2, 9, 11-14, 17.

[101] 28 U.S.C. § 1404(a).

[102] *Mizell*, 27 F. Supp. 2d at 714; *Sioux City*, 221 F. Supp at 740 (S.D. Tex. 1963); *Zoltar Satellite Systs.*, 402 F. Supp. 2d 735, 739 (E.D. Tex. 2005); *see also* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 n.3 (4th ed.) (compiling cases).

[103] *See Lake City Stevedores, Inc. v. Steamship Lumber Queen*, 343 F. Supp. 933, 935 (S.D. Tex. 1972) ("Judicial discretion over every motion to transfer should prevent a plaintiff from forum shopping"); *Turner & Newall*, 652 F. Supp. at 1312 (explaining that Section 1404(a) is designed to "prevent forum shopping"); *see also In re Volkswagen*, 545 F.3d at 313 (warning against abuse of the general venue statute).

Respectfully submitted,

ALAMDAR S. HAMDANI
*United States Attorney*
*Southern District of*
*Texas*

By: s/Benjamin S. Lyles
BENJAMIN S. LYLES
*Assistant United States Attorney*
S.D. Tex. ID No. 3062156
State Bar No. 24094808
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Benjamin.Lyles@usdoj.gov
*Attorney-in-Charge for Defendants*

Dated this 12th day of February, 2024.

NATIONAL LABOR RELATIONS
BOARD
*Contempt, Compliance, and*
  *Special Litigation Branch*
KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
DANIEL BRASIL BECKER
*Trial Attorney*
GRACE L. PEZZELLA
*Trial Attorney*

s/David P. Boehm
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email:
David.boehm@nlrb.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

s/David P. Boehm
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email: David.boehm@nlrb.gov

Dated this 12th day of February, 2024.

EXHIBIT A

# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD
### REGION 31

| | | |
|---|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.** | | |
| **and** | **Cases** | **31-CA-307446**<br>**31-CA-307532**<br>**31-CA-307539**<br>**31-CA-307546**<br>**31-CA-307551**<br>**31-CA-307555** |
| 6,7(C) | | |
| **and** | **Case** | **31-CA-307514** |
| 6,7(C) **an Individual** | | |
| **and** | **Case** | **31-CA-307525** |
| 6,7(C) **an Individual** | | |

## RESPONDENT SPACE EXPLORATION TECHNOLOGIES CORP.'S ANSWER TO COMPLAINT

Pursuant to Sections 102.20 and 102.21 of the Rules and Regulations of the National Labor Relations Board ("NLRB" or "Board"), Space Exploration Technologies Corp. ("SpaceX" or "Respondent"), through its undersigned counsel, submits the following answer to the Complaint and Notice of Hearing ("Complaint") according to the Complaint's numbered paragraphs. SpaceX disputes that it is subject to the NLRA and the Board's jurisdiction, because at all relevant times, SpaceX operated as a covered "carrier" as defined in Title II of the Railway Labor Act ("RLA"), and therefore, is subject to the dispute resolution provisions of the RLA, not the NLRA. *See* 29 U.S.C. § 152(2). SpaceX also disputes the constitutionality of this action proceeding forward in any fashion. *See Space Exploration Technologies Corp. v. National Labor Relations Board et al.*, Case 1:24-cv-00001 (S.D. Tex.) (filed January 4, 2024). In filing this Answer, SpaceX does not

2024-NLFO-00866-000001

EXHIBIT A

concede that it is subject to the NLRA or the Board's jurisdiction, that these proceedings are constitutional, nor is SpaceX consenting to the Board's jurisdiction.

To the extent the Complaint's introduction contains allegations and legal conclusions, SpaceX denies each and every one of these allegations and legal conclusions.

1.      SpaceX lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint and therefore denies them, except to admit that SpaceX received a copy of the charges and amended charges in Cases 31-CA-307446, 31-CA-307514, 31-CA-307525, 31-CA-307532, 31-CA-307539, 31-CA-307546, 31-CA-307551, and 31-CA-307555.

2.      (a)      Admitted.

        (b)      Admitted.

        (c)      Admitted.

        (d)      Admitted.

3.      This paragraph states a legal conclusion to which no answer is required. To the extent a response is required, SpaceX denies this allegation, because, at all relevant times, SpaceX operated as a covered "carrier" as defined in Title II of the RLA.

4.      Paragraph 4 of the Complaint sets forth legal conclusions to which no response is necessary.  To the extent a response is required, SpaceX admits that the individuals listed in Paragraph 4 of the Complaint have held the alleged job titles and been supervisors of SpaceX within the meaning of Section 2(11) of the Act, with the following corrections:

- **6,7(C)** job title is, and all material times was, **6,7(C)** **6,7(C)**

- **6,7(C)** name is **6,7(C)**

2024-NLFO-00866-000002

EXHIBIT A

- 6,7(C)  job title is, and at all material times was,  6,7(C)

  6,7(C)

- At all material times,  6,7(C)  job title was  6,7(C)

- At all material times,  6,7(C)  job title was  6,7(C)

  6,7(C)

SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

    5.    (a)    SpaceX admits only that  6,7(C)

6,7(C)  repeatedly distributed a document they named "An open letter to the Executives

of SpaceX" (hereinafter, "Open Letter") and that  6,7(C)  had a role in earlier drafting the Open

Letter.  SpaceX lacks sufficient information to respond to the further alleged role of individuals

concerning the Open Letter beyond the above, and, on that basis, denies such allegations.  SpaceX

denies each and every other allegation and legal conclusion contained in this paragraph.

    (b)    Admitted.

    (c)    Admitted.

    (d)    Admitted.

    (e)    Admitted.

    (f)    Admitted.

    (g)    Admitted.

    (h)    Denied.  SpaceX denies each and every allegation and legal conclusion

contained in this paragraph.

2024-NLFO-00866-000003

EXHIBIT A

6.      SpaceX admits that, on or about May 24, 2022, **6,7(C)** met with an individual.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

7.      SpaceX admits that **6,7(C)** sent an email regarding the Open Letter on or about **6,7(C)** 2022.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

8.      This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

9.      This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

10.     On or about **6,7(C)** 2022, SpaceX informed **6,7(C)**



**6,7(C)** of their discharge.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph, and its two subparagraphs.

(a)      Denied.

(b)      Denied.

