No. 24-40103

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN RE SPACE EXPLORATION TECHNOLOGIES CORP.,

Petitioner.

On Petition for Writ of Mandamus to the
United States District Court for the Southern District of Texas
Civil Action No. 24-cv-00001

## RESPONSE TO PETITION FOR WRIT OF MANDAMUS

JENNIFER A. ABRUZZO
*General Counsel*

PETER SUNG OHR
*Deputy General Counsel*

NANCY E. KESSLER PLATT
*Associate General Counsel*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

PAUL A. THOMAS
*Supervisory Trial Attorney*

DAVID P. BOEHM
*Trial Attorney*

GRACE L. PEZZELLA
*Trial Attorney*

DANIEL BRASIL BECKER
*Trial Attorney*

PHILLIP MELTON
*Trial Attorney*

NATIONAL LABOR RELATIONS BOARD
1015 HALF STREET, S.E.
WASHINGTON, DC 20570
202-273-4202

## INTRODUCTION

The California office of a California company fires eight employees, almost all of them based in California. The California regional office of the National Labor Relations Board ("NLRB") engages in a year-long investigation, finds merit to charges alleging that the firings were unlawful, and issues an administrative complaint setting the case for a California hearing. According to Petitioner Space Exploration Technologies Corp. ("SpaceX"), not only may a challenge to the NLRB's proceeding be heard in Texas, but it is "clear and indisputable" that transferring such a challenge from Texas to California is impermissible. This not only sounds wrong, it *is* wrong. SpaceX's venue arguments are meritless. And that is exactly what the district court concluded before properly transferring the case to the Central District of California.

Rather than litigate the merits of its case in the transferee court, with a motion for preliminary injunction still pending, SpaceX has instead filed an emergency petition for extraordinary mandamus relief with this Court. In its petition, SpaceX asks this Court to undo the district court's transfer order in the hopes that it may ultimately

1

convince the court below to halt agency proceedings with no substantial connection to Texas. But SpaceX cannot meet the strict requirements for this Court to grant such a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004) (cleaned up).

In particular, SpaceX cannot show—as it must—that it has a clear and indisputable right to litigate its challenge to the NLRB's proceeding in the Southern District of Texas. The district court appropriately determined that venue did not exist under 28 U.S.C. § 1391(e)(1) because there were no "substantial" events giving rise to the underlying case that occurred in that forum, and because what little could be ascribed to that district was eclipsed by the overwhelming weight of events arising out of the Central District of California. As explained below, that determination necessarily included a careful analysis of all the relevant facts that this Court is not at liberty to reweigh in this posture. Furthermore, mandamus is not appropriate under the circumstances here for several legal and practical reasons.

The petition should be denied.

# FACTS

## This case, which is about enjoining an agency proceeding in California, has virtually no connection to Texas.

This case stems from eight unfair-labor-practice ("ULP") charges filed with the NLRB's Region 31 office, based in Los Angeles, California. [Doc. 29 at 3 n.16; Doc. 18 ¶¶ 3-4; Doc. 74 at 6.][1] The charges were filed on behalf of eight employees who were terminated by SpaceX for their involvement in drafting and distributing an Open Letter ("Terminated Employees"). [Doc. 29 at 3 n.16; Doc. 74 at 5.] Seven of the Terminated Employees lived in California and all eight reported to or were supervised by managers at SpaceX's facility in Hawthorne, California (the "Hawthorne Facility"). [Doc. 29 at 3 n.16.] The Open Letter was sent from and drafted in California after a series of meetings at the Hawthorne Facility and nearby locations. [Doc. 74 at 5; Doc. 21 ¶ 10.] SpaceX's principal place of business is the Hawthorne Facility, where SpaceX is also headquartered. [Doc. 29 at 3-4 n.17.] SpaceX also has operations in Texas, Florida, Washington, and Washington, D.C. [*Id.*]

---

[1] Together with this response, Respondents have filed a Supplemental Appendix containing significant documents from the docket below that do not appear in Petitioner's Appendix.

Following a year-long investigation by Region 31, the Regional Director of that office found merit to the eight ULP charges and issued an administrative complaint ("ULP Complaint"), on behalf of the NLRB's General Counsel. [*Id.* at 4 n.20.] That ULP Complaint alleges a course of unlawful conduct by SpaceX supervisors and agents taking place nearly entirely at the Hawthorne Facility. [*Id.* at 4-5 n.22-25].[2] The ULP Complaint contains no reference to Texas. It does, however, include a notice setting a hearing on March 5, 2024 in Los Angeles. [Doc. 29 at 5 n.26, n.27.] In addition, around the same time that the ULP Complaint issued, Region 31 advised SpaceX that the Agency was considering the related question of whether to seek temporary injunctive relief under Section 10(j) of the NLRA. Any such action requesting 10(j) relief would be filed in the Central District of California. [*Id.* at 4 n.20.]

---

[2] *See also* Doc. 31 (sealed filing, "ULP Compl.") ¶¶ 6, 8-10, 12-13, 19-20, 24-28 (concerning conduct alleged to have occurred at the Hawthorne Facility over several days); ULP Compl. ¶¶ 21-23 (regarding conduct affecting one employee that was alleged to have occurred in Redmond, Washington on a single day); Doc. 73 at 5-6 (alleging that various named SpaceX supervisors and agents attended meetings with Terminated Employees in Hawthorne as part of a retaliatory campaign leading to their termination).

