No. 24-40103

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN RE SPACE EXPLORATION TECHNOLOGIES CORP.,

Petitioner.

On Petition for Writ of Mandamus to the
United States District Court for the Southern District of Texas
Civil Action No. 24-cv-00001

## RESPONDENTS' SUPPLEMENTAL APPENDIX

PAUL A. THOMAS
*Supervisory Trial Attorney*

DAVID P. BOEHM
*Trial Attorney*

GRACE L. PEZZELLA
*Trial Attorney*

JENNIFER A. ABRUZZO
*General Counsel*

DANIEL BRASIL BECKER
*Trial Attorney*

PETER SUNG OHR
*Deputy General Counsel*

PHILLIP MELTON
*Trial Attorney*

NANCY E. KESSLER PLATT
*Associate General Counsel*

NATIONAL LABOR RELATIONS BOARD
1015 HALF STREET, S.E.
WASHINGTON, DC 20570
202-273-4202

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

## TABLE OF CONTENTS

| Document | Location in Record of Case No. 1:24-cv-0001 (S.D. Tex.) | NLRB SA Page No. |
|---|---|---|
| 1. DECLARATION of Laurie Burgess [exhibits omitted] | ECF 18 | 1 |
| 2. DECLARATION of TOM MOLINE [exhibits omitted] | ECF 19 | 7 |
| 3. DECLARATION of SCOTT BECK | ECF 20 | 12 |
| 4. DECLARATION of DEBORAH LAWRENCE | ECF 21 | 16 |
| 5. DECLARATION of PAIGE HOLLAND-THIELEN | ECF 22 | 20 |
| 6. MOTION for Preliminary Injunction by Space Exploration Technologies Corp [exhibits omitted] | ECF 37 | 25 |
| 7. Brief of Charging Parties as Amici Curiae in Support of Defendant's Motion to Transfer Venue | ECF 73 | 59 |
| 8. ORDER granting Motion for Leave to File a brief in support of the opposition to preliminary injunction filed by Defendants | ECF 74 | 81 |

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | Case No.  1:24-cv-00001 |
| Plaintiff, | |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, | |
| Defendants. | |

## DECLARATION OF LAURIE BURGESS IN SUPPORT OF MOTION TO INTERVENE

NLRB SA 01

I, Laurie Burgess, declare as follows:

1.      I have personal knowledge of the facts herein and, if called upon to testify to those facts, I could and would do so competently.

2.      I am an attorney licensed to practice law in California.  I am a solo practitioner.  I also reside in the State of California and practice law exclusively in the State of California.  I have never practiced law in Texas.

3.      I am counsel, along with Anne Shaver of Lieff, Cabraser, Heimann & Bernstein, LLP, in NLRB litigation against Space Exploration Technologies Corp. ("SpaceX") which is currently pending in NLRB Region 31 in Los Angeles, California.  Specifically, we filed charges against SpaceX arising out of its unlawful termination of eight employees, our clients, in retaliation for speaking up regarding significant workplace concerns.

4.      Seven of eight of our clients lived in California and worked at SpaceX's headquarters in Hawthorne, California, during the entire course of their employment.  One of our clients resided in Washington but her management chain worked out of Hawthorne.  In addition, because this client's protected activity of participating in drafting an "Open Letter" seeking redress of workplace concerns occurred in California and her termination was triggered in response to that activity along with the termination of her California colleagues, her NLRB charge was also filed in California, where SpaceX has its headquarters.

5.      Each of our eight clients provided extensive testimony and documentation to the Region 31 NLRB agents in Los Angeles.

6.      Our clients Scott Beck, Paige Holland-Thielen, Deborah Lawrence, and Tom Moline are filing declarations herewith that attest to the facts of their employment history and

- 1 -

NLRB SA 02

labor dispute with SpaceX demonstrating that their only contact with respect to the NLRB
charges and the consolidated case that issued against SpaceX is with the State of California.

      7.     Our remaining four clients are still opting to preserve their anonymity due to fear
of online doxing for speaking up against Elon Musk. These four clients filed charges with the
NLRB as "Employee A," "Employee C," "Employee E," and "Employee F."

      8.     Employee A provided sworn testimony to the NLRB that he was employed at
SpaceX as an engineer in Hawthorne, California from 2018 to 2022; that he participated in the
Open Letter effort in Hawthorne; that he was interrogated by HR Director Lindsay Chapman
about his participation in the Open Letter effort in an in-person meeting in Hawthorne on July
21, 2022; that he was placed on administrative leave that same day in an in-person conversation
in Hawthorne with HR Manager Steven Duarte; and that he was terminated by Ms. Chapman by
email on July 22, 2022.

      9.     Employee C provided sworn testimony to the NLRB that she was employed at
SpaceX as an engineer in Hawthorne from 2021 to 2022; that she participated in the Open Letter
effort in Hawthorne; that she was interrogated by HR Director Lindsay Chapman via virtual
meetings attended from Employee C's home in Los Angeles on July 29 and August 12, 2022;
and that she was terminated by HR representative Jordan Schoonover by virtual meeting
attended from her home in Los Angeles on August 16, 2022.

      10.    Employee E provided sworn testimony to the NLRB that she was employed at
SpaceX as an engineer in Hawthorne from 2017 to 2022; that she participated in the Open Letter
effort in Hawthorne; that she was terminated on June 16, 2022 by telephone as she was sitting
outdoors on the SpaceX campus in Hawthorne with several co-workers, with Vice President of
HR Brian Bjelde, President Gwynn Shotwell, and HR Manager Rebecca Balayan all on the

2920298.3

NLRB SA 03

phone line; and that Mr. Bjelde stated she was being fired because she was instrumental in conceiving of, drafting, and distributing the Open Letter.

11.     Employee F provided sworn testimony to the NLRB that he was employed at SpaceX as an engineer in Hawthorne from 2021 to 2022; that he participated in the Open Letter effort in Hawthorne; that he was interrogated by HR Director Lindsay Chapman about his participation in the Open Letter effort in an in-person meetings in Hawthorne on July 19 and 21, 2022; and that he was terminated by Ms. Chapman in an in-person meeting in Hawthorne on July 29, 2022.

12.     None of our clients have any relationship with the State of Texas.  None of them have worked there, none of the protected activity that they engaged in occurred there, their terminations did not occur there and no part of the litigation was developed in Texas.

13.     We received notice from Region 31 on January 3, 2024 that the Region determined that the charges we filed had merit, that it was issuing a 37-count consolidated Complaint against SpaceX, and that the matter is scheduled to proceed to trial in Los Angeles starting March 5, 2024.

14.     On January 4, 2024, I was contacted by a media outlet asking for comment on SpaceX's Complaint that was filed earlier that day in Texas.  That was the first, and only notice that I have received about this lawsuit.

15.     We are seeking removal of the SpaceX litigation to California because the underlying NLRB action that SpaceX is challenging was filed and is pending there and none of our clients nor we, as counsel, have any connection whatsoever to the State of Texas.

16.     We have also filed charges of violations of California state labor law on behalf of all eight clients with California's Civil Rights Division ("CRD") based on SpaceX's failure to

NLRB SA 04

remedy the harassment, discrimination and hostile work environment that they experienced on a near daily basis while employed at SpaceX.

17.     On information and belief, the charges that we filed with the CRD on behalf of our clients will be imminently issuing to complaints.  These matters will be litigated in California.  It would be burdensome for our clients and for us, as counsel, to litigate these closely related matters in two different states at the same time.

18.     Not only did all of the core SpaceX misconduct pertaining to both the NLRB charges/Complaint and the CRD charges/Complaints occur in California, we are separately aware that SpaceX required our clients to sign various employment agreements as a condition of employment that requires venue regarding their employment disputes to be adjudicated in California.

19.     Attached hereto as Exhibit A is the motion to transfer venue to the Central District of California that we would file if permitted leave to intervene.

20.     Attached hereto as Exhibit B is a true and correct copy of SpaceX's Motion to Intervene in *Center for Biological Diversity v. FAA*, Case No. 23-cv-001204-CJN (D.D.C. May 19, 2023), as well as a true and correct copy of the docket in that case showing that SpaceX's motion was granted on July 5, 2023.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 8th of January, 2024 in San Francisco, California.

2920298.3

NLRB SA 05

/s/ Laurie Burgess
_____

Laurie Burgess (*pro hac vice* forthcoming)
Of Counsel
Burgess Law Offices, P.C.
498 Utah Street
San Francisco, CA 94110
Phone: (312) 320-1718
lburgess@burgess-laborlaw.com

*Counsel for* Proposed Intervenors *Scott Beck, Paige Holland-Thielen, Deborah Lawrence, and Tom Moline*

NLRB SA 06

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | Case No.  1:24-cv-00001 |
| Plaintiff, | |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, | |
| Defendants. | |

**DECLARATION OF TOM MOLINE IN SUPPORT OF MOTION TO INTERVENE**

I, Tom Moline, declare as follows:

1.      I have personal knowledge of the facts herein and, if called upon to testify to those facts, I could and would do so competently.

2.      I currently reside in Los Angeles, California and resided in this location during my entire employment with Space Exploration Technologies Corp. ("SpaceX").

3.      I was first employed by SpaceX in 2014 as a "Wire Harness Design Engineer."

4.      My employment was involuntarily terminated on June 16, 2022.  At the time of my termination my position was Senior Avionics Operations and Integration Engineer – Dragon.

5.      During my entire employment with SpaceX I worked at its headquarters which is located at One Rocket Road, Hawthorne, CA 90250.

6.      On or about December 14, 2021 I became aware of published accounts by several of having been sexually harassed at SpaceX, and then having been retaliated against by HR for reporting it.  I found these accounts very disconcerting.

7.      Separately, on or about May 19, 2022 I learned that SpaceX's CEO Elon Musk was accused of sexually harassing a SpaceX flight attendant and that in response, he publicly ridiculed the alleged victim.  In response to Musk's denial and ridicule of the alleged victim, SpaceX's President, Gwynne Shotwell publicly supported Musk by sending an email to the company claiming that the allegations against him were not true.

8.      In addition to these specific issues arising from the allegations concerning Musk's alleged sexual harassment, I, as a SpaceX employee, was continually bombarded with social media posts by CEO Elon Musk in degrading women and the LGBTQ community that featured inappropriate sexual comments and jokes. These posts were actively circulated in the workplace, with many actually posted on internal SpaceX platforms, making it impossible for employees to

- 1 -

NLRB SA 08

avoid Musk's degrading and demeaning comments. Indeed, important information about our substantive work was often mixed into Musk's Tweets, so we could not afford to ignore them.

9.      Neither SpaceX management nor its Human Relations department took corrective action to remediate the hostile work environment that was created by Musk.

10.      In order to try to effectuate change in the workplace, in late May 2022, I began discussing with other colleagues mechanisms for getting management to take action.   I attended a series of meetings at SpaceX headquarters in Hawthorne, as well as off-hour virtual teleconferences, to discuss what action we could take.  I and others in the group decided to write an Open Letter to SpaceX's executive team asking that the company distance itself from Musk's social media comments—that is, make clear that those comments were not SpaceX's own position—and that it clarify and enforce an anti-harassment policy in the workplace.

11.      I, along with other SpaceX employees shared this letter internally within SpaceX channels while working in California on June 15, 2022.

12.      On June 16, 2022, SpaceX terminated my employment at an in-person meeting in Hawthorne, California. The termination meeting was attended by Vice President of HR, Brian Bjelde and HR Manager Rebecca Balayan, with President Gwynne Shotwell attending by video conference. To the best of my knowledge, Mr. Bjelde, Ms. Balayan, and Ms. Shotwell were based in Hawthorne during the events described in this declaration.

13.      During the termination meeting the above SpaceX officials told me that my employment was being terminated for my participation in conceiving of, drafting, and distributing the Open Letter.

14.      After my termination I, along with seven other colleagues who were terminated over the same issue (participating in the Open Letter), retained counsel (Anne Shaver of Lieff,

- 2 -

NLRB SA 09

Cabraser Heimann & Bernstein, LLP and Laurie Burgess, Burgess Law Offices, P.C.) to file charges under the NLRB on our behalf.

15.     Our counsel filed charges of unfair labor practices with the NLRB Region 31 in Los Angeles on November 16, 2022. A true and accurate copy of the charges is submitted herewith as Exhibit A.

16.     I spent significant time providing evidence of SpaceX's misconduct to NLRB agents in Region 31 in Los Angeles, California.  Thereafter my counsel filed amended charges and on January 3, 2024 Region 31 issued a complaint with a hearing set for March 5, 2024 in Los Angeles, California.  A true and accurate copy of the Region 31 consolidated Complaint is submitted herewith as Exhibit B.

17.     My lawyers advised me that SpaceX filed a Complaint in Texas on January 4, 2024.  I have reviewed that Complaint, which among other things seeks to require a "trial by jury" of the allegations contained in the NLRB Complaint.  In fact, SpaceX's employment agreement that I was required to execute requires all employees to *forego* trial by jury as a term of employment by forcing me to accept arbitration of all employment-related disputes.  The agreement further provides that such disputes must take place "in the state of the SpaceX facility in which I primarily work or in the case that I work remotely, the state of the SpaceX facility in which my supervisor(s) work(s). Where the facility is in Hawthorne or Los Angeles, California, the arbitration will occur in Los Angeles County, California."  Therefore, pursuant to SpaceX's employment agreement any claims that involve my employment must be adjudicated in Los Angeles, California.

18.     Other mandatory employment documents mandate that legal actions with SpaceX are governed by the laws of the State of California.  Specifically, the "confidentiality agreement"

NLRB SA 10

states that "[t]he validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws."

19.    It would be an extreme hardship for me to participate in any litigation in the State of Texas. I would have to pay the costs of travel, lodging, and meals, as well as take extra time off work over and above what would normally be required to provide testimony in order to travel.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 8th of January, 2024 in Los Angeles, California.

