# No. 24-40103

# In the United States Court of Appeals
## FOR THE FIFTH CIRCUIT

IN RE: SPACE EXPLORATION TECHNOLOGIES CORP.

On Petition for Writ of Mandamus from an Order Granting
Defendants' Motion to Transfer Venue, Entered February 15, 2024
from United States District Court, Southern District of Texas,
Brownsville Division, No. 24-cv-1 (Olvera, J.)

## PETITION FOR EXPEDITED REHEARING EN BANC OF SPACE EXPLORATION TECHNOLOGIES CORP.

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
(310) 255-9005

CATHERINE ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

MICHAEL E. KENNEALLY
AMANDA L. SALZ
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

*Counsel for Space Exploration Technologies Corp.*

**CERTIFICATE OF INTERESTED PERSONS**

***No. 24-40103, In re: Space Exploration Technologies Corp.***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.   Space Exploration Technologies Corp. ("SpaceX"), Plaintiff and Petitioner. SpaceX has no parent corporation and no publicly held corporation owns 10% or more of its stock.

2.   National Labor Relations Board, a federal administrative agency, Defendant and Respondent

3.   Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board, Defendant and Respondent

4.   Lauren M. McFerran, in her official capacity as Chairman of the National Labor Relations Board, Defendant and Respondent

5.   Marvin E. Kaplan, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

6.    Gwynne A. Wilcox, in her official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

7.    David M. Prouty, in his official capacity as Board member of the National Labor Relations Board, Defendant and Respondent

8.    Tom Moline, *Amicus Curiae* in the underlying proceedings

9.    Deborah Lawrence, *Amicus Curiae* in the underlying proceedings

10.    Scott Beck, *Amicus Curiae* in the underlying proceedings

11.    Paige Holland-Thielen, *Amicus Curiae* in the underlying proceedings

12.    Pacific Legal Foundation, *Amicus Curiae* in the underlying proceedings

13.    Rolando Olvera, in his official capacity as United States District Judge of United States District Court for the Southern District of Texas, Brownsville Division

14.    John Doe, in his official capacity as an Administrative Law Judge of the National Labor Relations Board, Defendant[1]

---

[1] Judge Sharon L. Steckler was recently named as the ALJ in the underlying matter but had not been officially substituted by the time of the ruling giving rise to this petition.

15. United States of America, appropriates funds for and assumes debts of Defendants and Respondents

The undersigned counsel for SpaceX, separately lists the following persons as attorneys of record:

16. Harry I. Johnson, III, Attorney for SpaceX

17. Michael E. Kenneally, Attorney for SpaceX

18. Catherine L. Eschbach, Attorney for SpaceX

19. Amanda L. Salz, Attorney for SpaceX

20. David G. Oliveira, Attorney for SpaceX

21. Alamdar S. Hamdani, Attorney for Defendants

22. Daniel David Hu, Attorney for Defendants

23. Benjamin S. Lyles, Attorney for Defendants

24. Kevin P. Flanagan, Attorney for Defendants

25. David P. Boehm, Attorney for Defendants

26. Paul A. Thomas, Attorney for Defendants

27. Daniel Brasil Becker, Attorney for Defendants

28. Grace L. Pezzella, Attorney for Defendants

29. Laurie Burgess, Attorney for *Amicus Curiae*

30. Anne Shaver, Attorney for *Amicus Curiae*

31.     Nimish Desai, Attorney for *Amicus Curiae*

32.     Joshua M. Robbins, Attorney for *Amicus Curiae*

33.     Oliver J. Dunford, Attorney for *Amicus Curiae*

Dated:  March 7, 2024              s/ Michael E. Kenneally
                                   MICHAEL E. KENNEALLY

# RULE 35(b) STATEMENT

Over Judge Elrod's dissent, the majority denied SpaceX's emergency petition for mandamus relief and allowed the district court to deprive SpaceX "of the opportunity to seek justice in a lawful venue." Dissent 2. En banc review is warranted for two reasons.

First, the proper statutory standard for transactional venue is an exceptionally important issue that this Court rarely has the opportunity to address. Because the district court's approach to that standard conflicts with the decisions of other circuits and of district courts in this Circuit, as well as the plain statutory text, the en banc Court should correct it.

Second, the panel's refusal to afford mandamus relief conflicts with other decisions of this Court finding mandamus warranted in similar (or less compelling) circumstances. Mandamus is the sole avenue of relief from an erroneous transfer decision. Just last week, the Court reaffirmed that the writ is appropriate to correct improper transfers. And this Court has previously granted en banc review to correct such errors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc). It should do so again here.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .........................................i

RULE 35(b) STATEMENT.................................................................. v

TABLE OF AUTHORITIES................................................................viii

STATEMENT OF THE ISSUE................................................................ 1

STATEMENT OF THE COURSE OF PROCEEDINGS AND
      DISPOSITION OF THE CASE......................................................... 1

STATEMENT OF FACTS ...................................................................... 4

I.    The Charging Parties send the Open Letter to all SpaceX
      employees. ..................................................................................... 4

II.   The NLRB authorizes unfair labor practice charges
      implicating all SpaceX facilities......................................................5

III.  The district court erroneously transfers this case............................ 6

ARGUMENT ......................................................................................... 7

I.    Rehearing is warranted to guide district courts applying
      Section 1391's transactional-venue standard.................................. 7

     A.   The district court's "most substantial part of the events"
          standard is inconsistent with the text of Section 1391. ......... 9

     B.   A substantial part of the events giving rise to this case
          occurred in the Southern District of Texas. ........................ 12

          1.   The NLRB seeks to regulate SpaceX's conduct in
              the Southern District of Texas..................................... 13

# TABLE OF CONTENTS
## (continued)

2. The alleged unfair labor practices took place, at least in substantial part, in the Southern District of Texas ...................................................................... 14

3. The Charging Parties intentionally sent the Open Letter to SpaceX facilities and solicited responses from SpaceX employees in the Southern District of Texas ...................................................................... 16

II. Rehearing is warranted to maintain uniformity in this Court's transfer mandamus decisions. ....................................................... 17

CONCLUSION ......................................................................... 19

CERTIFICATE OF SERVICE ................................................... 21

CERTIFICATE OF COMPLIANCE .......................................... 23

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Andrade v. Chojnacki,*
934 F. Supp. 817 (S.D. Tex. 1996) ................................ 10, 11

*Axon Enter., Inc. v. FTC,*
598 U.S. 175 (2023) ............................................................ 3

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) ..................... 13

*Cheney v. U.S. Dist. Court,*
542 U.S. 367 (2004) ......................................................... 17

