No. 24-40103

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

IN RE SPACE EXPLORATION TECHNOLOGIES CORP.,

                                                    Petitioner.

**On Petition for Writ of Mandamus to the
United States District Court for the Southern District of Texas
Civil Action No. 24-cv-00001**

**RESPONSE TO APRIL 1, 2024 ORDER**

| | |
|---|---|
| JENNIFER A. ABRUZZO<br>*General Counsel* | PAUL A. THOMAS<br>*Supervisory Trial Attorney* |
| PETER SUNG OHR<br>*Deputy General Counsel* | DAVID P. BOEHM<br>*Trial Attorney* |
| NANCY E. KESSLER PLATT<br>*Associate General Counsel* | DANIEL BRASIL BECKER<br>*Trial Attorney* |
| DAWN L. GOLDSTEIN<br>*Deputy Associate General Counsel* | GRACE L. PEZZELLA<br>*Trial Attorney* |
| HELENE D. LERNER<br>*Assistant General Counsel* | LYNN TA<br>*Field Attorney* |
| KEVIN P. FLANAGAN<br>*Deputy Assistant General Counsel* | NATIONAL LABOR RELATIONS BOARD<br>1015 HALF STREET, S.E.<br>WASHINGTON, DC 20570<br>202-273-4202 |

The Board appreciates this opportunity to clarify any misconceptions it may have inadvertently caused in attempting to determine the status of this case between the Texas District Court's February 15 transfer order and March 4, when the California District Court transferred the case back at the Court's request. During that time period, the Board wishes to assure the Court that its counsel acted in good faith to confirm and apprise the Court of its honest belief as to case status. Board counsel had no intent to mislead the Court or interfere with its processes. Moreover, although the court's inquiry is posed to attorneys Lynn Ta and David Boehm, all relevant actions taken by those attorneys in this case were taken at the direction of NLRB legal counsel. Accordingly, this response is submitted by NLRB legal counsel.[1]

1. <u>On February 20, an attorney for NLRB called the clerk's office for the Central District of California. Why did NLRB make such a call given that this court stayed the Southern District of Texas's transfer order on February 19?</u>

The Southern District of Texas issued the transfer order in this case on February 15, 2024,[2] along with an accompanying paperless entry, stating as follows: "Interdistrict transfer to Central District of California. Case transferred

---

[1] The NLRB notes that this response was compiled on an extremely expedited basis, and represents the Agency's best effort to supply this Court with the most complete facts available to it given the available time to respond.

[2] All dates are in 2024.

electronically. Case terminated on 2/15/2024, filed." [S.D. Tex. Dist. ECF, unnumbered entry dated Feb. 15.] The NLRB thus understood that because jurisdiction follows the record, this Court's February 19 stay order occurred after jurisdiction of the case had already been transferred to the Central District of California.³

Additionally, the administrative stay was not an injunction against the NLRB (or against the Central District of California), prohibiting action relating to this case. *See* Cir. ECF 49. A stay "operates upon the judicial proceeding itself," while an injunction "direct[s] an actor's conduct." *Nken v. Holder*, 556 U.S. 418, 428, 429 (2009).

Moreover, apart from counsels' duty of zealous advocacy on behalf of their clients, they additionally possessed a duty to inquire. As of February 20, the NLRB had two days to respond to SpaceX's mandamus petition and needed to assess and

---

³ *See In re Red Barn Motors, Inc.*, 794 F.3d 481, 484 (5th Cir. 2015) (recognizing that numerous circuits have found it "uncontroversial" that transfer to another circuit removes the case from the transferor court's jurisdiction); *Wilson v. City of San Jose*, 111 F.3d 688, 693 (9th Cir. 1997) ("[D]uring the time between entry of the transfer order and the *receipt of the case file* in the transferee court, the *transferor* court remains the forum in which pleadings may be filed.") (first emphasis added); *Aero-Colours, Inc. v. Propst*, 114 F.R.D. 107, 107 (S.D. Tex.), *aff'd*, 833 F.2d 51 (5th Cir. 1987) (physical receipt of all or part of record completes transfer); *In re Brand–Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1378 (J.P.M.L. 2003) (jurisdiction attaches "the moment that the files are physically transferred to the receiving court"); *Home Furnishings Store, Ltd. v. Stiles Mach., Inc.*, No. CIV.A. 11-698, 2011 WL 6329869, at *1 (E.D. La. Dec. 19, 2011) (same as to "instantaneous" transmission of electronic record).

