# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 17, 2024

Lyle W. Cayce
Clerk

No. 24-40103

———————

In re Space Exploration Technologies, Corporation,

*Petitioner.*

———————

Petition for a Writ of Mandamus
to the United States District Court
for the Southern District of Texas
USDC No. 1:24-CV-1

———————

ON PETITION FOR REHEARING EN BANC

<u>UNPUBLISHED ORDER</u>

Before Elrod, Haynes, and Douglas, *Circuit Judges.*

Per Curiam:[*]

 Treating the petition for rehearing en banc as a motion for reconsideration (5th Cir. R. 35 I.O.P.), the motion for reconsideration is DENIED. The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 35 and 5th Cir. R. 35).

 In the en banc poll, eight judges voted in favor of rehearing (Chief Judge Richman and Judges Jones, Smith, Elrod, Willett, Duncan, Engelhardt, and Oldham), and eight judges voted against rehearing (Judges Stewart, Southwick, Haynes, Graves, Higginson, Wilson, Douglas, and Ramirez).

———————

[*] Judge James C. Ho did not participate in the consideration of the rehearing en banc.

By Edith Hollan Jones, Smith, Elrod, Duncan, Engelhardt, and Oldham, dissenting from denial of rehearing en banc:

It is hard to improve on Judge Elrod's dissent from the single-line panel order transferring this case to the Central District of California. For all the reasons stated therein, mandamus ought to have been granted by the panel. Therefore, I attach her opinion and add a few points.

## I.

28 U.S.C. § 1391(b)(2) authorizes a plaintiff to sue in any federal judicial district where a "substantial part of the events or omissions giving rise to the claim occurred." *Id.* In identical language, 28 U.S.C. § 1391(e)(1)(B) authorizes a plaintiff to sue an agency of the federal government in any federal judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." This language is identical for at least two reasons. First, it provides plaintiffs with a broad range of venue choices in federal court.[1] Second, it places suits against the federal government, a defendant with limitless litigating resources, on a par with those against private defendants.

Unfortunately, the district court's transfer order, based on the theory that venue in the Southern District of Texas was improper,[2] contravenes both rationales. First, it erroneously denied SpaceX as plaintiff its choice of forum to litigate about alleged unfair labor practices that, if sanctioned, will govern its relations with hundreds of Texas and thousands of nationwide employees. Second, it misapplied the term "substantial part," crafting a

---

[1] As Judge Elrod's dissent explains, Congress amended Section 1391 in 1990 to substitute this broader language for the former limitation of venue to where "the cause of action arose." *In re Space Expl. Techs., Corp.*, 96 F.4th 733 (5th Cir. 2024) (Elrod, J., dissenting).

[2] 28 U.S.C. § 1406(a).

comparative test that no federal court would use were this a case against private defendants. A simple hypothetical suffices. If a California airline passenger claimed injury from a plane crash over Nevada and sued five defendants (the airline, the plane manufacturer, two component manufacturers, and a maintenance facility) in another venue distinguishable from all others solely because one of the defendants manufactured rivets in that venue, would *any* court find that allegedly defective rivets could not be "a substantial part" of the claim?

That is the problem with this case that justified the "extraordinary" writ of mandamus to overturn the district court's erroneous transfer decision. The decision's comparative approach to "substantiality" either grossly privileges federal defendants over civil defendants or, equally troubling, provides fodder for endless jockeying in cases where private defendants will try to use a comparative "substantial part" analysis to assert improper venue or just prolong the litigation.

Either way, "*a* substantial part" cannot be construed textually to mean "*more*" or "*most* substantial," as the district court's analysis repeatedly suggests. "Substantial" is a qualitative, not a comparative term. One dictionary definition uses the terms "of real importance," "of considerable amount," "having substance, not illusory." *Substantial*, LITTLE OXFORD DICTIONARY (6th ed. 1990). For further exegesis, antonyms for "substantial" include "insubstantial" (of course), "little," "minor," "slight," "negligible," "insignificant." *Substantial*, MERRIAM-WEBSTER THESAURUS, https://www.merriam-webster.com/thesaurus/substantial (last visited Apr. 11, 2024). Not to be "substantial," therefore, means to be a little, minor, slight, etc. part of "the events or omissions giving rise to the claim."