11.     SpaceX admits that **6,7(C)** sent an email to all or substantially all SpaceX personnel on **6,7(C)** 2022 that referenced personnel discharges.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

12.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

2024-NLFO-00866-000004

EXHIBIT A

13.     SpaceX admits that, on or about ⸤6,7(C)⸥ 2022, ⸤6,7(C)⸥ had a meeting with certain SpaceX personnel.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

14.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

15.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

16.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

17.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

18.     SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

19.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

20.     SpaceX admits that, on or about ⸤6,7(C)⸥ 2022, ⸤6,7(C)⸥ gave a confidentiality instruction to an employee about an investigation.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

2024-NLFO-00866-000005

EXHIBIT A

21.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

22.     SpaceX admits that, on or about ⸢6,7(C)⸣ 2022, ⸢6,7(C)⸣ during an investigation, utilized screenshots of communications showing the authors' intent to wrongfully leak SpaceX documents.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

23.     SpaceX admits that, on or about ⸢6,7(C)⸣ 2022, ⸢6,7(C)⸣ gave a confidentiality instruction to an employee about an investigation.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

24.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

25.     SpaceX admits that, on or about ⸢6,7(C)⸣ 2022, ⸢6,7(C)⸣ during an investigation, discussed communications showing the authors' intent to wrongfully leak SpaceX documents.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

26.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

27.     SpaceX admits that, on or about ⸢6,7(C)⸣ 2022, ⸢6,7(C)⸣ during an investigation, utilized screenshots of communications showing the authors' intent to wrongfully

6

EXHIBIT A

leak SpaceX documents.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

28.     SpaceX admits that, on or about 6,7(C) 2022, 6,7(C) gave a confidentiality instruction to an employee about an investigation.  SpaceX denies each and every other allegation and legal conclusion contained in this paragraph.

29.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

30.     This paragraph states a legal conclusion to which no answer is required.  To the extent a response is required, SpaceX denies each and every allegation and legal conclusion contained in this paragraph.

Any and all remaining allegations and legal conclusions contained in the Complaint are denied, including but not limited to the unnumbered remedy allegations.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted, including but not limited to the non-existence of protected concerted activity in this matter.

2.     6,7(C) is a supervisor within the meaning of Section 2(11) of the Act.

3.     SpaceX is a covered "carrier" as defined in the Railway Labor Act, and therefore not subject to the NLRA pursuant to 29 U.S.C. § 152(2).

4.     Any finding of an unfair labor practice based in whole or in part on speech and/or views, argument, or opinion spoken or disseminated by SpaceX or its agents in any meetings, one-on-one discussions, or written or other communications constitutes an unconstitutional

7

EXHIBIT A

infringement on the First Amendment right of freedom of speech.  Under the U.S. Supreme Court's decision in *Counterman v. Colorado*, 600 U.S. 66 (2023), the First Amendment requires that, for government regulation of an alleged threat to be constitutionally permitted, the Government must demonstrate from the context of the statement that the author of the threat possessed intent to actually threaten the subject.  In this case, the General Counsel has failed to plead any of the required elements required under *Counterman*, and even if the General Counsel had, the General Counsel could not prove the requisite subjective intent.  As none of the alleged threats, interrogation, or communications by SpaceX rise to the level of a "true threat" under *Counterman*—a threat of actual violence—the Board must therefore prove a level of intent beyond reckless disregard, and, instead, prove an actual subjective intent to specifically coerce specific employees in their Section 7 rights.  The Board's attempts to regulate SpaceX's speech therefore exceeds the constitutional limits identified by the Supreme Court in *Counterman*.

5.   Any proceeding before or action by an NLRB Administrative Law Judge ("ALJ") in this matter or finding by an NLRB ALJ that SpaceX committed an unfair labor practice in this proceeding would be an unconstitutional action because the dual removal protections for NLRB ALJs violate Article II of the Constitution.  These violations include, but are not limited to, an NLRB ALJ carrying out any conferences, hearings, or trial whatsoever, in the course of this case, and SpaceX being required to respond to, or litigate, the Complaint in any fashion, including but not limited to the filing of this Answer.

6.   Any decision by the NLRB Board Members on review of the ALJ's final order that SpaceX committed an unfair labor practice would be an unconstitutional action under Article II given the strict protections insulating Board Members from removal by the President and the substantial executive power that Board Members exercise.

2024-NLFO-00866-000008

EXHIBIT A

7.   The NLRB Members' exercise of substantial executive power (see, e.g., 29 U.S.C. § 160(j)), combined with the Member's removal protection, also violates Article II of the Constitution.

8.   Any adjudicatory proceeding to determine whether SpaceX committed an unfair labor practice violates SpaceX's Seventh Amendment right to a jury trial given the remedies sought in the Complaint.  This claimed authority to award legal relief goes beyond the Board's constitutional and statutory remit to adjudicate public rights through administrative proceedings and instead seeks to vindicate private rights for the benefits of private parties.  This is underscored by the charging parties' attempt to intervene in *Space Exploration Technologies Corp. v. National Labor Relations Board et al.*, Case 1:24-cv-00001 (S.D. Tex.), claiming a separate and private interest to do so.

9.   Any appeal of the ALJ's order to the NLRB Board Members would violate SpaceX's constitutional due process rights if the Board Members first seek injunctive relief against SpaceX under Section 10(j) of the NLRA, 29 U.S.C. § 160(j).

10.   The finding of an unfair labor practice based on the Complaint would violate SpaceX's Due Process Rights under the U.S. Constitution and other federal law as the facts alleged in the Complaint are not unfair labor practices within the meaning of the Act, and the General Counsel has delayed too long in deciding to allege SpaceX's actions as unfair labor practices.

11.   The finding of an unfair labor practice, and any remedy, based on the Complaint would contravene the purposes and terms of the Outer Space Treaty, the Space Liability Convention, the Commercial Space Launch Act, Title 14 regulations, Federal Acquisition Regulations (including the Department of Defense and NASA supplements), and Federal Aviation Administration-granted Launch Licenses, and other laws and regulations, in violation of the

2024-NLFO-00866-000009

EXHIBIT A

comity and accommodation principles set forth by *Southern Steamship Co. v. NLRB*, 316 U.S. 31 (1942).

12.     No remedy is appropriate as SpaceX has not engaged in any unfair labor practice. Further, the remedies requested in the Complaint are punitive, inappropriate, non-remedial, violate SpaceX's freedom of speech and assembly rights under the First Amendment, violate the takings clause of the Fifth Amendment, and are beyond the authority of the Board to order under Section 10(c) of the Act.

13.     SpaceX further reserves the right to amend and/or supplement its answers and affirmative defenses.

**WHEREFORE**, SpaceX respectfully requests that the Complaint be dismissed in its entirety, with prejudice.

Dated: January 24, 2024

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Harry I. Johnson III*

Harry I. Johnson III
2049 Century Park East, Suite 700
Los Angeles, CA
Phone: (310) 255-9005
harry.johnson@morganlewis.com

Lauren M. Emery
110 North Wacker Drive, 29th Floor
Chicago, IL 60606
Phone: (312) 324-1147
lauren.emery@morganlewis.com

Matthew A. Harper
1000 Louisiana Street, Suite 4000
Houston, TX 77002
Phone: (713) 890-5194
matt.harper@morganlewis.com

*Counsel for Space Exploration Technologies Corp.*

2024-NLFO-00866-000010

EXHIBIT A

## **CERTIFICATE OF SERVICE**

I certify that on January 24, 2024, a copy of Respondent Space Exploration Technologies

Corp.'s Answer to the Complaint in NLRB Cases 31-CA-307446, 31-CA-307514, 31-CA-

307525, 31-CA-307532, 31-CA-307539, 31-CA-307546, 31-CA-307551, and 31-CA-307555

was filed electronically using the NLRB's e-filing system and served by email on the following:

Lynn Ta
Field Attorney
National Labor Relations Board, Region 31
11500 W. Olympic Blvd., Suite 600
Los Angeles, CA 90064-1753
lynn.ta@nlrb.gov

Anne Shaver
Lieff Cabraser Heimann & Bernstein LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
ashaver@lchb.com

Laurie M. Burgess
Burgess Law Offices PC
498 Utah Street
San Francisco, CA 94110-1435
lburgess@burgess-laborlaw.com

*/s/ Matthew A. Harper*
Matthew A. Harper

EXHIBIT B



Berlin, Germany—Los Angeles, CA

Connecting 1 or more stops                          14 hr 25 min+
Round trip price, Feb 24 – 28                        from $674
KLM, Delta, British Airways...