The day after receiving the ULP Complaint, SpaceX filed its district court complaint against Respondents NLRB and several official-capacity co-defendants, including its General Counsel, all current Board members, and a pseudonymous administrative law judge ("ALJ").[3] That complaint lobs several constitutional challenges to an 88-year-old agency that remains structurally unchanged despite numerous appearances before the Supreme Court.[4] SpaceX's constitutional challenges—centered on statutory removal protections for ALJs and Board members, the lack of a jury trial in NLRB proceedings, and alleged bias resulting from the Board's possible authorization of Section 10(j) litigation—are not presently before this Court.

None of the Terminated Employees "have any relationship with the State of Texas." [*Id.* at 3 n.16 (quoting Doc. 18 ¶12).] None of the

---

[3] Sharon Steckler, who is assigned to the San Franscisco Office of the NLRB's Division of Judges, was later identified as the ALJ who will preside over the SpaceX ULP matter. *See* Division of Judges Directory, https://www.nlrb.gov/about-nlrb/who-we-are/division-judges/division-judges-directory.

[4] Some of the key cases upholding the NLRB's structure and statutory authority include *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937), *Myers v. Bethlehem Shipbuilding Corp.* 303 U.S. 48 (1938), *Virginia Electric & Power Co. v. NLRB*, 319 U.S. 533 (1943), and *Fiberboard Paper Products v. NLRB,* 379 U.S. 203 (1964).

Respondents reside there. [Doc. 29 at 6, and authorities therein.]

Indeed, not even SpaceX resides in Texas. *See* 28 U.S.C. § 1391(e)(2) (a

corporate plaintiff resides "only in the judicial district in which it

maintains its principal place of business"). It is a resident of California.[5]

And there is no question that SpaceX could have brought the instant

action in the Central District of California, where it resides, under 28

U.S.C. § 1391(e)(1)(A), and where the overwhelming majority of

operative events giving rise to SpaceX's suit occurred, under

§ 1391(e)(1)(B).[6]

The NLRB immediately moved to transfer this litigation to the

Central District of California under 28 U.S.C. § 1406(a) because the

Southern District of Texas was an improper venue. And since SpaceX's

complaint announced that the company would seek preliminary

---

[5] With several of the Terminated Employees alleging that SpaceX forced
them to sign employment agreements requiring them to adjudicate all
employment related disputes in California, SpaceX apparently also has
a strong preference for litigation in California. [Doc. 73 at 11 (citing
Doc. 20 ¶¶ 16-17, Doc. 22 ¶¶ 15-16, Doc. 21 ¶ 16; Doc. 19 ¶¶ 17-18).]

[6] Most importantly, the Central District of California is where Region
31's year-long investigation was based, where an action for Section 10(j)
relief would be filed, and where the ULP hearing that SpaceX seeks to
enjoin is scheduled to take place.

injunctive relief to stop the scheduled March 5 administrative hearing, the NLRB asked that the case be transferred—rather than dismissed—under that provision to give the transferee court sufficient time to rule on SpaceX's request. In addition, as it has several times in the past when a party files a lawsuit away from the locus of a dispute,[7] the Board moved in the alternative for a convenience-based transfer "in the interest of justice" under 28 U.S.C. § 1404(a). And to facilitate a quick resolution of the threshold issues raised by its motion to transfer, the NLRB separately asked that transfer briefing be expedited, which SpaceX vehemently opposed and the district court ultimately denied. [Docs. 44, 49, 54, 56, 76.]

On February 15, 2024, the district court granted transfer for lack of venue under 28 U.S.C. § 1406(a), without addressing the Board's alternative request for transfer under § 1404(a). Transfer was

---

[7] *Care One, LLC v. NLRB,* No. 2:23-cv-03221, 2023 WL 4156859, at *6 (D.N.J. June 23, 2023); *Lab. Corp. of Am. Holdings v. NLRB,* 942 F. Supp. 2d 1 (D.D.C. 2013); *Pac. Mar. Ass'n v. NLRB,* 905 F. Supp. 2d 55, 58-59 (D.D.C. 2012).

effectuated that same day, before SpaceX filed its petition with this Court for a writ of mandamus.[8]

## ARGUMENT

### SpaceX fails to meet the extraordinarily high standard for a writ of mandamus.

The writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney*, 542 U.S. at 380; *see United States v. Denson*, 603 F.2d 1143, 1146 (5th Cir. 1979) (en banc) (noting "countless expressions" for the "black-letter proposition that mandamus is an extraordinary remedy for extraordinary causes" and collecting cases). This extraordinary remedy will be granted only in "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (quoting *Cheney,* 542 U.S. at 380) (cleaned up). Mandamus is not a substitute for appellate review; mere legal error— even reversible error—is not a sufficient basis for mandamus. *Id.* at

---

[8] Counsel for Respondents was informed by the Civil Intake office of the Central District of California that the case was received by that court on February 15, 2024, and assigned to Judge Christina A. Snyder as case number 24-cv-1349-CAS (JPRx).