*/s/* Tom Moline

NLRB SA 11

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | Case No. 1:24-cv-00001 |
| Plaintiff, | |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, | |
| Defendants. | |

## DECLARATION OF SCOTT BECK IN SUPPORT OF MOTION TO INTERVENE

NLRB SA 12

I, Scott Beck, declare as follows:

1.      I have personal knowledge of the facts herein and, if called upon to testify to those facts, I could and would do so competently.

2.      I was employed by Space Exploration Technologies Corp. ("SpaceX") full time beginning in 2017 as a Structures Designer.

3.      My employment was involuntarily terminated on June 16, 2022.  At the time of my termination my position was Thermal Hardware Engineer II.

4.      During my entire employment with SpaceX I worked at its headquarters which is located at One Rocket Road, Hawthorne, CA 90250.  During the course of my employment with SpaceX I lived in Los Angeles and Manhattan Beach, California.

5.      On or about December 14, 2021 I became aware of published accounts by several former employees of having been sexually harassed at SpaceX, and then having been retaliated against by HR for reporting it.  I found these accounts very disconcerting.

6.      Separately, on or about May 19, 2022 I learned that SpaceX's CEO Elon Musk was accused of sexually harassing a SpaceX flight attendant and that in response, he publicly ridiculed the alleged victim.  In response to Musk's denial and ridicule of the alleged victim, SpaceX's President, Gwynne Shotwell publicly supported Musk by sending an email to the company claiming that the allegations against him were not true.

7.      In addition to these specific issues arising from the allegations concerning Musk's alleged sexual harassment, I, as a SpaceX employee, was continually bombarded with social media posts by CEO Elon Musk in degrading women and the LGBTQ community that featured inappropriate sexual comments and jokes. These posts were actively circulated in the workplace, with many actually posted on internal SpaceX platforms, making it impossible for employees to avoid Musk's degrading and demeaning comments. Indeed, important information about our substantive work was often mixed into Musk's Tweets, so we could not afford to ignore them.

8.      Neither SpaceX management nor its Human Relations department took corrective action to remediate the hostile work environment that was created by Musk.

9.    In order to try to effectuate change in the workplace, in late May 2022, I began discussing with other colleagues mechanisms for getting management to take action.   I attended a series of meetings at SpaceX headquarters in Hawthorne and at nearby off-campus locations to discuss what action we could take.  I and others in the group decided to write an Open Letter to SpaceX's executive team asking that the company distance itself from Musk's social media comments—that is, make clear that those comments were not SpaceX's own position—and that it clarify and enforce an anti-harassment policy in the workplace.

10.    I, along with other SpaceX employees shared this letter internally within SpaceX channels from California on June 15, 2022.

11.    On June 16, 2022, SpaceX terminated my employment at an in-person meeting in Hawthorne, California. The termination meeting was attended by Vice President of HR, Brian Bjelde, HR Manager Rebecca Balayan, with President Gwynne Shotwell attending by video conference. To the best of my knowledge, Mr. Bjelde, Ms. Balayan, and Ms. Shotwell were based in Hawthorne during the events described in this declaration.

12.    During the termination meeting the above SpaceX officials told me that my employment was being terminated for my participation in conceiving of, drafting, and distributing the Open Letter.

13.    After my termination I, along with other seven other colleagues who were terminated over the same issue (participating in the Open Letter), retained counsel (Anne Shaver of Lieff, Cabraser Heimann & Bernstein, LLP and Laurie Burgess, Burgess Law Offices, P.C.) to file charges under the NLRB on our behalf.

14.    Our counsel filed charges of unfair labor practices with the NLRB Region 31 in Los Angeles on November 16, 2022.

15.    I spent significant time providing evidence of SpaceX's misconduct to NLRB agents in Region 31 in Los Angeles, California.  Thereafter my counsel filed amended charges and on January 3, 2024 Region 31 issued a complaint with a hearing set for March 5, 2024 in Los Angeles, California.

16.     My lawyers advised me that SpaceX filed a Complaint in Texas on January 4, 2024.  I have reviewed that Complaint, which among other things seeks to require a "trial by jury" of the allegations contained in the NLRB Complaint.  In fact, SpaceX's employment agreement that I was required to execute requires all employees to *forego* trial by jury as a term of employment by forcing us to accept arbitration of all employment-related disputes.  The agreement further provides that such disputes must take place "in the state of the SpaceX facility in which I primarily work or in the case that I work remotely, the state of the SpaceX facility in which my supervisor(s) work(s). Where the facility is in Hawthorne or Los Angeles, California, the arbitration will occur in Los Angeles County, California."  Therefore, pursuant to SpaceX's employment agreement any claims that involve my employment must be adjudicated in Los Angeles, California.

17.     Other mandatory employment documents mandate that legal actions with SpaceX are governed by the laws of the State of California.  Specifically, the "confidentiality agreement" states that "[t]he validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws."

18.     It would be an extreme hardship for me to participate in any litigation in the State of Texas. I would have to pay the costs of travel, lodging, and meals, as well as take extra time off my post-graduate studies over and above what would normally be required to provide testimony in order to travel.


        I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

        Executed on the 8th of January, 2024 in Manhattan Beach, California.


                              /s/ Scott Beck
                              _____

NLRB SA 15

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP.,<br><br>               Plaintiff,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,<br><br>               Defendants. | Case No. 1:24-cv-00001 |

## DECLARATION OF DEBORAH LAWRENCE IN SUPPORT OF MOTION TO INTERVENE

NLRB SA 16

I, Deborah Lawrence, declare as follows:

1.      I have personal knowledge of the facts herein and, if called upon to testify to those facts, I could and would do so competently.

2.      I was employed by Space Exploration Technologies Corp. ("SpaceX") beginning in 2018 as a Firmware Engineer.

3.      During the course of my employment with SpaceX I lived in Seattle Washington and was assigned to the Redmond, Washington facility. However, at times I reported to managers in Hawthorne, California.

4.      On or about December 14, 2021 I became aware of published accounts by several former employees of having been sexually harassed at SpaceX, and then having been retaliated against by HR for reporting it.  I found these accounts very disconcerting.

5.      Separately, on or about May 19, 2022 I learned that SpaceX's CEO Elon Musk was accused of sexually harassing a SpaceX flight attendant and that in response, he publicly ridiculed the alleged victim.  In response to Musk's denial and ridicule of the alleged victim, SpaceX's President, Gwynne Shotwell, publicly supported Musk by sending an email to the company claiming that the allegations against him were not true.

6.      In addition to these specific issues arising from the allegations concerning Musk's alleged sexual harassment, I, as a SpaceX employee, was continually bombarded with social media posts by CEO Elon Musk degrading women and the LGBTQ community that featured inappropriate sexual comments and jokes.  These posts were actively circulated in the workplace, with many actually posted on internal SpaceX platforms, making it impossible for employees to avoid Musk's degrading and demeaning comments.  Indeed, important information about our substantive work was often mixed into Musk's Tweets, so we could not afford to ignore them.

NLRB SA 17

7.      Neither SpaceX management nor its Human Relations department took corrective action to remediate the hostile work environment that was created by Musk.

8.      In order to try to effectuate change in the workplace, in late May 2022, I began discussing with other colleagues mechanisms for getting management to take action.   I did not attend in-person meetings regarding what course of action to take but did communicate with the other employees in the Hawthorne location who had primary responsibility for drafting the Open Letter to SpaceX's executive team and made some suggested edits to the letter.

9.      The "Open Letter" issued from California on June 15, 2022.

10.     On or about June 16, 2022, SpaceX terminated the employment of several of my colleagues who participated in writing the "Open Letter."  I received an email from Gwynne Shotwell indicating that these employees were terminated for their involvement in creating this letter.

11.     On July 18, 2022 I received an email from Lindsay Chapman (HR) advising that I needed to meet with her in person on July 20, 2022.  During that meeting Chapman aggressively questioned me about my role in drafting and/or circulating the "Open Letter."  At the close of the day I was placed on administrative leave and on July 22, 2022 Chapman advised me that my employment was being terminated effective August 1, 2022.

12.     After my termination I, along with other seven other colleagues who were terminated over the same issue (participating in the Open Letter) retained counsel (Anne Shaver of Lieff, Cabraser Heimann & Bernstein, LLP and Laurie Burgess of Burgess Law Offices, P.C.) to file charges under the NLRB on our behalf.

13.     Our counsel filed charges of unfair labor practices with the NLRB Region 31 in Los Angeles on November 16, 2022.

14.     I spent significant time providing evidence of SpaceX's misconduct to NLRB agents in Region 31 in Los Angeles, California.  Thereafter my counsel filed amended charges and on January 3, 2024 Region 31 issued a complaint with a hearing set for March 5, 2024 in Los Angeles, California.

15.     My lawyers advised me that SpaceX filed a Complaint in Texas on January 4, 2024.  I have reviewed that Complaint.

16.     I was made to sign a mandatory employment document, the "confidentiality agreement" which states that "[t]he validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 8th of January, 2024 in Berlin, Germany.

/s/ Deborah Lawrence

2920587.1

NLRB SA 19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION<br>TECHNOLOGIES CORP.,<br><br>                Plaintiff,<br><br>v.<br><br>NATIONAL LABOR RELATIONS<br>BOARD, a federal administrative agency,<br>JENNIFER ABRUZZO, in her official<br>capacity as the General Counsel of the<br>National Labor Relations Board, LAUREN<br>M. McFERRAN, in her official capacity as<br>the Chairman of the National Labor<br>Relations Board, MARVIN E. KAPLAN,<br>GWYNNE A. WILCOX, and DAVID M.<br>PROUTY, in their official capacities as<br>Board Members of the National Labor<br>Relations Board, and JOHN DOE in his<br>official capacity as an Administrative Law<br>Judge of the National Labor Relations<br>Board,<br><br>                Defendants. | Case No. 1:24-cv-00001 |

## DECLARATION OF PAIGE HOLLAND-THEILEN IN SUPPORT OF MOTION TO INTERVENE

NLRB SA 20

I, Paige Holland-Thielen, declare as follows:

1.     I was employed by Space Exploration Technologies Corp. ("SpaceX") beginning in 2018 as a Ground Software Engineer.

2.     My employment was involuntarily terminated on June 16, 2022.  At the time of my termination my position was Lead Avionics Operations and Automation Engineer.

3.     During my entire employment with SpaceX I worked at its headquarters which is located at One Rocket Road, Hawthorne, CA 90250.  During the course of my employment with SpaceX I lived in Torrance, California.

4.     On or about December 14, 2021 I became aware of published accounts by several former employees of having been sexually harassed at SpaceX, and then having been retaliated against by HR for reporting it.  I found these accounts very disconcerting.

5.     Separately, on or about May 19, 2022, I learned that SpaceX's CEO Elon Musk was accused of sexually harassing a SpaceX flight attendant and that in response, he publicly ridiculed the alleged victim.  In response to Musk's denial and ridicule of the alleged victim, SpaceX's President, Gwynne Shotwell, publicly supported Musk by sending an email to the company claiming that the allegations against him were not true.

6.     In addition to these specific issues arising from the allegations concerning Musk's alleged sexual harassment, I, as a SpaceX employee, was continually bombarded with social media posts by CEO Elon Musk degrading women and the LGBTQ community that featured inappropriate sexual comments and jokes.  These posts were actively circulated in the workplace, with many actually posted on internal SpaceX platforms, making it impossible for employees to avoid Musk's degrading and demeaning comments.  Indeed, important information about our substantive work was often mixed into Musk's Tweets, so we could not afford to ignore them.

7.      Neither SpaceX management nor its Human Relations department took corrective action to remediate the hostile work environment that was created by Musk.

8.      In order to try to effectuate change in the workplace, in late May 2022, I began discussing with other colleagues mechanisms for getting management to take action.   I attended a series of meetings at SpaceX headquarters in Hawthorne and at nearby off-campus locations to discuss what action we could take.  I and others in the group decided to write an Open Letter to SpaceX's executive team asking that the company distance itself from Musk's social media comments—that is, make clear that those comments were not SpaceX's own position—and that it clarify and enforce an anti-harassment policy in the workplace.

9.      I, along with other SpaceX employees shared this letter internally within SpaceX channels from California on June 15, 2022.

10.     On June 16, 2022, SpaceX terminated my employment at an in-person meeting in Hawthorne, California.  The termination meeting was attended by Vice President of HR, Brian Bjelde, HR Manager Rebecca Balayan, with President Gwynne Shotwell attending by video conference.

11.     During the termination meeting the above SpaceX officials told me that my employment was being terminated for my participation in conceiving of, drafting, and distributing the Open Letter.

12.     After my termination I, along with other seven other colleagues who were terminated over the same issue (participating in the Open Letter) retained counsel (Anne Shaver of Lieff, Cabraser Heimann & Bernstein, LLP and Laurie Burgess of Burgess Law Offices, P.C.) to file charges under the NLRB on our behalf.

13.     Our counsel filed charges of unfair labor practices with the NLRB Region 31 in Los Angeles on November 16, 2022.

14.     I spent significant time providing evidence of SpaceX's misconduct to NLRB agents in Region 31 in Los Angeles, California.  Thereafter my counsel filed amended charges and on January 3, 2024 Region 31 issued a complaint with a hearing set for March 5, 2024 in Los Angeles, California.

15.     My lawyers advised me that SpaceX filed a Complaint in Texas on January 4, 2024.  I have reviewed that Complaint, which among other things seeks to require a "trial by jury" of the allegations contained in the NLRB Complaint.  In fact, SpaceX's employment agreement that I was required to execute requires all employees to *forego* trial by jury as a term of employment by forcing us to accept arbitration of all employment-related disputes.  The agreement further provides that such disputes must take place "in the state of the SpaceX facility in which I primarily work or in the case that I work remotely, the state of the SpaceX facility in which my supervisor(s) work(s).  Where the facility is in Hawthorne or Los Angeles, California, the arbitration will occur in Los Angeles County, California."  Therefore, pursuant to SpaceX's employment agreement any claims that involve my employment must be adjudicated in Los Angeles, California.