*Crowe & Dunlevy, P.C. v. Stidham,*
609 F. Supp. 2d 1211 (N.D. Okla. 2009) ........................... 12

*Def. Distributed v. Bruck,*
30 F.4th 414 (5th Cir. 2022) ..................................... *passim*

*Def. Distributed v. Platkin,*
55 F.4th 486 (5th Cir. 2022) .............................................. 8

*First of Mich. Corp. v. Bramlet,*
141 F.3d 260 (6th Cir. 1998) ............................................ 10

*In re Clarke,*
— F.4th —, 2024 WL 886953 (5th Cir. 2024) ........... 8, 17, 19

*In re Radmax, Ltd.,*
720 F.3d 285 (5th Cir. 2013) ............................................ 19

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008) ................................... 8, 9, 17

*Jarkesy v. SEC,*
34 F.4th 446 (5th Cir. 2022) ....................................... 2, 18

*Texas v. United States*,
 95 F. Supp. 3d 965 (N.D. Tex. 2015)....................................... 13

*Thornwell v. United States*,
 471 F. Supp. 344 (D.D.C. 1979) ........................................... 11

*Trois v. Apple Tree Auction Ctr., Inc.*,
 882 F.3d 485 (5th Cir. 2018)........................................... 14, 15

*Uffner v. La Reunion Francaise, S.A.*,
 244 F.3d 38 (1st Cir. 2001) ............................................ 10, 12

*Umphress v. Hall*,
 479 F. Supp. 3d 344 (N.D. Tex. 2020)..................................... 13

STATUTES

28 U.S.C. § 1391 ............................................................ *passim*

28 U.S.C. § 1406 ..................................................... 1, 2, 7, 17

OTHER AUTHORITIES

14D CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3806
 (4th ed. 2023) ............................................................ 9

17 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE
 § 110.04 (3d ed. 2023) .................................................... 9

## STATEMENT OF THE ISSUE

Whether the Court should issue a writ of mandamus to vacate the district court's transfer order, which erroneously transferred the case under 28 U.S.C. § 1406(a) based on a misapplication of 28 U.S.C. § 1391's transactional-venue standard.

## STATEMENT OF THE COURSE OF PROCEEDINGS
## AND DISPOSITION OF THE CASE

In June 2022, a small group of disgruntled SpaceX employees flooded company communication channels across all SpaceX facilities—including two located in the Southern District of Texas—with an "Open Letter." Their conduct was a blatant and gross violation of SpaceX's policies. Eight employees terminated for their involvement (the "Charging Parties") filed unfair labor practice charges with the National Labor Relations Board ("NLRB" or "Board"). The NLRB's General Counsel authorized an administrative complaint that expressly seeks to regulate SpaceX's actions and policies at all its facilities, including Starbase in Boca Chica and SpaceX's Houston facility. The Board has never denied that the administrative proceeding has this companywide objective.

SpaceX immediately filed this action in the Southern District of Texas, Brownsville Division (where Starbase is located), asserting four

challenges to the constitutionality of the Board's structure—including that NLRB Administrative Law Judges ("ALJs") are unconstitutionally insulated from presidential control under *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). The parties briefed SpaceX's preliminary injunction motion while Defendants sought transfer to the Central District of California. Without resolving the preliminary injunction motion, the district court held that SpaceX had not satisfied the transactional-venue standard in Section 1391 and transferred the case under Section 1406(a).

The next day, SpaceX petitioned for an emergency writ of mandamus. The motions panel stayed the transfer but later denied relief in a one-line order, over Judge Elrod's dissent. As she explained, the district court committed a clear abuse of discretion by "[f]ail[ing] to follow the plain text of the venue statutes and settled Fifth Circuit caselaw" and transferring the case. Dissent 16. The "NLRB cannot seek to condemn SpaceX's past labor practices in the Southern District of Texas, bind SpaceX's future practices in the Southern District of Texas, and at the same time avoid proper venue in the Southern District of Texas." *Id.*

Judge Elrod rightly found that "mandamus relief is appropriate to remedy the erroneous transfer." *Id.*

The parties were notified that the mandate was withheld at the request of a Judge of this Court, leaving the stay in effect. SpaceX now petitions for en banc review on an expedited basis. The administrative proceedings before the ALJ—which SpaceX contends are unconstitutionally structured in multiple ways—officially opened on March 5, despite SpaceX's repeated requests that the NLRB postpone the hearing to afford time for this constitutional litigation. The administrative discovery process is now underway, and live testimony now seems likely to begin in May and continue well into the summer. The NLRB recently informed SpaceX that it has also opened a *new* unfair-labor-practice investigation based solely on SpaceX's attempt to secure discovery from the Charging Parties.

The ongoing, unconstitutionally structured administrative proceedings are already inflicting a "here-and-now injury" on SpaceX, *see Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023), which will be irreparable after the administrative proceedings have run their course. Although the current lengthy schedule for the administrative proceedings ensures that

SpaceX's claims and request for preliminary injunctive relief will not become moot anytime soon, SpaceX's constitutional injury grows with every new event in the administrative proceeding. Given this urgency, SpaceX respectfully requests that if this Court grants rehearing and believes oral argument is appropriate, oral argument be heard in the May en banc sitting or as soon as practicable.

## STATEMENT OF FACTS

### I. The Charging Parties send the Open Letter to all SpaceX employees.

SpaceX operates a space launch business and a global satellite-based internet service known as Starlink. Dkt. 37-1 ¶¶ 5–8. It employs over 14,000 people in facilities around the country, including Starbase in Boca Chica, where it is developing, manufacturing, and launching the Starship rocket. *Id.* ¶ 9. Although SpaceX was incorporated in Delaware when it filed this lawsuit, Dkt. 1 ¶ 35, SpaceX reincorporated in Texas on February 14, 2024.

On June 15, 2022, a small group of employees purposefully sent the Open Letter to coworkers across all SpaceX locations (including those in Texas), demanding that SpaceX take certain actions addressing per-

ceived shortcomings and soliciting those employees to fill out a hyper-linked survey to indicate support for the Open Letter's demands and provide feedback. *Id.* ¶¶ 43–44. The Open Letter caused significant disruption to SpaceX operations around the country, including at Starbase and other Texas facilities.

The undisputed facts show that over 210 employees at SpaceX's two facilities in the Southern District of Texas interacted with the Open Letter. Dkt. 64-1 ¶¶ 9, 11–12. Discussion around the Open Letter derailed technical conversations for a week at Starbase, during a critical phase in meeting targets for Starship (which will send American astronauts to the Moon and to Mars), and required multiple unscheduled meetings to address disruption and concern resulting from the Open Letter. Dkts. 64-2, 64-7. This included a visit to Starbase by SpaceX's President and COO. Dkt. 64-7 ¶¶ 6–8.