2

explain the impact of the transfer on this Court's jurisdiction to issue a writ of mandamus. In addition, the Southern District of Texas had already terminated the case on its end and the NLRB did not know what, if any, action the California court had taken on the matter. SpaceX's motion for a preliminary injunction remained pending with only 13 days until the scheduled start of the March 5 administrative hearing. The NLRB did not know where, when, or whether it could brief their surreply to SpaceX's preliminary injunction motion, or whether it could update briefing with relevant Ninth Circuit case law. Counsel for the NLRB also had a duty to apprise the California court as to developments before the Fifth Circuit and similarly had a duty to apprise the Fifth Circuit as to what actions the California court had taken in the matter, including whether the case had been docketed on February 15 or on some other date. [*See* Cir. ECF 44; ECF 49; ECF 82 at 17 n.9.]

2. <u>What information did NLRB receive from the Central District of California based on that phone call?</u>

Personnel from the Clerk's Office of the Central District of California indicated that the transfer was effectuated on February 15, and that the case had not yet been assigned a judge or case number, but this would likely be done the same day, and that all parties would receive a notification. [*See* Cir. ECF 42-3]. No notification was received on that day.

3. <u>Did NLRB verify the information that it received in that phone call?</u>

3

The NLRB attempted to verify the information it received from the Central District of California Clerk's Office by the only means known by it to do so—by searching for a matching case in PACER,[4] and calling the Central District of California again the next day, on February 21.

4. <u>On February 21, an attorney for NLRB called the clerk's office for the Central District of California again. Why did NLRB make a second call?</u>

The NLRB called again on February 21 because the Central District of California's Clerk's Office told the NLRB the day before that the case would be assigned a judge and case number, and all parties would receive ECF notification of those assignments, but the NLRB received no such notification on February 20. Meanwhile, the time for a court to decide SpaceX's preliminary injunction motion had decreased by another day—seemingly without a live docket to receive any related filings or further information as to which circuit's case law would govern that time-sensitive motion. Likewise, with the NLRB's mandamus response due the following morning, the NLRB lacked the information necessary to fully apprise the Fifth Circuit as to the status of the case in the California court. Accordingly, the reasons for the February 21 conversation were identical to those of the previous day.

---

[4] Importantly, while locating a matching case on PACER would have confirmed the statements made by the Clerk's Office, mere failure to immediately locate the case file could not establish that representations by the Clerk's Office personnel were erroneous.

4

5. <u>What information did NLRB receive from this second call?</u>

On the morning of February 21, the NLRB made a further inquiry of the Central District of California Clerk's Office and was told the case had been assigned to Judge Snyder as Case No. 2:24-cv-01349 and it would be available on CM/ECF that same day. [Cir. ECF 42-3 at 2]. The court employee also stated that other persons had inquired about the case and received that case number. Further, that court employee informed the NLRB that an employee of the Fifth Circuit had called the Clerk's Office of the Central District of California and spoke to that California court employee's supervisor. [Cir. ECF 42-3 at 2]

6. <u>Did NLRB verify the information it received from the second call?</u>

The NLRB repeated the case number twice while on the phone with court personnel, who confirmed the number both times and stated that the case had been assigned to Judge Snyder as Case No. 2:24-cv-01349. However, the case remained unavailable on CM/ECF on February 21 and 22. The NLRB attempted to verify the information it received from the Central District of California by repeatedly searching for the case number provided by court personnel in PACER. When the NLRB received no notification that the case had been assigned a judge or case number on February 21, the NLRB followed up by telephone with that court on February 22 and got further verification of the 2:24-cv-01349 case number. [Cir. ECF 42-3 at 2.]

7. <u>When did NLRB become aware that it made three incorrect representations (namely that: (1) the Central District of California had docketed the case; (2) a case number had been generated; and (3) a judge had been assigned to the case) to this court in its response to the petition for a writ of mandamus filed on February 22?</u>

    The NLRB believes that it did not make any incorrect representations and wishes to assure the Court that it had no intention to do so. First, the NLRB did not assert in its response to the petition for a writ of mandamus that the California case had been "docketed"; rather, the NLRB stated that it had been informed by the California court that "the case was received" on February 15. [Cir. ECF 35-1 at 8 n.8.] Second, as to the representations that a case number had been generated and a judge had been assigned, the NLRB accurately conveyed the information it received from the Central District of California during the telephone call on February 21. The NLRB lacks knowledge whether it received incorrect information from the Central District of California Clerk's Office, or whether it was instead properly informed by the Clerk's Office and the matter was, in fact, reassigned from one California judge to another and given a second Central District of California case number. Only the Central District of California can confirm whether such case number was generated and/or whether such assignment was made.

    Specifically, on February 22, the NLRB informed this Court in the NLRB's mandamus response that the case was received by the California court on February

6

15, and assigned to Judge Christina A. Snyder as case number 24-cv-1349-CAS (JPRx). [Cir. ECF 35-1 at 8 n.8 (referring to receipt, assignment, and a case number)].