Based on the text of Sections 1391(b)(2) and 1391(e)(1)(B), the district court's comparative, even quantitative approach to venue was plainly incorrect.[3] As Judge Elrod's dissent explains, SpaceX has large and important operations in the Southern District of Texas. The remedy sought by NLRB would regulate all SpaceX's Texas employees. The conduct forming the basis of NLRB's complaint intentionally included employees in this district. And the Charging Parties' Open Letter that generated the complaint was received by all and responded to by some 200 Texas employees, and it disrupted SpaceX's operations in the Southern District. These operative facts are "substantial" under the statute. Returning to the comparison with litigation against private defendants, what court would hold venue "improper" by finding the rivets to be "small" or "few in number" compared with the allegations that other components contributed to the crash, or "not enough on their own compared with other alleged factors"? A comparative analysis like that employed by the district court is at odds with the proposition that "[i]t has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." 14D C. Wright, A. Miller, & R. Freer, FEDERAL PRACTICE AND PROCEDURE § 3806 (4th ed. 2023).

This comparative interpretation will inevitably affect ordinary civil litigation by incentivizing otherwise unlikely 1406(a) motions and some erroneous transfer orders. However, its detriment in litigation against federal agencies is hard to underestimate. Where companies with geographically widespread operations seek to challenge regulations or agency actions, an agency may now compare the "substantiality" of the regulations' or actions' effect in the company's chosen venue against effects

---

[3] The court calculated that "one sixth" of the relevant events allegedly occurred in Texas, and this was "insubstantial in number." Even if this were an accurate calculation, which is dubious, "one sixth" is not "insubstantial" as explained by other antonyms of "substantial" according to the above authorities.

in other venues. In many cases, the default venue, from the agency's perspective, would be the District of Columbia. To the extent such maneuvers succeeded, they would wholly undercut the expansive text—and purpose—of Section 1391(e)(1)(B).[4] That the government's litigation resources are virtually limitless compared with those of private citizens and entities adds to the problematic nature of a decision that facilitates government motions for changes of venue under this provision.

## II.

That mandamus is warranted under this court's precedents is well demonstrated in Judge Elrod's dissent. Legally, this court is bound to correct manifest errors of law regarding venue transfers. *See In re Clarke*, 94 F.4th 502, 516 (5th Cir. 2024); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc). Indeed, our court has consistently held that mandamus relief in venue transfer cases is "particularly appropriate when the issues also have an importance beyond the immediate case." *In re Volkswagen*, 545 F.3d at 319; *see also In re Clarke*, 94 F.4th at 516 (same); *In re TikTok, Inc.*, 85 F.4th 352, 367 (5th Cir. 2023) (same); *Defense Distributed v. Bruck*, 30 F.4th 414, 426 (5th Cir. 2022) (same). For instance, in *Clarke*, we exercised discretion to grant mandamus because venue transfer decisions "often have importance beyond the immediate case because [they] are rarely reviewed, and district courts have applied our tests with too little regard for consistency of outcomes." 94 F.4th at 516 (citation and quotations omitted).

The present controversy represents a scenario likely to have significant consequences in this circuit. The district court's decision, for instance, conflicts with cases in which courts in this circuit have held that

---

[4] Indeed, Congress enacted § 1391(e) "to broaden the venue of civil actions" against government agencies, officers, and employees. *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4, 91 S. Ct. 995, 997 n.4 (1971); *see also* 14D C. Wright, A. Miller, & R. Freer, FEDERAL PRACTICE AND PROCEDURE § 3815 (4th ed. 2023).

venue is proper against a federal agency where (1) the plaintiff has a significant presence in the forum; and (2) the plaintiff is subject to an actual or imminent burden should the challenged action take effect. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023); *see also Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (injunction terminated on other grounds). Because venue transfer decisions, and petitions for writs of mandamus based thereon, have been fraught with uncertainty, it behooves this court to ensure that venue law is clarified both legally and procedurally.[5]

## III.

The necessity for en banc rehearing is enhanced because of improper conduct on the part of NLRB attorneys. In their zeal to deprive this court of mandamus jurisdiction and nullify the stay of the transfer order issued by the panel, NLRB lawyers misrepresented facts to this court and have failed to acknowledge error. A transfer order takes effect only when the transferred case is actually docketed in the transferee court. *Lou v. Belzberg,* 834 F.2d 730, 733 (9th Cir. 1987). When questions arose whether the case had actually been transferred to the Central District of California, the attorneys attempted to persuade the Central District of California to ignore this court's correct determination that it had retained jurisdiction.