See results on Google Flights

Explore Los Angeles

            

Restaurants    Hotels    Bars    Coffee    More

EXHIBIT B

**Google** Maps     Berlin, Germany to Brownsville, Texas



Map data ©2024 Google, INEGI     1000 mi

✈ **Berlin, Germany—Brownsville, TX**
Connecting2 or more stops                    17 hr 10 min+
Round trip price, Feb 24 – 28              from $973
American, British Airways, United…

🔗 See results on Google Flights

Explore Brownsville

        

Restaurants   Hotels   Bars   Coffee   More

EXHIBIT B

**Google** Maps    Raleigh, North Carolina to Los Angeles, California



Map data ©2024 Google, INEGI    200 mi

✈  **Raleigh, NC—Los Angeles, CA**

| | |
|---|---|
| Nonstop (1–2 per day) | 5 hr 50 min |
| Connecting | 7 hr 5 min+ |
| Round trip price, Feb 24 – 28 | from $223 |
| Spirit, American, United... | |

☑ See results on Google Flights

**Explore Los Angeles**

 Restaurants   Hotels   Bars   Coffee   More

# EXHIBIT B

**Google** Maps    Raleigh, North Carolina to Brownsville, Texas



Map data ©2024 Google, INEGI    100 mi ⊢———⊣

✈ **Raleigh, NC—Brownsville, TX**

Connecting1 or more stops          5 hr 45 min+
Round trip price, Feb 24 – 28      from $378
American, United…

🔗 See results on Google Flights

## Explore Brownsville

        

Restaurants   Hotels   Bars   Coffee   More

United States District Court
Southern District of Texas

**ENTERED**

February 15, 2024

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SPACE EXPLORATION | § | |
| TECHNOLOGIES CORP., | § | |
| "Plaintiff", | § | |
| | § | |
| v. | § | Civil Action No. 1:24-cv-00001 |
| | § | |
| NATIONAL LABOR RELATIONS | § | |
| BOARD ET AL., | § | |
| "Defendants." | § | |

### ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE

Before the Court is the "Motion of Defendants to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) and § 1404(a)" (Dkt. No. 29) ("Motion"), Plaintiff's "Response in Opposition to Defendants' Motion to Transfer Venue Pursuant to 1406(a) and § 1404(a)" (Dkt. No. 64) ("Response"), Defendants' "Reply in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) and § 1404(a)" ("Reply"), and the "Brief of Charging Parties as *Amici Curiae* in Support of Defendants' Motion to Transfer Venue" (Dkt. No. 73) ("Brief").

For the reasons below, Defendants' Motion (Dkt. No. 29) is **GRANTED**.

### I.     BACKGROUND

This action pertains to an administrative proceeding before Defendant National Labor Relations Board ("NLRB") involving alleged unfair labor practices ("ULP") by Plaintiff. Dkt. No. 1 at 9. On January 3, 2024, Region 31 of the NLRB, located in Los Angeles, California, issued an administrative complaint in the Central District of California alleging that Plaintiff unlawfully interrogated and fired eight employees ("Charging Parties") in response to their organization and distribution of an open letter regarding working conditions. Dkt. No. 29 at 3–5. Plaintiff sued Defendants, claiming that the proceeding and the structure of the NLRB are unconstitutional. *See id.* at 10–23.

Plaintiff, Space Exploration Technologies Corp. ("SpaceX"), is a Delaware corporation and maintains its principal place of business  in Hawthorne, California. Dkt. No. 29 at 3, n.17. Defendant NLRB has its headquarters in Washington D.C., and all other Defendants are involved only in their official capacities within the NLRB. *Id.* at 6.

Seven of the eight Charging Parties lived in California and worked in Plaintiff's headquarters in Hawthorne, California. Dkt. No. 18 at ¶4; Dkt. No. 29 at 3. The other employee lived in Washington but was supervised by management in Hawthorne. *Id.* The Charging Parties moved to Intervene (Dkt. No. 17).

Defendants' Motion alleges that venue is improper in this district and that the case should be transferred under 28 U.S.C. § 1406(a), or that it should be transferred in the interest of justice and convenience under 28 U.S.C. § 1404(a). *See* Dkt. No. 29. Plaintiff claims that venue is proper because the events in Hawthorne and the later NLRB proceeding affect its facilities nationwide. *See* Dkt. No. 64 at 1.

## II.    LEGAL STANDARD

"Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper." *Graham v. Dyncorp Intl, Inc.*, 973 F. Supp. 2d 698, 700 (S.D. Tex. 2013) (citing *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011)).

A civil action against an agency of the United States may be brought in a judicial district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, [...] or (C) the plaintiff resides if no real property is involved in the action [...]." 28 U.S.C. § 1391(e)(1). When a case is filed in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

The Court should determine whether venue is proper but need not determine the "best" venue. *Safety Nat'l Cas. Corp. v. United States Dep't of the Treasury*, No. H-07-643, 2007 U.S. Dist. LEXIS 99225, *17 (S.D. Tex. Aug. 20, 2007). But "a district court should not accept venue if the activities that transpired in the forum district were insubstantial in relation to the totality of events giving rise to Plaintiffs' claims." *Andrade v. Chojnacki*, 934 F. Supp. 817, n.18 (S.D. Tex. 1996) (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3rd Cir. 1994)).

## III.    DISCUSSION

It is undisputed that no party resides in the Southern District of Texas. Dkt. No. 29 at 6. Thus, the issue in dispute is whether a "substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas. 28 U.S.C. § 1391(e)(1)(B). This condition is not satisfied.

2

Plaintiff references four facts in support of its position: (1) the open letter caused disruption at all its facilities, (2) the administrative complaint identifies an email sent "to all employees" from the president and chief operating officer of Plaintiff, Gwynne Shotwell ("Ms. Shotwell"), as one of the alleged ULPs, (3) Defendants seek remedies with company-wide effect, and (4) the NLRB proceeding is "making demands of personnel across many facilities, including Starbase." *Id.* at 5–6.