310; *see also In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015) ("In recognition of the extraordinary nature of the writ, we require more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion."). In short, while the mandamus standard is not insuperable, it is nevertheless one of the most demanding standards known to law. *In re Volkswagen*, 545 F.3d at 311.[9]

The Supreme Court has established three requirements that must be met before a writ of mandamus may issue. *In re Volkswagen*, 545 F.3d at 309. First, "the party seeking issuance of the writ [must] have no other adequate means to attain the [desired] relief." *Id.* (quoting *Cheney*, 542 U.S. at 380–81) (cleaned up). This helps ensure that mandamus, an extraordinary remedy, "will not be used as a substitute for the regular appeals process." *Id.* Second, "the petitioner must satisfy

---

[9] While "the use of mandamus to control decisions that go beyond the limits of transfer power or that rely on wrong legal criteria" is "relatively uncontroversial," courts of appeals have regularly, and erroneously, been led to "flirt with review for abuse of discretion." 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3935.4 (3d ed. 2023) ("Wright & Miller"). This is wrong—the writ is only to be granted in extraordinary cases producing clearly erroneous results. *In re Volkswagen*, 545 F. 3d at 310.

the burden of showing that [his] right to issuance of the writ is clear
and indisputable." *Id.* Finally, "even if the first two prerequisites have
been met, the issuing court, in the exercise of its discretion, must be
satisfied that the writ is appropriate under the circumstances." *Id.*

### A. This Court has held no other adequate means of relief is available in transfer cases.

This Court has held that the first mandamus requirement "is
satisfied in the motion-to-transfer context" because meaningful
appellate review of a district court's transfer order is rarely available.
*In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (cleaned up).

Noting this binding authority, Respondents do not contest, for
purposes of this response, that this factor is satisfied. Respondents
nonetheless note that petitioners like SpaceX should first be required to
request retransfer from the transferee court before seeking an
extraordinary writ, no less than when seeking an appeal. *Cf. Hoffmann
v. United States*, 17 F. App'x 980, 985-86 (Fed. Cir. 2001).

### B. SpaceX fails to establish a "clear and indisputable" right to mandamus.

A mandamus petitioner must show that it has a clear and
indisputable right to the writ. *In re Volkswagen*, 545 F.3d at 309. This
is no low bar. To succeed, a petitioner must show that a district court's

decision constitutes a "clear abuse of discretion" based on "extraordinary errors" leading to "patently erroneous results." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (per curiam).

"This court has routinely held, sometimes in published opinions, that a district court erred, despite stopping short of issuing a writ of mandamus." *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 347 n.4 (5th Cir. 2017) (collecting cases); *see also In re Paxton,* 60 F.4th 252, 260 (5th Cir. 2023) (collecting cases where writ was denied despite error because legal issue was difficult or district court could correct error ); *In re Beazley Ins. Co.*, No. 09-20005, 2009 WL 7361370, at *6 (5th Cir. May 4, 2009) (denying mandamus to remand case to state court, even assuming district court may have erred).

For example, this Court has found that a district court erred by sending or requiring notice of a pending Fair Labor Standards Act collective action to employees who were unable to join the action because of binding arbitration agreements waiving their right to participate in these actions, and by requiring their employer to provide their contact information. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019). This Court further held in *JPMorgan Chase* that

the other two *Cheney* requirements were met. *Id.* at 499-500.
Nevertheless, this Court held that, "in the context of the facts and
circumstances of this case," the district "court did not '*clearly and
indisputably*' err," and denied the mandamus petition *Id.* at 504.

Given this high standard, this Court has issued writs of
mandamus only when the errors committed by the court below were
extraordinary. In the transfer context, these extraordinary errors
included: a cluster of gross legal errors and misjudgments that resulted
in the district court "glossing over the fact that not a single relevant
factor favor[ed] the [Plaintiff's] chosen venue," *In re Volkswagen*, 545
F.3d at 318; a district court giving no reasons explaining its denial of a
forum non conveniens motion and failing to enforce a valid forum
selection clause, *In re Lloyd's*, 780 F.3d at 294; and a district court
applying the wrong legal standard for evaluating severance and
transfer motions and "egregiously misinterpreting" the petitioner's
claims. *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022). The
abuses of discretion and patent errors that warranted mandamus in
these cases were truly exceptional, illustrating the nature of this point.

Here, both a quick review and a thorough perusal of the district court's decision lead to the same conclusion: this case was properly transferred to the Central District of California under 28 U.S.C. § 1406(a) because the Southern District of Texas is an improper venue for this case under 28 U.S.C. § 1391(e). And even if this Court were inclined to weigh the operative facts differently than the district did, SpaceX still cannot show that the district court committed a clear trespass outside the bounds of judicial discretion that produced patent, extraordinary, and prejudicial error. *In re Radmax, Ltd.*, 720 F.3d at 290. Indeed, SpaceX does not even allege "patent," "extraordinary" error.

### 1. The district court properly applied the correct legal standard to the operative facts in granting transfer under 28 U.S.C. § 1406(a).

First and foremost, the district court applied the correct legal standards governing transfer under 28 U.S.C. § 1406(a). SpaceX does not dispute the district court's conclusion that because Respondents challenged venue in the Southern District of Texas, SpaceX "ha[d] the burden of demonstrating that . . . venue is proper." [Doc. 82 at 2 (citing e.g. *Graham v. Dyncorp Intl, Inc.*, 973 F. Supp. 2d 698, 700 (S.D. Tex.