16.     Other mandatory employment documents mandate that legal actions with SpaceX are governed by the laws of the State of California.  Specifically, the "confidentiality agreement" states that "[t]he validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws."

NLRB SA 23

17.     It would be a hardship for me to participate in any litigation in the State of Texas. I would have to bear extra expenses that would not be required for me to testify in California, where my job is based and I have family.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 8th of January, 2024 in Raleigh, North Carolina.

Dated: January 8, 2024          */s/* Paige Holland-Thielen

NLRB SA 24

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. 1:24-cv-00001 |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

BACKGROUND .................................................................................................... 4

ARGUMENT .......................................................................................................... 6

I.     SpaceX is likely to succeed on the merits of its constitutional claims. ............................. 7

       A.     NLRB ALJs are unconstitutionally insulated from removal. ................................. 7

       B.     The NLRB's Board Members are unconstitutionally insulated from
              removal. ................................................................................................ 8

       C.     The NLRB's adjudication of private rights and legal relief violates the
              Seventh Amendment. .............................................................................. 10

       D.     The NLRB Members' blending of functions violates the separation of
              powers and due process. ......................................................................... 14

II.    SpaceX will suffer irreparable harm without a preliminary injunction. ......................... 17

       A.     The unconstitutionality of the NLRB proceedings inflicts irreparable
              harm. .................................................................................................. 18

       B.     The unconstitutional NLRB proceedings inflict irreparable economic
              harm. .................................................................................................. 20

III.   The balance of harms and public interest favor a preliminary injunction. ..................... 21

IV.    Severability arguments cannot defeat SpaceX's right to a preliminary injunction. .......... 22

CONCLUSION ..................................................................................................... 25

NLRB SA 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
   No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ................................................... 19

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*,
   309 U.S. 261 (1940) .............................................................................................................. 13

*Assoc. Builders & Contractors of Tex. Gulf Coast, Inc. v. U.S. Dep't of Energy*,
   451 F. Supp. 281 (S.D. Tex. 1978) ...................................................................................... 20

*Atlas Roofing Co., Inc. v. OSHRC*,
   430 U.S. 442 (1977) ......................................................................................................... 13, 14

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023) .................................................................................................... *passim*

*Ayotte v. Planned Parenthood of N. New England*,
   546 U.S. 320 (2006) ......................................................................................................... 22, 25

*BST Holdings, L.L.C. v. OSHA*,
   17 F.4th 604 (5th Cir. 2021) ................................................................................................ 21

*Burgess v. FDIC*,
   639 F. Supp. 3d 732 (N.D. Tex. 2022) ................................................................................ 19

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
   494 U.S. 558 (1990) .............................................................................................................. 13

*Cochran v. SEC*,
   20 F.4th 194 (5th Cir. 2021) ................................................................................................ 19

*Collins v. Dep't of the Treasury*,
   No. 22-20632, 2023 WL 6630307 (5th Cir. Oct. 12, 2023) ................................................ 18

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021) .......................................................................................................... 10

*Community Fin. Servs. Ass'n of Am. Ltd. v. CFPB*,
   51 F.4th 616, 625 (5th Cir. 2022) ....................................................................................... 18

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
   710 F.3d 579 (5th Cir. 2013) ......................................................................................... 17, 21

NLRB SA 27

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
    661 F.2d 328 (5th Cir. 1981) ............................................................18

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975)........................................................................22

*Fortune v. Nat'l Cash Reg. Co.*
    364 N.E.2d 1251 (Mass. 1977) ........................................................12

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010) .............................................................. *passim*

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ....................................................................13, 14

*Horne v. Polk*,
    394 P.3d 651 (Ariz. 2017)..........................................................15, 16

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935)....................................................................9, 10

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) .................................................. *passim*

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ............................................................21

*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) .......................................................6, 21

*Lucia v. SEC*,
    138 S. Ct. 2044 (2018)................................................................8, 24

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)........................................................................12

*Myers v. United States*,
    272 U.S. 52 (1926)............................................................................7

*Nken v. Holder*,
    556 U.S. 418 (2009)........................................................................21

*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937)......................................................................13, 14

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    138 S. Ct. 1365 (2018)..............................................................13, 14

NLRB SA 28

*Overstreet v. El Paso Disposal, L.P.*,
    625 F.3d 844 (5th Cir. 2010) ........................................................2, 9

*Petermann v. Teamsters Loc. 396*,
    344 P.2d 25 (Cal. Ct. App. 1959) ...................................................12

*Ramspeck v. Federal Trial Exam'rs Conf.*,
    345 U.S. 128 (1953)........................................................................24

*Seila L. LLC v. CFPB*,
    140 S. Ct. 2138 (2020)........................................................... *passim*

*SpaceX v. Bell*,
    No. 1:23-cv-00137, 2023 WL 8885128 (S.D. Tex. Nov. 8, 2023) ................. *passim*

*Stern v. Marshall*,
    564 U.S. 462 (2011)..................................................................14, 21

*Thryv, Inc.*,
    372 N.L.R.B. No. 22 (Dec. 13, 2022)............................................ *passim*

*Tull v. United States*,
    481 U.S. 412 (1987)..................................................................11, 12

*United States v. Nat'l Treas. Emps. Union*,
    513 U.S. 454 (1995)........................................................................25

*United States v. Texas*,
    599 U.S. 670 (2023)..........................................................................9

*Ward v. Vill. of Monroeville*,
    409 U.S. 57 (1972)..........................................................................19

*Westrock Servs., Inc.*,
    366 N.L.R.B. No. 157 (Aug. 6, 2018) .............................................8

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016)................................................................... *passim*

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)........................................................................1, 6

**Statutes**

5 U.S.C. § 1202(d) ............................................................................2, 7, 8

5 U.S.C. § 7521(a) ...........................................................................2, 7, 8

8 U.S.C. § 1324b..................................................................................14

NLRB SA 29

29 U.S.C. § 153(a) ................................................................................2, 8, 10

29 U.S.C. § 154 ................................................................................................9

29 U.S.C. § 159 ................................................................................................9

29 U.S.C. § 160 ................................................................................................9

29 U.S.C. § 160(c) ....................................................................................11, 17

29 U.S.C. § 160(e) .......................................................................................17

29 U.S.C. § 160(f) .......................................................................................17

29 U.S.C. § 160(j) .................................................................................. *passim*

Civil Service Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111 .....................24

National Labor Relations Act .................................................................. *passim*

## Other Authorities

5 C.F.R. § 1200.1 ...........................................................................................24

11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
  PROCEDURE § 2948.1 (3d ed. 2023) .................................................................18

Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off.
  & Civ. Serv., 95th Cong. 824 (1978) .................................................................24

Daniel P. O'Gorman, *Construing the National Labor Relations Act: The NLRB
  and Methods of Statutory Construction*, 81 TEMP. L. REV. 177 (2008).................24

FED. R. CIV. P. 65(a) .........................................................................................1

General Counsel, *Section 10(j) Manual* (Feb. 2014), https://www.nlrb.gov/sites/
  default/files/attachments/basic-page/node-1727/MASTER%20REVISED%20
  2013%2010(J)%20MANUAL.pdf.................................................................15, 16, 17

Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited,
  Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069 (1985)......................................25

NAT'L LABOR RELATIONS BD., LEGISLATIVE HISTORY OF THE NATIONAL LABOR
  RELATIONS ACT OF 1935 (1949)...............................................................25

U.S. CONST. amend. VII .................................................................. *passim*

U.S. CONST. amend XIV .................................................................................15

NLRB SA 30

U.S. CONST. art. II ................................................................................................. *passim*

U.S. CONST. art. III ................................................................................................ *passim*

NLRB SA 31

Space Exploration Technologies Corp. ("SpaceX") respectfully moves for an order preliminarily enjoining ongoing administrative proceedings against SpaceX, to be entered against Defendants the National Labor Relations Board ("NLRB"), Jennifer Abruzzo, Lauren M. McFerran, Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, and the Administrative Law Judge ("ALJ") who will soon be assigned to preside over the administrative hearing. FED. R. CIV. P. 65(a). The administrative hearing is currently scheduled to begin on March 5, 2024, and without the requested relief, SpaceX will suffer irreparable harm as described below.

## INTRODUCTION

SpaceX has filed this action to avoid serious and irreparable injuries that it will otherwise suffer from being subjected to an unconstitutional administrative proceeding. Defendants are currently prosecuting and presiding over such a proceeding accusing SpaceX of violating federal law. Because the structure of that proceeding violates the United States Constitution under Supreme Court and Fifth Circuit precedent, SpaceX respectfully requests an order halting the NLRB proceedings unless and until the constitutional defects are remedied.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). SpaceX satisfies each of these requirements.

SpaceX is likely to succeed in establishing that the structure of the NLRB proceedings violates the Constitution four times over:

*First*, the administrative proceeding is being heard by an ALJ who is unconstitutionally exercising substantial executive functions while being insulated from presidential control in violation of Article II of the Constitution. *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). Indeed, three different layers of removal protections impede the

NLRB SA 32

President's ability to remove the NLRB's ALJs: (1) while an agency—here the NLRB—may take steps to remove an ALJ, it may do so "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")]," 5 U.S.C. § 7521(a); (2) the President may remove members of the MSPB only for "inefficiency, neglect of duty, or malfeasance in office," 5 U.S.C. § 1202(d); and (3) the President may remove NLRB board members only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). In *Jarkesy*, the Fifth Circuit held that a matching set of removal restrictions was unconstitutional as applied to ALJs of the Securities Exchange Commission ("SEC"). 34 F.4th at 463–64. The same conclusion follows here.

*Second*, the Members who lead the NLRB are also unconstitutionally insulated from removal by the President. Article II requires that the President maintain "unrestricted removal power" over all federal officials "who wield executive power," subject to only two exceptions. *Seila Law LLC v. CFPB*, 140 S. Ct. 2138, 2191–92 (2020). The potentially relevant exception here—"for multimember expert agencies that do not wield substantial executive power," *id.* at 2199-200—is inapplicable because the NLRB *does* wield substantial executive power. As just one example, Section 10(j) of the National Labor Relations Act ("NLRA") gives Board Members "the power, upon issuance of [an administrative] complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition [a] United States district court . . . for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j). This "[p]etition power under § 10(j) is prosecutorial in nature" and thus a quintessential form of executive power. *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010).

*Third*, the NLRB proceeding violates SpaceX's Seventh Amendment jury-trial right by adjudicating private rights outside the confines of an Article III court. The Board's General Counsel alleges that SpaceX wrongfully terminated certain employees and seeks a broad range of

compensatory monetary damages for those employees. *See generally Thryv, Inc.*, 372 N.L.R.B. No. 22 (Dec. 13, 2022) (holding that the Board will provide expansive monetary compensation for wrongfully terminated employees). The Board thus seeks to vindicate private rights for the benefit of private parties. But because the Constitution only permits the Board to adjudicate public rights through its non-jury, administrative proceedings, such proceedings violate the Seventh Amendment. *See Jarkesy*, 34 F.4th at 451–55 (holding that SEC administrative adjudications violate the Seventh Amendment "because such claims do not concern public rights alone").

*Fourth*, by exercising prosecutorial, legislative, and adjudicatory authority within the same proceeding, the NLRB transgresses the separation of powers and violates SpaceX's due-process rights. The Supreme Court has held that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Yet that is exactly what Board Members do when they authorize Section 10(j) injunctive relief (a prosecutorial function) and then adjudicate and announce new legal rules during an administrative appeal of an ALJ ruling (judicial and legislative functions). The General Counsel's attorneys have conveyed that they plan to seek the Board Members' authorization for Section 10(j) proceedings against SpaceX, while ultimately relying on the Board Members to resolve the administrative proceeding as a whole. In this way, too, the Board's structure violates the Constitution's guarantees and SpaceX's constitutional rights.

SpaceX will be irreparably harmed by these violations of its constitutional rights unless the Court preliminarily enjoins the NLRB proceedings pending a final decision on the merits. Even if the Court can ultimately cure some of these structural defects in its final judgment, it cannot undo the injury SpaceX will suffer in the meantime through "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" in "proceedings [that] violate the separation of powers."

*Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). Under binding Supreme Court precedent, such harm is "a here-and-now injury" that "is impossible to remedy once the proceeding is over." *Id.* (citation omitted); *accord SpaceX v. Bell*, No. 1:23-cv-00137, 2023 WL 8885128, at *4 (S.D. Tex. Nov. 8, 2023) (Olvera, J.). And on top of its constitutional injury, SpaceX will suffer the practical harms of undergoing an extensive administrative proceeding that distracts from its important missions, including launching satellites critical to U.S. defense and intelligence agencies and flying NASA astronauts to space. These harms also will be irreparable even if the Court ultimately finds that the NLRB's structural flaws can be corrected prospectively. The balance of equities and public interest weigh strongly in SpaceX's favor for similar reasons. *See id.* at *4.

Because SpaceX satisfies the preliminary injunction factors for its four claims, this Court should grant SpaceX's motion and preliminarily enjoin the NLRB proceedings against it.

## BACKGROUND

SpaceX was founded in 2002 with the audacious goal of making life multiplanetary. Gallman Decl. (attached as Exhibit A), ¶ 4. Today, SpaceX operates a space launch business and a global satellite-based internet service known as Starlink. *Id.* ¶ 5. It employs over 14,000 people in facilities around the country, including in its Starbase facility in Boca Chica, Texas where it is developing, manufacturing, and launching Starship, the most powerful rocket ever built; its rocket development facility in McGregor, Texas; its human spaceflight mission operations and integration facility in Houston, Texas; its Starlink manufacturing facility in Bastrop, Texas; and its facilities in Florida, Washington State, California, and Washington, D.C. *Id.* ¶ 9.

SpaceX's missions serve, among others, NASA, various U.S. government defense and intelligence agencies, commercial customers from around the world, and international space agencies *Id.* ¶ 67. Starship—the largest rocket ever built—has been selected by NASA to return American astronauts to the Moon. *Id.* ¶ 7. Sending crewed spacecraft to the Moon, the International

Space Station, and beyond requires the utmost vigilance, discipline, technical excellence, and teamwork of SpaceX personnel across all its facilities—as does building and maintaining its constellation of thousands of Starlink satellites and serving millions of Starlink customers in more than 70 countries around the world. *See id.* ¶ 20.