## II. The NLRB authorizes unfair labor practice charges implicating all SpaceX facilities.

In November 2022, the Charging Parties alleged that SpaceX's responses to the Open Letter constituted unfair labor practices. Dkt. 1 ¶ 47. SpaceX submitted a position statement and evidence refuting the Charging Parties' allegations. *Id.* ¶ 48. The NLRB investigators informed

SpaceX, however, that they had authorized an administrative complaint against SpaceX. In January 2024, the NLRB issued a consolidated administrative complaint and notice that an ALJ hearing would occur just two months later, on March 5, 2024. *Id.* ¶¶ 49–50.

Among the complaint's accusations is an alleged unfair labor practice based on a June 16 email that SpaceX's President and COO sent from McGregor, Texas "to *all employees*." Dkt. 31 ¶ 11 (emphasis added). The administrative complaint expressly seeks companywide remedies, such as forcing SpaceX executives and supervisors at all SpaceX facilities, including those located in the Southern District of Texas, to undergo NLRB-directed labor law re-education. *See id.* The NLRB has never denied it is seeking to adjudicate an unfair labor practice occurring, in part, in the Southern District of Texas or that the remedies it seeks would apply to company facilities and personnel in the Southern District of Texas.

## III.  The district court erroneously transfers this case.

SpaceX sought injunctive and declaratory relief in the Southern District of Texas. Defendants moved to transfer the case to the Central District of California, arguing the ALJ hearing will occur there and most Charging Parties were located there when discharged. The district court

transferred the case under Section 1406(a). In doing so, the district court compared the Texas and California venues based on where "most events" occurred, Dkt. 82 at 5—rather than simply assess whether "a substantial part of the events" occurred in the Southern District of Texas, 28 U.S.C. § 1391(e)(1)(B). *See* Dkt. 82 at 3–5.

The next day, SpaceX filed an emergency petition for a writ of mandamus. The motions panel promptly stayed the transfer to preserve this Court's jurisdiction while it considered the petition.

## ARGUMENT

### I. Rehearing is warranted to guide district courts applying Section 1391's transactional-venue standard.

As Judge Elrod noted, the panel decision "permits an erroneous view of the requirements for filing claims in [this] circuit" and "risks confusion amongst [its] district courts." Dissent 2. This error and confusion will not impair this case alone. The transactional-venue standard that the district court misapplied governs not just in suits against the federal government, but across general federal litigation. *See* 28 U.S.C. § 1391(b)(2). Allowing the district court's error to stand uncorrected threatens any case in this Circuit where transactional venue is contested.

En banc review is vital to maintain uniformity and ensure that this Circuit's trial courts do not follow the district court's lead and oust litigants from lawful venues based on a misunderstanding of the legal standard.

Erroneous transfer decisions pose a special threat to like cases' being treated alike given the difficulties in gaining review of such decisions. *See In re Clarke*, — F.4th —, 2024 WL 886953 (5th Cir. 2024) ("[V]enue transfer decisions are rarely reviewed, and district courts have applied [Fifth Circuit] tests with too little regard for consistency of outcomes." (citation omitted)). In an electronic age, transfer can be initiated immediately—leaving a plaintiff wrongfully deprived of a chosen forum little opportunity to seek reconsideration or a stay from any court pending review. Then, even if mandamus relief is eventually granted, the transferee venue may refuse to give the case back. *See Def. Distributed v. Platkin*, 55 F.4th 486, 496 (5th Cir. 2022). Where, as here, a trial court ruling muddles the rule for transactional venue and only the full Court can correct it, en banc rehearing is warranted. *See Volkswagen*, 545 F.3d at 308.

**A.** **The district court's "most substantial part of the events" standard is inconsistent with the text of Section 1391.**

The district court committed a "clear abuse of discretion" in misinterpreting the transactional-venue standard. *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022); *Volkswagen*, 545 F.3d at 309. But the panel majority's one-line order fails to correct—or even acknowledge—that clear legal error.

As Judge Elrod detailed, the transactional-venue statute "does not ask the district court to determine whether the current venue is the *best* venue." Dissent 4. It asks whether the current venue is one where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). Since Section 1391 was amended to codify this standard in 1990, it has "been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." 14D CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3806 (4th ed. 2023); *accord* 17 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 110.04[2] & n.4 (3d ed. 2023). Because of the possibility of multiple proper venues, district courts should not merely compare themselves to other potential venues to decide whether venue is proper. *See,*

*e.g.*, *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001) (collecting cases).

The district court did not apply this standard, even if it partially recited it. *See* Dissent 6. Instead, the district court repeatedly compared the case's connections to Texas and California. *See, e.g.*, Dkt. 82 at 3 ("resulting events in this district are … far less significant that those occurring in California"); *id.* at 3 ("most related events … occurred at and in relation to the Hawthorne facility"); *id.* at 4–5 ("the Central District of California is the venue in which the most events giving rise to this case occurred"). The district court's application of this "most substantial events" standard violates the text of Section 1391 as amended and resulted in a "clear abuse of discretion" warranting mandamus. *Bruck*, 30 F.4th at 427; *see* Dissent 7.

As Judge Elrod explained, the district court's error seemed to stem from an outlier district court case from nearly twenty years ago, which mistakenly applied an "incorrect, obsolete standard" that did not survive the 1990 amendments to Section 1391. *See* Dissent 5 (noting the district court's reliance on *Andrade v. Chojnacki*, 934 F. Supp. 817 (S.D. Tex. 1996)); *see also First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th

Cir. 1998). The *Andrade* court in turn invoked an out-of-circuit case pre-dating the amendments. 934 F. Supp. at 827 n.18 (applying *Thornwell v. United States*, 471 F. Supp. 344 (D.D.C. 1979)). But under the amended statutory text, district courts must consider whether "*a* substantial part of the events"—not the *most* substantial part—occurred in the plaintiff's chosen venue. 28 U.S.C. § 1391(e)(1)(B) (emphasis added). So, contrary to *Thornwell*, 471 F. Supp. at 356, courts may not disregard events in a particular forum because they are less substantial than other events in "the totality of events giving rise to plaintiff's grievance." *See* Dissent 5–6.