On the morning of February 23, the NLRB learned, via a PACER docket search, that the case number its attorneys were given on February 21 and 22 was assigned to a different case. Around 12:25pm EST, the NLRB sent a letter by fax to Judge Snyder's courtroom deputy, informing that court that the case number the NLRB had been given on February 21 and 22 now related to a different case. Counsel for SpaceX was copied on that message.[5] Within minutes, SpaceX provided this Court with a copy of the NLRB's communication. [Cir. ECF 42-1; 42-2; 42-3.] The NLRB thus believed that the Court had been informed of this case information.

Sometime between approximately 1:50pm EST and 2:40pm, the NLRB learned through an in-person visit by one of its attorneys to the clerk's office of the Central District of California that the matter would soon appear in that Court's ECF as being assigned to Judge Consuelo B. Marshall, a new case number had been generated, and this information would soon be available on the docket via ECF. During that visit, the clerk made a vague statement to counsel for the NLRB

---

[5] Earlier, around 12:15pm EST on February 23, the NLRB faxed an improperly formatted version of this same communication, also copying counsel for SpaceX. The communication from around 12:25pm EST corrected that formatting error.

7

to the effect that he had been receiving numerous calls about this case and had been giving everyone the wrong case number; it was unclear who, apart from the NLRB, had been given the wrong case number, or what it meant for a case number to be "wrong." In particular, it was unclear whether the case number had never been generated in the first place, or whether it had been generated and then reassigned such that it was no longer correct.

From approximately 3:35pm EST to 3:55pm EST on February 23, the NLRB began receiving a series of electronic notices from the Central District of California. Within that time, the NLRB received a Notice of Receipt of Case Transferred in which it appears that the Deputy Clerk of the Central District of California signed the Notice of Receipt on February 20. [C.D. Cal. Dist. ECF 85]. That Notice of Receipt also has a header showing that the Central District of California had filed that notice on February 20, three days before the filing was entered onto the docket. [*Id.*; *see also* C.D. Cal. Docket Report entry for Feb. 20 (entered on Feb. 23)]. That Notice also states that the matter had been assigned to Judge Consuelo B. Marshall as Case Number 2:24−cv−01352 CBM (AGRx). [C.D. Cal. Dist. ECF 85].

Around 4:00 pm EST, the NLRB wrote to the Fifth Circuit informing the Court that the Central District of California had docketed the underlying case as 2:24-cv-01352 and had assigned it to Judge Consuelo B. Marshall. [Cir. ECF 44.]

8

In short, the NLRB apprised the Court approximately 1-2 hours after the NLRB received information during its in-person visit to the Clerk's Office that the California court had assigned the matter to Judge Marshall as Case Number 2:24−cv−01352 CBM (AGRx) and the NLRB did so within 30 minutes of receiving electronic notice of these developments.

8. <u>Why did NLRB not inform this court as soon as it learned that these representations were incorrect?</u>

The NLRB does not believe, for the reasons explained in its answer to question 7, that it made incorrect representations to this Court. And as described above in answer to question 7, the NLRB apprised this Court as soon as practicable and within 30 minutes of receiving electronic notice from the California court that the matter had been assigned (or possibly reassigned). The NLRB did not intend to mischaracterize the case's status before the Central District of California.

9. <u>On February 23 and after this court's stay of the transfer order, an attorney for NLRB appeared in person before the Clerk's Office for the Central District of California. What was the purpose of that in-person appearance?</u>

NLRB legal counsel directed its attorney to file (or lodge for filing) a notice with the Central District of California, apprising it of the status of the case (in which a preliminary injunction motion was pending). The sole purpose of the visit to the Clerk's office was to attempt to file the notices that the NLRB was unable to e-file. As explained in response to Question 1 above, the NLRB understood that the transfer had taken effect prior to issuance of the stay.

10. <u>Why did NLRB argue before the Central District of California in a signed notice on February 23, that transfer was completed instantaneously in direct contradiction to the holding of Lou v. Belzberg, 834 F.2d 730, 733 (9th Cir. 1987)?</u>

Respectfully, the NLRB does not believe that *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987), is contrary to any position taken by the NLRB. *Lou* (and each case it relied on related to this point) stands for the basic proposition that jurisdiction transfers "when the motion is granted and the papers are entered in the transferee court's records." *Id.* In *Lou*, a court granted a transfer and sent the record of the case to another court, but then—prior to receipt of the record—entered a preliminary injunction, which the defendants—again prior to receipt of the record by the transferee court—appealed. *Id.* The transferee court did not receive the record until nearly a month after the notice of appeal was filed in the transferor court. *Id.* The circuit court held that because appellate jurisdiction was perfected before the "docketing date" in the transferee court, such jurisdiction survived and was "not terminated by the subsequent completion of a section 1404 transfer." *Id.*

*Lou* is thus factually distinguishable from this case. Here, the "papers" were received by the Central District of California (in electronic form) on February 15, *prior* to any action being taken by this Court in response to the Southern District of Texas's orders.