---

[5] Indeed, in the wake of this controversy, the Southern District of Texas adopted a local rule that requires a 21-day waiting period for transfers to another district to allow an opportunity for stay or appellate review. *See* S.D. Tex. General Order No. 2024-2. Many other courts have adopted similar rules. *See, e.g., In re Warrick*, 70 F.3d 736, 739 (2d Cir. 1995) ("The court rules of the District of Connecticut provide that, '[i]n a case ordered transferred to another District Court . . . the Clerk shall,' absent filing of a motion for reconsideration, mail the papers on file in the case 'on the eleventh day following the order of transfer . . . .'" (quoting D. CONN. L. CIV. R. 18)); *see also* 15 C. Wright, A. Miller, & R. Freer, FEDERAL PRACTICE AND PROCEDURE § 3846 (4th ed. 2023) ("[T]he better practice, codified in some local district court rules, is to stay the effect of transfer orders for a sufficient period to enable appellate review to be sought.").

Fortunately, the Central District of California followed this court's directive rather than government counsel's signed notice to ignore this court's jurisdictional determination.[6]

By filing suit in the Southern District of Texas, SpaceX selected what it perceived as a statutorily permissible venue for its challenge to the constitutional setup of NLRB adjudication procedures. It did not misrepresent facts to the courts or attempt to manipulate filing procedures. That federal attorneys, who are paid by the people, responsible to the people, and acting for the people, engaged in shabby tactics to accomplish their own forum shopping result is abhorrent. This court could thwart future abuses by clarifying the venue law applicable here. Sadly, in recent years, Justice Jackson's famous admonition that the prosecutor may strike hard blows but not foul ones has too often been ignored. Courts must deal with such unethical tactics, lest they destroy the evenhandedness of the courts in resolving naturally uneven contests between private citizens and the federal government.

I respectfully dissent from the denial of rehearing en banc.

ATTACHMENT—Elrod dissent

---

[6] Notably, counsel for the U.S. Attorney for the Southern District of Texas stated that it took no part in these actions.

Jennifer Walker Elrod, *Circuit Judge*, dissenting:

Space Exploration Technologies seeks a writ of mandamus in order to keep the lawsuit it filed against NLRB in the Southern District of Texas. Today, in a one-line order, the panel denies that relief. In doing so, the panel permits an erroneous view of the requirements for filing claims in our circuit, risks confusion amongst the district courts of our circuit, and deprives plaintiffs of the opportunity to seek justice in a lawful venue. Because the district court committed legal error by asking where the "*most* significant part of the events" took place and because the other mandamus factors are satisfied, I would conclude that mandamus relief is appropriate and direct the district court to: (1) vacate its transfer order dated February 15, 2024; and (2) rule expeditiously on the pending motion for a preliminary injunction.

SpaceX originally filed suit in the Southern District of Texas, seeking preliminary injunctive relief from administrative hearings before the NLRB. SpaceX contends that the structure of the hearings violates Article II, the Fifth Amendment, and the Seventh Amendment of the Constitution of the United States. The district court granted NLRB's motion to transfer the case to the Central District of California, reasoning that the Central District is where most of the events giving rise to the case occurred. SpaceX petitioned for a writ of mandamus, and we administratively stayed the transfer order so that we could review SpaceX's petition. Because the stay was entered before transfer of the case was complete,[1] we confirmed that we retained jurisdiction over the case. The Central District of California stated that it would return the case upon request from the Southern District of

---

[1] Transfer was not complete because although the case had been sent electronically, it had not been docketed in the transferee court. *In re Space Exploration Technologies, Corp.*, No. 24-40103, Order (Feb. 26, 2024) (citing *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987)).