The principal events giving rise to this action are the drafting of the open letter by the Charging Parties and commencement of the NLRB proceeding in the Central District of California. Thus, the nexus of facts is heavily focused in the Central District of California. The Charging Parties were all connected to Plaintiff's Hawthorne facility, and none had connections to Texas. Dkt. No. 29 at 3, n.16. Nearly all the alleged ULP in the administrative complaint occurred in the Hawthorne facility. *Id.* at 4, n.22. Even the administrative proceeding itself will take place in California. Dkt. No. 29 at 3–5.

Plaintiff thus focuses on the resulting effects of these events that have touched or may eventually touch Plaintiff's other facilities. Thus, even if the effects on all the facilities were equal, only about one sixth of those events on which Plaintiff rests its argument occurred or would occur in this district.[1] Moreover, these resulting events in this district are insubstantial in number compared to the totality of those giving rise to Plaintiff's claim and far less significant than those occurring in California.

The open letter may have caused disruption across Plaintiff's facilities, but most related events such as the conditions precipitating the letter, its drafting, and the immediate consequences for the Charging Parties occurred at and in relation to the Hawthorne facility. As a result, an even larger disruption should be expected to have occurred in Hawthorne than in an unrelated facility. The incidental effects reaching Texas are thus only a small part of the occurrence itself, and Plaintiff gives no reason why such effects would be especially significant in this district.

The emails at issue directly addressed a member of the California-based Charging Parties in one case and in all others, addressed the open letter, which was drafted and proliferated from California. Dkt. No. 78 at 11; Dkt. No. 64-3 at 2. While Plaintiff emphasizes that the message

---

[1] *See* Mission: SpaceX Facilities, SPACEX, https://www.spacex.com/mission/ (last visited Feb 13, 2024) (listing the six SpaceX facilities, only one of which is in the Southern District of Texas).

was sent to all employees, this message is merely another incidental contact with the Southern District of Texas.

Similarly, even if the Court agreed that it is proper to consider Defendants' proposed remedies in the administrative proceeding as events giving rise to the action, such remedies and any demands the proceeding may make of Plaintiff's personnel do not show any inherent connection to the Southern District of Texas. On the contrary, these effects would be expected to have far more relevance to the Hawthorne facility, where most of the employees were fired and where the proceeding is being held.

Plaintiff's cited authority is unavailing. Plaintiff cites *Long v. Grafton Exec. Search, LLC* for the proposition that contact to Texas can constitute a substantial part of the events giving rise to the suit. 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003); Dkt. No. 64 at 6. But in *Long* there was a direct communication to Texas; the content caused the claim, and the injury was experienced in Texas. *Long*, 263 F. Supp. 2d at 1090. The Southern District of Texas is only one of the many locations that the open letter reached, and the consequences are not that relevant to Texas.

The Fifth Circuit held that "[C]ommunications to [Texas] can constitute a substantial part of the events giving rise to a plaintiff's claims, if the claims derive directly from those communications. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018) (citing *Siragusa v. Arnold*, No. 3:12-CV-04497-M, 2013 U.S. Dist. LEXIS 131740, *3 (N.D. Tex. Sep. 16, 2013)). In any event, it would not be accurate to say that this claim derived directly from any communications to Texas. Rather, the case derived directly from the administrative proceeding which itself derived directly from Plaintiff's response to an open letter, which reached the Southern District of Texas not directly but incidentally as one of six total SpaceX facilities.

Thus, these effects do not comprise a substantial part of the events giving rise to this claim. The events touching this district are incidental to the principal events occurring elsewhere and constitute a relatively small portion of the total body of events. This action concerns a California administrative proceeding regarding the actions of a California company and its California employees in California. This action should be transferred.

Plaintiff alternatively requests that the action be transferred to the Western District of Texas, where Ms. Shotwell sent her emails to one of the Charging Parties and all SpaceX employees. Dkt. No. 64 at 8, n.3. As has been made clear, the Central District of California is the

4

venue in which the most events giving rise to this case occurred. In the interest of justice, this action should be transferred to the Central District of California.

**IV.    CONCLUSION**

For these reasons, Defendant's Motion (Dkt. No. 29) is **GRANTED**. It is **ORDERED** that this case be transferred to the Central District of California pursuant to 28 U.S.C. 1406(a).

Signed on this ⎽15th⎽ day of ⎽February⎽ 2024.

Rolando Olvera
United States District Judge

CLOSED,Transferred_Out_District

# U.S. District Court
## SOUTHERN DISTRICT OF TEXAS (Brownsville)
## CIVIL DOCKET FOR CASE #: 1:24−cv−00001

Space Exploration Technologies Corp. v. National Labor
Relations Board et al **DO NOT DOCKET. Case transferred to
the Central District of California.**
Assigned to: Judge Rolando Olvera
Cause: 28:2201 Declaratory Judgment

Date Filed: 01/04/2024
Date Terminated: 02/15/2024
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Space Exploration Technologies Corp.**        represented by    **Catherine Lynn Eschbach**
Morgan Lewis Bockius LLP
1000 Louisiana St.
Suite 4000
Houston, TX 77002
713−890−5719
Email: catherine.eschbach@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David George Oliveira**
Roerig, Oliveira & Fisher, LLP
10225 N. 10th Street
McAllen, TX 78504
956−393−6300
Fax: 956−386−1625
Email: doliveira@rofllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda L. Salz**
Morgan, Lewis & Bockius LLP − DC
Office
1111 Pennsylvania Avenue NW
Washington, DC 20004
202−739−3000
Fax: 202−739−3001
Email: amanda.salz@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Harry Isaac Johnson , III**
Morgan Lewis
2049 Century Park East
Suite 700
Los Angeles, CA 90067−3109
310−255−9005
Fax: 310−907−1001
Email: harry.johnson@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael E Kenneally**
Morgan, Lewis & Bockius LLP − DC
Office
1111 Pennsylvania Avenue, NW
Washington, DC 20004−2541
202−739−5893
Email: michael.kenneally@morganlewis.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**National Labor Relations Board**
*a federal administrative agency*

represented by **Benjamin Storey Lyles**
DOJ–USAO
U.S. Department of Justice
1701 US–83
McAllen, TX 78501
956–992–9405
Email: benjamin.lyles@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David P. Boehm**
National Labor Relations Board
Contempt, Compliance and Special
Litigation Branch
1015 Half St SE
Ste 4th Floor
Washington, DC 20003
202–273–4202
Email: david.boehm@nlrb.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Brasil Becker**
National Labor Relations Board
Contempt, Compliance & Special
Litigation Branch
1015 Half Street, SE
Ste 4th Floor
Washington, DC 20003
202–208–2255
Fax: 202–273–4244
Email: daniel.becker@nlrb.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grace L. Pezzella**
National Labor Relations Board
1015 Half St SE
Floor 4
Washington, DC 20003
202–273–0247
Email: grace.pezzella@nlrb.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jennifer Abruzzo**
*in her official capacity as the General
Counsel of the National Labor Relations
Board*