13

2013)]. Nor does SpaceX dispute that because none of the parties are residents of Texas, venue in the district court depended upon whether "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas. [*Id.* (citing 28 U.S.C. § 1391(e)(l) and 28 U.S.C. § 1406(a); noting that it is undisputed that no party resides in the Southern District of Texas)].

The district court concluded that the principal events giving rise to this action—the drafting of the Open Letter and the commencement of the NLRB's proceeding—took place in the Central District of California. The court therefore noted that "the nexus of facts is heavily focused" in that district, where the Terminated Employees "were all connected" to SpaceX's Hawthorne facility, where "[n]early all the alleged ULP[s] in the administrative complaint occurred," and where the administrative proceeding will take place. [Doc. 82 at 3].

The district court then analyzed the facts that SpaceX relied on in support of its Texas-venue position and concluded that they were "incidental," "insubstantial in number," "far less significant than those occurring in California," and "do not comprise a substantial part of the events giving rise to" SpaceX's district court claim. Doc. 82 at 4]. In

14

particular, regarding SpaceX's claims that an Open Letter caused

disruption in Texas[10] and that an email sent by SpaceX's COO from a

different Texas district to all of SpaceX's employees nationwide

somehow make venue proper in the Southern District of Texas,[11] the

district court concluded that both events were "incidental" or

represented "only a small part" of a much larger tapestry. [*Id.* at 3-4].

Likewise, the district court concluded that even if some remedies sought

in the NLRB's proceeding and demands the proceeding may have on

---

[10] To document this in-district disruption, SpaceX pounds on
keystrokes. Before the district court and again before this Court,
SpaceX insists that *at least* 210 people in this district digitally
interacted with the Open Letter and that they did so through numerous
intentional "interactions." [Doc. 64 at 4; Pet at 28]. SpaceX also,
incredibly, claims that this "overwhelmed" its communications
channels. [Doc. 37 at 5; Pet. at 8]. Yet, SpaceX is a satellite-
communications company with "more than 13,000 employees"
nationwide. [Dc. 37 at 4-5; Doc. 1 at ¶ 35; Pet. at 7.] And while it is hard
to imagine how clicks and keystrokes among less than 2% of a telecom's
workforce could be overwhelming, such tangential after-effects are
unrelated to the NLRB's administrative proceedings or SpaceX's
constitutional claims and cannot ground venue in Texas.

[11] SpaceX suggests that the NLRB could have commenced an
administrative proceeding based solely on "this alleged unfair labor
practice alone," and that this single companywide email would have
been enough to make venue proper in Southern District of Texas. [Pet.
at 6, 23.] This counterfactual is pure speculation and is insufficient to
establish venue here, where nearly every consequential event in the
ULP Complaint took place in California. [Doc. 31 ¶¶ 11, 29].

SpaceX personnel might extend beyond the Hawthorne facility, such effects would "not show any inherent connection to the Southern District of Texas" and would almost certainly "have far more relevance" to the Hawthorne facility. [Id. at 4]. Thus, the district court assessed and soundly exercised its discretion to reject the substantiality of SpaceX's proffered facts both on their own and in relation to the overall circumstances leading to its claim.

In an unconvincing attempt to get the court to ignore where the overwhelming bulk of events leading to this dispute actually took place, SpaceX insists on a reading of 28 U.S.C. § 1391(e)(l)(B) that would effectively erase "substantial" from that short provision. But statutes should be construed to "render every word operative" and not "make some idle or nugatory." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) (discussing surplusage canon); *see Duncan v. Walker*, 533 U.S. 167, 174 (2001) (explaining the courts' duty "to give effect, if possible, to every clause and word of a statute," especially when a term occupies a "pivotal" place in the statutory scheme) (internal cites and quotations omitted). The reading SpaceX advances would essentially create a general venue

statute wherever a party had an office or some minimal event took place—which is contrary to the congressional intent expressed in the statute.[12]

SpaceX's further argument that the district court erroneously applied a "most" substantial test is also without merit. The district court explicitly stated that a transfer decision is not based on a "best" venue standard. Not once does the district court refer to "most substantial" events or a "most substantial" standard (*contra* Pet. 17). The word "most" appears three times in the decision and none of those references are to suggest this was a close case. Indeed, the district court could not have committed the error SpaceX alleges precisely because it found all Texas-based connections cited by SpaceX to be "insubstantial" or "incidental." [Doc. 82 at 2-4].

---

[12] Indeed, Congress has shown itself quite capable of drafting venue statutes without any sort of substantiality requirement. *See* 28 U.S.C. § 1400(b) (venue in patent cases proper "where the defendant has committed acts of infringement and has a regular and established place of business"); 28 U.S.C. § 1408(1) (venue in Chapter 11 bankruptcy cases proper wherever "there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership").

### 2. The district court's assessment of substantiality was not clearly and indisputably wrong.

In assessing the substantiality of events giving rise to a claim, the relevant inquiry focuses on the defendant's conduct, not the plaintiff's. *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 460 (S.D. Tex. 1996). Though SpaceX continually attempts to shift focus to the alleged impacts the NLRB's administrative proceeding will have on itself, *Seariver* explains why the focus of district courts should remain on where the defendant's complained-about activities took place. Here, that is the Central District of California, where Region 31 spent over a year investigating the charges filed by or on behalf of the Terminated Employees, where the administrative hearing that SpaceX seeks to enjoin is scheduled to take place, and where a possible suit under Section 10(j) of the NLRA might be filed.