On June 15, 2022, a small group of SpaceX employees sent an open letter (the "Open Letter") to almost all SpaceX employees across all of SpaceX's locations, in many cases flooding multiple channels of communication, and demanding that SpaceX take certain actions addressing perceived shortcomings and soliciting employees to fill out a hyperlinked survey to indicate support for the Open Letter's demands and provide feedback. Compl. ¶¶ 43–44, ECF No. 1. The Open Letter overwhelmed many of SpaceX's communication channels and caused significant disruption to SpaceX operations around the country, including at Starbase and the other Texas facilities. It was a blatant and gross violation of company policies. *Id.* ¶¶ 34, 45. SpaceX discharged a few of the employees involved with the Open Letter for these policy violations. *Id.* ¶ 46.

In November 2022, former SpaceX employees (the "Charging Parties") filed charges with the NLRB alleging that SpaceX committed unfair labor practices when it terminated their employment (the "Charges"). *Id.* ¶ 47. SpaceX submitted to the NLRB a position statement refuting the Charging Parties' allegations, along with supporting evidence. *Id.* ¶ 48. The position statement and evidence spanned 700 pages, and its preparation was a burdensome effort.

On December 14, 2023, the investigating NLRB Region informed SpaceX that it had made determinations on the Charges and had authorized an administrative complaint against SpaceX on nearly every single charge, breaking with established legal precedent to avoid narrowing the issues at all. The NLRB, in its eagerness to subject SpaceX to its burdensome hearing process, seemed to ignore even basic information provided by SpaceX, such as the supervisory status of one

NLRB SA 36

charging party (making them exempt from the NLRA's protections) and clear evidence that another charging party was actually terminated for a well-documented history of substandard performance. *Id.* ¶ 48. On January 3, 2024, the Regional Director for Region 31 issued an order consolidating the administrative cases, with a consolidated administrative complaint and notice that an ALJ hearing would occur just two months later, on March 5, 2024. *Id.* ¶ 49.

The next day, SpaceX filed this suit seeking preliminary and permanent injunctive relief and declaratory relief, based on four distinct constitutional problems with the NLRB proceedings. *See generally* Compl., ECF No. 1. SpaceX inquired whether the NLRB would agree to stay its proceedings to give this Court time to adjudicate these issues. Eschbach Decl. (attached as Exhibit B), ¶¶ 4, 6. The NLRB's counsel instructed SpaceX to file any request for postponement with the Regional Office. *Id.* ¶ 7. SpaceX has now filed such a request with the Regional Office, but the General Counsel opposes a postponement until after this Court has decided the claims in this action. *Id.* ¶ 8 & Ex. B-2. Because SpaceX currently faces a January 17, 2024 deadline to answer the administrative complaint and is already gearing up for a March 5, 2024 hearing, and because the General Counsel opposes postponing the administrative proceedings pending this litigation, time is of the essence. In the ways described above, and others, the administrative proceeding is causing ongoing harm by requiring SpaceX to devote significant resources preparing for the unconstitutional administrative proceedings. Gallman Decl. ¶¶ 13–20.

## ARGUMENT

Preliminary injunctive relief is proper when a movant establishes (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also, e.g.*, *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). SpaceX satisfies all four factors.

NLRB SA 37

I.      **SpaceX is likely to succeed on the merits of its constitutional claims.**

A.      **NLRB ALJs are unconstitutionally insulated from removal.**

Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L.*, 140 S. Ct. at 2191. The president does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926). "He must execute them by the assistance of subordinates." *Id.* But because the executive responsibility remains vested in the President, the officers of every administrative agency—including "independent" ones—must be subject to presidential oversight. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010). The Constitution thus requires that the President have the "power to remove—and thus supervise— those who wield executive power on his behalf." *Seila L.*, 140 S. Ct. at 2191.

SpaceX is likely to succeed on the merits of its constitutional challenge to the NLRB ALJs' removal protections. Indeed, that conclusion is required by existing Fifth Circuit precedent. In *Jarkesy*, the Fifth Circuit held that an indistinguishable "statutory removal restrictions" for SEC ALJs "are unconstitutional." 34 F.4th at 465. Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by the Commission 'only for good cause established and determined by the [MSPB] on the record after opportunity for hearing.'" 34 F.4th at 464. And the Fifth Circuit determined that SEC Commissioners and MSPB members themselves "can only be removed by the President for cause." *Id.*; *see* 5 U.S.C. § 1202(d) (MSPB members). The SEC ALJs were "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464. But these multiple "layers of for-cause protection"—for the SEC Commissioners and the MSPB members—unconstitutionally "stand in the President's way." *Id.* at 465.

*Jarkesy* is dispositive. There is no relevant difference between SEC ALJs and NLRB ALJs. Both are "inferior officers" who "have substantial authority" in agency investigations and

enforcement actions. *Jarkesy*, 34 F.4th at 464; *see Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by "at least two layers of for-cause protection" that "stand in the President's way." *Jarkesy*, 34 F.4th at 465. Indeed, 5 U.S.C. § 7521(a), which allows an employing agency to remove its ALJs only when the MSPB finds good cause, applies equally to both sets of ALJs; and 5 U.S.C. § 1202(d) applies equally to the MSPB members in both cases as well. And the NLRA explicitly creates removal protection for Board Members: they are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). So, like the SEC ALJs, NLRB ALJs are unconstitutionally insulated from the President's oversight. *See Jarkesy*, 34 F.4th at 464.

The *Jarkesy* holding on SEC ALJs is binding on this Court and flows straightforwardly from prior Supreme Court precedent. *See id.* at 464–65 (applying *Free Enter.*, 561 U.S. at 495–508, and *Lucia v. SEC*, 138 S. Ct. 2044, 2053–54 (2018)). Supreme Court precedent establishes that multi-layer removal-protection violates Article II because it "not only protects [the inferior officers] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists." *Free Enter.*, 561 U.S. at 495. Under this binding precedent, SpaceX is likely to—indeed must—prevail on the merits of this claim.

**B.    The NLRB's Board Members are unconstitutionally insulated from removal.**

The removal protections of the NLRB's Board Members are unconstitutional as well. Unlike ALJs, the NLRB Members are not merely inferior officers; they are *principal* officers who exercise substantial executive power in administering and enforcing the NLRA. Though they are appointed by the President and confirmed by the Senate as principal officers, the President is deprived of his constitutional power to oversee their work because the President can remove them only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

Recent Supreme Court precedent strongly suggests that this strict removal protection violates Article II of the Constitution given the substantial executive power that the Board wields.

As noted, removal restrictions for executive branch officials are generally unconstitutional. For principal officers, the Supreme Court has recognized only one narrow exception "for multimember expert agencies that do not wield substantial executive power." *Seila L.*, 140 S. Ct. at 2199–200. This exception originated in *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935), which determined that the Commissioners of the Federal Trade Commission ("FTC") did not at the time exercise "executive power in the constitutional sense." *Id.* at 628.

Whatever might have been true of FTC Commissioners in 1935, NLRB Members exercise substantial executive power through their administrative, policymaking, and prosecutorial authority. They enforce the NLRA in many ways, including, for example, determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160. They also have authority to appoint inferior officers including the executive secretary, attorneys, examiners, regional directors, ALJs, and others. *Id.* § 154.

The Board Members' executive functions are clearly seen in NLRA Section 10(j), which gives the Board quintessentially prosecutorial power: "[t]he Board shall have power . . . to petition [a] United States district court . . . for appropriate temporary relief or restraining order" in response to an alleged unfair labor practice. *Id.* § 160(j). As the Fifth Circuit has found, this petition power "is prosecutorial in nature." *Overstreet*, 625 F.3d at 852. And prosecuting someone for alleged violations of federal law lies at the heart of the Constitution's concept of Executive Power. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 678–79 (2023); *Seila L.*, 140 S. Ct. at 2200.

Additionally, the removal protections for NLRB Members are also stricter than those that

NLRB SA 40

insulated the FTC Commissioners in 1935 (and still do). The latter are removable "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). NLRB Members, in contrast, are removably only "for neglect of duty or malfeasance in office," but not for other causes like inefficiency, 29 U.S.C. § 153(a). Allowing Congress to eliminate the President's ability to remove principal officers for inefficiency would be an unjustified expansion of *Humphrey's Executor*. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'" (quoting *Myers*, 272 U.S. at 135)).

The Supreme Court has repeatedly declined to expand *Humphrey's Executor*. For example, in *Free Enterprise*, the Court held that *Humphrey's Executor* does not apply when inferior officers are shielded by two layers of removal protections. *Free Enter.*, 461 U.S. at 493. In *Seila Law* and *Collins*, the Court confirmed that *Humphrey's Executor* does not apply when an independent agency is led by a single director. *Seila L.*, 140 S. Ct. at 2192; *Collins*, 141 S. Ct. at 1783–84. Indeed, *Humphrey's Executor* has recently been called into serious question. *See, e.g.*, *Seila L.*, 140 S. Ct. at 2198 n.2; *id.* at 2217 (Thomas, J., concurring in part and dissenting in part). While recognizing that only the Supreme Court has the prerogative to overrule its own decisions, SpaceX expressly preserves the argument that *Humphrey's Executor* should be overturned, particularly given more recent precedent. *Id.* But the key point here is that there is no basis to expand *Humphrey's Executor* to NLRB Members, who wield greater executive power than the 1935 FTC yet are more protected from presidential oversight. SpaceX is likely to prevail on this claim, too.

### C.   The NLRB's adjudication of private rights and legal relief violates the Seventh Amendment.

The NLRB proceeding against SpaceX also violates the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII. Today's

Board claims authority to award extensive compensatory damages to make employees whole for alleged violations of their legal rights. This effort to adjudicate private rights and afford legal relief without the safeguards of juries and an impartial judiciary, as Article III requires, far exceeds the constitutional bounds for administrative adjudications.

The Fifth Circuit has recently reaffirmed that the right to trial by jury "is a 'fundamental' component" of the American legal system and "one of our most vital barriers to governmental arbitrariness." *Jarkesy*, 34 F.4th at 452 (citation omitted). In applying the Seventh Amendment, a court must determine (1) "whether [the] action's claims arise 'at common law' under the Seventh Amendment" and, if so, (2) "whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial." *Id.* at 453 (citation omitted). "This analysis applies not only to common-law forms of action, but also to causes of action created by congressional enactment." *Tull v. United States*, 481 U.S. 412, 417 (1987).

The NLRB proceeding against SpaceX involves claims that arise at common law within the meaning of *Jarkesy* and *Tull*. The Board has lately taken the view that it may, and should, award broad monetary relief "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." *See Thryv*, 372 N.L.R.B. No. 22, slip op. at 1. This compensation includes not just backpay, *see* 29 U.S.C. § 160(c), but also such items as "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 9–10 (citation omitted). Other than backpay, these categories of monetary relief are not found in the statute. But the Board has nonetheless

NLRB SA 42

authorized them to "mak[e] employees whole" and "to restore the wronged to the position he would have occupied but for the action of the wrongdoer." *Id.* at 8, 10 (citation omitted); *see also id.* at 12.

In accordance with *Thryv*, the NLRB's administrative complaint against SpaceX specifies that the General Counsel seeks all relief as may be just and proper to remedy the unfair labor practices alleged. *See* Eschbach Decl., Ex. B-1 at 9. Under current Board precedent, this relief would include the newly authorized damages "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of" the unlawful termination. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 1.

The Supreme Court has recognized that "compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties," are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (some emphasis omitted). And an action by an employee against an employer seeking full compensation arising from an alleged wrongful discharge is akin to a proceeding seeking compensatory and consequential damages for a breach of contract or for a tort. *Cf. Fortune v. Nat'l Cash Reg. Co.* 364 N.E.2d 1251, 1257 (Mass. 1977) (treating bad-faith discharge of an at-will employee as a breach of contract); *Petermann v. Teamsters Loc. 396*, 344 P.2d 25, 27–28 (Cal. Ct. App. 1959) (recognizing cause of action for discharge in violation of public policy). For this reason, the Board's administrative proceeding against SpaceX is "more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty." *Tull*, 481 U.S. at 417.[1]

The public-rights doctrine does not authorize Congress to assign these claims to

---

[1] SpaceX believes backpay is compensatory relief and thus legal in nature, but even if backpay were considered equitable, the other forms or relief recently authorized by the NLRB in *Thryv* and sought in the administrative proceedings are clearly compensatory and thus legal in nature.

NLRB SA 43

administrative agencies. Again, the Board's admitted purpose is "making employees whole" and remedying the private wrong. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 8, 10, 12. In this way, the Board is explicitly aiming beyond the vindication of public rights—"the public interest in effecting federal labor policy"—and instead focusing on "the wrong done the individual employee." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990) (citation omitted). Denying the Board the ability to award this form of compensation would not "dismantle the statutory scheme." *Jarkesy*, 34 F.4th at 455. "Common-law courts have [awarded compensatory damages] for centuries," *id.*, yet the Board's latest claim of authority to do so is a novelty, not something expressly authorized by the statute itself.

The fact that the original design of the NLRB may have passed constitutional scrutiny under the Seventh Amendment, *see NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937); *Atlas Roofing Co., Inc. v. OSHRC*, 430 U.S. 442, 453 (1977), does not mean that the agency's current operations do. Nor, in any event, would Congress have carte blanche to ignore the Seventh Amendment and Article III, even if it had wanted to do so, simply by creating a new statutory framework and administrative agency. Congress cannot "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989); *see also Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1372–73 (2018) ("Congress cannot 'confer the Government's "judicial Power" on entities outside Article III.'"). As originally conceived, the NLRB was limited to awarding the narrow relief enumerated in the statute, consistent with the Board's mandate to act as "as a public agent" rather than a provider of a "private administrative remedy." *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 265, 269 (1940) (citation omitted). Now, however, the Board aims to provide full compensatory relief to make

NLRB SA 44

private individuals whole—*i.e.*, private legal remedies—violating the Seventh Amendment and thus Article III as well. *See Oil States*, 138 S. Ct. at 1379 (noting the connection between the Seventh Amendment right and Article III).