The comparative totality-of-events standard is not just atextual but nonsensical. Indeed, "it creates the possibility that venue would be improper everywhere." Dissent 6. If, for example, "the activity giving rise to an action is equally distributed across ten districts, so each district contains 1/10 of the activity," then "[e]ach district would conclude that the activity is in its district, constituting 10% of the total activity, was insubstantial compared to the totality of the activity underlying the case." *Id.* Returning to such a standard would bring back the "plethora of tests,"

"wasteful litigation," and inconsistent outcomes that the 1990 amendments were expressly enacted to avoid. *Uffner*, 244 F.3d at 42.

As discussed next, courts applying the correct standard would easily have found venue proper here. The district court's clear legal error warrants correction from the en banc Court. No one else can correct it.

### B. A substantial part of the events giving rise to this case occurred in the Southern District of Texas.

"If the selected district court's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." Dissent 6 (quoting *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009), *aff'd*, 640 F.3d 1140 (10th Cir. 2011)). Here, three sets of substantial events lay venue in the Southern District of Texas: (1) the NLRB attempts to regulate SpaceX in the Southern District of Texas; (2) the alleged unfair labor practices occurred in the Southern District of Texas; and (3) the Charging Parties intentionally reached into SpaceX's facilities and out to its employees in the Southern District of Texas. Considering all these events, the Southern District of Texas is clearly a proper venue, and other courts would have recognized it as such.

### 1. The NLRB seeks to regulate SpaceX's conduct in the Southern District of Texas.

Venue is proper in the Southern District of Texas because "the administrative proceedings initiated by NLRB would regulate SpaceX's operations and policies everywhere, including the Southern District of Texas." Dissent 8. In cases challenging government action, courts in this Circuit widely hold that transactional venue is "proper where: (1) the plaintiff has a significant presence in the forum; and (2) the plaintiff was subject to actual or imminent burden within the forum should the contested agency action take effect." *Id.*; *see, e.g.*, *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023); *Umphress v. Hall*, 479 F. Supp. 3d 344, 351–52 (N.D. Tex. 2020); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015).

SpaceX has a significant presence in the Southern District of Texas, where its Starbase facility (the largest private employer in the Brownsville area) and Houston facility are located. SpaceX is also substantially burdened there, as the NLRB alleges SpaceX violated labor law within the district and requests remedies that would burden SpaceX within the district. For example, the NLRB seeks to require both SpaceX facilities in the Southern District of Texas to post notices for all employees at those

facilities and to require all SpaceX managers at those facilities to partic-ipate in personnel trainings. As Judge Elrod explained, "SpaceX easily satisfies both requirements." Dissent 8. And "[h]aving decided to target all SpaceX facilities and employees, NLRB cannot now escape the impli-cations of that decision." Dissent 10.

> ### 2. The alleged unfair labor practices took place, at least in substantial part, in the Southern District of Texas.

"SpaceX can also satisfy the transactional venue standard because the alleged unfair labor practices in the administrative complaint took place, in substantial part, in the Southern District of Texas." Dissent 10. The NLRB complaint alleges an unfair labor practice based on an e-mail SpaceX's President and COO, Gwynne Shotwell, sent from McGregor, Texas to all SpaceX employees, including those at Starbase and in Hou-ston.

This Court's precedent holds "that communications sent to Texas can constitute a substantial part of the events giving rise to the plaintiff's claim so long as those claims derive directly from those communications." *Id.* (citing *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018)). The alleged unfair-labor-practice email is a substantial event

giving rise to SpaceX's challenge to the NLRB proceedings and is sufficient to lay venue in the Southern District of Texas. After all, "the content of the email sent by Shotwell is the very act alleged to be an unfair labor practice, leading to the administrative proceedings" SpaceX challenges as unconstitutional. Dissent 12.

This district court tried to distinguish *Trois* by describing the email reaching Texas employees as "incidental." Dkt. 82 at 3. But as Judge Elrod explained, that characterization is "nearly impossible to grasp" because "any communication purposefully sent to a person or persons within a district is a direct communication." Dissent 11. "Merely sending a message to persons in multiple forums cannot render the contact resulting from that decision as 'incidental.'" *Id.* Were the district court correct, there would be "cases with no proper venue because a message sent to multiple districts would be 'incidental' as to all of those districts." Dissent 11–12.

### 3. The Charging Parties intentionally sent the Open Letter to SpaceX facilities and solicited responses from SpaceX employees in the Southern District of Texas.

Finally, "[t]he facts that gave rise to NLRB's proceedings against SpaceX also have substantial ties to the Southern District of Texas." Dissent 12. By purposefully distributing the Open Letter to and seeking feedback from employees in the Southern District of Texas, "the Charging Parties reached into the Southern District and specifically involved SpaceX employees in that district." *Id.* SpaceX introduced undisputed evidence establishing that the Open Letter caused significant disruption at the facilities in the Southern District of Texas and led to numerous meetings, discussions, and decreased productivity by employees in the district. The district court committed clear legal error by discounting these substantial events in the Southern District of Texas simply because the Open Letter was also sent to employees in additional districts. Dissent 12–13.

*****

Any of these three categories independently suffices to lay venue. And when one considers in combination, "the district court's error is made all the more egregious." Dissent 13.

**II. Rehearing is warranted to maintain uniformity in this Court's transfer mandamus decisions.**

The panel's refusal to grant mandamus relief departs from the Court's actions in other recent cases. Mandamus is the "appropriate means to test a district court's ruling on a venue transfer motion." *Volkswagen*, 545 F.3d at 308. Just last week, the Court granted the writ to correct an improper out-of-circuit transfer. *Clarke*, 2024 WL 886953. And when a panel has improperly denied the writ, the full Court has recognized the importance of the matter and reheard the case en banc. *Volkswagen*, 545 F.3d at 308. An erroneous transfer under Section 1406 is especially problematic and worthy of correction because such an error "artificially restricts the right of plaintiffs to bring their claims in [this] circuit." Dissent 15.

This Court has clearly held that the writ is warranted in this context if: (1) there are "no other adequate means to attain the relief [the petitioner] desires," (2) "the writ is appropriate under the circumstances," and (3) the petitioner shows "a clear and indisputable right to the writ." *Bruck*, 30 F.4th at 426 (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004)). SpaceX satisfies all three conditions. Indeed, not even Defendants dispute the first. Mandamus Resp. 10. The majority's refusal

to grant mandamus relief despite SpaceX's satisfaction of all three conditions departs from this Circuit's normal standard for issuing the writ in the transfer setting.