Moreover, *Lou* broke no new legal ground; its holding is squarely in accord with the settled understanding that physical receipt of the record completes transfer

10

and confers jurisdiction on the transferee Court. *See above*, response to question 1. However, because *Lou*'s definition of "docketing date" is not as detailed as might be ideal, that case appears to hold that "docketing" occurs once just two conditions are met: a motion to transfer has been granted, and the papers have been "entered in the transferee court's records." *Id.* The earlier holdings *Lou* relied on contemplated physical receipt as being the relevant event. And post-CM/ECF caselaw makes clear that "entry," in the electronic era, occurs essentially instantaneously upon transfer. *Home Furnishings*, 2011 WL 6329869, at *1.

The NLRB further notes that nothing in *Lou*, a pre-CM/ECF case, or any other Ninth Circuit case it is aware of, holds that the "docketing date" depends upon any action by court personnel after receipt, such as making the case available on CM/ECF. If such a rule were adopted, the proper jurisdiction of a federal court could be defeated by clerical errors or actions by a non-Article III decisionmaker done without notice or any public judicial record. "When considering the improper refusal of clerks to file documents in the wake of a transfer, [the Ninth Circuit] will ignore clerical errors, and treat documents as filed on the dates that they were tendered to the court that should have filed them." *Wilson v. City of San Jose*, 111 F.3d 688, 693 (9th Cir. 1997) (transferor court improperly refused to accept documents where transfer had not been completed).

11

Here, the information available to the NLRB—in particular, the docket of the Southern District of Texas—indicated that the record was physically transferred (in electronic form) on February 15. The Notice filed by the NLRB sought an opportunity to fully brief the applicability of the above caselaw.

11. <u>Why did NLRB encourage the Central District of California to ignore this court's stay order and this court's determination that it still had jurisdiction and that the case be returned in its filings before that court on February 26 (immediately after this court's order directing that the Southern District of Texas request retransfer)?</u>

Respectfully, the NLRB disagrees with the premise of this question. Initially, as noted in response to question 1 above, this Court's administrative stay was not an injunction. Additionally, because the best available information supported the NLRB's view that the transfer was completed on February 15, the NLRB's position as of the morning of February 26 was that the administrative stay of February 19 was inoperative for want of jurisdiction. *See Santiago-Lugo v. Tapia*, 188 F. App'x 296, 297 (5th Cir. 2006) ("when a transfer of a case has been completed, the transferor court—and the appellate court that has jurisdiction over it—lose all jurisdiction over the case.").

By the same token, with respect to the Court's per curiam order of February 26, the NLRB disagrees with its legal conclusions.[6] The Central District of

---

[6] To the extent that a panel of this Court held otherwise, that panel decision has now been mooted by the California court's voluntary decision to retransfer the

12

California had an independent duty to assess whether it had jurisdiction over the case. Only one court may have jurisdiction at a time. The transferee court was not obliged to follow the February 26 order, and zealous advocacy required the NLRB to present its legal arguments as to why it should not be followed to the Central District of California. Thus, the NLRB urged that court, not to ignore this Court's order, but to acknowledge it and respectfully decline retransfer.

---

case. That order should in due course be vacated pursuant to *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40–41 (1950), as it was decided adversely to the NLRB and subsequent events deprived the NLRB of the opportunity to seek rehearing or certiorari on that issue.

Respectfully submitted,

| | |
|---|---|
| JENNIFER A. ABRUZZO<br>*General Counsel* | KEVIN P. FLANAGAN<br>*Deputy Assistant General Counsel* |
| PETER SUNG OHR<br>*Deputy General Counsel* | PAUL A. THOMAS<br>*Supervisory Trial Attorney* |
| NANCY E. KESSLER PLATT<br>*Associate General Counsel* | DANIEL BRASIL BECKER<br>*Trial Attorney* |
| DAWN L. GOLDSTEIN<br>*Deputy Associate General Counsel* | GRACE L. PEZZELLA<br>*Trial Attorney* |
| HELENE D. LERNER<br>*Assistant General Counsel* | LYNN TA<br>*Field Attorney* |
| Dated at Washington, D.C.<br>this 2d day of April 2024 | s/David P. Boehm<br>DAVID P. BOEHM<br>*Trial Attorney*<br>D.C. Bar No. 1033755<br>1015 Half Street, S.E. – 4th Floor<br>Washington, D.C. 20570<br>Telephone: (202) 273-4202<br>Email: David.boehm@nlrb.gov |