Texas.  On March 1, 2024, the Southern District of Texas requested that the case be returned, and the Central District of California ordered that the case be returned on March 4, 2024.  The Southern District of Texas docketed the case on March 5, 2024.

Mandamus is an "extraordinary remedy reserved for really extraordinary cases."  *Defense Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022).  Our circuit has held that mandamus is the "appropriate means to test a district court's ruling on a venue transfer motion."  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 308 (5th Cir. 2008).  Indeed, NLRB does not contest this point.  The Supreme Court has laid out three requirements that must be met before a reviewing court can grant mandamus relief:  (1) the party seeking a writ of mandamus must have no other adequate means to attain the relief he desires"; (2) the petitioner must demonstrate that his "right to issuance of the writ is clear and indisputable"; and (3) even if the first two requirements are met, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."  *In re Volkswagen*, 545 F.3d at 311 (quoting *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 452 U.S. 367, 380–81 (2004)).

## I

In the motion to transfer context, "this circuit has established that the first 'mandamus requirement [of no other adequate means of relief] is satisfied.'"  *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam)).[2]  NLRB admits as much.  The fact that this case involves an out-of-circuit transfer

---

[2] These holdings arose in the context of transfers under 28 U.S.C. § 1404(a).  Because 1406(a) is an "analogous" provision, "which shares the same statutory context" as § 1404(a), the same logic applies to 28 U.S.C. § 1406(a).  *Van Dusen v. Barrack*, 376 U.S. 612, 621 n.11 (1964).

only strengthens the case for mandamus. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3935.4 (4th ed.) (noting that "completion of proceedings in the receiving court is likely to exert a strong pressure to affirm rather than set aside a completed trial solely because it would better have been held in the transferring court").

## II

In this case, the second prong is the one "most strenuously debate[d]." *Bruck*, 30 F.4th at 427. It requires SpaceX to demonstrate a "clear and indisputable right to the writ or a clear abuse of discretion by the district court." *Id.* (citing *Cheney*, 452 U.S. at 381). "A district court by definition abuses its discretion when it makes an error of law." *Id.* (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("[A] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.").

Here, the district court's abuse of discretion concerns its determination that venue in the Southern District of Texas was improper. A civil action against an agency of the United States may be brought in a judicial district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The parties did not and do not dispute that because no party resides in the Southern District of Texas, § 1391(e)(1)(B) is the only potential path to venue in the Southern District of Texas.

Section 1391(e)(1)(B) does not ask the district court to determine whether the current venue is the *best* venue. *Safety Nat. Cas. Corp. v. U.S. Dep't of Treasury*, No. CIV.A H-07-643, 2007 WL 7238943, at *5 (S.D. Tex. Aug. 20, 2007). The plain text of the statute permits a plaintiff to bring an action against the United States in any district where "a substantial part of

the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). The statute requires that the events (or omissions) in the Southern District were "*a* substantial part," not the *most* substantial part, of the events giving rise to the claim. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred.").

The language in 28 U.S.C. § 1391(e)(1) is identical to that found in the general venue statute. 28 U.S.C. § 1391(b)(2) (permitting venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").[3] This language is generally referred to as "transactional venue."

But in conducting its § 1391(e)(1)(B) analysis, the district court employed a "most substantial part of the events" test. The basis for the district court's approach seems to be *Andrade v. Chojnacki*, a 1996 district court opinion that, in a footnote, determined venue was improper if the activities transpiring in the forum district were insubstantial compared to the totality of events giving rise to the case. 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996). The *Andrade* test is, of course, not binding.

The larger issue is that *Andrade* takes its test from *Thornwell v. United States*, a 1979 case that predates the 1990 amendments to § 1391. 471 F. Supp. 344 (D.D.C. 1979); *see also* 15 Charles Alan Wright, Arthur R.