represented by **Benjamin Storey Lyles**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David P. Boehm**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Brasil Becker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grace L. Pezzella**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lauren M McFerran**
*in her official capacity as the Chairman*
*of the National Labor Relations Board*

represented by **Benjamin Storey Lyles**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David P. Boehm**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Brasil Becker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grace L. Pezzella**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Marvin E Kaplan**
*in his official capacity as a Board*
*Member of the National Labor Relations*
*Board*

represented by **Benjamin Storey Lyles**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David P. Boehm**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Brasil Becker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grace L. Pezzella**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gwynne A Wilcox**
*in her official capacity as a Board*
*Member of the National Labor Relations*
*Board*

represented by **Benjamin Storey Lyles**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David P. Boehm**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Brasil Becker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grace L. Pezzella**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**David M Prouty**
*in his official capacity as a Board*
*Member of the National Labor Relations*
*Board*

represented by **Benjamin Storey Lyles**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David P. Boehm**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Brasil Becker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grace L. Pezzella**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Doe**
*in his official capacity as an*
*Administrative Law Judge of the National*
*Labor Relations Board*

represented by **Benjamin Storey Lyles**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David P. Boehm**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Brasil Becker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grace L. Pezzella**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Tom Moline**

represented by **Laurie Burgess**
Burgess Law Offices
498 Utah Street
San Francisco, CA 94110
312–320–1718
Email: lburgess@burgess–laborlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne Shaver**
Lieff Cabraser Heimann & Bernstein, LLP

275 Battery St., 29th fl
San Francisco, CA 94111
415–956–1000
Email: ashaver@lchb.com
*ATTORNEY TO BE NOTICED*

**Nimish Ramesh Desai**
Lieff Cabraser et al
275 Battery St
29th Floor
San Francisco, CA 94111
415–956–1000
Email: ndesai@lchb.com
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Deborah Lawrence**                    represented by   **Laurie Burgess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne Shaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nimish Ramesh Desai**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Scott Beck**                          represented by   **Laurie Burgess**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anne Shaver**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nimish Ramesh Desai**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Paige Holland–Thielen**               represented by   **Laurie Burgess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne Shaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nimish Ramesh Desai**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Pacific Legal Foundation**            represented by   **Joshua Martin Robbins**
Pacific Legal Foundation

3100 Clarendon Blvd.
Suite 1000
Arlington, VA 22201
202−945−9524
Email: jrobbins@pacificlegal.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/04/2024 | 1 | COMPLAINT against All Defendants (Filing fee $ 405 receipt number ATXSDC−31008671) filed by Space Exploration Technologies Corp.. (Attachments: # 1 Civil Cover Sheet)(Eschbach, Catherine) (Entered: 01/04/2024) |
| 01/04/2024 | 2 | CORPORATE DISCLOSURE STATEMENT by Space Exploration Technologies Corp., filed.(Eschbach, Catherine) (Entered: 01/04/2024) |
| 01/04/2024 | 3 | Request for Issuance of Summons as to Lauren M McFerran, filed.(Eschbach, Catherine) (Entered: 01/04/2024) |
| 01/04/2024 | 4 | Request for Issuance of Summons as to David M Prouty, filed.(Eschbach, Catherine) (Entered: 01/04/2024) |
| 01/04/2024 | 5 | Request for Issuance of Summons as to Jennifer Abruzzo, filed.(Eschbach, Catherine) (Entered: 01/04/2024) |
| 01/04/2024 | 6 | Request for Issuance of Summons as to Gwynne A Wilcox, filed.(Eschbach, Catherine) (Entered: 01/04/2024) |
| 01/04/2024 | 7 | Request for Issuance of Summons as to Marvin E Kaplan, filed.(Eschbach, Catherine) (Entered: 01/04/2024) |
| 01/04/2024 | 8 | Request for Issuance of Summons as to National Labor Relations Board, U.S. Attorney Alamdar S. Hamdani, filed.(Eschbach, Catherine) (Entered: 01/04/2024) |
| 01/04/2024 | 9 | Summons Issued as to 1.) Jennifer Abruzzo, 2.) Marvin E Kaplan, 3.) Lauren M McFerran, 4.) David M Prouty, 5.) Gwynne A Wilcox, 6.) U.S. Attorney. Issued summons delivered to plaintiff by NEF, filed.(JenniferLongoria, 1) (Entered: 01/04/2024) |
| 01/04/2024 | 10 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 5/14/2024 at 02:00 PM in Courtroom 4 before Judge Rolando Olvera(Signed by Judge Rolando Olvera) Parties notified.(JenniferLongoria, 1) (Entered: 01/04/2024) |
| 01/05/2024 | 11 | MOTION to Appear Pro Hac Vice for Michael E. Kenneally (Fee Paid: $100, receipt number ATXSDC−31015140) by Space Exploration Technologies Corp., filed. Motion Docket Date 1/26/2024. (Kenneally, Michael) (Additional attachment(s) added on 1/8/2024: # 1 Verified status for Motion Pro Hac Vice) (SaraCelis, 1). (Entered: 01/05/2024) |
| 01/05/2024 | 12 | MOTION to Appear Pro Hac Vice for David P. Boehm (Fee Exempt) by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed. Motion Docket Date 1/26/2024. (Boehm, David) (Additional attachment(s) added on 1/8/2024: # 1 Verified status for Motion Pro Hac Vice) (SaraCelis, 1). Modified on 1/8/2024 (SaraCelis, 1). (Entered: 01/05/2024) |
| 01/05/2024 | 13 | **This entry is a duplicate of document # 12 (and has been terminated). ** MOTION to Appear Pro Hac Vice for David P. Boehm (Fee Exempt) by Gwynne A Wilcox, filed. Motion Docket Date 1/26/2024. (Boehm, David) Modified on 1/8/2024 (SaraCelis, 1). (Entered: 01/05/2024) |
| 01/08/2024 | 14 | ORDER granting 11 Motion for Michael E. Kenneally to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Rolando Olvera) Parties notified.(DorinaReyna, 1) (Entered: 01/08/2024) |