In properly determining substantiality "in relation to the totality of events giving rise to Plaintiffs' claims," the district court was not just consistent with its prior decision in *Andrade v. Chojnacki,* 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996), it was consistent with more recent decisions, including from at least one other court within the Fifth Circuit. In *Broker's Home, LLC v. Trans Union, LLC*, No. 07-846-JJB,

18

2008 WL 11350295, at *1 (M.D. La. 2008), the Middle District of

Louisiana cited to *Andrade* for the proposition that when interpreting

the meaning of 28 U.S.C. § 1391 and 28 U.S.C. § 1406(a), courts should

construe substantiality "in relation to totality of events." 2008 WL

11350295, at *1 n.4. Moreover, the district court noted:

> Acts or omissions must be more than tangentially connected to
> qualify as "**substantial**" under the statute outlining the general
> provisions regarding venue; indeed, **substantiality is intended to
> preserve the element of fairness so that a defendant is not haled
> into a remote district having no real relationship to the dispute**,
> and thus, the test for determining venue is not the defendant's
> "contact" with a particular district, **but rather the location of those
> events or omissions giving rise to the claim**.

*Id.* at *1 (bold in original); *see also* 14D Wright & Miller § 3806 n.10

(citing *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765-766 (S.D. Ohio 2014) (only

those acts or omissions with substantial, rather than tangential,

connections to a plaintiff's claims can establish venue)).

Contrary to SpaceX's position, district courts are not prohibited

from making a "commonsense appraisal" of the "totality of events" to

determine which have "operative significance in that case." *Lamont v.

Haig*, 590 F.2d 1124, 1134 & n.62 (D.C. Cir. 1978). Nor should this

Court ignore the "overwhelming majority" of operative events taking

place in California. *See, e.g., Maysaroh Am. Arab Commc'ns &*

*Translation Ctr., LLC*, 51 F. Supp. 3d 88, 93-95 (D.D.C. 2014)

(transferring case under 28 U.S.C. § 1406(a) despite allegations of

forced labor within its district because "the overwhelming majority of

events giving rise to plaintiff's claims occurred" in another district).

> **3. SpaceX wrongly suggests that courts must ignore the overwhelming weight of events taking place outside of a plaintiff's preferred venue.**

SpaceX's own authorities for the proposition that it "is hornbook

law" that venue is not limited to where "the most substantial events

occurred" also make clear that transfer is proper where, as here, "[t]he

overwhelming bulk of events and omissions giving rise to Plaintiff's

claims occurred" in another venue. Pet. at 5; 14D Wright & Miller

§ 3806 n.20 (citing *Ciralsky v. CIA*, 689 F. Supp. 2d 141, 160-61 (D.D.C.

2010)). The 1990 amendments to the venue statute merely allow for

greater venue flexibility "in close cases," but that does not mean that

courts are free to ignore "where the [alleged] wrong has been

committed." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th

Cir. 2003); 14D Wright & Miller § 3806 n.10 (citing *Jenkins Brink Co.*

and *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (courts should

review the entire sequence of events underlying a claim)). Thus, in

contrast to close cases where a bare-majority of events take place in one
district or another, district courts are expected to transfer cases in
which venue is asserted based on only tangential connections to
plaintiffs' claims or where the overwhelming weight of operative events
took or will take place in another venue. *Maysaroh*, 51 F. Supp. 3d at
93–95; *Ciralsky*, 689 F. Supp. 2d at 160–61; *Jenkins Brick,* 321 F.3d at
1371; *Broker's Home*, 2008 WL 11350295, at *1; *Reilly v. Meffe*, 6 F.
Supp. 3d 760, 765-66; 14D Wright & Miller Fed. § 3806 n.10.

SpaceX's invocation of *Safety National Casualty Corp. v. United
States Department of the Treasury*, 2007 WL 7238943, at *3 (S.D. Tex.
Aug. 20, 2007), and *Uffner v. La Reunion Francaise, SA*, 244 F.3d 38
(1st Cir. 2001) [Pet. at 30], provide it no support here. Rather, both
cases stand for the proposition that courts are supposed to assess the
totality of circumstances when determining if venue is proper. In *Safety
National*, 2007 WL 7238943, at *3, the district court considered a
transfer motion grounded on the fact that the action there concerned a
ruling by a DC-based commissioner within the Department of Treasury.
Nevertheless, the court found venue to be proper in Texas because most
of the 974 bonds considered by the commissioner, including 100% of the

sample bonds more closely reviewed by that commissioner, were posted in the Southern District of Texas. *Id.* This supports the obvious conclusion that when a court can identify a venue in which the overwhelming weight of operative events took place, the case should be decided there.

As for *Uffner*, 244 F.3d 38, that case involved a diversity action against an insurance company for denial of coverage after a yacht sank in Puerto Rican waters. The District of Puerto Rico found that this was a substantial event grounding plaintiff's claim of venue. *Id.* SpaceX's analogizing its case to a sunken ship does not support venue. Here, the analogous event to the ship-sinking—the proximate cause of the litigation—was SpaceX's firing of eight employees in the Central District of California.