The *Thryv* majority's decision to become a source of compensatory damages to remedy private wrongs readily differentiates this case from *Bell*, where this Court preliminarily found, pending further summary judgment briefing, that 8 U.S.C. § 1324b administrative proceedings, which enforce "immigration and employment laws" through a set of enumerated remedies that include specific monetary penalties, "protect[ed] public rights and are thus excepted from the Seventh Amendment." 2023 WL 8885128, at *5. The broad compensatory monetary damages at issue in the Board's administrative proceeding is not a vindication of public rights but an effort to adjudicate private rights focused on the alleged wrong done to the individual employees identified in the charge. *See, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 489 (2011) (observing that "the liability of one individual to another under the law" is a matter "of private right" (citation omitted)). Under *Jarkesy* and the Supreme Court precedent that it implements, SpaceX is likely to succeed on the merits of this claim.[2]

### D. The NLRB Members' blending of functions violates the separation of powers and due process.

The final structural constitutional defect in the NLRB's proceedings against SpaceX is the combination of both prosecutorial and adjudicative functions by the Board Members. The Regional

---

[2] SpaceX expressly preserves the argument that the Supreme Court should revisit *Jones & Laughlin* and *Atlas Roofing* to the extent that they could be read more broadly as allowing the NLRB to adjudicate disputes between employers and employees. *See, e.g.*, *Granfinanciera*, 492 U.S. at 66 (Scalia, J., concurring in part and concurring in the judgment) ("The notion that the power to adjudicate a legal controversy between two private parties may be assigned to a non-Article III, yet federal, tribunal is entirely inconsistent with the origins of the public rights doctrine.").

Director has indicated that it has submitted or will soon submit to the NLRB's Injunction Litigation Branch a recommendation on whether the Board Members should petition a federal court for injunctive relief under Section 10(j) of the NLRA. *See* Compl. ¶ 128; ECF No. 29 at 4, 11 n.59. Under the Board's procedures, the Board Members themselves authorize decisions to seek Section 10(j) relief,[3] but then also preside over administrative appeals from NLRB ALJs' unfair labor practice decisions involving the same subject matter. In other words, when Board Members accept a recommendation to file a Section 10(j) petition, they act both as prosecutors and adjudicators.

The Constitution does not permit the same agency officials to be both prosecutors and judges. Even for *state* officials, the Supreme Court has held that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams*, 579 U.S. at 8. In *Williams*, the Supreme Court held that a state supreme court justice violated the Fourteenth Amendment Due Process Clause by participating in postconviction review proceedings in a death-penalty case whose prosecution he had authorized decades earlier. 579 U.S. at 4–7. The Court concluded that the justice's dual prosecutorial and adjudicative roles violated "[t]he due process guarantee that 'no man can be a judge in his own case.'" *Id.* at 9. The Constitution therefore mandated that the prior prosecutor recuse from serving as an adjudicator. *Id.* at 16.

This constitutional principle applies equally in the agency context, as the Arizona Supreme Court explained in *Horne v. Polk*, 394 P.3d 651 (Ariz. 2017). There, the court reviewed a due-process challenge to the dual roles a "Special Arizona Attorney General" played when both prosecuting a violation of the Arizona campaign finance laws and reviewing (and rejecting in part) the ALJ's recommendation. In analyzing the constitutional challenge, the Arizona Supreme Court

---

[3] *See* Office of the General Counsel, *Section 10(j) Manual* §§ 5.2–5.5, at 13–16 (Feb. 2014), https://www.nlrb.gov/sites/default/files/attachments/basic-page/node-1727/MASTER%20 REVISED%202013%2010(J)%20MANUAL.pdf.

NLRB SA 46

concluded that both federal and state law (including *Williams*) dictated "that due process does not allow the same person to serve as an accuser, advocate, and final decisionmaker in an agency adjudication." *Id.* at 659. While "[t]he agency head may supervise personnel involved in such functions . . . if she makes the final agency decision, she must be isolated from advocacy functions and strategic prosecutorial decisionmaking and must supervise personnel involved in those functions in an arms-length fashion." *Id.* Because the Special Arizona Attorney General "assumed an advocacy role during the ALJ proceedings," the court concluded that "the due process guarantee prohibited her from then serving as the final adjudicator" on appeal. *Id.*

The Section 10(j) approval process that is evidently already underway against SpaceX[4] violates not just due process principles but also the separation of powers rules that apply within the federal government. Because a Section 10(j) proceeding seeks preliminary injunctive relief, the decision also rests on whether the alleged violations threaten "irreparable harm" to the Board or the Charging Parties. *Section 10(j) Manual*, *supra*, §§ 4.0, 5.2.1, at 10, 13. In these ways, NLRB Members who grant their approval to request Section 10(j) relief express their assessment that (1) the subject of the enforcement proceeding is likely to lose on the merits of the case and (2) the NLRB's interests outweigh the subject's interests.

This approval process is far from neutral. By design, the NLRB's Section 10(j) approval process relies primarily on the presentation in the "Go 10(j)" memorandum prepared by one side— the NLRB inferior officers who wish to litigate the alleged statutory violations. This memorandum provides the administrators' views about "the relevant facts and legal arguments and authorities establishing the violations," the NLRB officials' "responses to defenses raised by the [charged

---

[4] In its Motion to Transfer (ECF No. 29 at 11 n.59), the NLRB admits that a Section 10(j) proceeding against SpaceX "is being considered."

NLRB SA 47

party],” and the administrators’ “responses [to the charged party’s] arguments against 10(j)” relief. *Section 10(j) Manual*, *supra*, § 5.2.1, at 13. Even after relying on this one-sided presentation of the facts and law as their primary basis for authorizing Section 10(j) proceedings, the same NLRB Members often judge whether the same charged parties have engaged in the alleged unfair labor practices, and issue findings of fact, orders, and remedies that are then subject to deferential judicial review. 29 U.S.C. § 160(c), (e)–(f).

After having placed their imprimatur on a federal-court filing that alleges, on behalf of the NLRB itself, that a specific party has likely violated the NLRA in ways that cause irreparable harm to the Board or third parties, there is a substantial risk that such NLRB Members will be “psychologically wedded” to that position when they adjudicate the administrative complaint. *Williams*, 579 U.S. at 11 (citation omitted). If, in the meantime, the agency’s bid for Section 10(j) relief has succeeded, that risk is even greater. For Board Members might “be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process” in federal court. *Id.* The Constitution prohibits adjudicative proceedings that are tainted in this way, and SpaceX is likely to succeed on this claim also.

## II.   SpaceX will suffer irreparable harm without a preliminary injunction.

SpaceX also meets the second requirement for a preliminary injunction: irreparable harm. Without preliminary relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official, without the jury it is entitled to, and without the basic due process of an unbiased decisionmaker consistent with the separation of powers. None of these constitutional injuries would be remediable after the administrative process. Unless this Court grants a preliminary injunction blocking the NLRB proceedings, SpaceX will suffer “harm for which there is no adequate remedy at law.” *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

NLRB SA 48

### A. The unconstitutionality of the NLRB proceedings inflicts irreparable harm.

In general, deprivations of constitutional rights are irreparable injuries, as this Court has recognized. *Bell*, 2023 WL 8885128, at *4 ("Deprivation of a constitutional right unquestionably constitutes irreparable injury." (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Other authorities are in accord. *See, e.g.*, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (denial of constitutional rights "for even minimal periods of time constitutes irreparable injury"); 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2023) (Where "deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary.").

And the Supreme Court recently held that a party that is subject to a proceeding before a decisionmaker who is unconstitutionally insulated from presidential oversight suffers irreparable harm. *Axon*, 598 U.S. at 191. The Court recognized that "being subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Id*. An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Id*. Such a claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* And once the proceeding has concluded, a court is unable to remedy that harm: "[a] proceeding that has already happened cannot be undone," and so "[j]udicial review . . . would come too late to be meaningful." *Id*. at 191–92. This reasoning is directly applicable to both of SpaceX's removal-protection claims.

The NLRB may point to inapposite cases where courts have refused to invalidate agency action taken by unconstitutionally insulated Executive Branch officials. *See, e.g., Community Fin. Servs. Ass'n of Am. Ltd. v. CFPB*, 51 F.4th 616, 625 (5th Cir. 2022) (plaintiffs sought to enjoin enforcement of already-promulgated regulation); *Collins v. Dep't of the Treasury*, No. 22-20632,

2023 WL 6630307, at *7 (5th Cir. Oct. 12, 2023). Such cases are not on-point because they did not reject the availability of relief from the continuing burdens of ongoing unconstitutional proceedings. The Supreme Court has made clear that a challenge to an agency's "power to proceed at all" differs from a challenge to "action[s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. Being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," again, is a constitutional injury that "cannot be undone" after the fact. *Id.* at 191; *see also Cochran v. SEC*, 20 F.4th 194, 212-213 (5th Cir. 2021), *aff'd and remanded sub nom.*, *Axon*, 598 U.S. 175 (if removal claim is "meritorious," plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control"); *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on claim that officers were unlawfully "shielded from removal").

The deprivation of SpaceX's right to a jury during the NLRB proceedings will also create irreparable harm. Because SpaceX is "entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings." *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022). As with having to proceed before unaccountable executive officials, having to proceed without a jury outside an Article III court cannot be remedied after the proceeding has already run its course. *Cf. Ward v. Vill. of Monroeville*, 409 U.S. 57, 61–62 (1972) (A flawed adjudicative process cannot "be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance.").

Proceeding before biased adjudicators is an irreparable injury as well. Even if a court eventually orders a rehearing without participation by any Board Members who authorized the

Section 10(j) petition, this may not "guarantee complete relief." *Williams*, 579 U.S. at 16. For example, any newer Board Members appointed after the Section 10(j) petition who preside over the eventual administrative appeal and are "exposed to a disqualified [Member]" who did authorize the petition, may be "influenced by their colleague's views when they rehear the case." *Id.* And, more broadly, being "deprived of procedural due process . . . is in itself irreparable injury." *Assoc. Builders & Contractors of Tex. Gulf Coast, Inc. v. U.S. Dep't of Energy*, 451 F. Supp. 281, 286 (S.D. Tex. 1978). In short, each constitutional claim poses its own irreparable harm.

**B.      The unconstitutional NLRB proceedings inflict irreparable economic harm.**

While the unconstitutional nature of the proceeding is enough to establish irreparable harm, the record reflects that the real-world burdens of that proceeding constitute additional irreparable harm. Responding to the charges and preparing for the upcoming hearing has involved and will continue to involve extensive preparation by SpaceX and its counsel. Gallman Decl. ¶¶ 13-17. This comes at a time when SpaceX is preparing for numerous challenging missions, including national security missions for U.S. defense/intelligence agencies and flying astronauts for NASA and civilian spaceflight participants. *Id.* ¶¶ 18-19. Having to prepare for and participate in the NLRB proceedings imposes significant burdens on employee time and company resources. *Id.* ¶¶ 17, 20. In addition, the existence of the NLRB's complaint and media coverage of the proceedings are likely to hurt SpaceX's reputation and thus its ability to compete for and retrain talent, as SpaceX values its reputation as a leading engineering employer while the government publicly (and falsely) portrays SpaceX as having engaged in unfair labor practices. *Id.* ¶¶ 21-23. The federal government often uses these financial and reputational harms to its advantage. *Cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way."). But there is no way to recover the lost time, money, or talent caused by these

proceedings, even if SpaceX is eventually successful in getting an administrative rehearing that avoids the constitutional defects identified above. Without a stay of these proceedings until the Court can award a constitutionally adequate remedy, SpaceX will suffer concrete harm that will not be recoverable.

## III.    The balance of harms and public interest favor a preliminary injunction.

SpaceX satisfies the two remaining preliminary injunctive factors as well. Where, as here, the government is a defendant, the balance of harms and the public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors tilt strongly in favor of SpaceX. Given its likelihood of success on the merits, an injunction would not harm Defendants because the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). Nor would an injunction "disserve the public interest." *Louisiana*, 55 F.4th at 1022; *see also BST Holdings*, 17 F.4th at 618; *Daniels Health Scis.*, 710 F.3d at 585 ("[T]he public is served when the law is followed."); *League of Women Voters*, 838 F.3d at 12. It is not in the public interest to have an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people," *Free Enter.*, 561 U.S. at 499, or that infringes the constitutional imperative that "the judiciary remain[] truly distinct from . . . the executive," *Stern*, 564 U.S. at 483 (alteration in original) (quoting THE FEDERALIST No. 78, at 466 (Alexander Hamilton) (C. Rossiter ed. 1961)). And even if the Court grants the injunction but ultimately determines the proceedings are constitutional (or fixes the constitutional defects), Defendants could then proceed with the NLRB proceedings at that time. The NLRB took from November 16, 2022 until January 3, 2024 to file a complaint on the employees' charges. Compl. ¶¶ 47-50. A brief additional delay would not work any meaningful harm.

NLRB SA 52

## IV. Severability arguments cannot defeat SpaceX's right to a preliminary injunction.

SpaceX anticipates that Defendants may argue against a preliminary injunction on the premise that any constitutional defects that may exist within the NLRA are severable from the statute as a whole. In *Bell*, this Court declined to issue a preliminary injunction on the removal-protection claims there based on a finding of severability. 2023 WL 8885128, at \*5. SpaceX respectfully submits that the possibility of ultimately severing unconstitutional provisions from the NLRA does not detract from SpaceX's entitlement to a preliminary injunction now.