As for condition two, the writ is appropriate here because this case involves "issues that implicate not only the parties' interest but those of the judicial system itself." *Bruck*, 30 F.4th at 426 (citation omitted). SpaceX challenges the structure of the administrative proceedings the NLRB uses nationwide: the removal protections shielding NLRB ALJs and Board Members from presidential oversight, the NLRB's failure to provide a jury trial in a case involving private rights and claims for legal relief, and the NLRB Members' exercises of prosecutorial and adjudicative authority in the same proceeding.

Defendants have not hidden their desire to avoid adverse Fifth Circuit precedent on these issues—particularly *Jarkesy*, 34 F.4th 446. They went so far as to try thwart this Court's mandamus review—even after the motions panel stayed transfer and ruled that the Court retained jurisdiction—by encouraging the transferee court not to send the case back. *See* Dkts. 42, 47, 51, 53; *cf. Bruck*, 30 F.4th at 427 (finding mandamus appropriate given defense "tactics suggesting the abusive manipulation

of federal court procedures in order to delay or altogether avoid meaningful merits consideration of Plaintiffs' claims"). Judge Elrod properly recognized that the "NLRB's desire to avoid [this] circuit's precedent is further justification" for granting mandamus relief. Dissent 15.

Finally, SpaceX is clearly and indisputably entitled to relief. The district court "clear[ly] abuse[d] its discretion" by applying the wrong transfer standard. *Bruck*, 30 F.4th at 427; *see supra* Section I.A. This Court has acted to "grant[] mandamus for less egregiously erroneous transfers." *Clarke*, 2024 WL 886953, at *9 (citing *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013)). Under these cases and as described above, SpaceX satisfies the third condition.

Given the "supervisory" nature of the writ, this is a textbook case for mandamus relief. *Id.* at *10 (citation omitted). The split panel's decision to deny relief cannot be squared with other grants of mandamus relief in the transfer context. The panel's unexplained failure to follow Fifth Circuit mandamus precedent to correct a patently erroneous transfer decision necessitates en banc review.

## CONCLUSION

The petition for expedited rehearing en banc should be granted.

Dated:  March 7, 2024

Respectfully submitted,

s/ Michael E. Kenneally

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
(310) 255-9005

MICHAEL E. KENNEALLY
AMANDA L. SALZ
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

CATHERINE ESCHBACH
MORGAN, LEWIS & BOCKIUS
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

*Counsel for Space Exploration Technologies Corp.*

# CERTIFICATE OF SERVICE

I certify that on this 7th day of March, 2024, I electronically filed the foregoing Petition for Expedited Rehearing En Banc of Space Exploration Technologies Corp. with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that the 8th day of March, 2024, I will mail the foregoing document by First-Class Mail, postage prepaid, or have it dispatched to a third-party commercial carrier for delivery within 3 calendar days, to the following case participants:

ALAMDAR S. HAMDANI
*United States Attorney Southern District of Texas*

BENJAMIN S. LYLES
*Assistant United States Attorney*
1701 W. Bus. Highway 83
Suite 600
McAllen, TX 78501
(956) 618-8010
benjamin.lyles@usdoj.gov

*Attorney-in-Charge for Defendants*

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and Special Litigation Branch*
KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
DANIEL BRASIL BECKER
*Trial Attorney*
GRACE L. PEZZELLA
*Trial Attorney*

DAVID P. BOEHM
*Trial Attorney*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
(202) 273-4202
david.boehm@nlrb.gov

HONORABLE ROLANDO OLVERA
*United States District Judge*
UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION
Reynaldo G. Garza-Filemon B. Vela
United States Courthouse
600 E. Harrison St.
Brownsville, TX 78520

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Space Exploration
Technologies Corp.*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 35(b)(2)(A) and 5th Cir. Rule 35.5 because, excluding the items exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,844 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and 5th Cir. Rule 32.1, and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.


Dated:  March 7, 2024          <u>s/ Michael E. Kenneally</u>
                                    MICHAEL E. KENNEALLY

                                    *Counsel for Space Exploration Technologies Corp.*

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2024

Lyle W. Cayce
Clerk

No. 24-40103

IN RE SPACE EXPLORATION TECHNOLOGIES, CORPORATION,

*Petitioner.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:24-CV-1

PUBLISHED ORDER

Before ELROD, HAYNES, and DOUGLAS, *Circuit Judges.*

PER CURIAM:[*]

The petition for a writ of mandamus is DENIED.

---

[*] Judge Elrod dissents from the denial of a writ of mandamus.

No. 24-40103

Jennifer Walker Elrod, *Circuit Judge*, dissenting:

Space Exploration Technologies seeks a writ of mandamus in order to keep the lawsuit it filed against NLRB in the Southern District of Texas. Today, in a one-line order, the panel denies that relief. In doing so, the panel permits an erroneous view of the requirements for filing claims in our circuit, risks confusion amongst the district courts of our circuit, and deprives plaintiffs of the opportunity to seek justice in a lawful venue. Because the district court committed legal error by asking where the "*most* significant part of the events" took place and because the other mandamus factors are satisfied, I would conclude that mandamus relief is appropriate and direct the district court to: (1) vacate its transfer order dated February 15, 2024; and (2) rule expeditiously on the pending motion for a preliminary injunction.

SpaceX originally filed suit in the Southern District of Texas, seeking preliminary injunctive relief from administrative hearings before the NLRB. SpaceX contends that the structure of the hearings violates Article II, the Fifth Amendment, and the Seventh Amendment of the Constitution of the United States. The district court granted NLRB's motion to transfer the case to the Central District of California, reasoning that the Central District is where most of the events giving rise to the case occurred. SpaceX petitioned for a writ of mandamus, and we administratively stayed the transfer order so that we could review SpaceX's petition. Because the stay was entered before transfer of the case was complete,[1] we confirmed that we retained jurisdiction over the case. The Central District of California stated that it would return the case upon request from the Southern District of

---

[1] Transfer was not complete because although the case had been sent electronically, it had not been docketed in the transferee court. *In re Space Exploration Technologies, Corp.*, No. 24-40103, Order (Feb. 26, 2024) (citing *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987)).

No. 24-40103

Texas.  On March 1, 2024, the Southern District of Texas requested that the case be returned, and the Central District of California ordered that the case be returned on March 4, 2024.  The Southern District of Texas docketed the case on March 5, 2024.