---

[3] Because §§ 1391 and 1392 use identical language, cases construing § 1391(b)(2) are particularly helpful in construing § 1391(e)(1)(B). *E.V. v. Robinson*, 200 F. Supp. 3d 108, 113 n.2 (D.D.C. 2016) ("Because § 1391(e)(1)(B) is identical to 28 U.S.C. § 1391(b)(2), cases construing that general venue provision are 'helpful in construing this provision.'" (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3815 (4th ed.))).

Miller & Edward H. Cooper, Federal Practice and Procedure § 3815 (4th ed.) ("Originally, the statute permitted venue where the 'cause of action' arose. This ambiguous language was jettisoned in favor of the current version in 1990."). *Thornwell*'s interpretation could not have survived the 1990 amendments because those amendments made clear that venue can be proper in multiple districts. "If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009), aff'd, 640 F.3d 1140 (10th Cir. 2011); *see also Zurich Am. Ins. Co. v. Tejas Concrete & Materials. Inc.*, 982 F. Supp. 2d 714, 722–23 (W.D. Tex. 2013).

Further, it creates the possibility that venue would be improper everywhere. Suppose the activity giving rise to an action is equally distributed across ten districts, so each district contains 1/10 of the activity. Each district would conclude that the activity in its district, constituting 10% of the total activity, was insubstantial compared to the totality of the activity underlying the case. That result is plainly inconsistent with the text of § 1391, which does not contemplate lack of venue everywhere. Because *Andrade*'s footnote is inconsistent with the amended version of § 1391, the district court erred by relying on it.

The district court may have properly recited the distinction between proper venue and best venue, *see* District Court Order at 2 ("The Court should determine whether venue is proper but need not determine the 'best' venue." (citation omitted)), but the opinion repeatedly uses comparative language when evaluating the events taking place in the Southern District of Texas as opposed to the Central District of California. We have previously granted mandamus relief in venue transfer cases where the district court, despite reciting the legal rule, "misperceived and thus misapplied" the standard the law demands. *Bruck*, 30 F.4th at 429.

The most obvious example of this misapplication occurs in the district court's conclusion: "As has been made clear, the Central District of California is the venue in which the *most events* giving rise to this case occurred." District Court Order at 4–5 (emphasis added); *see also id.* at 3 (stating that events in this district are "far less significant than those occurring in California"); *id.* at 3 (stating that "an even larger disruption should be expected to have occurred in Hawthorne"); *id.* at 4 (stating that "these effects would be expected to have far more relevance to the Hawthorne facility"); *id.* at 3 (stating that "most related events . . . occurred at and in relation to the Hawthorne facility").

Here application of an erroneous legal standard was dispositive because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas." 28 U.S.C. § 1391(e)(1). There are three distinct buckets under which the Southern District of Texas satisfies this standard: (1) NLRB's action seeks to regulate SpaceX's conduct in the Southern District of Texas; (2) the allegedly unfair labor practices took place, at least in substantial part, in the Southern District of Texas; and (3) the open letter was intentionally sent to SpaceX's facilities in the Southern District of Texas and the Charging Parties purposefully solicited responses from employees in that district. Any one of these buckets is sufficient to satisfy the transactional venue test on its own. Taken together, the test is clearly satisfied.

A

Venue is proper in the Southern District of Texas because NLRB seeks to regulate SpaceX's conduct in that district. SpaceX is challenging the constitutionality of NLRB proceedings that seek to regulate SpaceX in the Southern District of Texas where it has a substantial presence through its Starbase and Houston facilities. Although scheduled to take place in

California, the administrative proceedings initiated by NLRB would regulate SpaceX's operations and policies everywhere, including the Southern District of Texas. The administrative action is not limited in geographic scope to California employees and facilities. In fact, the very allegations in the administrative proceeding assert that SpaceX violated the NLRA at all of its facilities, including the ones in the Southern District of Texas.

District courts within our circuit have held that under 28 U.S.C. § 1391(e)(1), venue "is proper where an unlawful rule imposes its burdens." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023) (internal quotations omitted); *see also Umphress v. Hall*, 479 F. Supp. 3d 344, 351–52 (N.D. Tex. 2020); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (injunction terminated on other grounds). In these cases, transactional venue was held to be proper where: (1) the plaintiff has a significant presence in the forum; and (2) the plaintiff was subject to actual or imminent burden within the forum should the contested agency action take effect. *See Career Colls.*, 2023 WL 2975164, at *2.