| 01/08/2024 | 15 | ORDER granting 12 Motion for David P. Boehm to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Rolando Olvera) Parties notified.(DorinaReyna, 1) (Entered: 01/08/2024) |
| --- | --- | --- |
| 01/08/2024 | 16 | MOTION to Appear Pro Hac Vice for Harry I. Johnson, III (Fee Paid: $100, receipt number ATXSDC–31025772) by Space Exploration Technologies Corp., filed. Motion Docket Date 1/29/2024. (Johnson, Harry) (Additional attachment(s) added on 1/9/2024: # 1 verified status for Motion Pro Hac Vice) (SaraCelis, 1). (Attachment 1 replaced on 1/9/2024) (SaraCelis, 1). (Entered: 01/08/2024) |
| 01/08/2024 | 17 | MOTION to Intervene by Tom Moline, Deborah Lawrence, Scott Beck, Paige Holland–Thielen, filed. Motion Docket Date 1/29/2024. (Desai, Nimish) (Entered: 01/08/2024) |
| 01/08/2024 | 18 | DECLARATION of Laurie Burgess re: 17 MOTION to Intervene, filed. (Attachments: # 1 Exhibit A Proposed Motion to Transfer Venue, # 2 Exhibit B Copy of SpaceX Motion to Intervene)(Desai, Nimish) (Entered: 01/08/2024) |
| 01/08/2024 | 19 | DECLARATION of TOM MOLINE re: 17 MOTION to Intervene, filed. (Attachments: # 1 Exhibit A NLRB Charges, # 2 Exhibit B NLRB Complaint)(Desai, Nimish) (Entered: 01/08/2024) |
| 01/08/2024 | 20 | DECLARATION of SCOTT BECK re: 17 MOTION to Intervene, filed.(Desai, Nimish) (Entered: 01/08/2024) |
| 01/08/2024 | 21 | DECLARATION of DEBORAH LAWRENCE re: 17 MOTION to Intervene, filed.(Desai, Nimish) (Entered: 01/08/2024) |
| 01/08/2024 | 22 | DECLARATION of PAIGE HOLLAND–THIELEN re: 17 MOTION to Intervene, filed.(Desai, Nimish) (Entered: 01/08/2024) |
| 01/08/2024 | 23 | PROPOSED ORDER *GRANTING MOTION TO INTERVENE* re: 17 MOTION to Intervene, filed.(Desai, Nimish) (Entered: 01/08/2024) |
| 01/09/2024 | 24 | NOTICE of Appearance by Benjamin S. Lyles on behalf of Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed. (Lyles, Benjamin) (Entered: 01/09/2024) |
| 01/09/2024 | 25 | ORDER regarding 16 Motion for Harry I. Johnson, III to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Rolando Olvera) Parties notified.(MaricelaPerez, 1) (Entered: 01/09/2024) |
| 01/09/2024 | 26 | MOTION to Appear Pro Hac Vice for Anne B. Shaver (Fee Paid: $100, receipt number ATXSDC–31030665) by Scott Beck, Paige Holland–Thielen, Deborah Lawrence, Tom Moline, filed. Motion Docket Date 1/30/2024. (Shaver, Anne) (Additional attachment(s) added on 1/10/2024: # 1 verified status for Motion Pro Hac Vice) (SaraCelis, 1). (Entered: 01/09/2024) |
| 01/10/2024 | 27 | MOTION to Appear Pro Hac Vice for Laurie M. Burgess (Fee Paid: $100, receipt number ATXSDC–31037931) by Scott Beck, Paige Holland–Thielen, Deborah Lawrence, Tom Moline, filed. Motion Docket Date 1/31/2024. (Burgess, Laurie) (Additional attachment(s) added on 1/11/2024: # 1 verified status for Motion Pro Hac Vice) (SaraCelis, 1). (Entered: 01/10/2024) |
| 01/10/2024 | 28 | MOTION to Appear Pro Hac Vice for Amanda L. Salz (Fee Paid: $100, receipt number ATXSDC–31038222) by Space Exploration Technologies Corp., filed. Motion Docket Date 1/31/2024. (Salz, Amanda) (Additional attachment(s) added on 1/11/2024: # 1 verified status for Motion Pro Hac Vice) (SaraCelis, 1). (Entered: 01/10/2024) |
| 01/11/2024 | 29 | MOTION OF DEFENDANTS TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a) AND BRIEF IN SUPPORT by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed. Motion Docket Date 2/1/2024. (Attachments: # 1 Continuation Certificate of Conference, # 2 Continuation Certicate of Service)(Lyles, Benjamin) (Entered: 01/11/2024) |

| 01/11/2024 | 30 | PROPOSED ORDER re: 29 MOTION OF DEFENDANTS TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a) AND BRIEF IN SUPPORT, filed.(Lyles, Benjamin) (Entered: 01/11/2024) |
|---|---|---|
| 01/11/2024 | 31 | SEALED EXHIBITS re: 29 MOTION OF DEFENDANTS TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a) AND BRIEF IN SUPPORT by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed. (Lyles, Benjamin) (Entered: 01/11/2024) |
| 01/11/2024 | 32 | ORDER granting 26 Motion for Anne B. Shaver to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Rolando Olvera) Parties notified.(DorinaReyna, 1) (Entered: 01/11/2024) |
| 01/11/2024 | 33 | ORDER granting 27 Motion for Laurie M. Burgess to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Rolando Olvera) Parties notified.(DorinaReyna, 1) (Entered: 01/11/2024) |
| 01/11/2024 | 34 | ORDER granting 28 Motion for Amanda L. Salz to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Rolando Olvera) Parties notified.(DorinaReyna, 1) (Entered: 01/11/2024) |
| 01/12/2024 | 35 | MOTION to Seal AND TO FILE REDACTED PUBLIC COPY AND BRIEF IN SUPPORT by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed. Motion Docket Date 2/2/2024. (Attachments: # 1 Continuation CERTIFICATE OF CONFERENCE, # 2 Continuation CERTIFICATE OF SERVICE, # 3 Proposed Order)(Lyles, Benjamin) (Entered: 01/12/2024) |
| 01/12/2024 | 36 | Unopposed MOTION for Leave to File Excess Pages by Space Exploration Technologies Corp., filed. Motion Docket Date 2/2/2024. (Attachments: # 1 Proposed Order)(Eschbach, Catherine) (Entered: 01/12/2024) |
| 01/12/2024 | 37 | MOTION for Preliminary Injunction by Space Exploration Technologies Corp., filed. Motion Docket Date 2/2/2024. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit B–1, # 4 Exhibit B–2, # 5 Proposed Order)(Eschbach, Catherine) (Entered: 01/12/2024) |
| 01/16/2024 | 38 | RETURN of Service of SUMMONS Executed as to National Labor Relations Board served on 1/5/2024, answer due 3/5/2024, filed.(Eschbach, Catherine) (Entered: 01/16/2024) |
| 01/16/2024 | 39 | RETURN of Service of SUMMONS Executed as to David M Prouty served on 1/5/2024, answer due 3/5/2024, filed.(Eschbach, Catherine) (Entered: 01/16/2024) |
| 01/16/2024 | 40 | RETURN of Service of SUMMONS Executed as to Gwynne A Wilcox served on 1/5/2024, answer due 3/5/2024, filed.(Eschbach, Catherine) (Entered: 01/16/2024) |
| 01/16/2024 | 41 | RETURN of Service of SUMMONS Executed as to Jennifer Abruzzo served on 1/5/2024, answer due 3/5/2024, filed.(Eschbach, Catherine) (Entered: 01/16/2024) |
| 01/16/2024 | 42 | RETURN of Service of SUMMONS Executed as to Lauren M McFerran served on 1/5/2024, answer due 3/5/2024, filed.(Eschbach, Catherine) (Entered: 01/16/2024) |
| 01/16/2024 | 43 | RETURN of Service of SUMMONS Executed as to Marvin E Kaplan served on 1/5/2024, answer due 3/5/2024, filed.(Eschbach, Catherine) (Entered: 01/16/2024) |
| 01/16/2024 | 44 | MOTION to Expedite Motion to Transfer [ECF No. 29] by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed. Motion Docket Date 2/6/2024. (Attachments: # 1 Proposed Order Proposed Order, # 2 Judge's Procedures Certificate of Conference, # 3 Affidavit Certificate of service)(Boehm, David) (Entered: 01/16/2024) |
| 01/17/2024 | 45 | Unopposed MOTION for Leave to File Excess Pages by Space Exploration Technologies Corp., filed. Motion Docket Date 2/7/2024. (Attachments: # 1 Proposed Order)(Eschbach, Catherine) (Entered: 01/17/2024) |