SpaceX again misses the mark by pointing to *Career Colleges & Schools of Texas v. United States Department of Education*, 2023 WL 2975164, at *3 (N.D. Tex. Apr. 17, 2023), and *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015). [Pet. at 7, 19, 22]. They both involve a nationwide rule promulgated through notice-and-comment rulemaking. In stark contrast to an adjudication occurring (and related

to conduct that overwhelmingly occurred) in another venue, facial challenges to rulemaking do not typically have a clear center of gravity, and there is no requirement that challenges can be filed only where the rulemaking occurs. Rather, the basis for venue in a rulemaking case can easily be established on multiple grounds, including where the plaintiff resides and where there is a substantial nexus to the events giving rise to a plaintiff's claim. The principle that the "burdens" from an "unlawful rule" may justify venue in a pre-enforcement challenge to rulemaking does not make venue in Texas proper here, where SpaceX is challenging the NLRB's case-specific adjudication of a California-based labor dispute. *Career Colls.*, 2023 WL 2975164, at *2.[13]

SpaceX fares no better by pointing to defamation suits like *Hawbecker v. Hall*, 88 F. Supp. 3d 723 (W.D. Tex. 2015), and *Long v.*

_____

[13] SpaceX argues that caselaw specific to facial challenges to rulemaking before a final rule takes effect should apply here because "the NLRB is choosing to act through an adjudicatory proceeding to set labor policy." [Pet at 22]. It cites to no authority to support this proposition. This is unsurprising, as SpaceX's argument is tantamount to saying that every court in the United States has venue in every suit to enjoin an NLRB case because of the speculative possibility that some new rule of law developed in that case might someday have an impact there. Nor does SpaceX even explain how the NLRB is setting labor policy here. To date, the Board's California-based Region has only alleged violations of *existing* labor law.

23

*Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085 (N.D. Tex. 2003). [Pet. at 18-19, 22, 24]. While SpaceX excises references to defamatory claims in quoting from *Hawbecker*, the district court was clear that "[i]n a defamation case, the Court may consider the venue of where the defamation occurred and the venue of where the harm was felt to determine the location of 'a substantial part of the events' under 1391(b)(2)." 88 F. Supp. 3d at 731.

Likewise, in *Long*, the court considered allegations that the out-of-state defendants there "made extraordinary and wrongful efforts to prevent [p]laintiff from obtaining employment in Texas in the staffing industry." 263 F. Supp. 2d at 1087-89. In other words, the core of the allegations involved speech directed at Texas and intended to have its primary effect there. It makes sense to have contacts with a district serve as a basis for venue when those contacts are the very factual predicates for the defamation claim. But here we are not dealing with a defamation suit or claims under Texas state law.[14] Rather, the causes of

---

[14] In its mandamus petition, SpaceX argues for the first time that "the sending of the Open Letter alone to the Texas facilities and the resulting disruption should also have been sufficient to satisfy the 'substantial part of the events' standard." [Pet. at 29]. But a mandamus

action set forth in SpaceX's complaint attack the constitutionality of

agency proceedings and, unlike the defamatory contacts in *Hawbecker*

and *Long*, the acts SpaceX relies upon to lay venue in the court below

are *at most* tangentially related to its claims.

In sum, none of the cases SpaceX cites prohibit courts from

making a "commonsense appraisal" of the "totality of events" to

determine which have "operative significance in that case." *Lamont*, 590

F.2d at 1134 & n.62. What SpaceX wants is for this Court and the court

below to fixate on even the most insignificant and tangential contacts

within its preferred venue and to turn a blind eye to the overwhelming

weight of operative events in the Central District. But where plaintiffs

can only show tangential in-district connections to their claims or where

the overwhelming weight of operative events took place in another

venue, application of the proper legal standard means that district

courts should transfer the matter. *Maysaroh*, 51 F. Supp. 3d at 93–95;

---

petition is not the time to raise new arguments, which have been
forfeited. Moreover, this is not a defamation suit and none of the
Respondents were involved in sending that letter, so it cannot be
grounds for venue in a Texas suit to enjoin an agency's internal
administrative process, even one adjudicating matters related to that
letter.

*Ciralsky*, 689 F. Supp. 2d at 160–61; *Jenkins Brick*, 321 F.3d at 1371;

*Broker's Home*, 2008 WL 11350295, at *1; *Reilly v. Meffe*, 6 F. Supp. 3d

760, 765–66; 14D Wright & Miller § 3806 n.10.

### C. Mandamus is not appropriate under the circumstances here.

Finally, "even if the first two prerequisites have been met, the

issuing court, in the exercise of its discretion, must be satisfied that the

writ is appropriate under the circumstances." *In re Volkswagen*, 545

F.3d at 309 (quoting *Cheney*, 542 U.S. at 381). This requirement

partially reflects the supervisory nature of the writ of mandamus,

making the writ "particularly appropriate when the issues also have an

importance beyond the immediate case." *Id.* at 319. This includes cases

where there is a suggestion of "the abusive manipulation of federal

court procedures in order to delay or altogether avoid meaningful merits

consideration of [legal] claims." *Def. Distributed*, 30 F.4th at 427. It also

includes situations where lower courts need guidance as to when

transfer is or is not appropriate. *In re TikTok*, 85 F.4th at 367 (granting

mandamus where district court denied transfer of patent infringement

case despite lack of any connection to venue where case was filed, and

Federal Circuit, applying Fifth Circuit law, had recently reached

conflicting results in two mandamus transfer cases). Additionally, because the All Writs Act is the jurisdictional basis for writs of mandamus, the writ must be necessary "in aid of" the issuing court's jurisdiction and "agreeable to the principles and usages of law." 28 U.S.C. § 1651(a).