The question of severability is relevant to the scope of the remedy at final judgment, not whether SpaceX is entitled to preliminary relief pending the Court's final decision. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328, (2006) (describing severability as "a question of remedy"). Courts may issue a preliminary injunction to preserve parties' rights even if the ultimate relief they could receive differs from the requested preliminary injunctive relief. *See e.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (noting that a party seeking only declaratory relief was still entitled to a preliminary injunction because "prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm"). So even if the unconstitutional statutory provisions here could all ultimately be severed at final judgment without impeding other aspects of the NLRB's functions, such a possibility neither undermines SpaceX's likelihood of success on the merits of its constitutional claims nor its demonstration of irreparable harm in the meantime.

As to likelihood of success, the severability of an unconstitutional provision would not mean that SpaceX's claim fails. Just the opposite: SpaceX seeks declaratory relief as well as injunctive relief. For example, in *Free Enterprise*, the Supreme Court severed an unconstitutional removal protection, but still ruled in the challengers' favor: even though the challengers were "not

entitled to broad injunctive relief against the [PCAOB's] continued operations," they were still "entitled to declaratory relief sufficient to ensure that the [legal] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." 561 U.S. at 513. SpaceX seeks and is entitled that same relief here, even if the Court ultimately determines not to permanently enjoin the NLRB's operations.

And as to irreparable harm, once again, the Supreme Court has recognized the "here-and-now injury" that exists when a party is subject to an unconstitutional administrative proceeding. *Axon*, 598 U.S. at 191. SpaceX "will lose [its] rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over." *Id.* at 192. Without a stay or other postponement of the NLRB proceedings, much of those proceedings will have already happened by the time the Court issues a final decision on the merits of SpaceX's claims. At that point, a declaratory remedy would no longer be able to fully repair the constitutional harm.

In any event, this case is a particularly bad candidate to make the availability of preliminary injunctive relief turn on the possibility of severing unconstitutional provisions. The severability questions here are much more daunting than in *Bell*. The removal-protection problems here are markedly worse than in *Bell*, where ALJ in the Office of the Chief Administrative Hearing Officer ("OCAHO") was subject to for-cause removal by the Attorney General, an official who is already removable at will. So severing the removal protections for the ALJ and the MSPB members "make the OCAHO ALJs accountable to the President." *Bell*, 2023 WL 8885128, at *5. In this case, by contrast, severing those same provisions would not necessarily fix the problems, because the ALJs are subject to for-cause removal by the NLRB Members, who are *not* removable at will. Even if the President can remove MSPB Members without cause, and even if the NLRB can remove its ALJs without cause, such ALJs still are not directly accountable to the President because the NLRB

Members' removal protection would remain a barrier. Put differently, while the ALJs in *Bell* had two layers of removal protection, the ALJs here have three. And it is not at all clear which of the removal protections, if any, Congress would have been willing to give up.

On the one hand, the removal protections that the APA gives to ALJs are "a central part of the Act's overall scheme." *Lucia*, 138 S. Ct. at 2060 (Breyer, J., concurring in the judgment in part) (explaining that the APA's creation of independent ALJs was, in part, a response to complaints about "the perceived 'evils' of commingling adjudicative and prosecutorial functions in agencies" (quoting *Wong Yang Sung v. McGrath*, 339 U.S. 33, 41–46 (1950)). Congress enacted and, over time, refined these protections so ALJs would not be perceived as "mere tools of the agency concerned and subservient to the agency heads." *Ramspeck v. Federal Trial Exam'rs Conf.*, 345 U.S. 128, 130 (1953). To that end, Congress eventually created the MSPB in the Civil Service Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111, and provisions designed to "confer upon [MSPB] members a tenure akin to that of the Federal judiciary." Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off. & Civ. Serv., 95th Cong. 824 (1978); *see* 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court."). Severing the ALJ and MSPB removal protections would override Congress's choices.

At the same time, Congress also designed the NLRB to be an independent agency insulated from presidential, and thus political, control. Both the text of the provision creating the Board and the legislative history make clear that "Congress wanted the Board to be independent of the executive branch." Daniel P. O'Gorman, *Construing the National Labor Relations Act: The NLRB and Methods of Statutory Construction*, 81 TEMP. L. REV. 177, 183 (2008). Senator Wagner, the key architect of the original NLRA (often called the "Wagner Act"), stated that the creation of the NLRB was a response to pleas "for a dignified administrative tribunal, detached from any

particular administration that happens to be in power, and entitled to deal quasi-judicially with issues with which the courts have neither the time nor the special facilities to cope." NAT'L LABOR RELATIONS BD., LEGISLATIVE HISTORY OF THE NATIONAL LABOR RELATIONS ACT OF 1935, at 1428 (1949). The NLRB was designed against the backdrop of a prior labor board, the National Labor Board, which was seen as ineffective because of its reliance on the Justice Department to enforce its orders and which answered directly to the President. *See* Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited, Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069 (1985). This history is very different from that which the Court considered in addressing severability in *Seila Law*, where the petitioners failed to show that the independence of the Consumer Financial Protection Board ("CFPB") was a driving factor for establishing the agency. *Seila Law* 140 S. Ct. at 2210.

Given the interrelationship between these statutes, deciding which removal restrictions to sever is a difficult question better suited to full briefing on the merits rather than a preliminary injunction decision, or better yet to Congress. Each of the three removal protections reflects Congress's conscious decision to instill administrative proceedings with political independence (rather than political accountability). And deciding at this juncture to sever one, two, or three of these deliberately adopted provisions risks "circumvent[ing] the intent of the legislature," *Ayotte*, 546 U.S. at 330, and violating the "obligation to avoid judicial legislation," *United States v. Nat'l Treas. Emps. Union*, 513 U.S. 454, 479 (1995). Severability should be addressed a later stage and/or in a different branch, and SpaceX's right to avoid unconstitutional administrative proceedings should be protected in the meantime.

## CONCLUSION

For all these reasons, the Court should enter a preliminary injunction against the NLRB's administrative proceedings against SpaceX.

NLRB SA 56

Dated: January 12, 2024

Respectfully submitted,

By:     *s/ Catherine L. Eschbach*

**MORGAN LEWIS & BOCKIUS LLP**
Catherine L. Eschbach
Attorney-In-Charge
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
(713) 890-5719

Harry I. Johnson, III (*pro hac vice*)
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
(310) 907-1000

Michael E. Kenneally (*pro hac vice*)
Amanda L. Salz (*pro hac vice*)
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
michael.kenneally@morganlewis.com
amanda.salz@morganlewis.com
(202) 739-3000

*Attorneys for Plaintiff*
*Space Exploration Technologies Corp.*

NLRB SA 57

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(d), I hereby certify that on January 12, 2024, I conferred with counsel for the Defendants via email, who represented that Defendants oppose the foregoing motion.

*s/ Catherine L. Eschbach*
Catherine L. Eschbach

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

*s/ Catherine L. Eschbach*
Catherine L. Eschbach

NLRB SA 58

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | Case No. 1:24-cv-00001 |
| Plaintiff, | |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, | |
| Defendants. | |

**BRIEF OF CHARGING PARTIES AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**

NLRB SA 59

TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 1

II. ISSUES IN DISPUTE ............................................................................... 3

III. BACKGROUND ........................................................................................ 3

IV. LEGAL STANDARD ................................................................................ 7

V. ARGUMENT ............................................................................................ 8

  A. The Court May Transfer The Case Before Deciding Anything Else. ................... 8

  B. This Case Should Be Transferred to the Central District of California Pursuant to 28 U.S.C. § 1404(a). .................................................. 9

    1. SpaceX's complaint could have been brought in the Central District of California. ...................................................... 9

    2. The private interest factors weigh in favor of transfer. ............... 9

      a. Plaintiff's Choice of Forum .................................. 9

      b. Convenience of parties and witnesses .......................... 11

      c. The cost of attendance of witnesses and other trial expenses ....... 12

      d. Availability of compulsory process ............................. 13

      e. Relative Ease of Access to Sources of Proof ..................... 13

      f. Place of the alleged wrong .................................... 13

      g. Possibility of delay and prejudice .............................. 14

    3. The public interest factors weigh in favor of transfer. .............. 15

      a. Administrative difficulties from court congestion ............... 15

      b. Local interest ............................................... 15

      c. Familiarity of the forum with the law that will govern and avoidance of conflicts of law. .................................. 16

VI. CONCLUSION ....................................................................................... 17

- i -

NLRB SA 60

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Andrade v. Chojnacki*,
  934 F. Supp. 817 (S.D. Tex. 1996)............................................................ 8, 10, 11

*Care One, LLC v. Nat'l Lab. Rels. Bd.*,
  Civ. A. No. 23-3221 (MEF) (LDW), 2023 WL 4156859 (D.N.J. June 23,
  2023)............................................................................................................ *passim*

*Care One, LLC v. Nat'l Lab. Rels. Bd.*,
  No. 3:23-CV-00831 (RNC), 2023 WL 6457641 (D. Conn. Oct. 4, 2023) ................................ 3

*Clemons v. WPRJ, LLC*,
  928 F. Supp. 2d 885 (S.D. Tex. 2013) .................................................................. 7, 9

*Evergreen Media Holdings, LLC v. Safran Co.*,
  68 F. Supp. 3d 664 (S.D. Tex. 2014) ................................................................ *passim*

*Hanby v. Shell Oil Co.*,
  144 F. Supp. 2d 673 (E.D. Tex. 2001) ................................................................ 10, 11

*Lemery v. Ford Motor Co.*,
  244 F. Supp. 2d 720 (S.D. Tex. 2002) .................................................................. 13

*Reyes De Perez v. Cont. Freighters, Inc.*,
  No. 5:06-cv-02, 2006 WL 3053400 (S.D. Tex. Oct. 26, 2006)......................................... 10, 11

*Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*,
  957 F. Supp. 843 (E.D. Tex. 1997) ..................................................................... 10

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ..................................................................................... 8

*Spiegelberg v. Collegiate Licensing Co.*,
  402 F. Supp. 2d 786 (S.D. Tex. 2005) ............................................................... *passim*

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ..................................................................... 3, 15, 16

**Statutes**

28 U.S.C. § 1391(b)(2).................................................................................... 9

NLRB SA 61

## TABLE OF AUTHORITIES
### (continued)

Page

28 U.S.C. § 1404(a) ......................................................................................... *passim*

National Labor Relations Act § 7 ................................................................... 1, 3

**Court Rules**

Fed. R. Civ. P. 45(c) ......................................................................................... 13

Local Rule 7.1(D) .............................................................................................. 3

**Other Authorities**

Fed. Ct. Mgmt. Stat. (Sept. 30, 2023), available at
   https://www.uscourts.gov/statistics/table/na/federal-court-management-
   statistics/2023/09/30-1 .................................................................................. 14

2920103.4

NLRB SA 62

Amici curiae Scott Beck, Paige Holland-Thielen, Deborah Lawrence, and Tom Moline ("Charging Parties") submit this brief supporting Defendants' motion for a transfer of venue to the Central District of California pursuant to 28 U.S.C. § 1404(a), alleging as follows:

## I.    **INTRODUCTION**

Charging Parties are aggrieved workers in a complaint brought by the National Labor Relations Board ("NLRB") in California against Space Exploration Technologies Corp. ("SpaceX") for violations of Section 7 of the National Labor Relations Act ("NLRA"). As set forth below, Charging Parties respectfully submit that adjudication of SpaceX's Complaint for Declaratory and Injunctive Relief ("Complaint") should be transferred to the United States District Court for the Central District of California, where an NLRB hearing on the complaint is scheduled to commence on March 5, 2024 and where all the underlying events giving rise to it took place.  Indeed, it is this very action *pending in California* that SpaceX is seeking to disrupt via this Complaint in Texas.

Charging Parties file on behalf of themselves and four other individuals whose lives were changed forever by SpaceX's unlawful termination of their employment. The facts in support of their wrongful termination—almost all of which SpaceX concedes (Compl., ¶¶ 43-50)—establish that they were terminated from employment for the very specific protected conduct of seeking to create a lawful work environment. That is, they requested in an "Open Letter" to SpaceX executives that it take action to redress workplace harassment and discrimination including directing its CEO, Elon Musk to cease engaging in inappropriate, disparaging, sexually charged comments that infiltrated and infected their workplace on a daily basis. SpaceX summarily terminated their employment *because of* this activity—all of which took place in California. Accordingly, it is the NLRB's Region 31 office in Los Angeles, California that has processed and investigated Charging Parties' labor charges, and ultimately issued a consolidated

- 1 -

NLRB SA 63

administrative complaint against SpaceX alleging 37 separate violations of the Act including unlawful termination of each of the eight Terminated Employees. Thus, after a year of investigating the allegations and intense factual development and legal assessment by its Region 31 agents in Los Angeles, the NLRB has made a determination regarding the scope of the matters to be tried and has set a trial date of March 5, 2024, for the matter to be heard in Los Angeles.

SpaceX's Complaint now seeks to hijack the employees' rights to vindication by challenging the NLRB's authority to act in the California proceeding. Setting aside the merits of the Complaint, it plainly bears no relationship whatsoever to the Southern District of Texas; instead, venue should be transferred to the Central District of California "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

Wholly ignoring the pertinent facts, SpaceX avers that venue in Texas is proper for this action because it has a facility there, and some unidentified SpaceX employees in Texas who have no involvement whatsoever in the underlying case may have "interacted with" the Open Letter. Compl., ¶ 34. This does not support venue in Texas. The Charging Parties acknowledge SpaceX's right to be heard; they simply request that the hearing occur in the appropriate venue: the Central District of California.

There is direct precedent supporting transfer of venue. In June of 2023, another employer facing an NLRB complaint tried the same tactic that SpaceX advances here: arguing that the NLRB's ALJ's are unconstitutionally insulated from removal. *Care One, LLC v. Nat'l Lab. Rels. Bd.*, Civ. A. No. 23-3221 (MEF) (LDW), 2023 WL 4156859, at *2 (D.N.J. June 23, 2023).[1] That

---

[1] Within this brief, unless otherwise indicated, all citations and internal quotation marks within quotations are omitted and any emphasis has been added.