Mandamus is an "extraordinary remedy reserved for really extraordinary cases." *Defense Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022).  Our circuit has held that mandamus is the "appropriate means to test a district court's ruling on a venue transfer motion." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 308 (5th Cir. 2008).  Indeed, NLRB does not contest this point.  The Supreme Court has laid out three requirements that must be met before a reviewing court can grant mandamus relief:  (1) the party seeking a writ of mandamus must have no other adequate means to attain the relief he desires"; (2) the petitioner must demonstrate that his "right to issuance of the writ is clear and indisputable"; and (3) even if the first two requirements are met, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *In re Volkswagen*, 545 F.3d at 311 (quoting *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 452 U.S. 367, 380–81 (2004)).

I

In the motion to transfer context, "this circuit has established that the first 'mandamus requirement [of no other adequate means of relief] is satisfied.'" *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam)).[2]  NLRB admits as much.  The fact that this case involves an out-of-circuit transfer

---

[2] These holdings arose in the context of transfers under 28 U.S.C. § 1404(a).  Because 1406(a) is an "analogous" provision, "which shares the same statutory context" as § 1404(a), the same logic applies to 28 U.S.C. § 1406(a).  *Van Dusen v. Barrack*, 376 U.S. 612, 621 n.11 (1964).

No. 24-40103

only strengthens the case for mandamus. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3935.4 (4th ed.) (noting that "completion of proceedings in the receiving court is likely to exert a strong pressure to affirm rather than set aside a completed trial solely because it would better have been held in the transferring court").

## II

In this case, the second prong is the one "most strenuously debate[d]." *Bruck*, 30 F.4th at 427. It requires SpaceX to demonstrate a "clear and indisputable right to the writ or a clear abuse of discretion by the district court." *Id.* (citing *Cheney*, 452 U.S. at 381). "A district court by definition abuses its discretion when it makes an error of law." *Id.* (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("[A] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.").

Here, the district court's abuse of discretion concerns its determination that venue in the Southern District of Texas was improper. A civil action against an agency of the United States may be brought in a judicial district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The parties did not and do not dispute that because no party resides in the Southern District of Texas, § 1391(e)(1)(B) is the only potential path to venue in the Southern District of Texas.

Section 1391(e)(1)(B) does not ask the district court to determine whether the current venue is the *best* venue. *Safety Nat. Cas. Corp. v. U.S. Dep't of Treasury*, No. CIV.A H-07-643, 2007 WL 7238943, at *5 (S.D. Tex. Aug. 20, 2007). The plain text of the statute permits a plaintiff to bring an action against the United States in any district where "a substantial part of

the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). The statute requires that the events (or omissions) in the Southern District were "*a* substantial part," not the *most* substantial part, of the events giving rise to the claim. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred.").

The language in 28 U.S.C. § 1391(e)(1) is identical to that found in the general venue statute. 28 U.S.C. § 1391(b)(2) (permitting venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").[3] This language is generally referred to as "transactional venue."

But in conducting its § 1391(e)(1)(B) analysis, the district court employed a "most substantial part of the events" test. The basis for the district court's approach seems to be *Andrade v. Chojnacki*, a 1996 district court opinion that, in a footnote, determined venue was improper if the activities transpiring in the forum district were insubstantial compared to the totality of events giving rise to the case. 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996). The *Andrade* test is, of course, not binding.

The larger issue is that *Andrade* takes its test from *Thornwell v. United States*, a 1979 case that predates the 1990 amendments to § 1391. 471 F. Supp. 344 (D.D.C. 1979); *see also* 15 Charles Alan Wright, Arthur R.

---

[3] Because §§ 1391 and 1392 use identical language, cases construing § 1391(b)(2) are particularly helpful in construing § 1391(e)(1)(B). *E.V. v. Robinson*, 200 F. Supp. 3d 108, 113 n.2 (D.D.C. 2016) ("Because § 1391(e)(1)(B) is identical to 28 U.S.C. § 1391(b)(2), cases construing that general venue provision are 'helpful in construing this provision.'" (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3815 (4th ed.))).

Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3815 (4th ed.) ("Originally, the statute permitted venue where the 'cause of action' arose. This ambiguous language was jettisoned in favor of the current version in 1990."). *Thornwell*'s interpretation could not have survived the 1990 amendments because those amendments made clear that venue can be proper in multiple districts. "If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009), aff'd, 640 F.3d 1140 (10th Cir. 2011); *see also Zurich Am. Ins. Co. v. Tejas Concrete & Materials. Inc.*, 982 F. Supp. 2d 714, 722–23 (W.D. Tex. 2013).

Further, it creates the possibility that venue would be improper everywhere. Suppose the activity giving rise to an action is equally distributed across ten districts, so each district contains 1/10 of the activity. Each district would conclude that the activity in its district, constituting 10% of the total activity, was insubstantial compared to the totality of the activity underlying the case. That result is plainly inconsistent with the text of § 1391, which does not contemplate lack of venue everywhere. Because *Andrade*'s footnote is inconsistent with the amended version of § 1391, the district court erred by relying on it.

The district court may have properly recited the distinction between proper venue and best venue, *see* District Court Order at 2 ("The Court should determine whether venue is proper but need not determine the 'best' venue." (citation omitted)), but the opinion repeatedly uses comparative language when evaluating the events taking place in the Southern District of Texas as opposed to the Central District of California. We have previously granted mandamus relief in venue transfer cases where the district court, despite reciting the legal rule, "misperceived and thus misapplied" the standard the law demands. *Bruck*, 30 F.4th at 429.

No. 24-40103

The most obvious example of this misapplication occurs in the district court's conclusion: "As has been made clear, the Central District of California is the venue in which the *most events* giving rise to this case occurred." District Court Order at 4–5 (emphasis added); *see also id.* at 3 (stating that events in this district are "far less significant than those occurring in California"); *id.* at 3 (stating that "an even larger disruption should be expected to have occurred in Hawthorne"); *id.* at 4 (stating that "these effects would be expected to have far more relevance to the Hawthorne facility"); *id.* at 3 (stating that "most related events . . . occurred at and in relation to the Hawthorne facility").

Here application of an erroneous legal standard was dispositive because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas." 28 U.S.C. § 1391(e)(1). There are three distinct buckets under which the Southern District of Texas satisfies this standard: (1) NLRB's action seeks to regulate SpaceX's conduct in the Southern District of Texas; (2) the allegedly unfair labor practices took place, at least in substantial part, in the Southern District of Texas; and (3) the open letter was intentionally sent to SpaceX's facilities in the Southern District of Texas and the Charging Parties purposefully solicited responses from employees in that district. Any one of these buckets is sufficient to satisfy the transactional venue test on its own. Taken together, the test is clearly satisfied.