SpaceX easily satisfies both requirements. It has a significant presence in the Southern District of Texas through its Starbase facility. The district court's order suggests that there are six total SpaceX facilities, one of which is in the Southern District of Texas. SpaceX has consistently represented that it also has two facilities in the Southern District of Texas (the Starbase facility and a "human spaceflight mission operations and integration facility in Houston"). For purposes of this analysis, the exact number of facilities does not matter. Starbase is a substantial part of SpaceX's operations. Even

if the district court's factual assertions are correct[4] and Starbase is the only facility in the Southern District of Texas, that would still constitute a substantial presence in the Southern District of Texas. Under the district court's factual determination, Starbase alone accounts for one sixth of SpaceX facilities which are spread out across Texas, Florida, and California. Further, Starbase is where SpaceX is "developing, manufacturing, and launching Starship, the most powerful rocket ever built."

SpaceX also satisfies the second transactional venue requirement because it is subject to substantial burdens imposed by government action on its operations and policies in the Southern District of Texas. NLRB has initiated proceedings against SpaceX for unlawful employment practices in violation of the NLRA. It is undisputed that the remedy NLRB seeks to implement would burden SpaceX employees and facilities in the Southern District of Texas by requiring them to post notices and conduct mandatory training.

NLRB argues that the substantial burden requirement can only be met by the sort of notice-and-comment rulemaking found in *Career Colleges* and *Texas v. United States*.[5] This distinction cannot be grounded in the statutory language or in caselaw. Section 1391's unambiguous text makes no subject matter distinctions. It does not distinguish between an administrative adjudication and notice-and-comment rulemaking. Both can burden potential plaintiffs in numerous districts and those burdens, wherever they occur, can constitute a "substantial part of the events" giving rise to the claim. *See* 28

---

[4] The district court did not make any mention of judicial notice and seems to have gone outside briefing as it cited SpaceX's website to determine the total number of facilities.

[5] NLRB does not address the fact that *Umphress* did not involve notice-and-comment rulemaking. That case involved efforts to regulate the actions of an individual plaintiff within the forum in which he filed suit. *Umphress*, 479 F. Supp. 3d at 347–48.

U.S.C. § 1391(e)(1). NLRB could have limited the effect of its adjudication to the California facilities. *See Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F. Supp. 455 (S.D. Tex. 1996) (holding that venue was improper in Texas because the challenged statute only regulated activities in Alaska). Having decided to target all SpaceX facilities and employees, NLRB cannot now escape the implications of that decision.

B

SpaceX can also satisfy the transactional venue standard because the alleged unfair labor practices in the administrative complaint took place, in substantial part, in the Southern District of Texas. The alleged unfair labor practice is an e-mail sent from SpaceX's President and COO, Gwynne Shotwell, from McGregor, Texas to *all* SpaceX employees, including those located at the Starbase and Houston facilities.

The district court considered this event to be mere "incidental" contact with the Southern District of Texas. This misunderstands the nature of the event. NLRB is charging SpaceX with unfair labor practices based on a communication that was sent to all employees. Far from being merely incidental, this e-mail was a purposeful choice, and one that NLRB contends was unlawful as to all of SpaceX's employees in the Southern District of Texas. That is a substantial part of the events. We have held that communications sent to Texas can constitute a substantial part of the events giving rise to the plaintiff's claims so long as those claims derive directly from those communications. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018); *see also Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (categorizing an e-mail sent to Texas recipients as a substantial Texas-based event for purposes of transactional venue).

Despite recognizing this binding precedent, the district court distinguished *Trois* by stating that this case derived directly from the administrative

proceeding that stemmed from Shotwell's e-mail. It claimed that Shotwell's e-mail and the letter to which it was responding only reached the Starbase and Houston facilities "incidentally." The district court similarly distinguished *Long* by stating that the e-mail in that case was a "direct communication to Texas; the content caused the claim, and the injury was experienced in Texas." This distinction is nearly impossible to grasp.