| | | |
|---|---|---|
| 01/17/2024 | 46 | MOTION for Protective Order by Scott Beck, Paige Holland–Thielen, Deborah Lawrence, Tom Moline, filed. Motion Docket Date 2/7/2024. (Attachments: # 1 Proposed Order Granting Motion to Redact)(Desai, Nimish) (Entered: 01/17/2024) |
| 01/17/2024 | 47 | MOTION to Appear Pro Hac Vice for Grace L. Pezzella (Fee Exempt) by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed. Motion Docket Date 2/7/2024. (Pezzella, Grace) (Additional attachment(s) added on 1/18/2024: # 1 Verified Status of Bar Membership for Motion Pro Hac Vice) (JuanitaTabares, 1). (Entered: 01/17/2024) |
| 01/17/2024 | 48 | MOTION to Appear Pro Hac Vice for Daniel Brasil Becker (Fee Exempt) by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed. Motion Docket Date 2/7/2024. (Becker, Daniel) (Additional attachment(s) added on 1/18/2024: # 1 Verified Status of Bar Membership for Motion Pro Hac Vice) (JuanitaTabares, 1). (Entered: 01/17/2024) |
| 01/17/2024 | 49 | RESPONSE in Opposition to 44 MOTION to Expedite Motion to Transfer [ECF No. 29], filed by Space Exploration Technologies Corp.. (Attachments: # 1 Exhibit A, # 2 Exhibit A–1)(Eschbach, Catherine) (Entered: 01/17/2024) |
| 01/17/2024 | 50 | PROPOSED ORDER *Motion to Dismiss and to Expedite Briefing on Defendants' Motion to Transfer Venue* re: 49 Response in Opposition to Motion, filed.(Eschbach, Catherine) (Entered: 01/17/2024) |
| 01/18/2024 | 51 | ORDER granting 48 Motion for Daniel Brasil Becker to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here.**(Signed by Judge Rolando Olvera) Parties notified.(DorinaReyna, 1) (Entered: 01/18/2024) |
| 01/18/2024 | 52 | ORDER granting 47 Motion for Grace L. Pezzella to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here.**(Signed by Judge Rolando Olvera) Parties notified.(DorinaReyna, 1) (Entered: 01/18/2024) |
| 01/18/2024 | 53 | ORDER granting 45 Motion for Leave to File Excess Pages.(Signed by Judge Rolando Olvera) Parties notified.(DorinaReyna, 1) (Entered: 01/18/2024) |
| 01/19/2024 | 54 | REPLY *TO PLAINTIFFS OPPOSITION TO MOTION TO EXPEDITE BRIEFING ON DEFENDANTS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C § 1406(a) AND § 1404(a)*, filed by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox. (Attachments: # 1 Continuation Certificate of Service)(Lyles, Benjamin) (Entered: 01/19/2024) |
| 01/19/2024 | 55 | CERTIFICATE OF INTERESTED PARTIES by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed.(Lyles, Benjamin) (Entered: 01/19/2024) |
| 01/19/2024 | 56 | SURREPLY to 44 MOTION to Expedite Motion to Transfer [ECF No. 29], filed by Space Exploration Technologies Corp.. (Eschbach, Catherine) (Entered: 01/19/2024) |
| 01/19/2024 | 57 | CERTIFICATE OF INTERESTED PARTIES by Space Exploration Technologies Corp., filed.(Eschbach, Catherine) (Entered: 01/19/2024) |
| 01/26/2024 | 58 | NOTICE of Appearance by David G. Oliveira on behalf of Space Exploration Technologies Corp., filed. (Oliveira, David) (Entered: 01/26/2024) |
| 01/29/2024 | 59 | Joint MOTION for Leave to File Excess Pages by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed. Motion Docket Date 2/20/2024. (Attachments: # 1 Exhibit Certificate of Service, # 2 Proposed Order)(Pezzella, Grace) (Entered: 01/29/2024) |
| 01/29/2024 | 60 | RESPONSE in Opposition to 17 MOTION to Intervene, filed by Space Exploration Technologies Corp.. (Attachments: # 1 Proposed Order)(Eschbach, Catherine) (Entered: 01/29/2024) |
| 01/30/2024 | 61 | Joint MOTION for Leave to File Excess Pages by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox, filed. Motion Docket Date 2/20/2024. (Attachments: # 1 Proposed |