Here, the lack of other cases raising the venue-transfer issue and serious equitable concerns presented by SpaceX's attempts to manipulate federal court procedures and secure review in an improper venue strongly counsel against the appropriateness of a writ in this action.

### 1. This Court does not have jurisdiction because transfer has already been effected.

When "a transfer of a case has been completed, the transferor court—and the appellate court that has jurisdiction over it—lose all jurisdiction over the case." *See Santiago-Lugo v. Tapia*, 188 F. App'x. 296, 297 (5th Cir. 2006) (quoting *In re United States*, 273 F.3d 380 (3d Cir. 2001)). When cases are transferred electronically, the "transfer [is] completed essentially instantaneously." *See Home Furnishings Store, Ltd. v. Stiles Machinery, Inc.*, No. CIV.A. 11-698, 2011 WL 6329869, at *1 (E.D. La. Dec. 19, 2011).

27

The Central District of California now has jurisdiction over SpaceX's complaint and preliminary injunction bid. The Southern District of Texas "relinquishe[d] all jurisdiction" when it transferred the case on February 15, and terminated its case. As noted above, upon transfer, the case was assigned to Judge Snyder of the Central District of California as case number 24-cv-1349-CAS (JPRx). That should be the end of the matter.

### 2. SpaceX is not entitled to an improper, forum-shopped venue merely because it prefers certain precedent; this petition simply delays proceedings on the merits.

Courts in this Circuit have recognized that a plaintiff's choice of venue should be accorded little to no weight when a party files a declaratory judgment action in anticipation of suit by its adversary. *Paragon Industries, L.P. v. Denver Glass Machinery, Inc.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008); *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983). Anticipatory suits are "disfavored because they are an aspect of forum-shopping." *Mission Ins.*, 706 F.2d at 602 n.3. As discussed at length in the NLRB's filings supporting transfer [Docs. 29,

28

p.10-12; 78, p.2-3, 5-9], SpaceX's suit for injunctive relief is an

anticipatory suit, and its choice of venue is thus of little consequence.

SpaceX suggests that Respondents improperly moved for transfer

out of an "open desire to avoid Fifth Circuit precedent" and to "delay or

. . . avoid meaningful consideration" of the merits of preliminary relief.

Pet. at 15. In reality, SpaceX is the party seeking to avoid properly

applicable Ninth Circuit precedent by manufacturing venue in the

wrong circuit. *Compare, e.g., Decker Coal Co. v. Pehringer*, 8 F.4th

1123, 1132 (9th Cir. 2021) (rejecting the notion that "all two-level for-

cause protections for inferior officers [are] unconstitutional"), *with*

*Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022) (holding that "[t]wo

layers of for-cause protection" is forbidden under "Supreme Court

precedent"), *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023).

Respondents have rigorously engaged with Fifth Circuit precedent in

opposing SpaceX's motion for preliminary injunction,[15] while explaining

---

[15] Contrary to SpaceX's accusation, the Board is not pulling out all the
stops to avoid unfavorable Fifth Circuit precedent. Indeed, many of this
Court's decisions are highly favorable to the Board's merits positions,
including *Collins v. Department of Treasury*, 83 F.4th 970, 982-83 (5th
Cir. 2023) (holding that the failure to show causal harm is reason alone
to dismiss a challenge to an official's tenure protections); *Consumer's*

that this Circuit's case law regarding forum-shopped anticipatory suits firmly supports transfer to the Central District of California. *See, e.g., Mission Ins.*, 706 F.2d at 602 n.3 (affirming dismissal of anticipatory Texas suit where California plaintiff had engaged in apparent forum shopping).

SpaceX should similarly direct any accusation of delay inward. Respondents requested an expedited briefing schedule on their motion to transfer venue, recognizing that if transfer were granted, the transferee court would have limited time to decide SpaceX's preliminary injunction motion in advance of the NLRB's administrative hearing. SpaceX vigorously opposed expedition, and the district court denied that motion on February 7. [Docs. 44, 49, 54, 56, 76.] Had it been granted, transfer briefing would have concluded by February 5—a full month

---

*Research v. Consumer Product Safety Commission*, 91 F.4th 342, 352 (5th Cir. 2024) (explaining that the heads of "any 'traditional independent agency'" may receive for-cause removal protections); *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023) (holding that an agency does not violate due process when it acts as "both prosecutor and judge" over a matter); and *Agwilines, Inc. v. NLRB*, 87 F.2d 146, 150 (5th Cir. 1936) (explaining that actions to enforce the NLRA have no common-law basis, a critical component of a Seventh Amendment analysis).

before the start of the administrative hearing and 10 days before the

Southern District of Texas ultimately ordered the case to be

transferred. SpaceX further failed to request, in any of its briefing

opposing transfer, a stay of any transfer order from the district court,

either before or after the order issued. It now claims that the

simultaneous grant of Respondents' motion to transfer and actual

transfer of this case foreclosed its opportunity to seek a stay in district

court or this Court. But "one who fails to act diligently cannot invoke

equitable principles to excuse that lack of diligence." *L.A. Pub. Ins.*

*Adjusters, Inc. v. Nelson*, 17 F.4th 521, 527 (5th Cir. 2021) (cleaned up).