NLRB SA 64

effort was ultimately rejected,[2] but as relevant here, it was first transferred to the district court where the NLRB action was proceeding. *Id*. The same result should occur here. The question of the constitutionality of the NLRB's proceedings should be adjudicated where those proceedings are taking place, and not in a venue that has no relationship to the matter. *Id*. at *3 (ordering transfer under 1404(a) and holding that where the NLRB action was proceeding in Connecticut and all of the underlying events leading to the NLRB action took place in Connecticut, "the District of New Jersey is hardly a natural place for this lawsuit")

Pursuant to this Court's Local Rule 7.1(D), counsel for Charging Parties conferred with counsel for the NLRB and counsel for SpaceX about this motion. The NLRB takes no position on this motion, and SpaceX opposes it.

## II.     ISSUES IN DISPUTE

Whether this case should be transferred to the Central District of California "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The party seeking transfer must demonstrate that the case could have been filed in the judicial district to which transfer is sought; if so, the court then examines the convenience of the parties and witnesses. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004).

## III.    BACKGROUND

Charging Parties, along with four of their colleagues (collectively, "Terminated Employees"), were unlawfully fired by SpaceX in retaliation for engaging in concerted protected activity under Section 7 of the NLRA. Those terminations (along with allegations of unlawful interrogation, surveillance, and coercive statements) are now the subject of an NLRB complaint

---

[2] *Care One, LLC v. Nat'l Lab. Rels. Bd.*, No. 3:23-CV-00831 (RNC), 2023 WL 6457641, at *1 (D. Conn. Oct. 4, 2023).

scheduled for hearing in Los Angeles on March 5, 2024.

Terminated Employees were software and hardware engineers at SpaceX. Declaration of Scott Beck In Support of Motion to Intervene ("Beck Decl."), ¶¶ 2-3; Declaration of Paige Holland-Thielen In Support of Motion to Intervene ("Holland-Thielen Decl."), ¶ 2; Declaration of Deborah Lawrence In Support of Motion to Intervene ("Lawrence Decl."), ¶ 2; Declaration of Tom Moline In Support of Motion to Intervene ("Moline Decl."), ¶¶ 3-4; Declaration of Laurie Burgess in Support of Motion to Intervene ("Burgess Decl."),, ¶¶ 8-11.[3] Seven of the eight Terminated Employees resided in California during the time of all relevant actions that triggered the underlying consolidated Complaint and worked at SpaceX's headquarters in Hawthorne, California. Beck Decl., ¶ 4; Holland-Thielen Decl., ¶ 3; Moline Decl., ¶ 5; Burgess Decl., ¶ 4. The eighth employee worked at a SpaceX office in Redmond, Washington. Lawrence Decl., ¶ 3. As is demonstrated below, each of the eight Terminated Employees participated in protected concerted activity California that SpaceX's concedes led to termination of their employment. Compl., ¶¶ 43-46.

During their otherwise highly productive careers at SpaceX, the Terminated Employees became concerned about a series of disturbing incidents related to SpaceX's handling of sexual harassment in the workplace that interfered with their ability to function at work. For instance, several former employees published accounts of having been sexually harassed at SpaceX, and then having been retaliated against by HR for reporting it. Beck Decl., ¶ 5; Holland-Thielen Decl., ¶ 4; Lawrence Decl., ¶ 4; Moline Decl., ¶ 6. Terminated Employees' concerns over SpaceX's failure to properly address allegations of harassment was heightened when CEO Elon

---

[3] Rather than cloud the docket by filing two copies of the exact same declarations, Charging Parties instead cite to their declarations filed in support of their previously submitted Motion to Intervene, filed at ECF 18-22, which contain all relevant facts.

Musk was accused of sexually harassing a SpaceX flight attendant and publicly ridiculed the alleged victim. Beck Decl., ¶ 6; Holland-Thielen Decl., ¶ 5; Lawrence Decl., ¶ 5; Moline Decl., ¶ 7. To the Employees' dismay, instead of affirming the right to speak up about harassment without fear of retaliation, the company's President, Gwynne Shotwell, actively and vociferously defended Musk. *Id.* All of this took place against a background of a continual stream of public posts on social media by CEO Elon Musk degrading women and LGBTQ individuals and featuring inappropriate sexual comments and jokes. Beck Decl., ¶ 7; Holland-Thielen Decl., ¶ 6; Lawrence Decl., ¶ 6; Moline Decl., ¶ 8. These posts were actively circulated in the workplace, with many actually posted on internal SpaceX platforms. *Id*. It was impossible for employees to avoid Musk's degrading and demeaning comments and management failed to take any action to remediate the hostile work environment. Beck Decl., ¶ 8; Holland-Thielen Decl., ¶ 7; Lawrence Decl., ¶ 7; Moline Decl., ¶ 9.

Desperate to effectuate change in the workplace to simply bring company policy into compliance with the law, in late May 2022 the Terminated Employees decided to work together to take action to protest the company's handling of sexual harassment. Beck Decl., ¶ 9; Holland-Thielen Decl., ¶ 8; Lawrence Decl., ¶ 8; Moline Decl., ¶ 10. After a series of meetings at SpaceX headquarters in Hawthorne and at nearby off-campus locations, they ultimately wrote an Open Letter to SpaceX's executive team asking that the company distance itself from Musk's social media comments—that is, make clear that those comments were not SpaceX's own position— and that it clarify and enforce an anti-harassment policy in the workplace. *Id*. They shared this letter internally within SpaceX channels on June 15, 2022. Beck Decl., ¶ 10; Holland-Thielen Decl., ¶ 9; Lawrence Decl., ¶ 9; Moline Decl., ¶ 11.

The next day, June 16, 2022, SpaceX fired Mr. Beck, Ms. Holland-Thielen, Mr. Moline,

and one other Terminated Employee in meetings in Hawthorne, California. Beck Decl., ¶¶ 3, 11-12; Holland-Thielen Decl., ¶¶ 2, 10-11; Moline Decl., ¶¶ 4, 12-13; Burgess Decl., ¶ 10. The June 16 meetings were each attended by Vice President of HR, Brian Bjelde, HR Manager Rebecca Balayan, and President Gwynne Shotwell. *Id*. These SpaceX officials told the Terminated Employees that they were being fired for conceiving of, drafting, and distributing the Open Letter. *Id*. Later that day, President Shotwell sent an email to the entire company confirming that it had performed an investigation into the Open Letter and terminated those involved. Lawrence Decl., ¶ 10.

But the retaliation did not stop there. Over the next several weeks, SpaceX's HR department proceeded to interrogate employees that it suspected of involvement in the Open Letter, and fired the remaining four Terminated Employees once they had admitted their participation. Lawrence Decl., ¶¶ 10-11X; Burgess Decl., ¶¶ 8-9, 11. This intimidation campaign was headed by HR Director Lindsay Chapman, based in Hawthorne, and the interrogations and firings took place in Hawthorne, with the exception of one Terminated Employee who was located in Redmond, Washington—she was interrogated by Ms. Chapman in Redmond, and later fired by Ms. Chapman via email. Lawrence Decl., ¶ 11; Burgess Decl., ¶¶ 8-9, 11.

Terminated Employees retained counsel and filed charges of unfair labor practices with the NLRB Region 31 in Los Angeles on November 16, 2022. Beck Decl., ¶¶ 13-14; Holland-Thielen Decl., ¶¶ 12-13; Lawrence Decl., ¶¶ 12-13; Moline Decl., ¶¶ 14-15 & Ex. A. Amended charges were filed to conform to the evidence elucidated during the investigation and on January 3, 2024, after over a year investigating the charges, the NLRB issued a consolidated administrative complaint on behalf of all eight Terminated Employees alleging 37 separate violations of the NLRA. Moline Decl. ¶16 & Ex. B; Burgess Decl., ¶ 13. A hearing before an

NLRB administrative law judge is scheduled to commence on March 5, 2024 in Los Angeles. It is this California hearing that SpaceX seeks to enjoin in its Complaint filed in Texas (hereafter, the "NLRB Action").

## IV.   LEGAL STANDARD

Under § 1404(a), a district court may transfer a case "to any other district . . . where it might have been brought," when transfer would be "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

"The threshold issue under § 1404(a) is whether the Plaintiff's claim could have been filed in the judicial district to which transfer is sought." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 789 (S.D. Tex. 2005) (citing *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004)). "If so, a court then examines 'the convenience of the parties and witnesses.'" *Id*. The determination of convenience turns on a number of private and public interest factors, which are not exhaustive or exclusive, and none is dispositive. *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 896–97 (S.D. Tex. 2013).

The private interest factors include (1) the plaintiff's choice of forum; (2) the convenience of parties and witnesses; (3) the cost of attendance of witnesses and other trial expenses; (4) the availability of compulsory process; (5) the relative ease of access to sources of proof; (6) the place of the alleged wrong; and (7) the possibility of delay and prejudice. *Spiegelberg*, 402 F. Supp. 2d at 789 (citing *In re Volkswagen AG,* 371 F.3d at 203).

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary conflict of law problems. *Id*.

NLRB SA 69

## V.   ARGUMENT

There can be no question that the 1404(a) factors favors transfer to California. The NLRB Action is pending in California, and virtually all of the events giving rise to the NLRB action happened there. Moreover, the vast majority of witnesses are located in California, and the parties themselves are located there. Texas, on the other hand, has no connection to this matter whatsoever, giving rise to a strong interference that SpaceX is engaged in nothing more than forum-shopping. In these circumstances, this Court readily grants motions to transfer to the appropriate venue. *Andrade v. Chojnacki*, 934 F. Supp. 817, 825 (S.D. Tex. 1996); *Spiegelberg*, 402 F. Supp. 2d at 790; *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 678–79 (S.D. Tex. 2014). In the interest of justice, and as further explained below, this case should be transferred to the Central District of California.

### A.   The Court May Transfer The Case Before Deciding Anything Else.

Courts possess discretion to determine the appropriate venue as a threshold issue, without needing to first address the underlying merits of the matter. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). Consistent with this principle, courts generally decide questions of venue prior to other threshold or merits issues, even including the court's own subject matter jurisdiction. *See Andrade*, 934 F. Supp. at 825 ("While decision on Defendants' substantive motions might obviate the need for determining the transfer motions, an important element in the litigation . . . should not be decided by the transferor court but should be adjudicated by the court that has responsibility for ultimately deciding the case. If the converse were true, Sections 1404(a) and 1406(a) would be undermined, because judicial economy would dictate that the court that decided the substantive motions retain jurisdiction, even if venue were properly . . . or improperly laid in the original forum.").

This Court should therefore determine this motion to transfer venue before considering

NLRB SA 70

the underlying merits of SpaceX's Complaint. This will avoid potential procedural complications down the road. If this Court were to decide SpaceX's request for declaratory and injunctive relief first, its order would be appealable to the Fifth Circuit. However, if the case were later transferred to California, any final orders or interlocutory appeals would be heard by the Ninth Circuit, creating the potential for conflicting orders and unnecessary complication.

**B.      This Case Should Be Transferred to the Central District of California Pursuant to 28 U.S.C. § 1404(a).**

**1.      SpaceX's complaint could have been brought in the Central District of California.**

The first requirement for transfer is met: SpaceX's complaint could have been brought in the Central District of California. The NLRB Action that SpaceX seeks to enjoin is proceeding in Los Angeles, located within the Central District. And nearly all the operative events giving rise to the NLRB Action arose and are continuing to take place within the Central District of California. Venue is therefore proper in the Central District of California as the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(b)(2).

**2.      The private interest factors weigh in favor of transfer.**

The private interest factors confirm that venue belongs in California.

**a.      Plaintiff's Choice of Forum**

The first private interest factor is the Plaintiff's choice of forum, but that factor receives little or no weight here, because SpaceX chose a forum with no connection to the underlying case. "Deference to a plaintiff's choice of forum 'disappears' when, as here, the suit has no connection to the chosen venue." *Clemons*, 928 F. Supp. 2d at 904. *See also Spiegelberg*, 402 F. Supp. 2d at 790 (holding that "because Houston lacks any legally relevant factual nexus with Plaintiff or the claims in this case, Plaintiff's choice of the Houston forum receives less

deference"); *Hanby v. Shell Oil Co.,* 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001) ("Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer."); *Reyes De Perez v. Cont. Freighters, Inc.*, No. 5:06-cv-02, 2006 WL 3053400, at *3 (S.D. Tex. Oct. 26, 2006) (same); *Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*, 957 F. Supp. 843, 844 (E.D. Tex. 1997) (same); *Andrade*, 934 F. Supp. at 832 (same).

The NLRB Action is taking place in California. Also, nearly all events giving rise to the NLRB Action occurred in California. Seven of the eight Charging Parties were employed in California, wrote the Open Letter in California, and were terminated in California. (The eighth worked in Washington and participated in the Open Letter efforts taking place in California remotely. Lawrence Decl., ¶ 8.) SpaceX's response to the Open Letter was directed and carried out by President Gwynne Shotwell, Vice President of HR Brian Bjelde, HR Director Lindsay Chapman, and HR Manager Rebeca Balayan in California. Even the Washington employee was fired by Lindsay Chapman from California.

In sharp contrast, the most SpaceX can say in its Complaint is that it has a facility in Boca Chica, and that unspecified persons "interacted with" the Open Letter at that facility—which allegation is wholly unsupported by any declaration or affidavit. Compl., ¶ 34. Tellingly, SpaceX does not explain what it means by "interacted with." Regardless, the mere fact that the plaintiff does business in a district does not matter when "none of that 'business' is shown to be directly in connection with the claims in this action." *Hanby*, 144 F. Supp. 2d at 675. While SpaceX employees at locations throughout the United States *saw* the Open Letter, that is of no consequence to venue because the aggrieved workers (seven of eight of whom worked in California) were *all* terminated from California by California-based executives. *See Care One*, 2023 WL 4156859, at *3 (holding that plaintiff's choice of venue was entitled to little weight

- 10 -

where the NLRB proceedings that plaintiff sought to enjoin were pending in another district, and all underlying events took place there).