## A

Venue is proper in the Southern District of Texas because NLRB seeks to regulate SpaceX's conduct in that district. SpaceX is challenging the constitutionality of NLRB proceedings that seek to regulate SpaceX in the Southern District of Texas where it has a substantial presence through its Starbase and Houston facilities. Although scheduled to take place in

No. 24-40103

California, the administrative proceedings initiated by NLRB would regulate SpaceX's operations and policies everywhere, including the Southern District of Texas. The administrative action is not limited in geographic scope to California employees and facilities. In fact, the very allegations in the administrative proceeding assert that SpaceX violated the NLRA at all of its facilities, including the ones in the Southern District of Texas.

District courts within our circuit have held that under 28 U.S.C. § 1391(e)(1), venue "is proper where an unlawful rule imposes its burdens." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023) (internal quotations omitted); *see also Umphress v. Hall*, 479 F. Supp. 3d 344, 351–52 (N.D. Tex. 2020); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (injunction terminated on other grounds). In these cases, transactional venue was held to be proper where: (1) the plaintiff has a significant presence in the forum; and (2) the plaintiff was subject to actual or imminent burden within the forum should the contested agency action take effect. *See Career Colls.*, 2023 WL 2975164, at *2.

SpaceX easily satisfies both requirements. It has a significant presence in the Southern District of Texas through its Starbase facility. The district court's order suggests that there are six total SpaceX facilities, one of which is in the Southern District of Texas. SpaceX has consistently represented that it also has two facilities in the Southern District of Texas (the Starbase facility and a "human spaceflight mission operations and integration facility in Houston"). For purposes of this analysis, the exact number of facilities does not matter. Starbase is a substantial part of SpaceX's operations. Even

No. 24-40103

if the district court's factual assertions are correct[4] and Starbase is the only facility in the Southern District of Texas, that would still constitute a substantial presence in the Southern District of Texas. Under the district court's factual determination, Starbase alone accounts for one sixth of SpaceX facilities which are spread out across Texas, Florida, and California. Further, Starbase is where SpaceX is "developing, manufacturing, and launching Starship, the most powerful rocket ever built."

SpaceX also satisfies the second transactional venue requirement because it is subject to substantial burdens imposed by government action on its operations and policies in the Southern District of Texas. NLRB has initiated proceedings against SpaceX for unlawful employment practices in violation of the NLRA. It is undisputed that the remedy NLRB seeks to implement would burden SpaceX employees and facilities in the Southern District of Texas by requiring them to post notices and conduct mandatory training.

NLRB argues that the substantial burden requirement can only be met by the sort of notice-and-comment rulemaking found in *Career Colleges* and *Texas v. United States*.[5] This distinction cannot be grounded in the statutory language or in caselaw. Section 1391's unambiguous text makes no subject matter distinctions. It does not distinguish between an administrative adjudication and notice-and-comment rulemaking. Both can burden potential plaintiffs in numerous districts and those burdens, wherever they occur, can constitute a "substantial part of the events" giving rise to the claim. *See* 28

---

[4] The district court did not make any mention of judicial notice and seems to have gone outside briefing as it cited SpaceX's website to determine the total number of facilities.

[5] NLRB does not address the fact that *Umphress* did not involve notice-and-comment rulemaking. That case involved efforts to regulate the actions of an individual plaintiff within the forum in which he filed suit. *Umphress*, 479 F. Supp. 3d at 347–48.

No. 24-40103

U.S.C. § 1391(e)(1).  NLRB could have limited the effect of its adjudication to the California facilities.  *See Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F. Supp. 455 (S.D. Tex. 1996) (holding that venue was improper in Texas because the challenged statute only regulated activities in Alaska).  Having decided to target all SpaceX facilities and employees, NLRB cannot now escape the implications of that decision.

B

SpaceX can also satisfy the transactional venue standard because the alleged unfair labor practices in the administrative complaint took place, in substantial part, in the Southern District of Texas.  The alleged unfair labor practice is an e-mail sent from SpaceX's President and COO, Gwynne Shotwell, from McGregor, Texas to *all* SpaceX employees, including those located at the Starbase and Houston facilities.

The district court considered this event to be mere "incidental" contact with the Southern District of Texas.  This misunderstands the nature of the event.  NLRB is charging SpaceX with unfair labor practices based on a communication that was sent to all employees.  Far from being merely incidental, this e-mail was a purposeful choice, and one that NLRB contends was unlawful as to all of SpaceX's employees in the Southern District of Texas.  That is a substantial part of the events.  We have held that communications sent to Texas can constitute a substantial part of the events giving rise to the plaintiff's claims so long as those claims derive directly from those communications.  *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018); *see also Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (categorizing an e-mail sent to Texas recipients as a substantial Texas-based event for purposes of transactional venue).

Despite recognizing this binding precedent, the district court distinguished *Trois* by stating that this case derived directly from the administrative

proceeding that stemmed from Shotwell's e-mail. It claimed that Shotwell's e-mail and the letter to which it was responding only reached the Starbase and Houston facilities "incidentally." The district court similarly distinguished *Long* by stating that the e-mail in that case was a "direct communication to Texas; the content caused the claim, and the injury was experienced in Texas." This distinction is nearly impossible to grasp.

First, the district court never explains what constitutes a "direct" as opposed to "indirect" or "incidental" communication. As I see it, any communication purposefully sent to a person or persons within a district is a direct communication.[6] It seems the district court may be using "indirect" or "incidental" to refer to the fact that "Texas is only one of the many locations that the open letter reached." To the extent that is the case, this constitutes clear legal error. Merely sending a message to persons in multiple forums cannot render the contact resulting from that decision as "incidental."

As has been made clear, transactional venue contemplates multiple legally permissible venues. *See Umphress*, 479 F. Supp. 3d at 351 ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165-1166 (10th Cir. 2010); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (determining whether venue was proper requires "ask[ing] whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts"). The district court's purported rule could create cases with no proper venue because a message sent to multiple districts

---

[6] An indirect communication might be at play when someone who received an initial message forwarded that message to another district.

would be "incidental" as to all of those districts.

Second, the content of the email sent by Shotwell is the very act alleged to be an unfair labor practice, leading to the administrative proceedings against SpaceX.

Third, and as discussed in Part I.A., SpaceX is subject to burdensome and binding regulation as a result of the administrative proceedings resulting from this letter.