First, the district court never explains what constitutes a "direct" as opposed to "indirect" or "incidental" communication. As I see it, any communication purposefully sent to a person or persons within a district is a direct communication.[6] It seems the district court may be using "indirect" or "incidental" to refer to the fact that "Texas is only one of the many locations that the open letter reached." To the extent that is the case, this constitutes clear legal error. Merely sending a message to persons in multiple forums cannot render the contact resulting from that decision as "incidental."

As has been made clear, transactional venue contemplates multiple legally permissible venues. *See Umphress*, 479 F. Supp. 3d at 351 ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165-1166 (10th Cir. 2010); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (determining whether venue was proper requires "ask[ing] whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts"). The district court's purported rule could create cases with no proper venue because a message sent to multiple districts

---

[6] An indirect communication might be at play when someone who received an initial message forwarded that message to another district.

would be "incidental" as to all of those districts.

Second, the content of the email sent by Shotwell is the very act alleged to be an unfair labor practice, leading to the administrative proceedings against SpaceX.

Third, and as discussed in Part I.A., SpaceX is subject to burdensome and binding regulation as a result of the administrative proceedings resulting from this letter.

## C

The facts that gave rise to NLRB's proceedings against SpaceX also have substantial ties to the Southern District of Texas, providing a third basis for satisfying § 1391(e)(1)(B). The Charging Parties, (former employees who filed NLRB charges against SpaceX), wrote an Open Letter to all SpaceX employees, including those located in the Southern District of Texas. This letter linked to surveys soliciting feedback and support for their letter. In other words, the Charging Parties reached into the Southern District and specifically involved SpaceX employees in that district. The open letter led to numerous meetings, discussions, and decreased productivity by employees in the Southern District of Texas. SpaceX has stated in declarations that the Open Letter "derailed technical conversations for a week at Starbase, during a critical phase in meeting targets for Starship" and that as a result, numerous unplanned meetings were required "to address disruption and concern resulting from the Open Letter."

The Open Letter, which was intentionally distributed to SpaceX employees in the Southern District of Texas, explicitly sought their support. Thus, the events giving rise to the administrative complaint itself have substantial involvement with and impact on the Southern District of Texas. Just because this e-mail was sent to employees in additional districts—possibly leading to substantial involvement or even more involvement with those

districts—does not mean the Southern District of Texas fails to satisfy § 1391. *See Umphress*, <u>479 F. Supp. 3d at 351</u> ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."). The district court's contrary holding was clear error.

## D

Any one of these three buckets would be enough to satisfy the transactional venue standard. The district court's error is made all the more egregious by failing to consider whether all of these connections to the Southern District taken together amount to a substantial part of the events giving rise to SpaceX's claim. Section 1391 nowhere in its text requires courts to disaggregate the various types of events and determine whether each bucket can individually account for a "substantial part" of the events. Instead, it simply asks whether a "substantial part of the events or omissions giving rise to the claim" occurred in the chosen venue.

NLRB's desire to bind SpaceX in the Southern District of Texas through administrative proceedings; the allegedly unfair labor practice that took place—in substantial part—in the Southern District of Texas; and the purposeful solicitation of SpaceX employees in the Southern District of Texas by the Charging Parties, combined with the resulting disruption, clearly amount to a substantial part of the events underlying SpaceX's claims against NLRB.

Because the district court in practice applied a "most substantial events" test, it committed a clear legal error that, by definition, amounts to a clear abuse of discretion. *Bruck*, <u>30 F.4th at 427</u> (citing *Koon*, <u>518 U.S. at</u>

100). Therefore, prong two of the mandamus requirements is satisfied.

### III

The third prong of mandamus relief requires exercise of our discretion. We have made clear that mandamus relief is "particularly appropriate" where the issues presented "have an importance beyond the immediate case." *In re Volkswagen*, 545 F.3d at 319 (citing *United States v. Bertoli*, 994 F.2d 1002, 1014 (3d Cir. 1993)). We further noted that "venue transfer decisions are rarely reviewed" and that this can lead to the undesirable result of inconsistent outcomes. *Id.* District courts in our circuit need guidance on venue standards. Permitting an erroneous application of § 1391(e)(1)(B) to stand without correction provokes uncertainty in the law and may lead to further use of the erroneous "most substantial events" test.