| | | Order, # 2 Certificate of Service)(Pezzella, Grace) (Entered: 01/30/2024) |
|---|---|---|
| 01/31/2024 | 62 | MOTION for Leave to File Amicus Curiae Brief in Support of SpaceX's Motion for Preliminary Injunction by Pacific Legal Foundation, filed. Motion Docket Date 2/21/2024. (Attachments: # 1 Amicus Brief, # 2 Proposed Order)(Robbins, Joshua) (Entered: 01/31/2024) |
| 02/01/2024 | 63 | ORDER granting 59 Motion for Leave to File Excess Pages.(Signed by Judge Rolando Olvera) Parties notified.(DorinaReyna, 1) (Entered: 02/01/2024) |
| 02/01/2024 | 64 | RESPONSE in Opposition to 29 MOTION OF DEFENDANTS TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a) AND BRIEF IN SUPPORT, filed by Space Exploration Technologies Corp.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit C–A, # 5 Exhibit C–B, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Proposed Order)(Eschbach, Catherine) (Entered: 02/01/2024) |
| 02/02/2024 | 65 | REPLY to Response to 17 MOTION to Intervene, filed by Scott Beck, Paige Holland–Thielen, Deborah Lawrence, Tom Moline. (Desai, Nimish) (Entered: 02/02/2024) |
| 02/02/2024 | 66 | MOTION for Leave to File Brief of Amicus Curiae by Scott Beck, Paige Holland–Thielen, Deborah Lawrence, Tom Moline, filed. Motion Docket Date 2/23/2024. (Attachments: # 1 Exhibit Brief of Amicus Curiae, # 2 Proposed Order)(Shaver, Anne) (Entered: 02/02/2024) |
| 02/02/2024 | 67 | MOTION for Leave to File Brief of Amicus Curiae by Scott Beck, Paige Holland–Thielen, Deborah Lawrence, Tom Moline, filed. Motion Docket Date 2/23/2024. (Attachments: # 1 Exhibit Brief of Amicus Curiae in Opposition to Preliminary Injunction, # 2 Proposed Order)(Shaver, Anne) (Entered: 02/02/2024) |
| 02/02/2024 | 68 | RESPONSE to 46 MOTION for Protective Order, 35 MOTION to Seal AND TO FILE REDACTED PUBLIC COPY AND BRIEF IN SUPPORT , filed by Space Exploration Technologies Corp.. (Eschbach, Catherine) (Entered: 02/02/2024) |
| 02/02/2024 | 69 | RESPONSE in Opposition to 37 MOTION for Preliminary Injunction, filed by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox. (Attachments: # 1 Proposed Order Proposed Order)(Boehm, David) (Entered: 02/02/2024) |
| 02/05/2024 | 70 | Corrected MOTION for Leave to File Brief as Amicus Curiae by Scott Beck, Paige Holland–Thielen, Deborah Lawrence, Tom Moline, filed. Motion Docket Date 2/26/2024. (Attachments: # 1 Exhibit Brief of Amicus Curiae ISO Motion to Transfer Venue, # 2 Proposed Order)(Shaver, Anne) (Entered: 02/05/2024) |
| 02/05/2024 | 71 | Corrected MOTION for Leave to File Brief as Amicus Curiae by Scott Beck, Paige Holland–Thielen, Deborah Lawrence, Tom Moline, filed. Motion Docket Date 2/26/2024. (Attachments: # 1 Exhibit Brief of Amicus Curiae In Opposition to Preliminary Injunction, # 2 Proposed Order)(Shaver, Anne) (Entered: 02/05/2024) |
| 02/06/2024 | 72 | ORDER granting 70 Motion for Leave to File Motion to Transfer Venue..(Signed by Judge Rolando Olvera) Parties notified.(DahlilaRodriguez, 1) (Entered: 02/06/2024) |
| 02/06/2024 | 73 | Brief of Charging Parties as Amici Curiae in Support of Defendant's Motion to Transfer Venue, filed.(DahlilaRodriguez, 1) (Entered: 02/06/2024) |
| 02/06/2024 | 74 | ORDER granting 71 Motion for Leave to File a brief in support of the opposition to preliminary injunction filed by Defendant's. (Signed by Judge Rolando Olvera) Parties notified.(DahlilaRodriguez, 1) (Entered: 02/06/2024) |
| 02/06/2024 | 75 | Brief of Charging Parties as Amici Curiae in Support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction, filed.(DahlilaRodriguez, 1) (Entered: 02/06/2024) |
| 02/07/2024 | 76 | ORDER denying 44 Motion to Expedite.(Signed by Judge Rolando Olvera) Parties notified.(DorinaReyna, 1) (Entered: 02/07/2024) |
| 02/12/2024 | 77 | REPLY in Support of 35 MOTION to Seal AND TO FILE REDACTED PUBLIC COPY AND BRIEF IN SUPPORT, filed by Jennifer Abruzzo, John Doe, Marvin E |

| | | Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty. (Pezzella, Grace)(Entered: 02/12/2024) |
|---|---|---|
| 02/12/2024 | 78 | REPLY in Support of 29 MOTION OF DEFENDANTS TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a) AND BRIEF IN SUPPORT, filed by Jennifer Abruzzo, John Doe, Marvin E Kaplan, Lauren M McFerran, National Labor Relations Board, David M Prouty, Gwynne A Wilcox. (Attachments: # 1 Exhibit Exhibit A – Redacted ULP Answer, # 2 Exhibit Exhibit B – Google Maps)(Boehm, David) (Entered: 02/12/2024) |
| 02/12/2024 | 79 | REPLY in Support of 37 MOTION for Preliminary Injunction, filed by Space Exploration Technologies Corp.. (Attachments: # 1 Exhibit A – Johnson Declaration, # 2 Exhibit A–1)(Eschbach, Catherine) (Entered: 02/12/2024) |
| 02/15/2024 | 80 | ORDER granting 62 Motion for Leave to File.(Signed by Judge Rolando Olvera) Parties notified.(BerthaVasquez, 1) (Entered: 02/15/2024) |
| 02/15/2024 | 81 | BRIEF in Support re: 37 MOTION for Preliminary Injunction by Pacific Legal Foundation, filed.(BerthaVasquez, 1) (Entered: 02/15/2024) |
| 02/15/2024 | 82 | ORDER granting 29 Motion OF DEFENDANTS TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a) AND BRIEF IN SUPPORT. It is ORDEREDthat this case be transferred to the Central District of California pursuant to 28 U.S.C. 1406(a).(Signed by Judge Rolando Olvera) Parties notified.(BerthaVasquez, 1) (Entered: 02/15/2024) |
| 02/15/2024 | | Interdistrict transfer to Central District of California. Case transferred electronically. Case terminated on 2/15/2024, filed. (BerthaVasquez, 1) (Entered: 02/15/2024) |

## CERTIFICATE OF SERVICE

I certify that on this 16th day of February, 2024, I electronically filed the foregoing Exhibits in Support of Emergency Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system

I further certify that I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following case participants:

ALAMDAR S. HAMDANI
*United States Attorney Southern District of Texas*

BENJAMIN S. LYLES
*Assistant United States Attorney*
1701 W. Bus. Highway 83
Suite 600
McAllen, TX 78501
(956) 618-8010
benjamin.lyles@usdoj.gov

*Attorney-in-Charge for Defendants*

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and Special Litigation Branch*
KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
DANIEL BRASIL BECKER
*Trial Attorney*
GRACE L. PEZZELLA
*Trial Attorney*

DAVID P. BOEHM
*Trial Attorney*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
(202) 273-4202
david.boehm@nlrb.gov

HONORABLE ROLANDO OLVERA
*United States District Judge*
UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION
Reynaldo G. Garza-Filemon B. Vela
United States Courthouse
600 E. Harrison St.
Brownsville, TX 78520


JOSHUA M. ROBBINS
PACIFIC LEGAL FOUNDATION
*Attorney-in-Charge*
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
 (202) 888-6881
jrobbins@pacificlegal.org

OLIVER J. DUNFORD
PACIFIC LEGAL FOUNDATION
4400 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
 (561) 691-5000
odunford@pacificlegal.org

*Counsel for Amicus Curiae Pacific
Legal Foundation*

ANNE B. SHAVER
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ashaver@lchb.com

LAURIE M. BURGESS
BURGESS LAW OFFICES, P.C.
498 Utah Street
San Francisco, CA 94110
(312) 320-1718
lburgess@burgess-laborlaw.com

Nimish Ramesh Desai
LIEFF CABRASER ET AL
275 Battery St
29th Floor
San Francisco, CA 94111
(415) 956-1000
ndesai@lchb.com

*Counsel for Amici Curiae Tom
Moline, Scott Beck, Deborah
Lawrence, and Paige Holland-
Thielen*


s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Space Exploration
Technologies Corp.*