And now, rather than pursue its preliminary injunction in the

Central District of California, where jurisdiction over this case properly

lies, it has filed the instant petition to extricate itself from an

"emergency" of its own making. But SpaceX's attempt to obtain a second

bite at the transfer apple rather than pursuing its claim in the

transferee court—its "home" court, so to speak—demonstrates its true

design. SpaceX is not entitled to the extraordinary relief it now seeks

when it is more concerned with securing review in a forum-shopped

venue than with litigating the actual merits of its motion for

31

preliminary injunction, as quickly as possible, in a court that is indisputably a proper venue for its claims.

> **3. Mandamus relief is not appropriate under the circumstances because the district court could have granted discretionary transfer, and might yet do so.**

SpaceX asserts that it would have been a clear abuse of discretion for the district court to grant Respondents' transfer motion under Section 1404(a), and thus any attempt to argue against mandamus on Section 1404(a) grounds would fail. Pet. at 31. But as SpaceX acknowledges, the district court did not grant Respondents' motion under Section 1404(a). *Id.* SpaceX baselessly assumes that the district court was silent on Respondents' alternative request for transfer under Section 1404(a) because Respondents failed to establish cause for transfer on those grounds. It then tacitly asks that this Court decide— in the first instance—whether transfer would have been proper under Section 1404(a). *Id.* at 31-35. In other words, SpaceX functionally asks this Court to impermissibly "replace [the] district court's exercise of discretion with [its] own," something this Court has stressed that it will "in no case" do. *In re Volkswagen*, 545 F.3d at 312.

As discussed above at Section B, the district court applied the correct legal standard and properly concluded that transfer was warranted under Section 1406. It did not need to reach Respondents' Section 1404(a) argument to determine that venue was improperly laid in the Southern District of Texas, and assessing those arguments for the first time in this proceeding would grossly expand the parameters of mandamus review. Where a district court has not provided analysis on a point, the proper remedy is not mandamus, but rather, remand so reasons may be provided. *In re Archer Directional Drilling Servs., LLC*, 630 F. App'x 327, 329 (5th Cir. 2016).

Further, the very fact that the district court *could* have granted Defendants' motion on Section 1404(a) grounds suggests that mandamus is not appropriate under the circumstances. If this Court directs the district court to request retransfer from the Central District of California, the court below could very well decide to transfer the case once again to California, this time under 28 U.S.C. § 1404(a). [Docs. 29 p. 13-20; 78 p. 15-19]. This game of judicial hot potato is wholly incompatible with the swift execution of justice; not only would it significantly drain the resources of at least three courts, but it would

also leave the eventual transferee court with virtually no time to review the various constitutional arguments raised by SpaceX's preliminary injunction motion before the start of the administrative hearing. *See Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 402-03 (1976) (treating mandamus as extraordinary remedy serves interest of fair, prompt administration of justice by discouraging piecemeal litigation); *cf. of Cal.*, 426 U.S. 394, 402-03 (1976) (treating mandamus as extraordinary remedy serves interest of fair, prompt administration of justice by discouraging piecemeal litigation); *cf. Montante v. Fed. Bureau of Prisons*, No. 3:23-CV-2358-D-BH, 2023 WL 8006410, at *1 (N.D. Tex. Nov. 17, 2023) (district court denying retransfer motion to avoid "vicious circle of litigation") (internal citation omitted).

## CONCLUSION

This is not a close case. It was not an abuse of discretion, let alone a clear abuse of discretion suffused with extraordinary errors and leading to patently erroneous results, for the district court to transfer this case to the Central District of California under 28 U.S.C. § 1406(a). Moreover, mandamus is inappropriate under the circumstances here. The petition should be denied.

Respectfully submitted,

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and*
  *Special Litigation Branch*

NANCY E. KESSLER PLATT
*Associate General Counsel*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

PAUL A. THOMAS
*Supervisory Trial Attorney*

DANIEL BRASIL BECKER
*Trial Attorney*

GRACE L. PEZZELLA
*Trial Attorney*

PHILLIP MELTON
*Trial Attorney*

s/David P. Boehm
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755
1015 Half Street, S.E. - 4th Floor
Washington, DC 20570
Telephone: (202) 273-4202
Email: david.boehm@nlrb.gov

Dated at Washington, D.C.
this 22nd day of February 2024

35

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 21(d)(1) and 32(g)(1) of the Federal Rule of

Appellate Procedure, the undersigned counsel certifies that this

response is proportionally spaced, has a typeface of 14 points or larger,

and contains 7,222 words.

/s David P. Boehm
DAVID P. BOEHM
Trial Attorney
david.boehm@nlrb.gov
(202) 273-4202

Dated at Washington, D.C.
this 22nd day of February 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Petition with the Clerk of Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. I certify that the Petition was served on all parties, or their counsel of record, through the appellate CM/ECF system or by electronic mail.

/s David P. Boehm
DAVID P. BOEHM
Trial Attorney
david.boehm@nlrb.gov
(202) 273-4202

Dated at Washington, D.C.
this 22nd day of February 2024