Given that there is no connection to Texas, the inference of forum shopping is strong. SpaceX may believe that its constitutional arguments will receive a more sympathetic ear in this forum, but indicia of forum shopping weighs against the Plaintiff's choice of venue. *Andrade*, 934 F. Supp. at 826 (noting that party's decision to file "a lawsuit in the Southern District strongly suggest[ed] forum-shopping," and that "[v]enue rules were designed precisely in order to prevent such conduct"). Indeed, SpaceX's decision to litigate this matter in Texas is particularly suspect given its strong preference for litigation in California. Its employment agreements with the Terminated Employees requires all matters regarding their employment to be adjudicated in California. Beck Decl., ¶¶ 16-17; Holland-Thielen Decl., ¶¶ 15-16; Lawrence Decl., ¶ 16; Moline Decl., ¶¶ 17-18.

Thus, SpaceX's choice of venue should be given little or no deference. To the extent that the Court considers it at all, it is clearly outweighed by the balance of the other factors. *Hanby*, 144 F. Supp. 2d at 677.

**b.    Convenience of parties and witnesses**

"The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a)." *Spiegelberg*, 402 F. Supp. 2d at 790. Moreover, "it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Id*. at 790–91 (quoting *State St. Cap. Corp. v. Dente,* 855 F. Supp. 192, 198 (S.D. Tex. 1994)). *See also Reyes De Perez*, 2006 WL 3053400, at *4 ("The convenience of *non-party* witnesses is of particular importance.").

The Terminated Employees are non-party witnesses and, as the persons whose legal interests are actually at stake in the underlying NLRB Action, their convenience deserves

- 11 -

paramount importance. The vast majority worked for SpaceX in California; none did so in Texas. They filed charges with the NLRB in California because that is the only logical place this dispute should be adjudicated. They should be allowed to present evidence in that venue, not in a district where they have never lived, worked, or indeed had any connection to whatsoever. *See Evergreen Media*, 68 F. Supp. 3d at 678–79 (holding that transfer was appropriate where "most, if not all, potential third-party witnesses are located in the Central District of California").

Although of lesser importance, the party witnesses are in California as well. This includes, among others, Vice President of HR Brian Bjelde, HR Director Lindsay Chapman, and HR Manager Rebeca Balayan.[4] Indeed, the parties themselves are located in California. Plaintiff SpaceX is headquartered in Hawthorne, outside of Los Angeles. Defendant NLRB's agents who have investigated the case and issued the consolidated administrative complaint are all located in the Region 31 office in Los Angeles. *See Spiegelberg*, 402 F. Supp. 2d at 791 (finding transfer appropriate where the plaintiff resided in the transferee forum); *Evergreen Media*, 68 F. Supp. 3d at 678 (finding transfer appropriate where defendant resided in transferee forum, and plaintiff did business there).

Thus, this second and "most important factor" weighs very strongly in favor of transferring venue to California.

### c.    The cost of attendance of witnesses and other trial expenses

This factor weighs in favor of transfer for largely the same reasons as factor two. The NLRB hearing is scheduled to take place in California, and its agents and trial materials are located there. The vast majority of party and non-party witnesses are located in California. There

---

[4] Upon information and belief, CEO Elon Musk, who will also be a key witness, is peripatetic; but as the CEO of two major California employers—SpaceX and X (formerly Twitter)—California cannot be deemed an inconvenient forum for him.

NLRB SA 74

is no good reason to require the parties to incur the costs and burdens of bringing these witnesses to Texas. *See Spiegelberg*, 402 F. Supp. 2d at 791 (finding this factor supported transfer where "it undoubtedly would be less expensive to secure the appearance of the identified nonparty witnesses"). In fact, there can be little doubt that California is the more convenient venue for SpaceX as well, given that it is headquartered there, and that the lawyers representing it in the NLRB Action are located in California (as are counsel for Terminated Employees). Burgess Decl., ¶ 2-4. Considerations of expense clearly favor transfer of venue.

> **d.     Availability of compulsory process**

This factor, too, heavily favors transfer. The non-party witnesses in this case are the Terminated Employees who are not subject to compulsory process in the Southern District of Texas. SpaceX's witnesses, by contrast, are subject to compulsory process in the Central District of California, as they reside and work there. Fed. R. Civ. P. 45(c).

> **e.     Relative Ease of Access to Sources of Proof**

In addition to the fact that the witnesses almost all reside in California, the underlying documentation is all in California, as well—either with the NLRB Region 31 office or with SpaceX headquarters. In *Evergreen Media*, this Court granted transfer to California where the defendant's principal place of business was there, concluding that "[t]here is easy access to sources of proof in California." 68 F. Supp. 3d at 678. The same is true here.

> **f.     Place of the alleged wrong**

"The place of the alleged wrong is of primary importance in the Court's venue determination." *Lemery v. Ford Motor Co.,* 244 F. Supp. 2d 720, 732 (S.D. Tex. 2002); *Spiegelberg*, 402 F. Supp. 2d at 791 ("The place of the alleged wrong is one of the more important factors in venue determinations."). Here, the wrong took place in California. California is where the Terminated Employees exercised their statutorily protected rights to advocate for a

NLRB SA 75

workplace free from sexual harassment. California is where SpaceX executives fired them for this activity. California is where the underlying NLRB Action is pending. *See Care One*, 2023 WL 4156859, at *4 (holding that the claim of unconstitutionality arose in the proposed transferee district because that is where the underlying NLRB proceeding was pending).

It also should not be overlooked that SpaceX is headquartered in California, including the executives responsible for Human Resources and specifically for the terminations at issue. In *Spiegelberg*, an intellectual property infringement suit, the court noted that such cases focus on the activities of the alleged infringer, its employees, and its documents; "therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." 402 F. Supp. 2d at 792. The same principle is applicable here. This case involves labor actions that took place at SpaceX headquarters in California, and most if not all of the relevant evidence will be located in the HR department there. Thus, this very important factor weighs strongly in favor of transfer.

### g.    Possibility of delay and prejudice

This factor favors transfer, as the case is likely to be adjudicated more quickly in the Central District of California. According to the United States' Courts Management Statistics for September 2023, the Central District of California has 28 judgeships and the median time from filing to disposition in civil cases is five months, while the Southern District of Texas has 19 judgeships and the median time is 7.6 months.[5] Moreover, the Southern District of Texas has over seven times the number of criminal cases than the Central District of California, which receive priority. *Id. See also Evergreen Media*, 68 F. Supp. 3d at 679 (noting these same factors as supporting transfer to Central District of California).

---

[5] *See* Fed. Ct. Mgmt. Stat. (Sept. 30, 2023), available at
https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/09/30-1.

As to prejudice, SpaceX cannot be prejudiced by litigating in the location of its own headquarters. As the court found in *Evergreen Media,* "Plaintiffs will not be burdened by having to litigate in California, where they do business, where they have legal counsel, and where they are already participating in the arbitration of a related dispute." 68 F. Supp. 3d at 679. Indeed, there is a related legal dispute in California, as Charging Parties have filed complaints of violations of California state employment law with California's Civil Rights Division. Burgess Decl., ¶ 16. Moreover, as trial in the NLRB Action is not set to begin until March 5, SpaceX has ample time to renew its complaint with the transferee court. Thus, this factor favors transfer as well.

In sum, *all* of the private factors—apart from the plaintiff's choice of forum, which should receive no weight here—strongly favor transfer. No private factors weigh in favor of maintaining venue in Texas.

### 3.   The public interest factors weigh in favor of transfer.

#### a.   Administrative difficulties from court congestion

Charging Parties are not aware of any specific court congestion issues in either this Court or the Central District of California. However, as noted above with respect to the possibility of delay, the relative criminal dockets of the two courts provide good reason to think the case will be adjudicated more quickly in the Central District of California. This factor favors transfer.

#### b.   Local interest

As the Fifth Circuit held in *Volkswagon AG*, the local interest lies in the place of the alleged wrongdoing. 371 F.3d at 206. In that case, the Court granted transfer from the Eastern to the Western District of Texas noting that since the underlying vehicle accident occurred in the Western District, "the local interest in having localized interests decided at home weighs heavily in favor of [transfer]." *Id.* "[T]here is absolutely nothing in this record to indicate that the people

of Marshall, or even the Eastern District of Texas, have any meaningful connection or relationship with the circumstances of these claims." *Id.* So, too, here: there is nothing in this record to indicate that the Southern District of Texas has any connection or relationship to the events giving rise to the NLRB Action. The local interest is entirely in California where the NLRB Action is pending. *See also Spiegelberg*, 402 F. Supp. 2d at 792 ("[Transferee court] has a strong interest in this case because the case arises out of events occurring in [that district].")

SpaceX is seeking to enjoin the NLRB's Region 31 in California from prosecuting a case against it. Matters might be different if SpaceX were challenging an NLRB action in Texas, but it is not. This Court and the people that it serves have no interest in whether the NLRB Action proceeds in California. By contrast, the Central District of California and the residents there have a strong interest in whether a major regional employer, with several thousand local employees and an important role as a government defense contractor, is held to account for unlawful labor actions committed there. *See Care One*, 2023 WL 4156859, at *7 (holding that the local interest factor plainly favored transfer to the district where the NLRB proceeding was pending).

### c. Familiarity of the forum with the law that will govern and avoidance of conflicts of law.

These factors have little bearing here. SpaceX's complaint raises issues of federal constitutional law, and the NLRB Action raises issues of federal labor law. There is no conflict, and the Central District of California is not at a disadvantage to this Court in hearing and resolving such claims.

In sum, the public interest factors heavily favor transfer as well. In particular, the Court should find that transfer is supported by a profound local interest in having this matter resolved in the Central District of California.

- 16 -

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Charging Parties respectfully request that the Court grant their motion for transfer pursuant to 28 U.S.C. § 1404(a), and transfer this action to the Central District of California.

Dated: February 5, 2024                    Respectfully submitted,


                                           */s/Anne B. Shaver*
                                           _____


                                           Anne B. Shaver (admitted *pro hac vice*)
                                           Of Counsel
                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           275 Battery Street, 29th Floor
                                           San Francisco, CA 94111-3339
                                           Phone: (415) 956-1000
                                           Fax: (415) 956-1008
                                           ashaver@lchb.com

                                           Laurie Burgess (admitted *pro hac vice*)
                                           Of Counsel
                                           Burgess Law Offices, P.C.
                                           498 Utah Street
                                           San Francisco, CA 94110
                                           Phone: (312) 320-1718
                                           lburgess@burgess-laborlaw.com

                                           *Counsel for Charging Parties*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2024, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will automatically send notification of the

filing to all counsel of record.

*/s/Anne B. Shaver*          

Anne B. Shaver

2920103.4

NLRB SA 80

United States District Court
Southern District of Texas
**ENTERED**
February 06, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | Case No. 1:24-cv-00001 |
| Plaintiff, | |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, | |
| Defendants. | |

## ORDER

NLRB SA 81

The Motion for Charging Parties to File as *Amicus Curiae* in Support of Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction is hereby GRANTED. The Court GRANTS Charging Parties *amicus curiae* status and GRANTS their request to file a brief in support of the opposition to preliminary injunction filed by Defendants. The Clerk is directed to accept the proposed brief for filing.

**It is so ordered.**

Dated: February 6, 2024

_____
Hon. Rolando Olvera
United States District Judge

NLRB SA 82

Dated: February 5, 2024                    Respectfully submitted,


                                           /s/Anne B. Shaver
                                           _____

                                           Anne B. Shaver (admitted *pro hac vice*)
                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           275 Battery Street, 29th Floor
                                           San Francisco, CA 94111-3339
                                           Phone: (415) 956-1000
                                           Fax: (415) 956-1008
                                           ashaver@lchb.com

                                           Laurie Burgess (admitted *pro hac vice*)
                                           Burgess Law Offices, P.C.
                                           498 Utah Street
                                           San Francisco, CA 94110
                                           Phone: (312) 320-1718
                                           lburgess@burgess-laborlaw.com

                                           *Counsel for Charging Parties*

NLRB SA 83

Respectfully submitted,

ALAMDAR S. HAMDANI
*United States Attorney*
*Southern District of Texas*

By:*/s/ Benjamin S. Lyles*
BENJAMIN S. LYLES
*Assistant United States Attorney*
S.D. Tex. ID No. 3062156
State Bar No. 24094808
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Benjamin.Lyles@usdoj.gov
*Attorney-in-Charge for Defendants*

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and*
*Special Litigation Branch*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

DANIEL BRASIL BECKER
*Trial Attorney*

DAVID P. BOEHM
*Trial Attorney*

GRACE L. PEZZELLA
*Trial Attorney*
MA Bar No. 709601 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-0247
Email: Grace.Pezzella@nlrb.gov

2937357.1

NLRB SA 84

Respectfully submitted,

ROERIG, OLIVEIRA & FISHER, L.L.P.          By: s/*Catherine L. Eschbach*
David G. Oliveira
10225 N. Tenth Street                      MORGAN LEWIS & BOCKIUS LLP
McAllen, TX 78504                          Catherine L. Eschbach
doliveira@rofllp.com                       Attorney-In-Charge
(956) 393-6300                             1000 Louisiana Street, Suite 4000
                                           Houston, TX 77002-5006
                                           catherine.eschbach@morganlewis.com
                                           (713) 890-5719

                                           Harry I. Johnson, III (pro hac vice)
                                           2049 Century Park East, Suite 700
                                           Los Angeles, CA 90067-3109
                                           harry.johnson@morganlewis.com
                                           (310) 907-1000

                                           Michael E. Kenneally (pro hac vice)
                                           Amanda L. Salz (pro hac vice)
                                           1111 Pennsylvania Avenue, N.W.
                                           Washington, DC 20004-2541
                                           michael.kenneally@morganlewis.com
                                           amanda.salz@morganlewis.com
                                           (202) 739-3000

                                           *Attorneys for Plaintiff*
                                           *Space Exploration Technologies Corp.*