## C

The facts that gave rise to NLRB's proceedings against SpaceX also have substantial ties to the Southern District of Texas, providing a third basis for satisfying § 1391(e)(1)(B). The Charging Parties, (former employees who filed NLRB charges against SpaceX), wrote an Open Letter to all SpaceX employees, including those located in the Southern District of Texas. This letter linked to surveys soliciting feedback and support for their letter. In other words, the Charging Parties reached into the Southern District and specifically involved SpaceX employees in that district. The open letter led to numerous meetings, discussions, and decreased productivity by employees in the Southern District of Texas. SpaceX has stated in declarations that the Open Letter "derailed technical conversations for a week at Starbase, during a critical phase in meeting targets for Starship" and that as a result, numerous unplanned meetings were required "to address disruption and concern resulting from the Open Letter."

The Open Letter, which was intentionally distributed to SpaceX employees in the Southern District of Texas, explicitly sought their support. Thus, the events giving rise to the administrative complaint itself have substantial involvement with and impact on the Southern District of Texas. Just because this e-mail was sent to employees in additional districts—possibly leading to substantial involvement or even more involvement with those

districts—does not mean the Southern District of Texas fails to satisfy § 1391. *See Umphress*, 479 F. Supp. 3d at 351 ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."). The district court's contrary holding was clear error.

## D

Any one of these three buckets would be enough to satisfy the transactional venue standard. The district court's error is made all the more egregious by failing to consider whether all of these connections to the Southern District taken together amount to a substantial part of the events giving rise to SpaceX's claim. Section 1391 nowhere in its text requires courts to disaggregate the various types of events and determine whether each bucket can individually account for a "substantial part" of the events. Instead, it simply asks whether a "substantial part of the events or omissions giving rise to the claim" occurred in the chosen venue.

NLRB's desire to bind SpaceX in the Southern District of Texas through administrative proceedings; the allegedly unfair labor practice that took place—in substantial part—in the Southern District of Texas; and the purposeful solicitation of SpaceX employees in the Southern District of Texas by the Charging Parties, combined with the resulting disruption, clearly amount to a substantial part of the events underlying SpaceX's claims against NLRB.

Because the district court in practice applied a "most substantial events" test, it committed a clear legal error that, by definition, amounts to a clear abuse of discretion. *Bruck*, 30 F.4th at 427 (citing *Koon*, 518 U.S. at

100). Therefore, prong two of the mandamus requirements is satisfied.

### III

The third prong of mandamus relief requires exercise of our discretion. We have made clear that mandamus relief is "particularly appropriate" where the issues presented "have an importance beyond the immediate case." *In re Volkswagen*, 545 F.3d at 319 (citing *United States v. Bertoli*, 994 F.2d 1002, 1014 (3d Cir. 1993)). We further noted that "venue transfer decisions are rarely reviewed" and that this can lead to the undesirable result of inconsistent outcomes. *Id.* District courts in our circuit need guidance on venue standards. Permitting an erroneous application of § 1391(e)(1)(B) to stand without correction provokes uncertainty in the law and may lead to further use of the erroneous "most substantial events" test.

Mandamus relief is especially appropriate in the context of a § 1406(a) transfer of venue. 28 U.S.C. § 1406 permits a case to be transferred only when the case was filed "laying venue in the *wrong* division or district." 28 U.S.C. § 1406(a) (emphasis added). This is different from change of venue under 28 U.S.C. § 1404(a). That statute permits transfer of a case "[f]or the convenience of parties and witnesses, in the interest of justice" to any district or division where the case might have been brought.[7] *In re Volkswagen* and

---

[7] NLRB, in its motion to transfer the case, argued for transfer under both § 1406 and § 1404. The district court did not address § 1404. Instead, the district court transferred the case under § 1406. In its response opposing a writ of mandamus, NLRB did not present the merits of its § 1404 argument. This is likely because the argument for transfer under § 1404 is a weak one. It is NLRB's burden to demonstrate that the transferee venue is "clearly more convenient." *Volkswagen*, 454 F.3d at 313–15 (explaining that the underlying premise of § 1404(a) is that defendants should not be subject to inconvenient venues). Because SpaceX seeks a preliminary injunction based on purely constitutional arguments, the need for witnesses unique to California is nearly non-existent, and the convenience concern underlying § 1404(a) does not favor transfer. Nor do the rest of the equitable factors under our caselaw clearly favor the Central District of California.

*Bruck* both dealt with transfers under § 1404. *In re Volkswagen*, 545 F.3d at 319; *Bruck*, 30 F.4th at 423 ("[I]n this circuit, mandamus is the prescribed vehicle for reviewing rulings on transfers of cases pursuant to 28 U.S.C. § 1404(a)."). Despite § 1404 involving much more discretion than § 1406, those cases still granted mandamus relief.

A transfer under 1406(a) does not permit consideration of the same sort of equitable principles ("convenience" or the "interest of justice") as § 1404(a). This makes the legal error in determining where a case is permitted to be brought all the more significant. Because § 1406 only permits transfer of a case when the chosen venue is legally impermissible, a legal error under § 1406 is much more significant than a legal error under § 1404. Error under § 1406 artificially restricts the right of plaintiffs to bring their claims in our circuit.

Last, the underlying merits of this claim weigh in favor of granting mandamus relief. Before us are "issues that implicate not only the parties' interests but those of the judicial system itself." *Bruck*, 30 F.4th at 426–27 (quoting *Bertoli*, 994 F.2d at 1014). SpaceX is challenging the constitutionality of NLRB's very structure. This case implicates the methods and procedures permitted under our constitution when the federal government regulates employer conduct.

NLRB does not deny that it seeks to avoid our court's precedent in *SEC v. Jarkesy*, a fact that the district court did not cite or address. 34 F.4th 446 (5th Cir. 2022) (holding that "[t]wo layers of for-cause protection" for inferior officers is forbidden under "Supreme Court Precedent"), *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023). I do not make any assessment of whether *Jarkesy* would control this case, but NLRB's desire to avoid our circuit's precedent is further justification for exercising our discretion in granting mandamus relief.

No. 24-40103

\*        \*        \*

In the federal court system, plaintiffs can prefer favorable caselaw and sue in any appropriate venue. NLRB cannot seek to condemn SpaceX's past labor practices in the Southern District of Texas, bind SpaceX's future practices in the Southern District of Texas, and at the same time avoid proper venue in the Southern District of Texas. Failure to follow the plain text of the venue statutes and settled Fifth Circuit caselaw is disappointing and should have been corrected.

For the foregoing reasons, I would conclude that mandamus relief is appropriate to remedy the erroneous transfer of this case. *See In re Volkswagen*, 545 F.3d at 319; *Bruck*, 30 F.4th at 423. We should have exercised our discretion to grant mandamus relief and directed the district court to: (1) vacate its transfer order dated February 15, 2024; and (2) rule expeditiously on the pending motion for a preliminary injunction.

I respectfully dissent.