Mandamus relief is especially appropriate in the context of a § 1406(a) transfer of venue. 28 U.S.C. § 1406 permits a case to be transferred only when the case was filed "laying venue in the *wrong* division or district." 28 U.S.C. § 1406(a) (emphasis added). This is different from change of venue under 28 U.S.C. § 1404(a). That statute permits transfer of a case "[f]or the convenience of parties and witnesses, in the interest of justice" to any district or division where the case might have been brought.[7] *In re Volkswagen* and

---

[7] NLRB, in its motion to transfer the case, argued for transfer under both § 1406 and § 1404. The district court did not address § 1404. Instead, the district court transferred the case under § 1406. In its response opposing a writ of mandamus, NLRB did not present the merits of its § 1404 argument. This is likely because the argument for transfer under § 1404 is a weak one. It is NLRB's burden to demonstrate that the transferee venue is "clearly more convenient." *Volkswagen*, 454 F.3d at 313–15 (explaining that the underlying premise of § 1404(a) is that defendants should not be subject to inconvenient venues). Because SpaceX seeks a preliminary injunction based on purely constitutional arguments, the need for witnesses unique to California is nearly non-existent, and the convenience concern underlying § 1404(a) does not favor transfer. Nor do the rest of the equitable factors under our caselaw clearly favor the Central District of California.

*Bruck* both dealt with transfers under § 1404. *In re Volkswagen*, <u>545 F.3d at 319</u>; *Bruck*, <s>30 F.4th at 423</s> ("[I]n this circuit, mandamus is the prescribed vehicle for reviewing rulings on transfers of cases pursuant to <u>28 U.S.C. § 1404(a).</u>"). Despite § 1404 involving much more discretion than § 1406, those cases still granted mandamus relief.

A transfer under 1406(a) does not permit consideration of the same sort of equitable principles ("convenience" or the "interest of justice") as § 1404(a). This makes the legal error in determining where a case is permitted to be brought all the more significant. Because § 1406 only permits transfer of a case when the chosen venue is legally impermissible, a legal error under § 1406 is much more significant than a legal error under § 1404. Error under § 1406 artificially restricts the right of plaintiffs to bring their claims in our circuit.

Last, the underlying merits of this claim weigh in favor of granting mandamus relief. Before us are "issues that implicate not only the parties' interests but those of the judicial system itself." *Bruck*, <u>30 F.4th at 426</u>–27 (quoting *Bertoli*, <u>994 F.2d at 1014</u>). SpaceX is challenging the constitutionality of NLRB's very structure. This case implicates the methods and procedures permitted under our constitution when the federal government regulates employer conduct.

NLRB does not deny that it seeks to avoid our court's precedent in *SEC v. Jarkesy*, a fact that the district court did not cite or address. <u>34 F.4th 446</u> (5th Cir. 2022) (holding that "[t]wo layers of for-cause protection" for inferior officers is forbidden under "Supreme Court Precedent"), *cert. granted*, <u>143 S. Ct. 2688</u> (argued Nov. 29, 2023). I do not make any assessment of whether *Jarkesy* would control this case, but NLRB's desire to avoid our circuit's precedent is further justification for exercising our discretion in granting mandamus relief.

\*    \*    \*

In the federal court system, plaintiffs can prefer favorable caselaw and sue in any appropriate venue. NLRB cannot seek to condemn SpaceX's past labor practices in the Southern District of Texas, bind SpaceX's future practices in the Southern District of Texas, and at the same time avoid proper venue in the Southern District of Texas. Failure to follow the plain text of the venue statutes and settled Fifth Circuit caselaw is disappointing and should have been corrected.

For the foregoing reasons, I would conclude that mandamus relief is appropriate to remedy the erroneous transfer of this case. *See In re Volkswagen*, 545 F.3d at 319; *Bruck*, 30 F.4th at 423. We should have exercised our discretion to grant mandamus relief and directed the district court to: (1) vacate its transfer order dated February 15, 2024; and (2) rule expeditiously on the pending motion for a preliminary injunction.

I respectfully dissent.